

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

SECURITIES AND EXCHANGE §
COMMISSION, §
§
§ Civil Action No.:
§ 3:04-CV-01320 *K*
§
Plaintiff, §
v. §
§
CONRAD P. SEGHERS and §
JAMES R. DICKEY, §
§
Defendants. §

**ORIGINAL**



**U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED**

FEB 1 1 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

## DEFENDANT JAMES R. DICKEY'S APPENDIX IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### VOLUME 1 OF 1

**HERMES SARGENT BATES, L.L.P.**
Dwayne J. Hermes
State Bar No. 09514400
Amy Davis Benavides
State Bar No. 24007083
David G. Adams
State Bar No. 00793227
901 Main Street, Suite 5200
Dallas, Texas 75202
(214) 749-6000
(214) 749-6100 (Fax)

**ATTORNEYS FOR DEFENDANT
JAMES R. DICKEY**

**Index to Appendix In Support of Response In
Opposition to Plaintiff's Motion for Summary Judgment**

| TAB NO. | DESCRIPTION | PAGE |
|---------|-------------|------|
| | **VOLUME 1 OF 1** | |
| 1 | Affidavit of James R. Dickey | 1 |
| 2 | Integral Hedging LP Offering Memorandum, dated July 1, 1999 | 12 |
| 3 | Sum-It Investments LP Confidential Private Placement Memorandum, dated April 2000 | 119 |
| 4 | Genesis Market Neutral Index Fund LP Confidential Private Placement Memorandum, dated July 1998 | 216 |
| 5 | Integral Hedging LP Form D | 296 |
| 6 | Sum-It Investments LP Form D | 304 |
| 7 | Integral Arbitrage LP Form D | 312 |
| 8 | Genesis Market Neutral Index Fund LP Form D | 321 |
| 9 | Integral Investments' Website printout dated October 23, 2001 | 326 |

**DEFENDANT JAMES R. DICKEY'S APPENDIX IN SUPPORT OF RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
Doc. # 214056

**Page 2**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the _____ day of February 2005, a true and correct copy of this document was forwarded to the following counsel of record via certified mail, return receipt requested:

Karen Matteson
Emily A. Breckenridge
Securities and Exchange Commission
5670 Wilshire Boulevard, Suite 1100
Los Angeles, CA 90036

Stephen J. Korotash
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102-6882

_____
David G. Adams

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3-04CV-1320-K |
| CONRAD P. SEGHERS and JAMES R. DICKEY, | § § § | |
| Defendants. | § § § | |

### AFFIDAVIT OF JAMES R. DICKEY

STATE OF TEXAS    )
                        )
COUNTY OF DENTON )

BEFORE ME, the undersigned authority, on this day personally appeared James R. Dickey, who being by me duly sworn, upon oath deposed and stated as follows:

1.    "My name is James R. Dickey. I am of sound mind and am over the age of twenty-one (21) years. I have never been convicted of a felony or crime involving moral turpitude and am competent to make this affidavit. I have personal knowledge of every statement contained herein. Every statement herein is true and correct.

2.    I have read and am familiar with the claims and allegations made against me by the Securities and Exchange Commission ("SEC") in the above-captioned litigation. This affidavit responds only to the factual allegations made by the SEC in their Motion for Summary Judgment in the above-captioned litigation and does not constitute a complete or exhaustive narrative of the facts and circumstances surrounding the creation and management of Integral Hedging, L.P., Integral Arbitrage, L.P. and Integral Equity, L.P. (collectively, the "Funds").

3. My involvement in the creation and management of the Funds was limited to solicitation of potential investors, investor relations, and administrative office duties. My solicitation activities involved communicating with potential investors with regard to the risk and rewards as I understood them based on the advice of counsel and information provided to me by those substantially more involved with the management, trading and operation of the Funds and by Conrad Seghers, who controlled Integral Investment Management, L.P. ("IIM"), general partner of the Funds.

4. My participation with the Funds was minimal between July 1998 and mid-2000. During that time, I assisted the Funds on an average of one to two hours per week. My assistance included intermittent calls, emails and lunches during which I introduced potential investors to the Funds. I also assisted by performing investor relations and administrative tasks around the office, such as selecting and assembling office equipment and assisting with printing and mailing of investor communications, particularly during those times when Mr. Seghers was out of town.

5. In late 1996, before I became involved in any way with the Funds, I hired Laurence S. Markowitz, at the time, a partner of the New York law firm, Christy & Viener, for the purpose of providing legal advice regarding hedge funds, among other items. I inquired of Mr. Markowitz and he advised me that I was not required to obtain licensing, certification, registration or any other designation to solicit investors in hedge funds such as the Funds. He advised that any such licensing, certification, registration or any other designation was unnecessary because hedge funds and those who are associated with and solicit investors in such funds enjoy exceptions to otherwise applicable federal

regulation. To become licensed, certified, registered or otherwise designated for such solicitation would create unnecessary paperwork and expense.

6.     On Friday, February 4, 2005, I confirmed in a telephone conference with Mr. Markowitz that, although he could not recall the specifics of our conversation, he did recall providing me advice regarding the management and operation of hedge funds such as the Funds, and that, if asked, he would have advised me that it was not necessary for me to register hedge funds such as the Funds or for me to become licensed personally due to exceptions in federal securities laws and regulations. Mr. Markowitz informed me that he would give the same advice today.

7.     In mid-2000, Kennedy Capital Associates ("KCA"), financial advisor to the Arts Institute of Chicago ("AIC"), met with several individuals involved with the Funds as due diligence on behalf of what was disclosed at that time only as a potential institutional investor. KCA visited the offices used by the Funds and IIM in the course of its due diligence. KCA decided to recommend the Funds as an investment to its client, the institutional investor. In the meantime, KCA required the Funds to enhance its appearance in terms of the aesthetics of its offices and marketing presentations lest the institutional investor believe IIM was too small of an organization. Evidence offered by the SEC in support of its Motion for Summary Judgment, namely Exhibits 44 and 45, fully incorporated herein by reference and provided to the Court in the Appendices to the SEC Motion for Summary Judgment, include PowerPoint presentations created by KCA which relayed KCA's requests that the Funds bolster their image.

8.     As a result of the growing investor and asset base in 2000, Mr. Seghers asked that I spend more time performing office manager-type tasks, such as upgrading

the furniture and technology of the offices, as well as increased investor relations tasks. He also asked that I accept the title of President of IIM. I agreed to accept this title, although I continued to work solely for the Funds, spending more time meeting with current and potential investors and performing office manager-type responsibilities.

9. In approximately July 2000, KCA directed Mr. Seghers and me to change marketing materials prepared for the Funds to be presented to the institutional investor, identified by that time as AIC. Specifically, KCA required Mr. Seghers and me to present the Funds' results in a manner that allowed easy comparison with other potential investments, especially investments in the bond market.

10. Also in response to the requests of KCA as agent for AIC, the Funds created a website (www.intergralinv.com) primarily to allow qualified or accredited investors to follow the Funds' performance, not to further the Funds' marketing efforts or to publicly offer limited partnership interests in the Funds through the website. The website required each visitor attest to his or her status as an accredited or qualified investor and precluded other visitors by password protection. Not until it was ascertained that an investor was qualified under Regulation D was an investor allowed access to the remainder of the Funds' website that contained additional information about the Funds.

11. The Funds created the website with the supervision and legal advice of two law firms, Creel Susman & Moore, LLP and Tannenabaum, Helpern, Syracuse & Hirschtritt, LLP. Evidence proffered by the SEC in support of its Motion for Summary Judgment evidences the legal assurances obtained by the Funds that the website complied with all federal and state law and regulation, particularly regulation limiting the solicitation of private placements, and the Funds efforts to implement the legal advice it

obtained. *See* Exhibits 46-48 of the Appendices to the SEC Motion for Summary Judgment, fully incorporate herein by reference and previously provided to the Court by the SEC.

12. Never at any time did I select, recommend or effectuate in any way the trades made by or on behalf of the Funds. Nor did I calculate the values of the Funds although I did report values calculated or estimated by others to customers for whom I was the Funds' liaison. I also, again with sincere and express reluctance as well as a disclosure that the numbers were rough estimates, not to be relied upon as actual or amortized values, communicated at the repeated insistence of KCA, rough estimates of the Funds' values calculated at the instruction and by a formula and, later, actual numbers provided by Olympia Capital and others based, in part, on the S&P Index and mark-to-market values. Indeed, David Kennedy, a principal of KCA, explained as much in deposition testimony cited by the SEC in support of its Motion for Summary Judgment. *See* SEC Appendices at p. 1300, fully incorporated herein by reference and previously provided to the Court by the SEC. In addition, I sent an e-mail to Darren Unruh of KCA, confirming that the weekly figures were rough estimates.

13. I did not negotiate the terms of investment for the Funds. I would merely confirm in writing the conditions agreed to between the Funds and the investor where I was an investor's contact person.

14. At no time did I attempt to sell securities of a company with whom I was not affiliated to investors; instead, I only solicited investors on behalf of the Funds. I did not, at any time prior to or since my affiliation with the Funds or my own hedge fund, sell securities of other issuers.

15.    To the best of my knowledge, and certainly with regard to any individual or entity I recommended as an investor in the Funds, all investors in the Funds were accredited investors as required by federal securities regulations, save for approximately ten individuals and/or entities, in which case the individual and/or entity otherwise qualified as an experienced and sophisticated investor under federal securities law. To the best of my knowledge, and certainly with regard to any individual or entity I recommended as an investor in the Funds, all investors attested in writing to being accredited and/or otherwise qualified under federal securities regulations.

16.    Morgan Stanley Dean Witter ("Morgan Stanley"), the primary broker for the Funds, disclosed in late May or early June 2001 errors in its reporting of accounts held on behalf of the Funds. In all of its communications with the Funds, Morgan Stanley promised to immediately correct the errors. Morgan Stanley failed to indicate, either by the content or the demeanor of its communication with the Funds regarding the errors, that the errors were material until several months after its initial disclosure. During June and early July 2001, the Funds made repeated disclosures of the Morgan Stanley problems and terminated their use of Morgan Stanley and opened new accounts at Spear, Leeds & Kellogg, specifically to prevent any further such issues.

17.    I never had access to the statements provided by Morgan Stanley for accounts held on behalf of the Funds, nor did I ever receive information, either from an individual on behalf of the Funds or from Morgan Stanley, that gave rise to a need or obligation on his part to gain access or review the statements provided by Morgan Stanley for accounts held on behalf of the Funds until approximately the time the Funds terminated their relationship with Morgan Stanley in July 2001. Similarly, I never had

access to the statements of trades on behalf of the Funds, at Morgan Stanley or otherwise, nor did I ever receive information that would require me to gain access or review this information until after the Funds had terminated their relationship with Morgan Stanley. Further, to my knowledge, copies of these statements were provided to Olympia Capital for their use in verifying the Galileo Fund, L.P. ("GF") values provided by Samer El Bizri. Indeed, I was unaware of any material errors in the calculating and or reporting of values for the Funds on the part of Morgan Stanley until well after the Funds had terminated their relationship with Morgan Stanley.

18.     Despite representations by Morgan Stanley that it would immediately correct the errors in accounts held on behalf of the Funds, and despite a failure on the part of Morgan Stanley to communicate that the errors were material, out of an abundance of caution, the Funds terminated its relationship with Morgan Stanley by approximately July 2001. At the same time, the Funds began using accounts at another broker-dealer to effectuate trades. The Funds also instituted additional, extraordinary controls to assure proper valuation from its brokers. Specifically, the Funds instructed Olympia Capital Associates, L.P., the Funds' administrator, to use mark-to-market values to confirm the values provided by Samer M. El Bizri and to account for legal and other overhead matters when reporting values for the Funds. Before that time, in June 2001, the Funds stopped issuing investments in Integral Hedging, L.P.

19.     Neither before nor after I gained an understanding of the materiality of the errors made on the part of Morgan Stanley did Mr. Bizri report to me that he was unable to properly or accurately value the Funds' accounts. To the contrary, he continuously provided values for the Funds and even claimed that the valuations provided adjustments

for errors by Morgan Stanley, a claim I had no reason to dispute. As examples, Exhibits 15, 16 and 132 of the Appendices to the SEC's Motion for Summary Judgment, fully incorporated herein by reference and previously provided to the Court by the SEC, reflect valuations calculated and reported by Mr. Bizri in June 2001 and his implicit, if not explicit, representation that he was capable of making accurate valuations for the Funds.

20.  Moreover, multiple, independent sources verified that Mr. Bizri's valuations were correct and accurate. Thus, I had no reason to suspect the valuations provided by Mr. Bizri were inaccurate and much reason to believe the valuations were accurate.

21.  Notwithstanding Morgan Stanley's failure to timely communicate the extent of the errors or their impact on the Funds, the Funds disclosed the errors to investors immediately with follow up as the Funds learned more about the situation. *See* Exhibits 23 (June 20, 2001 letter to investors stating that "errors from Morgan Stanley are being resolved and the monthly performance figures and statements should now be available in a more timely manner"), and 25 (July 31, 2001 letter to investors and potential investors reporting that the Funds "are still in the process of resolving outstanding issues with Morgan Stanley"), all fully incorporated herein by reference and previously provided to the Court by the SEC.

22.  I do not recall a conversation with Christoph Umscheid at this time, but had a portfolio manager inquired, I would have advised him or her that the Funds valued marketable securities directly held by the Funds based on the previous day's closing price. I would not have represented to Mr. Umscheid or anyone else that all the Funds' assets were so valued. Sam Vogel and Mr. Seghers directed all trading of assets held by

the Funds in-house and, after June 2001, Mr. Seghers also executed all new trades in-house.

23.     In a very few early documents and/or marketing materials for which I was not the author or otherwise responsible because they predated my regular involvement on behalf of the Funds, the Funds mistakenly referred to Morgan Stanley as a "prime broker" rather than the Funds' primary broker.  The few errors were quickly corrected in the marketing materials and I always disclosed in oral communications to prospective and existing investors that the Funds did not use the prime brokerage division of Morgan Stanley.  As of July 2001, the Funds began to use a prime broker, Spear, Leeds & Kellogg, to effectuate their trading.

24.     On September 4, 2001, at the request of the AIC in response to a form audit letter, I provided a letter to Deloitte & Touche, auditors for the AIC, in which I reported that the Funds had disclosed all transactions in Integral Hedging, L.P. and that I was unaware of any events that had occurred between June 30, 2001 and the date of the letter that would require adjustment and/or special disclosure on the AIC financial statements.  *See* Exhibits 208 and 209 of the Appendices proffered by the SEC in support of its Motion for Summary Judgment, fully incorporated herein by reference.

25.     My representations in the September 4, 2001 letter were accurate at the time as the errors in the Morgan Stanley accounts occurred prior to June 30, 2001 and the errors had already been disclosed to the AIC and, to the best of my knowledge at the time, were reflected in values provided to the AIC before June 30, 2001.  In fact, by mid-July 2001, the Funds, including Integral Hedging, L.P., terminated its relationship with Morgan Stanley and began investing through other brokers.

26.     Similarly, after September 11, 2001, the Funds accurately reported to investors that Integral Hedge Fund had lost much of its actual value partly as a result of the terrorist attack.  While several events prior to the terrorist attacks, including the errors on the part of Morgan Stanley, impacted the performance of the Funds, the Funds were on track to recapture their losses for break-even trading by the December 2001 options expirations date.  However, the instant drop in value of the Funds' assets caused by the terrorist attacks, a risk disclosed to investors prior to their investment in the Funds, and the resulting liquidation of Funds' assets to meet corresponding margin calls, precluded the Funds from regaining their losses.  Of course, further investigation may reveal that, but-for similar liquidations of Funds' assets caused by errors on the part of Morgan Stanley, the Funds may have survived the post-September 11, 2001 margin calls.

27.     The Funds did not report similar losses for Integral Arbitrage because that particular fund did not sustain such losses at that time.

28.     I did not receive a percentage of the management fees and performance fees solely for investors to whom I successfully marketed the Funds.  To the contrary, I received, as did other employees, a percentage of all management fees and performance fees received by Integral Investment Management, LLC ("IIM") as compensation for management and advisory services and for marketing efforts for the Funds, in general.  These fees were standard for hedge funds at the time and are lower than most similar fees paid to hedge fund managers in 2005.  For the period of June 2000 through December 2001, I did not receive $85,052 in investor funds.  In fact, I received interests in the Funds as payment of the management and performance fees.

**FURTHER AFFIANT SAYETH NOT."**

_____
**JAMES R. DICKEY**
Affiant


**SUBSCRIBED AND SWORN TO BEFORE ME** on this the _10th_ day of February 2005.

(seal)

BRENDA M. BUTNICK
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-16-08

_____
**NOTARY PUBLIC**
~~DALLAS~~ Denton COUNTY, TEXAS


My Commission expires: _11-16-08_____

# INTEGRAL HEDGING, LP



## OFFERING MEMORANDUM

### July 1, 1999

13606 T.I. Boulevard
Dallas, Texas 75243

Phone (972) 238-9531
Fax (972) 238-7733


GOVERNMENT
EXHIBIT 38
4-24-02
292529

Name: _____

Memorandum No.: _____

# INTEGRAL HEDGING, L.P.

## CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

July 1, 1999

13606 TI Boulevard
Dallas, Texas 75243

Telephone: (972) 238-9531
Facsimile: (972) 238-7733

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS THAT WILL NOT ENTER INTO COMMODITY FUTURES AND COMMODITY OPTIONS CONTRACTS FOR WHICH THE AGGREGATE INITIAL MARGIN AND PREMIUMS EXCEED 10 PERCENT OF THE FAIR MARKET VALUE OF THE POOL'S ASSETS AFTER TAKING INTO ACCOUNT UNREALIZED PROFITS AND UNREALIZED LOSSES AND WILL TRADE SUCH COMMODITY INTERESTS IN A MANNER SOLELY INCIDENTAL TO ITS SECURITIES TRADING ACTIVITIES, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page i

SEC0002332

# INTEGRAL HEDGING, L.P.

## Limited Partnership Interests

### Minimum Initial Investment: $1,000,000

Integral Hedging, L.P., a Texas limited partnership (the "Partnership"), is a limited partnership which seeks maximum capital appreciation from its investments consistent with reasonable risk. The Partnership invests its assets primarily in a diversified portfolio of put and call options on equities and equity indices and futures and forward and option contract transactions in the currency and interest-rate markets, using futures and forward contracts and equities and indices and options thereon and other publicly and over-the-counter traded instruments. Current income is a secondary objective. The Partnership may use leverage as an investment technique. See "The Partnership -- Investment Objectives".

Following the first anniversary of an investment in the Partnership, a Limited Partner will be entitled to withdraw all or a portion of its investment quarterly, subject to certain limitations. See "Summary of the Partnership Agreement".

The General Partner of the Partnership is Genesis Market Neutral Partners, L.P., a Texas limited partnership (the "General Partner"), of which Genesis Management, LLC, a Texas limited liability company ("Genesis Management"), is the general partner. Genesis Management, through the General Partner, implements the Partnership's investment strategy.

Limited partnership interests ("Interests") are being offered solely to "accredited investors" as defined in Section 501(a) of Regulation D promulgated under the Securities Act of 1933. Accredited investors are generally persons that have either (i) a gross income (exclusive of spouse's income) of at least $200,000 in the prior two years or joint income with spouse in excess of $300,000 in each of those years and a reasonable expectation of achieving the same income level in the present year, or (ii) a net worth of at least $1,000,000. The minimum investment is $1,000,000, although the General Partner may accept subscriptions for less. Interests will continue to be offered for an indefinite period, and additional limited partners may be admitted from time to time, provided that at no time will there be more than 100 partners in the Partnership. There is no maximum dollar amount of Interests that the Partnership may sell. See "Terms of the Offering".

SEC0002333

## COMMODITY POOL - RISK DISCLOSURE STATEMENT

THE COMMODITY FUTURES TRADING COMMISSION HAS NOT PASSED UPON THE MERITS OF PARTICIPATING IN THIS POOL NOR HAS THE COMMISSION PASSED UPON THE ADEQUACY OR ACCURACY OF THIS DISCLOSURE DOCUMENT.

YOU SHOULD CAREFULLY CONSIDER WHETHER YOUR FINANCIAL CONDITION PERMITS YOU TO PARTICIPATE IN A COMMODITY POOL. IN SO DOING, YOU SHOULD BE AWARE THAT FUTURES AND OPTIONS TRADING CAN QUICKLY LEAD TO LARGE LOSSES AS WELL AS GAINS. SUCH TRADING LOSSES CAN SHARPLY REDUCE THE NET ASSET VALUE OF THE POOL AND CONSEQUENTLY THE VALUE OF YOUR INTEREST IN THE POOL. IN ADDITION, RESTRICTIONS ON REDEMPTIONS MAY AFFECT YOUR ABILITY TO WITHDRAW YOUR PARTICIPATION IN THE POOL.

FURTHER, COMMODITY POOLS MAY BE SUBJECT TO SUBSTANTIAL CHARGES FOR MANAGEMENT, ADVISORY AND BROKERAGE FEES. IT MAY BE NECESSARY FOR THOSE POOLS THAT ARE SUBJECT TO THESE CHARGES TO MAKE SUBSTANTIAL TRADING PROFITS TO AVOID DEPLETION OR EXHAUSTION OF THEIR ASSETS. THIS MEMORANDUM CONTAINS A COMPLETE DESCRIPTION OF EACH EXPENSE TO BE CHARGED THIS POOL IN SECTION III (see "THE PARTNERSHIP") AND A STATEMENT OF THE PERCENTAGE RETURN NECESSARY TO BREAK EVEN, THAT IS, TO RECOVER THE AMOUNT OF YOUR INITIAL INVESTMENT, IN SECTION XI (see "BREAK-EVEN ANALYSIS").

YOU SHOULD ALSO BE AWARE THAT THIS COMMODITY POOL MAY TRADE FOREIGN FUTURES OR OPTIONS CONTRACTS. TRANSACTIONS ON MARKETS LOCATED OUTSIDE, INCLUDING MARKETS FORMALLY LINKED TO A UNITED STATES MARKET, MAY BE SUBJECT TO REGULATIONS WHICH OFFER DIFFERENT OR DIMINISHED PROTECTION TO THE POOL AND ITS PARTICIPANTS. FURTHER, UNITED STATES REGULATORY AUTHORITIES MAY BE UNABLE TO COMPEL THE ENFORCEMENT OF THE RULES OF REGULATORY AUTHORITIES OR MARKETS IN NON-UNITED STATES JURISDICTIONS WHERE TRANSACTIONS FOR THE POOL MAY BE EFFECTED.

THIS BRIEF STATEMENT CANNOT DISCLOSE ALL THE RISKS AND OTHER FACTORS NECESSARY TO EVALUATE YOUR PARTICIPATION IN THIS COMMODITY POOL. THEREFORE, BEFORE YOU DECIDE TO PARTICIPATE IN THIS COMMODITY POOL, YOU SHOULD CAREFULLY STUDY THIS MEMORANDUM, INCLUDING THE DESCRIPTION OF THE PRINCIPAL RISK FACTORS OF THIS INVESTMENT IN SECTION V (see "RISK FACTORS").

SEC0002334

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL OR A SOLICITATION OF AN OFFER TO BUY THE INTERESTS (AS HEREINAFTER DEFINED) IN ANY JURISDICTION TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH AN OFFER OR SALE.

THE INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED WITH OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAS SUCH COMMISSION OR ANY SUCH AUTHORITY PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THIS OFFERING IS BEING MADE IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER, AND CERTAIN STATE SECURITIES LAWS. NO PUBLIC OR OTHER MARKET IS EXPECTED TO DEVELOP FOR THE INTERESTS OFFERED HEREBY. THE INTERESTS OFFERED HEREBY MAY BE SOLD, TRANSFERRED, HYPOTHECATED OR OTHERWISE DISPOSED OF ONLY UNDER CERTAIN LIMITED CIRCUMSTANCES UPON THE CONSENT OF THE GENERAL PARTNER OF THE PARTNERSHIP.

INVESTMENT IN THE PARTNERSHIP INVOLVES SPECIAL RISKS, AND PURCHASE OF THE INTERESTS SHOULD BE CONSIDERED ONLY BY PERSONS WHO CAN BEAR THE ECONOMIC RISK OF THEIR INVESTMENT FOR AN INDEFINITE PERIOD AND AFFORD A TOTAL LOSS OF THEIR INVESTMENT. THIS OFFERING IS BEING MADE ONLY TO INVESTORS WHO MEET THE PARTNERSHIP SUITABILITY REQUIREMENTS. (SEE "INVESTOR SUITABILITY.")

THE GENERAL PARTNER RESERVES THE RIGHT TO MODIFY, WITHDRAW OR CANCEL THE OFFERING AT ANY TIME PRIOR TO CONSUMMATION OF THIS OFFERING AND TO REJECT ANY SUBSCRIPTION, IN WHOLE OR IN PART, IN ITS SOLE DISCRETION.

NO OFFERING MATERIALS WILL OR MAY BE EMPLOYED IN THE OFFERING OF THE INTERESTS EXCEPT FOR THIS MEMORANDUM (INCLUDING EXHIBITS, AMENDMENTS AND SUPPLEMENTS HERETO) AND DOCUMENTS SUMMARIZED HEREIN. NO PERSON HAS BEEN AUTHORIZED TO MAKE REPRESENTATIONS OR GIVE ANY INFORMATION WITH RESPECT TO THE PARTNERSHIP OR THE INTERESTS EXCEPT FOR INFORMATION CONTAINED HEREIN. INVESTORS SHOULD NOT RELY ON INFORMATION NOT CONTAINED IN THIS MEMORANDUM OR THE EXHIBITS HERETO OR DOCUMENTS SUMMARIZED HEREIN.

THIS MEMORANDUM IS INTENDED SOLELY FOR USE ON A CONFIDENTIAL BASIS BY THOSE PERSONS TO WHOM IT IS TRANSMITTED BY THE GENERAL PARTNER IN CONNECTION WITH THE CONTEMPLATED PRIVATE PLACEMENT OF THE INTERESTS. RECIPIENTS, BY THEIR ACCEPTANCE AND RETENTION OF THIS MEMORANDUM, ACKNOWLEDGE AND AGREE TO PRESERVE THE CONFIDENTIALITY OF THE CONTENTS OF THIS MEMORANDUM AND ALL ACCOMPANYING DOCUMENTS AND TO RETURN THIS MEMORANDUM AND ALL SUCH DOCUMENTS TO THE GENERAL PARTNER IF THE RECIPIENT DOES NOT PURCHASE ANY INTERESTS. NEITHER THIS MEMORANDUM NOR ANY OF THE ACCOMPANYING DOCUMENTS MAY BE REPRODUCED IN WHOLE OR IN PART, NOR MAY THEY BE USED FOR ANY PURPOSE OTHER THAN THAT FOR WHICH THEY HAVE BEEN SUBMITTED, WITHOUT THE PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER.

NEITHER THE PARTNERSHIP NOR THE GENERAL PARTNER IS MAKING ANY

SEC0002335

 



REPRESENTATION TO ANY OFFEREE OR INVESTOR IN THE INTERESTS REGARDING THE LEGALITY OF INVESTMENT BY SUCH OFFEREE OR INVESTOR UNDER APPLICABLE LEGAL, INVESTMENT OR SIMILAR LAWS.

INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, BUSINESS OR TAX ADVICE.  EACH INVESTOR SHOULD CONSULT HIS OWN ATTORNEY, BUSINESS ADVISOR AND TAX ADVISOR AS TO LEGAL, BUSINESS, TAX AND RELATED MATTERS CONCERNING THIS OFFERING.

THE MATTERS DISCUSSED IN THIS MEMORANDUM MAY INCLUDE FORWARD-LOOKING STATEMENTS REGARDING THE PARTNERSHIP'S BUSINESS AND FINANCIAL CONDITION THAT INVOLVE RISKS AND UNCERTAINTIES.  SUCH STATEMENTS ARE BASED ON AN ASSESSMENT OF A VARIETY OF FACTORS, CONTINGENCIES AND UNCERTAINTIES DEEMED RELEVANT BY THE GENERAL PARTNER, INCLUDING THE PARTNERSHIP'S LACK OF HISTORICAL OPERATIONS AND OTHER RISKS DESCRIBED IN THIS MEMORANDUM. SHOULD ONE OR MORE OF THESE RISKS MATERIALIZE, THE PARTNERSHIP'S ACTUAL RESULTS MAY VARY SIGNIFICANTLY FROM THOSE EXPECTED.  FURTHER, THE RESULTS OBTAINED BY THE AFFILIATES OF THE GENERAL PARTNER DESCRIBED IN THIS MEMORANDUM ARE NOT NECESSARILY INDICATIVE OF THE RESULTS WHICH MAY BE ACHIEVED BY THE PARTNERSHIP.  WORDS OR PHRASES SUCH AS "WILL CONTINUE", "ANTICIPATE", "EXPECT", "BELIEVE", "INTEND", "ESTIMATE", "PROJECT", "PLAN" OR SIMILAR EXPRESSIONS ARE INTENDED TO IDENTIFY FORWARD-LOOKING STATEMENTS. INVESTORS ARE CAUTIONED NOT TO PLACE UNDUE RELIANCE ON THE PRIOR RESULT ACHIEVED BY THE AFFILIATES OF THE GENERAL PARTNER OR ON FORWARD-LOOKING STATEMENTS MADE IN THIS MEMORANDUM OR EXHIBITS ATTACHED HERETO OR INCORPORATED HEREIN BY THIS REFERENCE.



## FOR ALL INVESTORS

THE LP INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR THE SECURITIES LAWS OF ANY STATES, AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND/OR SUCH LAWS. THE LP INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND SUCH LAWS PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.  THE LP INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SEC OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

## NOTICE TO FLORIDA OFFEREES

THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE FLORIDA SECURITIES ACT.  EACH OFFEREE WHO IS A FLORIDA RESIDENT SHOULD BE  AWARE THAT SECTION 517.061 (11)(a)(5) OF THE FLORIDA SECURITIES ACT PROVIDES, IN

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page v

SEC0002336

RELEVANT PART, AS FOLLOWS: "WHEN SALES ARE MADE TO FIVE OR MORE PERSONS IN (FLORIDA), ANY SALE IN (FLORIDA) MADE PURSUANT TO ... 517.061 (11) SHALL BE VOIDABLE BY THE PURCHASER IN SUCH SALE EITHER WITHIN THREE DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY THE PURCHASER TO THE ISSUER, AN AGENT OF THE ISSUER OR AN ESCROW AGENT OR WITHIN THREE DAYS AFTER THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH PURCHASER, WHICHEVER OCCURS LATER."

THE AVAILABILITY OF THE PRIVILEGE TO VOID SALES PURSUANT TO SECTION 517.061(11) IS HEREBY COMMUNICATED TO EACH FLORIDA OFFEREE. EACH PERSON ENTITLED TO EXERCISE THE PRIVILEGE TO VOID SALES GRANTED BY SECTION 517.061(11)(a)(5) AND WHO WISHES TO EXERCISE SUCH RIGHT MUST, WITHIN THREE DAYS AFTER THE TENDER OF THE FIRST INSTALLMENT OF HIS CAPITAL CONTRIBUTION TO THE PARTNERSHIP OR TO ANY AGENT OF THE PARTNERSHIP (INCLUDING ANY DEALER ACTING ON BEHALF OF THE PARTNERSHIP OR ANY SALESMAN OF SUCH DEALER) OR AN ESCROW AGENT CAUSE A WRITTEN NOTICE OR TELEGRAM TO BE SENT TO THE PARTNERSHIP AT THE ADDRESS PROVIDED IN THE CONFIDENTIAL MEMORANDUM. SUCH LETTER OR TELEGRAM MUST BE SENT AND, IF POSTMARKED, POSTMARKED ON OR PRIOR TO THE END OF THE AFOREMENTIONED THIRD DAY. WITH RESPECT TO THE VOIDING OF A SALE, IT IS PRUDENT TO SEND ANY LETTER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ASSURE THAT IT IS RECEIVED AND ALSO TO EVIDENCE THE TIME IT WAS MAILED. ANY PERSON MAKING AN ORAL REQUEST TO VOID SALES MUST ASK FOR WRITTEN CONFIRMATION THAT HIS REQUEST HAS BEEN RECEIVED.

## FOR CALIFORNIA RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE CALIFORNIA CORPORATIONS CODE BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THE SECURITIES DESCRIBED IN THIS MEMORANDUM ARE BEING OFFERED PURSUANT TO WHAT THE OFFEROR BELIEVES TO BE AN EXEMPTION FROM THE QUALIFICATION REQUIREMENTS OF THE CALIFORNIA CORPORATION CODE. NEITHER THIS MEMORANDUM NOR THE SECURITIES DESCRIBED HEREIN HAVE BEEN APPROVED OR DISAPPROVED BY THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA NOR HAS THE COMMISSIONER PASSED UPON THE ADEQUACY OF THIS MEMORANDUM. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE CALIFORNIA CORPORATION CODE, IF SUCH REGISTRATION IS REQUIRED.

## FOR CONNECTICUT RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE CONNECTICUT UNIFORM SECURITIES ACT, AND, THEREFORE, CANNOT BE RESOLD UNLESS THEY ARE REGISTERED UNDER SUCH ACT OR UNLESS AN EXEMPTION FROM REGISTRATION IS AVAILABLE.

SEC0002337



### FOR NEW YORK RESIDENTS

THIS CONFIDENTIAL MEMORANDUM HAS NOT BEEN FILED WITH OR REVIEWED BY THE ATTORNEY GENERAL OF THE STATE OF NEW YORK PRIOR TO ITS ISSUANCE AND USE. THE ATTORNEY GENERAL OF THE STATE OF NEW YORK HAS NOT PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

### FOR ILLINOIS RESIDENTS

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECRETARY OF STATE OF ILLINOIS OR THE STATE OF ILLINOIS, NOR HAS THE SECRETARY OF STATE OF ILLINOIS OR TH ESTATE OF ILLINOIS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

### FOR NEW JERSEY RESIDENTS

THE SECURITIES REPRESENTED IN THIS MEMORANDUM OR SUBSCRIPTION DOCUMENTS ARE BEING SOLD PURSUANT TO A CLAIM OF EXEMPTION FROM THE REGISTRATION OR QUALIFICATION PROVISIONS OF FEDERAL AND STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.

### FOR PENNSYLVANIA RESIDENTS

YOU HAVE THE RIGHT TO CANCEL AND WITHDRAW YOUR SUBSCRIPTION AND YOUR PURCHASE OF SECURITIES THEREUNDER, UPON WRITTEN NOTICE TO THE PARTNERSHIP GIVEN WITHIN TWO BUSINESS DAYS FOLLOWING THE RECEIPT BY THE PARTNERSHIP OF YOUR EXECUTED SUBSCRIPTION AGREEMENT. ANY NOTICE OF CANCELLATION OR WITHDRAWAL SHOULD BE MADE BY TELEGRAM, CERTIFIED OR REGISTERED MAIL, AND WILL BE EFFECTIVE UPON DELIVERY TO WESTERN UNION OR DEPOSITED IN THE UNITED STATES MAILS, POSTAGE OR OTHER TRANSMITTAL, FEES PREPAID ADDRESSED TO THE PARTNERSHIP AT THE PRINCIPAL OFFICE OF THE PARTNERSHIP. UPON SUCH CANCELLATION OR WITHDRAWAL, YOU WILL HAVE NO OBLIGATION OR DUTY UNDER THE SUBSCRIPTION AGREEMENT OR TO THE PARTNERSHIP, THE PLACEMENT AGENT OR ANY OTHER PERSON AND WILL BE ENTITLED TO THE FULL RETURN OF ANY AMOUNT PAID BY YOU WITHOUT INTEREST.

YOU UNDERSTAND AND ACKNOWLEDGE NEITHER THE PENNSYLVANIA SECURITIES COMMISSION NOR ANY OTHER AGENCY HAS PASSED OR ENDORSED THE MERITS OF THIS OFFERING AND ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

YOU UNDERSTAND AND ACKNOWLEDGE PENNSYLVANIA SUBSCRIBERS MAY NOT SELL THEIR SHARES FOR ONE YEAR FROM THE DATE OF PURCHASE. SUCH A SALE WOULD

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page vii

SEC0002338

VIOLATE SECTION 203(D) OF THE PENNSYLVANIA SECURITIES ACT.

YOU UNDERSTAND AND ACKNOWLEDGE PENNSYLVANIA RESIDENTS WHO ARE NOT ACCREDITED INVESTORS MUST MEET THE SUITABILITY REQUIREMENTS SET FORTH IN THIS MEMORANDUM AND MUST HAVE A NET WORTH (EXCLUSIVE OF HOME, HOME FURNISHINGS AND PERSONAL AUTOMOBILES) OF AT LEASE FIVE (5) TIMES THE AMOUNT OF THEIR PROPOSED INVESTMENT.

## FOR MASSACHUSETTS RESIDENTS

THE SECURITIES REPRESENTED IN THIS MEMORANDUM OR SUBSCRIPTION DOCUMENTS ARE BEING SOLD PURSUANT TO A CLAIM OF EXEMPTION FROM THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTION THEREFROM. ANY NON-ACCREDITED INVESTOR IN THE STATE OF MASSACHUSETTS MUST MEET MASSACHUSETTS SUITABILITY STANDARDS. SUITABILITY IS PRESUMED TO HAVE BEEN ESTABLISHED IF THE INVESTMENT DOES NOT EXCEED TEN PERCENT (10%) OF THE PURCHASER'S NET WORTH (EXCLUDING PRINCIPAL RESIDENT, AND ITS FURNISHINGS) AND THE NET WORTH OF THE PURCHASER'S SPOUSE, IF ANY.

## FOR TEXAS RESIDENTS

THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER THE TEXAS SECURITIES ACT. AN OFFERING MEMORANDUM HAS NOT BEEN FILED WITH THE TEXAS COMMISSIONER. THE SECURITIES CANNOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT.

THE PARTNERSHIP IS NOT INTENDED TO BE OPERATED AS A REGULATED INVESTMENT COMPANY OR TO BE SUBJECT TO REGULATION UNDER THE INVESTMENT COMPANY ACT OF 1940.

INTERESTS ARE OFFERED SUBJECT TO PRIOR SALE AND TO THE PARTNERSHIP'S RIGHT TO REJECT ANY SUBSCRIPTION, IN WHOLE OR IN PART, AND TO TERMINATE OR RESTRICT THE SIZE OF THIS OFFERING.

SEC0002339



THIS CONFIDENTIAL MEMORANDUM HAS BEEN PREPARED BY THE PARTNERSHIP FOR PRESENTATION TO QUALIFIED INVESTORS. ANY REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DISCLOSURE OF ITS CONTENTS, IS PROHIBITED.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, TAX OR INVESTMENT ADVICE. EACH PROSPECTIVE INVESTOR SHOULD CONSULT ITS OWN COUNSEL, ACCOUNTANTS AND BUSINESS ADVISORS AS TO THE LEGAL, TAX AND BUSINESS IMPLICATIONS OF AN INVESTMENT IN THE PARTNERSHIP.

PRIOR TO THE SALE OF AN INTEREST TO ANY PROSPECTIVE INVESTOR, THE PROSPECTIVE INVESTOR AND ITS REPRESENTATIVES, IF ANY, WILL HAVE AN OPPORTUNITY TO ASK QUESTIONS OF, AND RECEIVE ANSWERS FROM, OFFICERS OF GENESIS MANAGEMENT, LLC CONCERNING ANY ASPECT OF THIS OFFERING AND TO OBTAIN FROM THEM ANY ADDITIONAL INFORMATION NECESSARY TO VERIFY THE INFORMATION SET FORTH IN THIS MEMORANDUM TO THE EXTENT THAT THEY POSSESS SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.



CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page ix

SEC0002340

## TABLE OF CONTENTS

Page

I. INVESTOR SUITABILITY ........................................................................................... 1

II. THE OFFERING ........................................................................................................ 4

III. THE PARTNERSHIP .................................................................................................. 5
    General .................................................................................................................. 5
    Investments ............................................................................................................ 5
    Investment Policies ............................................................................................... 8
    Management .......................................................................................................... 11
    Past Performance of General Partner and the Partnership ................................... 13

IV. USE OF PROCEEDS ................................................................................................. 14

V. RISK FACTORS ....................................................................................................... 15
    General .................................................................................................................. 15
    Diversification; Unspecified Investments ............................................................ 15
    Reliance on the General Partner and Genesis Management ................................. 15
    Investment in Unlisted or Restricted Securities ................................................... 15
    Limited Liquidity ................................................................................................. 16
    Conflicts of Interest .............................................................................................. 16
    Trading Strategy ................................................................................................... 17
    Margin and Leverage ........................................................................................... 17
    Trading in Futures and Options Is Speculative .................................................... 17
    Execution of Orders ............................................................................................. 17

VI. TERMS OF THE OFFERING .................................................................................... 18
    General .................................................................................................................. 18
    Manner of Subscribing ......................................................................................... 18
    Private Placement ................................................................................................. 18

VII. SUMMARY OF THE PARTNERSHIP AGREEMENT .............................................. 20
    Responsibilities of the General Partner ................................................................ 20
    Partnership Finances ............................................................................................ 20
    Withdrawals .......................................................................................................... 21
    Optional Redemptions .......................................................................................... 21
    Reports .................................................................................................................. 21
    Exculpation and Indemnification of the General Partner and its Affiliates .......... 22
    Term and Dissolution ........................................................................................... 22
    Amendments ......................................................................................................... 22
    Restrictions on Transfer ....................................................................................... 23

VIII. TAX CONSIDERATIONS ........................................................................................ 24
    General .................................................................................................................. 24
    Qualification as a Partnership .............................................................................. 24

General Tax Treatment of the Partnership and the Limited Partners ...................................25
Trading or Investing..................................................................................................26
Limits on Deductibility.............................................................................................26
Additional Tax Considerations .................................................................................27
Unrelated Business Income Tax................................................................................27
Foreign Taxes ...........................................................................................................28
State and Local Taxes ...............................................................................................28

IX. ERISA CONSIDERATIONS .............................................................................................30
General Fiduciary Requirements...............................................................................30
Plan Assets ...............................................................................................................30
Pre-Existing Relationships .......................................................................................31

X. REGULATORY CONSIDERATIONS..............................................................................32
The Securities Act ....................................................................................................32
Investment Company Act..........................................................................................32
Investment Advisers Act...........................................................................................32
Commodity Exchange Act ........................................................................................32

XI. BREAK-EVEN ANALYSIS.............................................................................................34

XII. COMMODITY POOL OPERATOR ................................................................................35

XIII. PROFESSIONALS..........................................................................................................36

XIV. ADDITIONAL INFORMATION ....................................................................................37

EXHIBIT "A" ......................................................................................................................
Agreement of Limited Partnership............................................................................

EXHIBIT "B"........................................................................................................................
Subscription Agreement ............................................................................................

EXHIBIT "C" ......................................................................................................................
Confidential Offeree Questionnaire ..........................................................................



SEC0002342

SEC0002343

## I. INVESTOR SUITABILITY

### THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK

### THE INVESTMENT IS ONLY SUITABLE FOR PERSONS OF SUBSTANTIAL MEANS WHO:

1. HAVE NO NEED FOR LIQUIDITY IN THEIR INVESTMENT, AND
2. CAN AFFORD THE LOSS OF THEIR ENTIRE INVESTMENT.

THIS INVESTMENT IS ONLY SUITABLE FOR PERSONS WHO ARE "ACCREDITED INVESTORS" AS THAT TERM IS DEFINED IN RULE 501(a) OF SECURITIES AND EXCHANGE COMMISSION REGULATION "D" PROMULGATED UNDER THE SECURITIES ACT OF 1933. Accredited Investors who are individuals must generally have either (a) gross income (exclusive of spouse's income) of at least $200,000 in the prior two years or joint income with the spouse in excess of $300,000 in each of those years, and a reasonable expectation of reaching the same income level in the present year, or (b) net worth (excluding home, home furnishings, and automobiles) of at least $1,000,000. THE PARTNERSHIP WILL NOT MAKE EXCEPTIONS TO THIS GENERAL SUITABILITY STANDARD AND PERMIT SALES TO PERSONS WHO ARE NOT ACCREDITED INVESTORS.

Pursuant to the requirements of Rule 501 of Regulation D, as promulgated by the Securities and Exchange Commission, the Partnership will offer and sell Interests to persons whom the Partnership believes have the knowledge and experience in financial and business matters to be capable of evaluating the merits and risks of this investment. The Partnership will sell Interests only if, immediately prior to each sale, the Partnership, after making reasonable inquiry, believes:

1. The investor has the requisite knowledge and experience to be capable of evaluating the merits and risks of this investment; or

2. The investor, together with his Purchaser Representative, has the requisite knowledge and experience to be capable of evaluating the merits and risks of this investment, and that the investor is capable of bearing the economic risk of this investment.

Prior to purchase of an Interest in the Partnership, each prospective investor will be required to represent, among other things, that he or she:

1. Is an Accredited Investor,

2. Has adequate net worth and means of providing for his or her current needs and personal contingencies and has no need for liquidity in the investment in the Interest in the Partnership,

3. Has substantial experience in making investment decisions of this type or is relying on his own tax advisor or other qualified Purchaser Representative in making this decision,

SEC0002344

4.    Is acquiring the Interest in the Partnership for investment and not with a view to the resale or distribution thereof,

5.    Is the sole and true party in interest and is not purchasing the shares for the benefit of any other person (or that he/she is purchasing the shares for another person who meets all of the conditions set forth herein), and

6.    Is aware that transfer rights are restricted by The Securities Act of 1933, and applicable state securities laws.

Prospective investors will be required to complete a Confidential Offeree Questionnaire and other documents in the Subscription Booklet that provide information necessary to verify the foregoing representations. In addition, the General Partner of the Partnership will require prospective investors to provide additional information or documentation to verify such representations. The acceptance of subscriptions from any prospective investor will be in the sole discretion of the General Partner of the Partnership and will also be based upon compliance with any other applicable state security law standard.

For purposes of this Memorandum, an "accredited investor" includes all of the following:

(1)    Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2)    Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3)    Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 2

$5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii); or .

(8) Any entity in which all of the equity owners are accredited investors.

Prior to the purchase of Interests, each prospective investor will be required to represent, among other things, that (i) his financial commitment to all investments (including his investment in the Partnership and other investments) is reasonable in relation to his net worth; (ii) he is acquiring the Interests for his own account for investment and not with a view to resell or distribution thereof; and (iii) he and his own counsel and/or accountants and/or purchaser representatives have received all the information that was requested by them in connection with the Partnership and the purchase of Interests.

The suitability standards referred to above represent minimum suitability requirements for prospective investors and the satisfaction of the suitability standards by a prospective investor does not necessarily mean that the Interests are a suitable investment for the particular prospective investor. The General Partner reserves the right to reject subscriptions to purchase Interests from a prospective investor even though the prospective investor satisfies the above-stated suitability standards.



SEC0002346

## II. THE OFFERING

Integral Hedging, L.P., is a Texas limited partnership (the "Partnership") organized on or about November 1, 1998, under the laws of the state of Texas, in which Genesis Market Neutral Partners, L.P., a Texas limited partnership, is the sole general partner of the Partnership (the "General Partner"), which General Partner is controlled by Genesis Management, LLC, a Texas limited liability company ("Genesis Management"). Conrad P. Seghers is the managing principal of Genesis Management. Investors admitted from time to time will be limited partners.

The Partnership's main investment objective is to exploit market inefficiencies and price discrepancies through arbitraged and hedged positions, and earn profits in other liquid instruments. The Partnership will invest its assets primarily in a diversified portfolio of put and call options, futures and forward and swap contracts, index, equity, bond, and currency arbitrage transactions, and other publicly and over-the-counter traded instruments. In connection with this objective, the Partnership is authorized to acquire by purchase, subscription or otherwise, and to invest or trade in, on margin or otherwise, receive, hold, own, deal in, sell, sell short, exchange, transfer, assign, encumber, pledge or otherwise dispose of all forms of securities which are traded on a securities exchange or in the over-the-counter markets, including, but not limited to, the purchase and sale of put and call options, futures and indexes, forwards and swaps.

Further information regarding this offering and the Partnership may be obtained from the General Partner at 13606 TI Boulevard, Dallas, Texas 75243, telephone number (972) 238-9531. No person other than the General Partner or its designees is authorized to supply such information.

The offering of interests is being made only to investors who meet the partnership suitability requirements. (See "Investor Suitability.") The minimum investment in the offering is $1,000,000. The General Partner reserves the right to change this minimum participation requirement at any time in its sole and absolute discretion for subscriptions.

To subscribe for interests, each prospective investor must complete, execute and return the subscription documents, including the Subscription Agreement and Confidential Offeree Questionnaire to the General Partner prior to the termination of the subscription period, together with a check or wire transfer in the amount subscribed.

After the initial closing of this offering, the Partnership will be opened on a monthly basis (1st business day of each month) for additional capital contributions from existing or new Limited Partners.

SEC0002347

## III. THE PARTNERSHIP

### General

Integral Hedging, L.P. (the "Partnership") is a Texas limited partnership which seeks maximum capital appreciation from its investments consistent with reasonable risk. The Partnership's main investment objective is to exploit market inefficiencies and price discrepancies through the arbitrage of options, forward contracts and futures contracts, as well as other liquid instruments. The Partnership will invest its assets primarily in a diversified portfolio of put and call options, futures, forwards and swap contracts, index and various equity, bond and currency arbitrage transactions, and other publicly and over-the-counter traded instruments. The General Partner of the Partnership is Genesis Market Neutral Partners, L.P., a Texas limited partnership (the "General Partner"), of which Genesis Management, LLC, a Texas limited liability company ("Genesis Management"), is the general partner. The General Partner selects and manages the Partnership's investments and administers the business and affairs of the Partnership. Conrad P. Seghers is the managing principal of Genesis Management. Genesis Management has developed and implemented the Partnership's investment strategy on behalf of the General Partner. The Partnership began operations on December 1, 1998 and expects to continue its business until December 31, 2040, at which time it will dissolve and liquidate, unless the General Partner and a majority in interest of the Limited Partners determine otherwise.

As of the date of this Offering Memorandum, the principals of Genesis Management shall make aggregate capital contributions to the capital of the Partnership such that, as of the first day of each Fiscal Quarter, the General Partner's aggregate Capital Account balance will be not less than the lesser of $500,000 or 1% of the sums of the Capital Account balances of all Partners, as well as any additional amounts they may, in their exclusive discretion, elect to make. See "Management".

The Partnership is offering limited partnership interests ("Interests") for sale solely to accredited investors. The minimum investment is $1,000,000, although the General Partner may accept subscriptions for less. See "Terms of the Offering". Purchasers of Interests become limited partners of the Partnership. A copy of the Agreement of Limited Partnership of the Partnership (the "Partnership Agreement") is an exhibit to this Memorandum.

### Investments

**General.** The Partnership's main investment objectives are to exploit market inefficiencies and price discrepancies through the arbitrage of equities, indices, futures, forwards, and options, as well as other liquid instruments relating to the equity, currency, and interest rate markets. The Partnership will invest its assets primarily in a diversified portfolio of futures and indices, and related put and call options and other financial instruments thereon, equity and debt instruments and forward contracts, arbitrage transactions, and other publicly and over-the-counter traded instruments. The Partnership will invest its assets primarily in a diversified portfolio of arbitrage transactions, interest generating hedged transactions and hedged directional transactions, using forward contracts, swaps and publicly traded instruments. To a lesser extent, the Partnership may also invest in preferred stocks and securities convertible or exercisable into common stock, including notes, debentures,

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 5

SEC0002348

preferred stock and warrants, in order to obtain current income or when, in the opinion of the General Partner, such securities may be purchased at favorable prices in relation to the underlying instruments. The Partnership may also engage in the trading of options on and combinations of stocks, futures, forwards and indices included in its portfolio. With regard to options, this includes options both on securities owned by the Partnership ("covered options"), as well as other securities not owned by the Partnership ("uncovered options").

To fulfill the Partnership's objectives, the General Partner monitors a variety of economic, monetary and market data in order to identify and analyze broad economic, industry and market trends so that the Partnership's investment strategy is kept consistent with such trends which may lead to substantial market moves. In broad terms, the General Partner attempts to use this data so that the Partnership is invested with sufficient hedging during downtrends and uptrends in the market, and invested both in long and short combinations of positions during flat market periods, so as to be able to generate a consistent profit through the arbitrage and directional movements of its various market positions. The General Partner uses a proprietary hedging technique in evaluating and determining the market positions necessary to achieve the Partnership's objectives in terms of safety and appreciation in value.

The General Partner also bases its investment decisions in small part on technical analysis. Technical analysis attempts to ascertain the relative market strengths of stocks, industries, and markets, their price support and resistance levels, various moving averages and historical price activity. Technical analysis is used for safety reasons to forecast possible sharp market moves.

The financial markets react in a volatile manner to changes in the economic, political, and social landscapes. Market volatility, illiquidity, crashes and credit crunches, are just a few of the market risks reduced by the Partnership. Controlling exposure to risk, before taking advantage of an opportunity, is how the best performers in the investment world have survived and thrived through the best and worst times of financial markets. It is a simple philosophy that allows asset managers to avoid having years of outstanding results nullified in just months of irrational volatility.

The Partnership's philosophies focus not just on how much money can be made in a certain opportunity, but also on how the opportunity can be structured to survive and see it flourish regardless of market directions and volatility. Risk is controlled through option and index and forward contract trading strategies, with very close monitoring of the financial holdings. Whatever decisions are triggered, the objective remains constant: to establish and maintain portfolios with the potential for substantial capital appreciation but limited risk (an attractive risk/reward ratio).

Regarding the investment objectives, systems, and strategies of the Partnership, the General Partner has formulated a unique set of option arbitrage procedures that consistently capture price inefficiencies in the global (G-5) currency, bond and equity markets, while providing synthetic hedges that protect realized profits. A major component in the Partnership's success is its implementation of the proprietary Risk Adaptive Portfolio (RAP) trading strategy.

The Risk Adaptive Portfolio (RAP) strategy utilizes proprietary risk management methods to instantly identify, quantify, and react to any financial market risk by continually adapting to

market directions, rather than "predicting" future market swings utilizing historical data. To exploit these enormous financial markets, the General Partner employs a very unique set of option arbitrage procedures that consistently capture price inefficiencies in the market.

The mathematical equity and option pricing models that the General Partner utilizes allow a complex strategy to be implemented. The Partnership can go long or short the financial markets, protected by "synthetic hedges" should the markets move in the opposite direction. In addition, after purchasing the "synthetic" puts and portfolio protection at substantial discounts, the portfolio can sell the open market premium for significantly higher prices, thereby generating profits. The Partnership captures its statistical arbitrage from whichever global markets at the time are providing the best profit margins for the least risk.

By capturing price inefficiencies in this manner, the Partnership is essentially a quantitative statistical arbitrage trading strategy that is based on fundamental correlations and inter-relationships between the financial markets. This linking of the fixed income (bonds and debt), foreign exchange (currency), and equity markets between the G-5 nations and economies is what allows the consistent opportunities for arbitrage to exist. Each position is then hedged through the proprietary Risk Adaptive Portfolio Swaps (RAPS).

In addition to these types of quantitative fundamental correlations the Partnership also takes positions that are based on momentum arbitrage. Such market neutral positions are based on price behavior correlations between different baskets of securities. They have their downsides hedged, but require market movements in order to generate capital appreciation.

To fulfill the Partnership's objectives regarding directional hedged positions, the General Partner monitors a variety of economic, monetary and market data in order to identify and analyze broad economic, industry and market trends so that the Partnership's investment strategy is kept consistent with such trends which may lead to substantial market moves. These objectives are to allow the Partnership to achieve consistent monthly returns with low volatility, low standard deviations, and high Sharpe ratios. In broad terms, the General Partner attempts to use this data so that the Partnership is invested with sufficient hedging during downtrends and uptrends in the market so as to be able to generate a consistent profit both through market movements and the arbitrage of its various market positions. The General Partner uses a proprietary hedging technique in evaluating and determining the market positions necessary to achieve the Partnership's objectives in terms of safety and appreciation in value.

The Partnership provides investors the opportunity to participate in a fund that trades around a diverse portfolio of financial instruments, while continuously providing downside protection on any position the Partnership implements. Through the General Partner's disciplined implementation of the RAPS strategy, the objective is to minimize volatility while producing superior returns that will consistently outperform the major market indices.

The Partnership's investment approach will be flexible and the General Partner will not utilize a formula or percentage limitations in determining how the Partnership's assets are allocated among different types of investments.

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 7

SEC0002350

The Partnership will not enter into commodity futures and commodity options contracts for which the aggregate initial margin and premiums exceed 10 percent of the fair market value of the Partnership's assets, after taking into account unrealized profits and unrealized losses on any such contracts it has entered into; provided, however, that in the case of an option that is in-the-money at the time of purchase, the in-the-money amount at the time of purchase may be excluded in computing such 10 percent. The Partnership will trade such commodity interests in a manner solely incidental to its securities trading activities.

## Investment Policies

**General.** Consistent with the general investment objectives discussed above, the General Partner has full discretion to carry out the investment program of the Partnership. The Partnership shall have no obligation to disclose its particular holdings or trades to the Limited Partners. The Partnership seeks to achieve an attractive return on investment with controlled risks. Generally, the Partnership will invest its assets primarily in a diversified portfolio of put and call options and futures and forward contract arbitrage transactions, and other publicly and over-the-counter traded instruments.

The Partnership may invest in any listed or over-the-counter companies whose securities are listed on a nationally recognized securities exchange or on the NASDAQ National Market System. In addition, the Partnership may also invest in unlisted securities, or in unregistered securities, which are subject to resale restrictions for portfolio hedging purposes. Diversification of investments among different industries is not a primary goal of the Partnership.

The Partnership may also engage in (i) purchasing or writing options on equities and indices and purchasing or writing currency, interest rate and equity futures and forward contracts and related options, (ii) interest rate hedging transactions, (iii) commodity or commodity futures transactions, and (iv) derivatives trading. A significant portion of these engagements may be conducted through other legal partnerships and corporations in which Integral Hedging, LP is invested.

**Foreign Securities.** In attempting to achieve its investment objectives, the Partnership may invest in foreign publicly traded instruments, although the Partnership may invest in options and directly in foreign securities or indirectly by acquiring sponsored or unsponsored American Depositary Receipts, Global Depositary Receipts, WEBs and other types of depositary receipts traded in United States or international securities markets. While investments in foreign securities may reduce overall risk by providing further diversification, such investments involve certain risks which would not necessarily be associated with investments in the securities of domestic issuers. These risks include those resulting from fluctuations in foreign currency exchange rates, the possible imposition of currency controls and repatriation restrictions, political and economic instability and adverse developments (including the implementation of confiscatory or other laws or regulations unfavorable to foreign investors in particular), a reduced level of availability of public information about foreign issuers, and a lack of accounting, auditing and financial reporting standards or other regulatory requirements or practices comparable to those applicable to domestic issuers. In addition,

SEC0002351

given the lack of development of many foreign markets, some foreign securities may be less liquid or more volatile than domestic securities.

**Other Investment Strategies.** The Partnership may use certain investment strategies and techniques to hedge against market risks and to enhance its performance. These strategies and techniques include (i) purchasing and selling or writing put and call options on securities, (ii) purchasing securities on a when-issued or delayed delivery basis, (iii) selling securities on a "short-sale" basis and (iv) "day-trading".

**Options.** An option contract entitles the purchaser to purchase ("call") or sell ("put") a security at a particular price within a specific period of time. The Partnership engages in the trading of covered and uncovered put and call options and participates in the options markets both for speculative purposes and to hedge against adverse market fluctuations in its portfolio of investments.

The Partnership may also attempt to take advantage of discrepancies in pricing among related issues by engaging in spread trading of put and call options and futures and forward contracts against one another on the same security at various strike prices or months of expiration. The Partnership will attempt to purchase the undervalued side of the spread and to simultaneously sell short the overvalued side, with the goal of capturing the price discrepancy over time.

Participation in the options markets involves certain investment risks and transaction costs. The correlation between the option prices and the prices of the underlying securities may be imperfect and the market for any particular option may be illiquid at any particular time. Options transactions are normally highly leveraged and, accordingly, gains and losses are magnified. If the Partnership writes or sells an uncovered option, its losses, theoretically, could be unlimited.

**Other Funds, Investment Partnerships and Advisors.** In attempting to achieve its investment objectives, the Partnership may from time to time invest in other private or public investment funds, or partnerships or place monies with or utilize the services of advisors selected by the General Partner who have similar strategies and philosophies as the Partnership and the General Partner. Further, the General Partner may utilize the services of advisors to implement the Partnership's trading strategies and construction of hedges, all at the expense of the Partnership, as determined by the General Partner in its sole and absolute discretion.

**When-Issued and Delayed Delivery Securities.** The Partnership may purchase securities on a when-issued or delayed delivery basis, for payment and delivery at a specified, later date. The security's price and yield are generally fixed on the date of the commitment to purchase. During the period between purchase and settlement, no interest will accrue to the Partnership. At the time of settlement, the market value of the security may be more or less than the purchase price and, accordingly, the Partnership may realize an immediate gain, but also bears the risk of having an unrealized loss at the time of delivery.

**Short-Selling.** Short-selling involves the sale of a security or a contract which the Partnership does not own, at a specific price, in the expectation of covering the sale by purchasing the security in the open market at a later date at a price lower than the specified price. At the time

<u>CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM</u> - Page 9

SEC0002352

a short sale is effected, the Partnership borrows the securities from a third party "lender" and delivers them to the buyer. At the same time, it incurs an obligation to replace the borrowed security at the market price prevailing at the time the Partnership purchases it for delivery to the lender. At such time the market price can be more or less than the price at which the Partnership sold the security to the buyer. Since short selling can result in profits during a period of declining prices, the Partnership can, to an extent, use short selling to hedge against market risks. However, the Partnership would incur losses to the extent that securities sold short increase in value. The Partnership may also make short sales "against the box" where it would borrow securities identical to securities that it already owns.

Short-selling is a form of leverage. The profit realized by the Partnership on a short sale will be the difference between the price received on the sale and the cost of the securities purchased to cover the sale. If the securities sold short increase in value, the Partnership will incur a loss. Such losses can be, in theory, unlimited, while losses on cash purchases of securities are limited to the amount of cash invested. Short selling is also subject to certain restrictions imposed under the federal securities laws and the rules of the various national and regional securities exchanges. Further, it is likely that the lenders of the securities borrowed by the Partnership for short sales will require the Partnership to collateralize its obligation to replace the borrowed securities with deposits of cash or governmental obligations, thus increasing the costs of such transactions to the Partnership.

**Day-Trading.** Day-trading involves the purchase and sale of securities with the intention of closing out the position within a short period of time, usually on the same day. The Partnership can use day-trading to take advantage of, or to protect against, short term price fluctuations. Because day-trading involves an increased volume of transactions, the Partnership's brokerage expenses can sometimes be higher than would otherwise be the case.

Investors should be aware that, while these kinds of investments may generate higher returns than traditional investments, losses associated with them may be greater than losses from traditional investments. The use of such techniques is designed to decrease the usual market risks associated with traditional, underlying investments. To the extent, however, that the Partnership uses hedging techniques and the underlying investments increase in value, the Partnership's return on the underlying investments may not be as great as it would have been if the Partnership had not hedged its portfolio. If the General Partner were to apply a hedge at an inappropriate time or evaluate market conditions incorrectly, such strategies could lower the Partnership's return more than if they had not been used or even result in losses.

**Interim Investments.** The Partnership will, from time to time, invest its cash in short term money market instruments, such as high yield corporate debt instruments, short-term U.S. Treasury obligations, dollar-denominated treasury obligations of foreign governments, bank certificates of deposit and other notes and bonds having short maturities or call features that the General Partner believes will be exercised in the short term. On a short-term basis, funds may also be allocated to outside entities whose specialization is in the field of earning slightly higher returns on short-term insured interest bearing notes. Such investments will be made pending application of Partnership funds to its investment program, or for temporary defensive purposes, during any periods in which the General Partner believes that economic or market conditions are unfavorable or suitable equity

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 10

SEC0002353



securities are not available, or to provide short-term liquidity.

**Leverage.** Under the Partnership Agreement, the Partnership is authorized to borrow to finance its investments. The General Partner may cause the Partnership to leverage its investments in circumstances in which borrowing would enable the Partnership to obtain a greater return on its capital than would otherwise be possible. Any such transactions would be subject to applicable credit and margin regulations. If gains realized on securities purchased with borrowed funds exceed the interest paid on the borrowing, the net asset value of the Partnership will rise more quickly than would otherwise be the case. On the other hand, if investment gains fail to cover interest costs, or if there are losses, the net asset value of the Partnership would decline faster than would otherwise be the case.

## Management

**The General Partner.** Genesis Market Neutral Partners, L.P., as General Partner, and with the assistance of Genesis Management, will make all investment decisions and effect the purchase and disposition of securities on behalf of the Partnership. The General Partner will act with full discretion, but in accordance with the investment objectives and policies set forth in this Memorandum. The General Partner is a Texas limited partnership organized in April 1998 to serve as a general partner of the Partnership. Genesis Management is a Texas limited liability company and serves as general partner of the General Partner. The General Partner is a registered Commodity Pool Operator (CPO) and a Commodity Trading Advisor (CTA).

The address of the General Partner is 13606 TI Boulevard, Dallas, Texas 75243.

**Conrad P. Seghers,** M.B.A., Ph.D. Dr. Seghers is President and Chief Executive Officer of Genesis Management. He has over ten years experience in investment and financial analysis, acquisition analysis, corporate development, marketing and investor relations. Dr. Seghers is the managing principal of Genesis Management, LLC, which is the general partner of three (3) funds, including the Partnership.

Dr. Seghers has been involved in the acquisition of institutional, private and federal investment funding for small corporations and partnerships that retain him as a consultant and partner. He has actively participated in road show presentations and financing negotiations with institutional and private investors. He has also performed company analysis and due diligence for venture capital firms and partnerships, offering him the opportunity for several seats on the boards of high-growth corporations.

Dr. Seghers worked at the University of Texas Southwestern Medical Center and the Howard Hughes Institute from 1986 to 1993, where by working with four Nobel Laureates he acquired expertise in the areas of health-care, biotechnology and emerging technologies, while being active in mergers and acquisitions and management consulting for the health-care and pharmaceutical industries.

Dr. Seghers received B.S. and M.S. Degrees from Texas A&M University, a Ph.D. from the

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 11

SEC0002354

University of Texas, and an Executive M.B.A. Degree from Baylor University.

**Interest of the General Partner.** The General Partner has directly contributed capital to the Partnership and will, accordingly, be allocated a percentage of the Partnership's income, gains, losses, credits and deductions at least equal to its equity interest in the Partnership.

The General Partner bears most of the expenses of operating the Partnership, including expenses for personnel and overhead. The Partnership bears any taxes or governmental charges assessed on the Partnership, brokerage and similar costs and fees, legal and accounting expenses associated with investment transactions, the costs of preparing the Partnership's tax returns and financial statements and reports, legal expenses incurred in connection with any litigation involving the Partnership, and any judgments or amounts paid in settlement. The Limited Partners will reimburse the General Partner for organizational and legal expenses incurred in the organization and maintenance of the Partnership and the sale of Interests, by contributing a maximum of $10,000 per year to the General Partner, and will deduct the amount to be reimbursed pro rata among all Limited Partners in accordance with their respective Contributions.

**Management Fees.** For its services to the Partnership, the General Partner is paid a quarterly management fee, in advance, equal to 0.25% (approximately 1% per annum) of the net assets of the Partnership. The management fee is an expense of the Partnership chargeable to the capital accounts of the Limited Partners.

**Allocation of Net Gain.** The General Partner will receive an allocation of a portion of the Partnership's net gain, if any, that would otherwise be allocated to each Limited Partner. The General Partner will be allocated 20% of the net gain for such period otherwise allocable to such Limited Partner, payable quarterly.

Net gain is the amount by which all allocations to a Limited Partner of income and gain exceed all allocations to him of loss. The determination of the General Partner's allocation of net gain takes into account both realized capital gains and losses of, and the unrealized appreciation and depreciation in, the Partnership's investments, as well as dividends and other types of income and all related expenses. The Limited Partners will be affected by any allocation of net gain to the General Partner in proportion to the amount of net gain allocated to them for the quarter. Limited Partners who make initial or additional capital contributions, or completely or partially withdraw from the Partnership, as of any date other than the last day of a calendar quarter, will be subject to a similar allocation to the General Partner of net gain otherwise allocable to them for the partial period following their contribution or prior to their withdrawal solely with respect to the amount so contributed or withdrawn. If a partial withdrawal is effected at a time when the withdrawing Limited Partner's capital interest has a net loss position, such net loss shall be reduced pro rata on account of the partial withdrawal.

Prospective investors in the Partnership should be aware that:

(a)     the General Partner's right to receive an allocation of net gain may create an incentive for the General Partner to make investments on behalf of the Partnership that are riskier or more

speculative than would be the case in the absence of such performance allocation;

(b)     the allocation of net gain will be based on the unrealized appreciation of the Partnership's investments as well as its realized gains;

(c)     the allocation of net gain will be determined quarterly with reference to the preceding period (or, as noted above, a shorter period in the case of the first allocation with respect to a Limited Partner who makes his or her initial investment in the Partnership at any time other than the first day of a quarter) and will be measured by the amount of net gain allocable to the Limited Partners with respect to such period.

(d)     securities held by the Partnership for which market quotations are not readily available will be valued by the General Partner in the manner set forth in the Partnership Agreement; and

(e)     the General Partner's allocation of net gain may be greater or less than compensation charged by other investment advisors for comparable services.

**Custody and Brokerage Arrangements.**    The Partnership's securities and other assets will be held in the custody of such custodians or depositaries as the General Partner may select from time to time.  In addition, the General Partner will select such brokers or clearing agents to act for the Partnership as it deems necessary or desirable.  The General Partner will attempt to obtain from any broker the lowest net price and best execution available, consistent with the Partnership's investment objectives and good practice.  In any event, fees and commissions paid by the Partnership to any broker or custodian shall be reasonable in relation to the services provided and comparable to fees and commissions charged by other brokers or custodians to unaffiliated institutional customers for similar transactions at the time, although they may not necessarily be the lowest charges obtainable.  In selecting any broker or custodian, the General Partner may take into account the fact that the broker has furnished the General Partner with statistical, research or other information or services which may enhance the General Partner's services generally, whether or not such services are of any benefit to the Partnership.

### Past Performance of General Partner and the Partnership

The Partnership had an annualized 34.4% return on assets net of all fees for 1998 and has had an annualized return net of all fees of 29.8% for 1999 (13.92% for first 6 months).

The following is a summary of the performance of three (3) funds managed by Genesis Management, LLC for 1998 and 1999, which summary is an annualized return on assets net of all fees and allocations to the General Partner:

|                                       | 1998  | 1999  |
|---------------------------------------|-------|-------|
| Genesis Market Neutral Index Fund, L.P. | 21.1% | 31.8% |
| Sum-It Investments, L.P.              | 28.3% | 19.9% |
| Integral Hedging, L.P.                | 34.4% | 29.8% |

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 13



SEC0002356

## IV.  USE OF PROCEEDS

All of the proceeds of this Offering, less organizational, ongoing legal, and selling expenses reimbursable to the General Partner (reimbursable at a maximum of $10,000 per year), will be utilized for the investment program of the Partnership, less whatever reserves for Partnership expenses are deemed appropriate by the General Partner.

   SEC0002357

## V. RISK FACTORS

A prospective investor should carefully consider, in addition to the factors discussed elsewhere in this Memorandum, the following risk factors before subscribing for an Interest:

### General

As a Partnership investing primarily in currency, bond and equity markets and their indices, the Partnership will be subject to normal market risks, such as the risk that prices in general may decline over short or extended periods. A large portion of this risk is offset by the Partnership's hedges, which consist of complex matrices of equities, indexes, futures, forwards and call and put options thereon. The financial markets tend to be cyclical, with periods in which stock prices generally rise or decline. There is no assurance that the investment objectives of the Partnership will be achieved. In addition, the Partnership does not expect to make cash distributions. Accordingly, an investment in the Partnership may not be suitable for investors with a need for current income. Further, an investment in the Partnership should not be considered as a complete investment program.

### Diversification; Unspecified Investments

The ability of the Partnership to diversify its investments will depend in part on the aggregate amount invested in the Partnership by the Limited Partners. The smaller the number of subscriptions received, the more difficult diversification of the Partnership's investments may be to achieve. Prospective investors have only limited information as to the specific assets of the Partnership or other relevant economic and financial information which, if available, would assist them in evaluating the merits of investing in the Partnership. Investors must depend on the ability of the General Partner with respect to the selection of investments.

### Reliance on the General Partner and Genesis Management

The Limited Partners will have no right or power to take part in or direct the management of the Partnership. All decisions with respect to the Partnership's management and investments are made by the General Partner and Genesis Management. Although Genesis Management has substantial experience in securities investment and finance, this is the first time that it has operated a limited partnership with the size and objectives of this Partnership. Further, at least initially, the ability of the Partnership to attain its objectives will depend almost entirely on the General Partner and the principals thereof. Should their services no longer be available, the impact on the Partnership would be adverse and it is unclear whether or not the Partnership could continue to operate in such event.

### Investment in Unlisted or Restricted Securities

The Partnership can invest in unlisted securities or contractual agreements (such as forwards and swaps and repos, which may involve a high degree of business and financial risk). In addition, the Partnership may invest in other private or public funds or have the Partnership's funds managed

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 15

SEC0002358

by advisors having similar trading strategies and philosophies as the General Partner, all at the expense of the Partnership. Because of the absence of any substantial trading market for these investments, and, as to unregistered securities, the imposition of restrictions on resale, the Partnership might take longer to liquidate these positions than would be the case for publicly traded securities. Although these securities may be resold in privately negotiated transactions, the prices on these sales could be less than those originally paid by the Partnership. Further, issuers whose securities are not publicly traded may not be subject to public disclosure and other investor protection requirements applicable to publicly-traded securities.

## Limited Liquidity

There is no public trading market for the Interests and none is expected to develop. Further, the Partnership Agreement restricts the transferability of the Interests. While a Limited Partner will have the right to withdraw its investment in the Partnership after one year, any such withdrawal may only be made as of the end of a fiscal quarter of the Partnership, there can be no assurance that the value of a Limited Partner's interest in the Partnership may not decrease between the time such Limited Partner determines to withdraw and the effective date of such withdrawal. Further, the Partnership Agreement provides that, under certain conditions (such as prevailing market conditions which make the determination of the value of an interest in the Partnership impossible or impracticable) the General Partner may suspend the right of Limited Partners to withdraw or may limit withdrawals to a portion of a Limited Partner's then current Capital Interest, if the General Partner deems such limitation to be appropriate under the circumstances to effect an orderly liquidation of Partnership assets or otherwise to protect the interests of non-withdrawing Partners.

Execution of trades may be difficult or impossible in markets which lack liquidity because of insufficient trading activity and exchange price limits. The Partnership assumes the risk that there may not at all times be a liquid offset market on an exchange or over-the-counter market due to, among other things, insufficient trading interest, exchange imposed restrictions or trading halts or restrictions.

## Conflicts of Interest

The General Partner does not believe that it will encounter significant conflicts of interest in fulfilling its duties to the Partnership. In the event of such conflicts, certain provisions of the Partnership Agreement are designed to protect the interests of the Limited Partners. In addition, the General Partner is accountable to each Limited Partner as a fiduciary and consequently must exercise good faith and integrity in handling Partnership affairs. There can be no assurance, however, that possible conflicts of interest will not arise, including:

**Competition for Management Services.** The General Partner, Genesis Management, LLC, and Dr. Seghers will devote as much of their time to the business of the Partnership as in their judgment is reasonably required. They may have conflicts of interest in allocating management time, services and functions among the Partnership and any other partnerships or other ventures, which may be organized by the General Partner or its affiliates.

SEC0002359

**Competition for Investments.** The General Partner and its affiliates are engaged for their own accounts, and for the accounts of others, in investing in equity, currency and debt securities. The General Partner and its affiliates may organize other limited partnerships with investment objectives similar to those of the Partnership. The Partnership Agreement generally provides that the General Partner will not be obligated to present any particular investment opportunity to the Partnership, even if such opportunity is of a character which, if presented to the Partnership, could be taken by it. The General Partner will attempt to resolve any conflicts of interest between the Partnership and others by exercising the good faith required of a fiduciary, and the General Partner believes that it generally will be able to resolve any conflicts on an equitable basis.

### Trading Strategy

The Partnership's investment strategy depends on the profitability of the market position selected by the General Partner. Although the trading strategy employed by the General Partner has, in the past, been able to successfully identify and exploit relative mispricings in the various markets, such past success is not necessarily indicative of the future success of the Partnership's trading activities.

### Margin and Leverage

The Partnership may acquire and maintain its positions "on margin". To hold an open position on margin, the Partnership must maintain, in a "margin account" with its brokerage firm, a margin deposit at a certain specified level. This margin deposit serves as a security to protect the brokerage firm against declines in the value of the position. Should the value of the position move adversely so that the margin falls below its required level, additional amounts of margin deposit will be required. Should the Partnership be unable to pay such additional amounts where required, the brokerage firm could liquidate the Partnership's positions in the Partnership's account at the brokerage firm and cause the Partnership to realize a significant loss.

### Trading in Futures and Options Is Speculative

Prices of most, if not all, options, futures and similar contracts are highly volatile. Price movements for futures contracts, for example, which may fluctuate substantially during a short period of time, are influenced by numerous factors that affect the markets, including, but not limited to, changing supply and demand relationships, government programs and policies, national and international political and economic events, and changes in interest rates.

### Execution of Orders

The Partnership's trading strategy depends on its ability to establish and maintain an overall market position as determined by the General Partner. Should the Partnership's trading orders not be executed in a timely and efficient manner, the Partnership might not be able to achieve the market position selected by the General Partner and might incur a loss in liquidating its position.



CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 17

SEC0002360

## VI. TERMS OF THE OFFERING

### General

The Partnership is offering Interests solely to "accredited investors" who have no need for liquidity in their investments. See "Risk Factors - Limited Liquidity".

The Interests are being offered subject to prior sale, to the General Partner's right to reject any subscription, in whole or in part, or to withdrawal of this Offering, in whole or in part, at any time. The Partnership expects to continue to offer Interests, and may admit additional Limited Partners from time to time, for an indefinite period. There is no maximum dollar amount of Interests that the Partnership may sell; provided, however, that the Partnership may not have more than 100 partners.

The minimum investment is $1,000,000, although the General Partner may accept subscriptions for less. After any full quarter of a Limited Partner's initial Capital Contribution has passed, the General Partner will have the right to redeem and repurchase the Interest of any Limited Partner for any reason whatsoever, regardless of the then current value of such Limited Partner's Capital Account. See "Summary of the Partnership Agreement - Partnership Finances" and "— Optional Redemptions".

Subscriptions are fully payable at one or more closings of this Offering. Subscriptions are payable by certified or bank check or by wire transfer to the Partnership's account. Closings will occur from time to time as of the end of any month.

Investors should understand that an Interest does not represent a fixed percentage of the Partnership or entitle a Limited Partner to a fixed share of the Partnership's income. Rather, an Interest consists primarily of such Limited Partner's Capital Account and Unrealized Profit and Loss Account and is determined with reference to such accounts and the total capital of the Partnership. See "Summary of the Partnership - Partnership Finances".

### Manner of Subscribing

Each investor who wishes to subscribe for an Interest is required to (i) complete, execute and deliver to the General Partner the Subscription Agreement (with triplicate original counterpart signature pages), which signature pages shall also be used as the signature page for the Partnership Agreement, together with any information requested therein, (ii) complete, execute, and deliver to the General Partner a Confidential Offeree Questionnaire, and (iii) pay, by certified or bank check or by wire transfer, to the Partnership's account an amount equal to the full subscription price for the Interest subscribed. Subscription payments will be accepted at one or more closings. Forms of the Subscription Agreement and Confidential Offeree Questionnaire are exhibits to this Agreement.

### Private Placement

The Interests have not been registered under any federal or state securities law. The offering

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 18

SEC0002361

and sale of the Interests is being made solely to investors who qualify as "accredited investors" (1) in reliance on the "private placement" exemption from registration provided in Section 4(2) of the Securities Act of 1933 (the "1933 Act") and Rule 506 of Regulation D promulgated thereunder and (2) in reliance on appropriate exemptions from state registration and qualification requirements where available. See the Subscription Agreement and Confidential Offeree Questionnaire attached as exhibits to this Memorandum.

**PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS THAT WILL NOT ENTER INTO COMMODITY FUTURES AND COMMODITY OPTIONS CONTRACTS FOR WHICH THE AGGREGATE INITIAL MARGIN AND PREMIUMS EXCEED 10 PERCENT OF THE FAIR MARKET VALUE OF THE POOL'S ASSETS AFTER TAKING INTO ACCOUNT UNREALIZED PROFITS AND UNREALIZED LOSSES AND WILL TRADE SUCH COMMODITY INTERESTS IN A MANNER SOLELY INCIDENTAL TO ITS SECURITIES TRADING ACTIVITIES, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.**





SEC0002362

## VII. SUMMARY OF THE PARTNERSHIP AGREEMENT

The rights and obligations of the Partners are governed by the Partnership Agreement which is set forth in Exhibit "A" to this Memorandum. Prospective investors should read the Partnership Agreement carefully before executing the Subscription Agreement. The following discussion of the Partnership Agreement and related matters is intended to be a summary only, does not purport to be complete, and is qualified by reference to the Partnership Agreement in its entirety.

### Responsibilities of the General Partner

The General Partner has the exclusive management and control of all aspects of the business of the Partnership, including the management of the Partnership's investment portfolio. In the course of its portfolio management, the General Partner may, in its absolute discretion, but in accordance with the Partnership's investment objectives and policies, buy, sell and otherwise deal in investments, when and on such terms as it determines to be in the best interests of the Partnership. With the consent of a majority in interest of the Limited Partners, the General Partner may transfer its interest in the Partnership to any person or entity. See Article Ten of the Partnership Agreement.

### Partnership Finances

A Partner's interest in the Partnership consists of the Capital Account and Unrealized Profit and Loss Account maintained for the Partner on the books of the Partnership, the value of each of which will be calculated not less frequently than as of the end of each Fiscal Month of the Partnership. The Unrealized Profit and Loss Account is credited and charged with the unrealized appreciation and depreciation in the value of the Partnership's investments. Such valuations will be made by the General Partner in accordance with the procedures described below. The Capital Account is credited with a Partner's contributions to the Partnership as well as the amount of the Partnership's net income allocable to the Partner, and charged with the amount of the Partnership's distributions to the Partner and the amount of the Partnership's net losses allocable to the Partner. After taking into effect the one percent (1%) management fee and the twenty percent (20%) incentive fee payable to the General Partner, as more particularly described herein (see "Management"), allocations and distributions are made among the Partners in proportion to their respective capital interests. See Sections 306, 501 and 602 of the Partnership Agreement.

The Partnership does not intend to make any or substantial distributions of cash to the Partners prior to the dissolution of the Partnership, although the General Partner has the right to make distributions of cash to Partners in its discretion, and will, from time to time, distribute amounts allocated to the General Partner's capital account to cover its expenses incurred in managing the Partnership. See Section 505 of the Partnership Agreement.

The General Partner will value the Partnership's investments in the manner set forth in Section 306 of the Partnership Agreement.

SEC0002363

## Withdrawals

Subject to certain restrictions, following the first one year anniversary date of its initial investment in the Partnership, a Limited Partner may withdraw all or part of its interest in the Partnership quarterly, on at least 30 days' written notice to the Partnership. The Partnership will, as soon as possible, pay the value of any Partnership interest withdrawn (determined as of the fiscal quarter end); provided, however, that in the case of complete withdrawals only, the Partnership may elect to pay only 90% of the value of the Partnership interest withdrawn. The remaining 10% will be retained by the Partnership until the completion of the audit of the Partnership's financial statements for the fiscal year in which such withdrawal occurs, for the purpose of effecting any adjustments with respect to the value of the withdrawn Partnership interest shown to be appropriate by such audited financial statements. Amounts payable on withdrawal will also be reduced to the extent of any net gain allocations owed to the General Partner (see "Management - Allocation of Net Gain").

Withdrawals will be paid in cash or, at the discretion of the General Partner, in securities selected by the General Partner or by a combination of cash and such securities. The right of withdrawal may be suspended by the General Partner during any period in which it determines that interests may not be fairly valued. See Sections 305 and 306 of the Partnership Agreement.

## Optional Redemptions

After any Fiscal Quarter of investment, the General Partner will have the right to cause the Partnership to redeem and repurchase the Interest of any Limited Partner who has not invested at least $1,000,000 in the Partnership as of such date, regardless of the balance of such Limited Partner's Capital Account at that time. The Partnership will redeem the Interest at a price equal to the amount of the Capital Account and Unrealized Profit and Loss Account maintained for such Limited Partner, less the amount of any net gain allocation owed to the General Partner (see "Management -- Allocation of Net Gain"). Any such redemption would be made as of the end of a calendar quarter and would only be effected if, at the time, the redemption price would be in excess of all amounts previously contributed by such Limited Partner to the Partnership, less the amount of any distributions previously made by the Partnership to such Limited Partner. The General Partner will maintain the 99-Limited Partner limit imposed on the Partnership in order to maintain its exemption from registration as an investment company under the Investment Company Act of 1940.

## Reports

Limited Partners will receive (i) quarterly reports stating (a) the net asset value and changes in the net asset value of the Partnership from the prior Fiscal Quarter, and (b) the increase or the decrease in their Limited Partner Capital Account and Unrealized Profit and Loss Account, together with the present value of such account after allocation of all Partnership expenses, management fee and incentive fee, and (iii) annual reports, including audited financial statements, together with calculations allocating profits and losses (realized and unrealized) to each Partner's Capital Interest. See Section 602 of the Partnership Agreement.

SEC0002364

**Exculpation and Indemnification of the General** [partner]

The Partnership Agreement exculpates the General [Partner] ... [to the full extent permi]tted by law, from liability for any act, omission or error of judg... ... the Partnership if it acts in good faith and in a manner it reason... ... of authority granted to it and in or not opposed to the best int... ... uch liability arises out of the gross negligence or willful misconduct of the General ... ... the performance of its fiduciary duty to the Limited Partners. The ... ship Agreement also ... ...des for indemnification by the Partnership of the General Partne... ... to the ... ...ent permitted by law, for liabilities incurred in its capacity as G... ... ept for acts of gross negligence or willful misconduct. A... ... nd indemnification provisions, a Limited Partner may have a mo... ... uld otherwise have in the absence of such provisions. Limit... ... ny indemnification is made and of the reasons therefore. See S... ... ...hip Agreement.

The investment advisory agreement between the P... ... Genesis ... ...ent provides for similar exculpation and indemnification of G... ... ...y of general partner of the General Partner of the Partnership.

**Term and Dissolution**

The Partnership will continue until December 31, ... ... ...ne it will be di... ...ed, unless the General Partner and a majority in interest of the ... ... ...nes c ho... se. The Partnership may be dissolved at an earlier date if certai... ... ...on of the Partnership, it will be liquidated and the proceeds th... ... ...rs' in proportion to their interests in the Partnership. A final ... ... be m... ... ...al Partner and furnished to all Limited Partners. See Se... ... ... of ... ...p Agreement.

**Amendments**

The Partnership Agreement may not be modified o... ... ...with t... ... ...nd of the General Partner and a majority in interest of the Lin... ... ... ...n... assets), except that, for certain limited purposes relating ... ... ... Partner, without the consent of the Limited Partners, may ... ... ... amendment which would have a material adverse effect ... ... Partner would also require the consent of such Limited Part... ... ... ... Partnership Agreement.

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 22

### Restrictions on Transfer

A Limited Partner may not transfer any portion of its Interest without (i) the prior written consent of the General Partner (except on the death of an individual Limited Partner or by operation of law pursuant to the reorganization of a Limited Partner), which consent may be withheld in the General Partner's sole and absolute discretion, and (ii) receipt by the General Partner of an opinion of counsel that such transfer would not result in a violation of any federal or any applicable state securities laws or CFTC Regulations, the Partnership being required to register as an investment company under the Investment Company Act of 1940, or the termination of the Partnership for tax purposes. See Sections 1101-1107 of the Partnership Agreement.



SEC0002366

## VIII. TAX CONSIDERATIONS

### General

This is a summary of certain United States federal income tax considerations that may be relevant to prospective investors, based on the Internal Revenue Code of 1986, as amended (the "Code"), administrative regulations and rulings of the Department of the Treasury, and judicial decisions, all of which are subject to change. This summary is not intended as a substitute for careful tax planning. The applicability of Code provisions to individual investors will vary. Accordingly, prospective investors are urged to consult with their own tax advisors with specific reference to their own tax situations and potential changes in applicable law.

### Qualification as a Partnership

In connection with the preparation of this Memorandum and the Partnership Agreement, the counsel to the Partnership has rendered an opinion that the Partnership will be classified as a partnership, rather than as an association taxable as a corporation, for federal income tax purposes. The opinion is based on a number of assumptions, which are set forth in the opinion. The opinion is not binding on the Internal Revenue Service (the "IRS"). Moreover, the IRS adopted regulations which became effective in January 1997 which allow each Partnership to elect to be treated as a partnership, rather than as an association taxable as a corporation, for federal income tax purposes. Accordingly, the Partnership will file an appropriate election to be treated as a partnership for such purposes.

If the Partnership were treated as an association taxable as a corporation for federal income tax purposes, it would itself be taxed on its taxable income at corporate rates. In such case, the amount of the Partnership's cash otherwise available for distribution to the Limited Partners would be reduced by the amount of such tax. Cash distributions would be treated as dividends in the hands of the Limited Partners, subject to tax as ordinary income to the extent of Partnership earnings and profits. Further, any losses incurred by the Partnership would only be allowed as deductions for the Partnership, rather than being passed through to the Limited Partners.

Certain partnerships are treated as corporations for federal income tax purposes if they are deemed to be "publicly-traded partnerships". A partnership can be found to be publicly-traded if interests therein are traded on an established securities market or are readily tradeable on a secondary market or the substantial equivalent thereof. The IRS has stated that partnership interests will not be considered readily tradeable on a secondary market (or substantial equivalent) if (i) such interests are issued in transactions that are not registered under the Securities Act of 1933, and (ii) the partnership does not have more than 100 partners.

In determining the number of partners, the beneficial owners of grantor trusts, partnerships and S corporations ("flow-through entities") which are partners in a partnership will be counted if substantially all of the value of the beneficial owners' interest in the flow-through entity is attributable to the flow-through entity's interest, direct or indirect, in the partnership and the "principal purpose test" is violated. This test is violated if a principal purpose of the use of the flow-

through entity is to permit a partnership to satisfy the 100-partner limitation.

Inasmuch as, among other things, the Partnership may not have more than 99 Limited Partners, and, based on information requested of investors, the Partnership intends to limit its Limited Partners so as to satisfy the 100-partner limitation, the Partnership should not be treated as a publicly-traded partnership for federal income tax purposes.

### General Tax Treatment of the Partnership and the Limited Partners

So long as the Partnership is classified as a partnership for federal income tax purposes, the Partnership itself will not be subject to federal income tax. Rather, each Limited Partner is required to report on its own tax return its allocable share of the items of income, gain, loss, deduction, credit and tax preference of the Partnership, whether or not any actual distributions are made to such Limited Partner during the taxable year. (The tax treatment of foreign Limited Partners is discussed below under "Foreign Limited Partners").

Each Limited Partner reports its distributive share of any income or loss for its taxable year in which the taxable year of the Partnership ends.

A Limited Partner's tax basis for its Interest will be relevant in determining, among other things, the income tax consequences of Partnership distributions, the deductibility of Partnership losses, and gain or loss on the sale of the interest. Generally, this basis will be equal to the Limited Partner's subscription price for its Interest, plus any additional capital contributions, plus its share of those liabilities of the Partnership with respect to which neither the General Partner nor any of the Limited Partners has any personal liability. Each Limited Partner will increase the tax basis of its Interest by the amount of its allocable share of the Partnership's taxable income for any year, and reduce the tax basis of its Interest by the amount of its allocable share of the Partnership's taxable loss and by the amount of any cash distributed by the Partnership to it during such year. Any reduction of its share of the Partnership's nonrecourse indebtedness will also reduce its basis.

If the tax basis of a Limited Partner's Interest is reduced to zero through cash distributions, allocation of loss, or reduction of nonrecourse indebtedness, the amount of any further cash distributions (or any reduction in Partnership nonrecourse indebtedness) in excess of its share of the income reported by the Partnership for any year will generally be treated as gain from the sale or exchange of a capital asset. A Limited Partner will also recognize gain or loss on the complete liquidation of its Interest, measured by the difference between the amount received and the Limited Partner's tax basis in its Interest. Any gain or loss recognized on complete liquidation or as a result of distributions in excess of tax basis will, in general, be treated as capital gain or loss, and such capital gain or loss will be treated as long-term capital gain or loss if the Limited Partner has held its Interest for more than one year at the time the gain or loss is recognized.

The use of the Limited Partnership structure means that corporate taxes are avoided, increasing the returns of the General Partner and the Limited Partners. In addition, Section 1256 of the Internal Revenue Service Tax Code allows 60% of the profits of the General Partner and the Limited Partners that come from financial futures trading to be treated as long-term capital gains,

SEC0002368

even when the positions are held on a short-term basis.

## Trading or Investing

A number of the tax consequences attendant on an investment in the Partnership, such as the deductibility of certain types of Partnership losses (see below), will depend on whether the Partnership is treated as being engaged in "trading" or "investing". The Partnership could be treated as engaged entirely in trading or entirely in investing, or as a trader with respect to some of its activities and an investor with respect to others. In general, a taxpayer is treated as a trader if it engages in a large number of transactions and holds securities for a short period of time to earn short-swing profits, and as an investor if it holds securities for a longer period of time in order to realize capital appreciation. The General Partner believes that most, if not all, of the anticipated transactions of the Partnership will be treated as trading activities and anticipates filing the Partnership's information tax returns accordingly. The Partnership's actual activities may differ from those that are currently anticipated or the IRS may take a different position than the General Partner as to whether some or all of the Partnership's activities constitute trading. Accordingly, the General Partner cannot predict with any certainty as to the extent that its operations will constitute trading and the extent that it will constitute investing.

## Limits on Deductibility

The income tax law contains a number of provisions that can restrict a Limited Partner's ability to deduct on its own tax return Partnership losses that are allocable to it. A Limited Partner may only deduct its share of the Partnership's taxable loss and deductions to the extent of its tax basis for its Interest. Partnership losses which exceed the Limited Partner's tax basis may be carried over indefinitely and, subject to the other limitations discussed below, deducted in any future year to the extent its tax basis may have increased above zero.

In addition, Limited Partners which are individuals or certain closely-held corporations may be limited in their use of Partnership losses by the so-called "at risk" rules. Under these rules, Partnership losses cannot be deducted except to the extent of a Limited Partner's "at risk amount" which, in general, will include its unrecovered capital contributions and its share of undistributed Partnership taxable income.

A non-corporate Limited Partner may be subject to certain "investment interest" limitations. These rules would limit the deduction for investment interest to the Limited Partner's net investment income, that is, the excess of investment income (generally interest, dividends and capital gain) over investment expenses (other than interest expense). For this purpose, the Limited Partner's net investment income and investment interest expense from all sources, including partnership investment activities, would be aggregated. Partnership interest expense would include interest expense incurred either by the Partnership or by a Limited Partner to finance the purchase of its Interest.

To the extent that the Partnership is treated as engaged in investing, a non-corporate Limited Partner may not be allowed to deduct a portion of the Partnership's miscellaneous expenses. Certain

SEC0002369

miscellaneous itemized deductions (such as accounting expenses) of non-corporate taxpayers are allowable only to the extent they exceed a "floor" amount equal to 2% of the taxpayer's adjusted gross income. Any deductions not allowable by virtue of this rule will not be treated as investment expenses for purposes of the investment interest limitation, and will also in effect not be deductible for alternative minimum tax purposes. These limitations should not apply, however, to the extent the Partnership is treated as engaging in trading.

Regardless of whether the Partnership is treated as a trader or an investor with respect to any specific transactions, gain or loss realized on the disposition of a securities position generally will be treated as a capital gain or loss. Under certain circumstances, however, gain or loss arising from fluctuations between the relative values of the U.S. Dollar and the currency in which the position is denominated will be treated as ordinary gain or loss. Capital losses generally may be deducted only to the extent of capital gains, except for non-corporate taxpayers who are allowed to deduct $3,000 of capital losses per year against ordinary income without regard to capital gains. Corporate taxpayers may carry back unused capital losses for three years and may carry forward such losses for five years. Non-corporate taxpayers may carry forward unused capital losses indefinitely, but may not carry them back.

## Additional Tax Considerations

The use of the Limited Partnership structure means that corporate taxes are avoided, increasing the returns of the General Partner and the Limited Partners. In addition, Section 1256 of the Internal Revenue Service Tax Code allows 60% of the profits of the General Partner and the Limited Partners that come from financial futures trading to be treated as long-term capital gains, even when the positions are held on a short-term basis.

The following paragraphs are intended for pension plans, individual retirement accounts ("IRAs"), 401(k) plans, simplified employee pension plans and other tax exempt entities considering an investment in the Partnership.

## Unrelated Business Income Tax

Limited Partners which are entities exempt from federal income tax will not be subject to tax on their respective shares of Partnership income unless the income of the Partnership is deemed to be subject to the unrelated business income tax, a tax that applies to certain types of income earned by otherwise tax-exempt entities.

Under Section 512 of the Code, "unrelated business taxable income" is defined generally as the excess of gross income from any unrelated trade or business conducted by an exempt entity (or by a partnership of which the exempt entity is a partner) over the deductions attributable to such trade or business, with certain modifications. These modifications provide that unrelated business taxable income generally does not include dividends, interest, annuities, royalties or gain or loss from the disposition of property other than stock in trade or property held for sale in the ordinary course of the trade or business. Since it is anticipated that the Partnership's income will consist substantially, if not totally, of dividends, interest, capital gains and certain other enumerated items



CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 27

SEC0002370

which are excluded from unrelated business taxable income under Section 512 of the Code, a Limited Partner should not, except in the circumstances discussed below, realize unrelated business taxable income.

Liability for unrelated business income tax can arise under certain conditions. First, the tax could be owed where otherwise excluded income is deemed to be "unrelated debt-financed income" pursuant to Section 514 of the Code. This can happen if the Partnership finances the acquisition, in whole or in part, of its investments through indebtedness ("leveraged investments"), which the General Partner anticipates will occur frequently and in substantial amounts (See "The Partnership - Investment Policies - Leverage") or if a Limited Partner were to incur indebtedness to finance the purchase of its Interest.

In either event, a percentage of the total income generated by the Partnership's leveraged investments generally equal to the percentage of the leveraged investments' cost that was financed with indebtedness would be treated as unrelated debt-financed income. Similarly, if a Limited Partner finances the purchase of its Interest with indebtedness, in whole or in part, the Partnership's income allocable to such Interest would be deemed to be unrelated debt-financed income in the same proportion as the amount such debt financing bore to the total purchase price of such Interest. Each Limited Partner's allocable share of any income so deemed to be unrelated debt-financed income would be taxed as unrelated business taxable income, even if it was income otherwise excludable from unrelated business taxable income, such as dividends or interest.

A second way in which the unrelated business income tax can arise is if the Partnership were considered to be a "publicly-traded partnership". In such case, a Limited Partner's share of the Partnership income would be treated as income derived from an unrelated trade or business, and the Limited Partner's share of the Partnership's deductions would be allowed in computing unrelated business taxable income. As explained in "Tax Consequences - Qualification as a Partnership", however, the Partnership should not be treated as publicly-traded for federal income tax purposes.

### Foreign Taxes

Dividends, interest and other income received by the Partnership from sources outside the United States may be subject to withholding and other taxes imposed by such foreign jurisdictions at varying rates. A Limited Partner will be treated for federal income tax purposes as having paid its pro rata portion of such foreign taxes and, in general, should be able either to credit such portion against its federal income taxes due or to deduct such portion from its taxable income for federal income tax purposes.

### State and Local Taxes

In addition to federal income taxes, Limited Partners may be subject to other taxes, such as state and local income taxes. Information needed by Limited Partners to file all state and local income tax returns will be supplied by the Partnership's accountants. Each prospective Limited Partner should consult with its own tax advisor with regard to state and local taxes.

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM - Page 28

SEC0002371

*The preceding discussion is a summary of some of the important tax considerations relevant to an investment in the Partnership. It does not purport to be a complete analysis of all relevant tax considerations or a complete listing of all potential tax risks inherent in purchasing and holding an Interest. This discussion does not address tax considerations affecting investors, which are not United States persons. Prospective investors in the Partnership are urged to consult with their own tax advisors.*

SEC0002372

## IX. ERISA CONSIDERATIONS

The following is a summary of certain non-tax considerations arising under ERISA and the Code with respect to an investment in the Partnership by an employee benefit plan subject to ERISA (a "Plan"). This summary is based on the applicable provisions of such statutes and relevant regulations, rulings and interpretive releases issued by the Department of Labor or the IRS. No assurance can be given that legislative or administrative changes or court decisions may not occur which might significantly modify this summary. Any such changes may or may not apply to transactions entered into prior to the date of their enactment.

This summary should be considered by fiduciaries of any potential investor which is a Plan before assets of the Plan are invested in the Partnership. Further, inasmuch as the following discussion of ERISA and the Code is general and subject to future legislation and regulations, plan fiduciaries considering the investment of Plan assets in the Partnership should consult with their own counsel and advisors with respect to the ERISA considerations of such an investment.

### General Fiduciary Requirements

In considering an investment in the Partnership, Plan fiduciaries should carefully consider whether the investment would be consistent with their fiduciary responsibilities to their Plans, particularly those responsibilities described in Section 404 of ERISA. A fiduciary should consider, among other things, whether the investment would (i) be prudent for the Plan, given the nature of the securities in which the Partnership will invest, (ii) be consistent with the Plan's current and anticipated needs for liquidity, given the limitations set forth in the Partnership Agreement on a Limited Partner's ability to withdraw from or reduce its interest in the Partnership, (iii) permit the Plan's investment portfolio to remain adequately diversified, given the fact that ERISA requires that a Plan's investments be adequately diversified so as to minimize the risk of a large loss, unless it is clearly prudent not to do so, (iv) be permitted under the governing Plan documents, (v) involve a potential for conflicts of interest among the General Partners and the Partnership and (vi) result in any unrelated business taxable income to the Plan. A fiduciary should also consider the reasonableness of the compensation to be paid to the General Partners in comparison to that payable to others for similar investments.

In the Subscription Agreement, any Plan which proposes to invest in the Partnership will be required to represent that its fiduciaries understand the Partnership's investment objectives and policies and that the decision to invest Plan assets in the Partnership is consistent with the applicable provisions of ERISA and the fulfillment of their fiduciary responsibilities to the Plan.

### Plan Assets

In order that the General Partners not be deemed to be a "fiduciary" for purposes of ERISA of any Limited Partner which is a Plan, the Partnership may limit the participation of Plans in the Partnership. Under ERISA, a party is considered to be a fiduciary of a Plan if it exercises discretionary authority or control over the management or disposition of plan assets or renders individualized advice to a Plan for a fee which serves as the primary basis for the Plan's investment



decisions regarding such assets. Under the Department of Labor's "plan asset" regulations, when a Plan purchases an equity interest in another entity, the Plan's assets are deemed to include not only its investment in such entity but an undivided interest in the underlying assets of such entity unless (i) the equity interest is a "publicly-offered "security" or a security issued by a registered investment company, (ii) the entity is an "operating company" (as defined in such regulations) or (iii) the equity participation in the entity by Plans is not "significant", that is, less than 25% of each class of equity security issued by such entity (exclusive, in the case of the Partnership, of such securities held by the General Partners and their affiliates) is owned by Plans. The Interests are not publicly offered or issued by a registered investment company and, the Partnership will not qualify as an operating company. Accordingly, so that the assets of the Partnership are not deemed to be "plan assets", the Partnership may limit the acquisition or transfer of interests in the Partnership unless, after giving effect to such acquisition or transfer, the total interest in the Partnership owned by Plans would be less than 25% in the aggregate of all interests in the Partnership.

### Pre-Existing Relationships

If the General Partner or any of its affiliates may be considered a fiduciary under ERISA of any Plan because of a pre-existing relationship with such Plan, neither the General Partner nor any such affiliate will recommend an investment in the Partnership by such Plan.



SEC0002374

# X. REGULATORY CONSIDERATIONS

## The Securities Act

Interests will not be registered under the Securities Act in reliance upon the exemption from registration thereunder provided by Regulation D. The availability of this exemption depends, among other things, on the financial condition and nature of the purchasers, the manner of the offering and the number of purchasers. As a result, Interests will be sold only to "accredited investors," as defined in Rule 501(a) of Regulation D. Each purchaser will be required to represent that it is acquiring its Interest for investment and not for resale or distribution. In addition, Interests may not be assigned or transferred without the consent of the General Partner.

## Investment Company Act

It is expected that the Partnership will be exempt from the provisions of the Investment Company Act and, accordingly, will not be subject to any regulatory oversight pursuant to such Act. The Partnership will rely on the exemption contained in Section 3(c)(1) of the Investment Company Act which, subject to certain conditions, exempts issuers whose outstanding securities are beneficially owned by not more than 100 persons. Under Section 3(c)(1), the beneficial owners of the securities of a corporate Limited Partner could, subject to certain exceptions, be deemed to be beneficial owners of the securities of the Partnership if such corporate Limited Partner owns 10% or more of the Interests. The General Partner will, therefore, reject any subscription for Interests or transfer of Interests that would result in a corporate Limited Partner's owning 10% or more of the Interests, unless the General Partner, in its sole discretion, has determined that the conditions of Section 3(c)(1) will be met at Closing and on an ongoing basis. The Partnership will also obtain appropriate representations and undertakings from the Partners to assure that the conditions of Section 3(c)(1) will be met at Closing and on ongoing basis.

## Investment Advisers Act

It is expected that the General Partner will be exempt from the registration and certain other provisions of the Investment Advisers Act. The General Partner will rely on the exemption from registration contained in Section 203(b)(3), which exempts any investment advisor who, during the preceding 12 months, has had fewer than 15 clients and who meets certain other requirements. The General Partner will not be exempt from antifraud provisions of the Investment Advisers Act.

## Commodities Exchange Act

Pursuant to an exemption from the Commodity Futures Trading Commission in connection with pools that will not enter into commodity futures and commodity options contracts for which the aggregate initial margin and premiums exceed 10 percent of the fair market value of the pool's assets after taking into account unrealized profits and unrealized losses and will trade such commodity interests in a manner solely incidental to its securities trading activities, an offering memorandum for this pool is not required to be, and has not been, filed with the commission. The Commodity Futures Trading Commission does not pass upon the merits of participating in a pool

SEC0002375

or upon the adequacy or accuracy of an offering memorandum. Consequently, the Commodity Futures Trading Commission has not reviewed or approved this offering or any offering memorandum for this pool.

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM – Page 33

SEC0002376

## XI. BREAK-EVEN ANALYSIS

| | If No Additional Units Are Sold[1] | If $9 Million of Add'l. Units are Sold |
|---|---|---|
| Selling Price Per Unit | $1,000,000 | $1,000,000 |
| Offering Expenses Per Unit[2] | $ 10,000 | $ 1,000 |
| General Partner's Profit Allocation Fee | $ 0 | $ 0 |
| General Partner's Management Fee Per Unit | $ 10,000 | $ 10,000 |
| Brokerage Commissions and Fees | $ 3,000 | $ 1,500 |
| Operating Expenses Not Included in Management Fee[3] | $ 2,000 | $ 500 |
| Amount of Trading Income Required to Make Value of Limited Partner Interest Equal to Original Cost of Such Interest | $ 25,000 | $ 13,000 |
| Percentage of Break-Even Point to Cost Per Unit | 2.5% | 1.3% |

[1] Total Assets of Partnership are at Least $1,000,000.

[2] Cost of $10,000 per year in Organizational Expenses on $1,000,000 versus $10,000,000 in Limited Partner Assets.

[3] Accounting and Auditing Fees.

JD 058                    SEC0002377

## XII. COMMODITY POOL OPERATOR

The General Partner and its managing principals shall comply with all applicable laws, rules and regulations with respect to maintaining registration as and observing all requirements of a Commodity Pool Operator (CPO) and to cause the Partnership to remain generally exempt from the CFTC requirements for commodity pools pursuant to Section 4.12 of the CFTC Regulations.

# XIII. PROFESSIONALS

Whitley, Penn & Associates, of 1701 River Run Road, Suite 507, Fort Worth, Texas 76107, is the accounting firm for the Partnership. Creel, Sussman & Moore, L.L.P., of Dallas, Texas, is the law firm for the Partnership.

SEC0002379

## XIV. ADDITIONAL INFORMATION

This Memorandum is intended to present a general outline of the policies and structure of the Partnership and the General Partner. The Partnership Agreement, which specifies the rights and obligations of the Partners, should be reviewed by each prospective Limited Partner. The summary of certain provisions of the Partnership Agreement is necessarily incomplete and is qualified by reference to such Agreement. Copies of other relevant material, including the Subscription Agreement and the Confidential Offeree Questionnaire, will be made available upon request. The General Partner will be available to answer questions regarding the terms and conditions of the offering and to provide additional information that may be requested by prospective investors.

EXHIBIT "A" TO
CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

Agreement of Limited Partnership

SEC0002381

# AMENDED AND RESTATED

# AGREEMENT OF LIMITED PARTNERSHIP OF

# INTEGRAL HEDGING, L.P.

THE PARTNERSHIP INTERESTS REPRESENTED BY THIS AGREEMENT OF LIMITED PARTNERSHIP HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933 OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS. SUCH INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AND COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY SET FORTH HEREIN.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS THAT WILL NOT ENTER INTO COMMODITY FUTURES AND COMMODITY OPTIONS CONTRACTS FOR WHICH THE AGGREGATE INITIAL MARGIN AND PREMIUMS EXCEED 10 PERCENT OF THE FAIR MARKET VALUE OF THE POOL'S ASSETS AFTER TAKING INTO ACCOUNT UNREALIZED PROFITS AND UNREALIZED LOSSES AND WILL TRADE SUCH COMMODITY INTERESTS IN A MANNER SOLELY INCIDENTAL TO ITS SECURITIES TRADING ACTIVITIES, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.



SEC0002382

# TABLE OF CONTENTS

Page

ARTICLE ONE ..................................................................................................1
    Definitions..................................................................................................1

ARTICLE TWO................................................................................................4
    General .........................................................................................................4
        Section 201. Formation and Term ...............................................4
        Section 202. Name of Partnership ...............................................5
        Section 203. Principal Place or Business......................................5
        Section 204. Management..............................................................5
        Section 205. Reimbursement of Organizational and Ongoing Legal Expenses .....7
        Section 206. Liability of Partners ................................................7
        Section 207. Reliance by Third Parties.........................................7
        Section 208. Number of Partners .................................................8
        Section 209. Partnership Expenses ..............................................8
        Section 210. Restrictions on Authority of General Partner ...........9
        Section 211. Title to Property .......................................................9
        Section 212. Filings .....................................................................9

ARTICLE THREE ..........................................................................................10
    Contributions, Withdrawals and Capital Interests .............................10
        Section 301. Contributions ..........................................................10
        Section 302. Additional Interests.................................................10
        Section 303. No Interest on Contributions....................................10
        Section 304. No Priority Among Partners .....................................10
        Section 305. Withdrawals .............................................................11
        Section 306. Accounts; Credits and Debits...................................12
        Section 307. Optional Redemptions .............................................13
        Section 308. Determinations of the General Partner Conclusive..........................14
        Section 309. Interest of Creditors ...............................................14

ARTICLE FOUR...............................................................................................14
    Investment Matters....................................................................................14
        Section 401. Investments Generally ............................................14
        Section 402. Brokerage and Custody............................................15
        Section 403. Management Fee ......................................................15
        Section 404. Other Business of Partners.......................................15

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page ii

SEC0002383


ARTICLE FIVE .................................................................................................16
   Allocations and Distributions ......................................................................16
      Section 501. Interim Allocations ..........................................................16
      Section 502. Final Allocations...............................................................17
      Section 503. Allocation of Net Gain to the General Partner...................17
      Section 504. Special Rules for Withdrawing Limited Partners ...............18
      Section 505. Distributions to Partners ...................................................18
      Section 506.  Intention of the Parties ....................................................19
      Section 507. Reinvestment of Distributions .........................................19

ARTICLE SIX ...................................................................................................19
   General Accounting Provisions ....................................................................19
      Section 601. Fiscal Year .......................................................................19
      Section 602. Capital Determined; Financial Statements and Reports ...................20
      Section 603. Valuations by the General Partner .....................................20
      Section 604. Books and Records ...........................................................20
      Section 605. Tax Elections ....................................................................21
      Section 606. Information Tax Returns....................................................21
      Section 607.  Designation of Tax Matters Partner..................................21

ARTICLE SEVEN ............................................................................................21
   As to Partnership Name ...............................................................................21

ARTICLE EIGHT..............................................................................................21
   Exculpation and Indemnification ................................................................21
      Section 801. General Fiduciary Duty.....................................................21
      Section 802. Limitation on Liability of General Partner .........................22
      Section 803. Indemnification.................................................................22

ARTICLE NINE ...............................................................................................24
   Duration and Dissolution of the Partnership.................................................24
      Section 901. Events Causing Dissolution ..............................................24
      Section 902. Dissolution Procedures .....................................................25
      Section 903. Withdrawal or Death of a Limited Partner.........................26

ARTICLE TEN .................................................................................................26
   Transferability of the General Partner's Interest ...........................................26

ARTICLE ELEVEN ..........................................................................................27
   Transferability of a Limited Partner's Interest ..............................................27



Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page iii

SEC0002384

Section 1101. Restrictions on Transfer ................................................27
Section 1102. Indemnification by Transferor ..........................................28
Section 1103. Effect and Effective Date ..............................................28
Section 1104. Status of Transferor ...................................................28
Section 1105. Substituted Limited Partners ...........................................29
Section 1106. Conditions of Admission ................................................29
Section 1107. Transfers During a Fiscal Year .........................................29


ARTICLE TWELVE ................................................................................29
     Miscellaneous ..........................................................................29
Section 1201. Resolution of Disputes .................................................29
Section 1202. No Bill for Partnership Accounting .....................................30
Section 1203. Grant of Power of Attorney .............................................30
Section 1204. Binding Nature of Agreement ............................................30
Section 1205. Execution of Agreement .................................................30
Section 1206. Amendments .............................................................31
Section 1207.  Amendments Without Consent ............................................31
Section 1208. Execution of Amendments ................................................31
Section 1209. Notices ................................................................31
Section 1210. Governing Law; Severability ............................................31

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page iv

SEC0002385

# AMENDED AND RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP
## OF
## INTEGRAL HEDGING, L.P.

This AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP, is entered into effective as of the 1st day of July, 1999, among GENESIS MARKET NEUTRAL PARTNERS, L.P., a Texas limited partnership ("GMNP"), as general partner, and Dr. Conrad P. Seghers, as an initial limited partner, and the parties who from time to time hereafter enter into this Agreement, as limited partners.

## WITNESSETH:

The parties, desiring to form a limited partnership, and in consideration of the mutual agreements set forth below, agree as follows:

## ARTICLE ONE

### Definitions

As used in this Agreement, the following terms have the following meanings:

"**Act**" means the Texas Revised Limited Partnership Act, Article 6132a-1, as amended from time to time (or any corresponding provisions of succeeding law).

"**Additional Partner**" means any Partner admitted to the Partnership by the General Partner pursuant to Section 302(a) after the date hereof.

"**Affiliate**" means, when used with reference to a specified Person, (a) any Person that, directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the specified Person, (b) any Person who is an officer, director, partner or trustee of, or serves in a similar capacity with respect to, the specified Person or of which the specified Person is an officer, director, partner or trustee, or with respect to which the specified Person serves in a similar capacity, (c) any Person who, directly or indirectly, is the beneficial owner of 10% or more of any class of equity securities of, or otherwise has a substantial beneficial interest in, the specified Person or of which the specified Person is directly or indirectly the owner of 10% or more of any class of equity securities or in which the specified Person has substantial beneficial interest, (d) any person who is an officer, director, general partner, trustee or holder of 10% of the voting securities or beneficial interests of any of the Persons specified in clauses (a), (b) or (c) above,

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 1

SEC0002386

and (e) any relative or spouse of the specified Person.

"**Agreement**" means this Amended and Restated Agreement of Limited Partnership, as it may be amended, supplemented or restated from time to time, as the context requires.

"**Bankruptcy**" means and shall be deemed to have occurred with respect to a Person if such Person (a) makes an assignment for the benefit of creditors, (b) is adjudged a bankrupt or insolvent, or has entered against it an order for relief in any bankruptcy or insolvency proceeding, (c) files a petition or answer seeking for itself any reorganization, arrangement, winding-up, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation or fails to have any proceeding for such relief instituted against it by others dismissed within 120 days following its commencement, (d) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of the nature described in clause (c) above or (e) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of it or all or any substantial part of its properties or, if such appointment is made without its consent, such appointment is not vacated or stayed within 90 days or, if stayed, such appointment is not vacated within 90 days after the expiration of any such stay.

"**Capital Account**" means, with respect to any Partner, the Capital Account maintained for such Partner pursuant to Article Five, and shall equal the net Contributions by such Partner, plus or minus the adjustments described in Article Five.

"**Capital Interest**" means, with respect to any Partner, the sum (or net amount) of such Partner's Capital Account and Unrealized Profit and Loss Account.

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Contribution**" has the meaning specified in Section 301.

"**CFTC**" or "**Commission**" means the Commodity Futures Trading Commission.

"**Cumulative Net Gain**" means with respect to any Limited Partner, (i) the cumulative amount of Net Income, less the cumulative amount of Net Loss, allocated to such Limited Partner through and as of the end of the Fiscal Year or other period in question, plus (ii) the amount of any positive balance, or less the amount of any negative balance, in such Limited Partner's Unrealized Profit and Loss Account as of the end of such period.

"**Fiscal Month**" refers to any calendar month (or, less, in the case of the first and final fiscal months of the Partnership), ending on the last day of each calendar month (or the date of termination of the Partnership in the case of the final Fiscal Month of the Partnership).

"**Fiscal Quarter**" refers to any period of three months (or, less, in the case of the first and final Fiscal Quarters of the Partnership) ending on March 31, June 30, September 30 or December

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 2

SEC0002387

31 (or the date of termination of the Partnership, in the case of the final Fiscal Quarter of the Partnership).

"**Fiscal Year**" has the meaning specified in Section 601.

"**General Partner**" means GMNP or any Person who, at the time of reference thereto, serves as a general partner of the Partnership.

"**Interest**" of a Partner at any time means the entire ownership interest of a Partner in the Partnership at such time, consisting of such Partner's Capital Interest and including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement.

"**Limited Partner**" means any Person who is a limited partner, which, except as otherwise indicated, shall include an Additional Partner (other than an Additional General Partner) or a Substituted Limited Partner, at the time of reference thereto, in such Person's capacity as a limited partner of the Partnership. All Limited Partners of the Partnership must be "accredited investors" as defined in Rule 501(a) of Regulation D promulgated under the Securities Act of 1933.

"**Majority in Interest of the Limited Partners**" means Limited Partners whose aggregate Capital Interests constitute more than 50% of all of the Capital Interests of the Limited Partners.

"**Memorandum**" means the Confidential Private Placement Memorandum relating to the offering of Interests, as it may be amended or supplemented from time to time, and which includes, among other exhibits, a form of this Agreement.

"**Net Contribution**" has the meaning specified in Section 205.

"**Net Gain**" means, with respect to any Limited Partner, the excess, if any, for the Fiscal Year (or other period) in question, of Net Income allocated to the Limited Partner under Section 501(a) over any Net Loss allocated to the Limited Partner under Section 501(b), plus the amount of any increase, or less the amount of any decrease, in the Limited Partner's Unrealized Profit and Loss Account for such Fiscal Year (or other period), as determined under Section 501(c), after the credits and charges referred to in clauses (ii) and (iii) of Section 501(c) are given effect.

"**Net Income**" and "**Net Loss**" for any period means the net income or net loss of the Partnership during such period after payment or provision for all expenses incurred in connection with the Partnership's investments. Net Income and Net Loss shall be determined in accordance with the Partnership's method of accounting described in this Agreement and without regard to any basis adjustment under Section 743 of the Code.

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 3

SEC0002388

"**Net Unrealized Profit**" **and** "**Net Unrealized Loss**" of the Partnership in any period means, at any time, the aggregate net unrealized appreciation or depreciation during such period with respect to all investment positions of the Partnership, determined by comparing the respective fair market value of each investment position on (a) the later of (i) the first day of such period, or (ii) the date on which such investment position is established, and (b) the earlier of (i) the last day of such period, or (ii) the date of the disposition of such investment position.

"**Opening Balance**" means, with respect to any Partner during any period, such Partner's Capital Interest at the beginning of such period.

"**Partners**" means the General Partner and all of the Limited Partners, including any Additional Partner and any Substituted Limited Partner.

"**Partnership**" means the limited partnership formed pursuant to this Agreement, as it may from time to time be constituted.

"**Partnership Expenses**" has the meaning specified in Section 209.

"**Person**" means any individual, partnership, corporation, trust, governmental plan, governmental unit or other entity.

"**Substituted Limited Partner**" has the meaning specified in Section 1102.

"**Transfer**" has the meaning specified in Section 1101.

"**Unrealized Profit and Loss Account**" means, with respect to any Partner, the Unrealized Profit and Loss Account maintained for such Partner pursuant to Article Five.

"**Valuation Date**" means the last day of any calendar month.

All other defined terms used in this Agreement have the respective meanings assigned to them in the Sections in which they appear.

## ARTICLE TWO

### General

**Section 201. Formation and Term.** The Partners have formed the Partnership pursuant and subject to the Act, for the purpose of making the investments and engaging in the business described in Section 401 and any other lawful business for which partnerships may be formed under the Act. The term of the Partnership shall commence on the date hereof and shall continue until December 31, 2040, at which time it shall dissolve and liquidate pursuant to Article Nine. The term of the

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 4

Partnership may be extended beyond, or terminated prior to, December 31, 2040, by the vote of the General Partner and a Majority in Interest of the Limited Partners. This Agreement completely restates, amends and supersedes all earlier dated Agreements of Limited Partnership of Integral Hedging, L.P.

Section 202. Name of Partnership. The Partnership name shall be Integral Hedging, L.P.

Section 203. Principal Place or Business. The principal place of business and registered office of the Partnership shall be c/o Genesis Market Neutral Partners, L.P., 13606 T.I. Boulevard, Dallas, Texas 75243, or such other place as the General Partner may determine. The name and address of the Partnership's registered agent in the State of Texas is Conrad P. Seghers, 13606 T.I. Boulevard, Dallas, Texas 75243.

Section 204. Management. The Partnership shall be managed and operated exclusively by the General Partner, which shall have all of the rights, powers and obligations of a general partner of a limited partnership under the Act and otherwise as provided by law. The Limited Partners shall have no part in the management of the Partnership and shall have no authority or right to act on behalf of the Partnership in connection with any matter. The General Partner shall devote its best efforts to the Partnership business in accordance with procedures established by it, but shall not be precluded from engaging in other business activities or from organizing and managing other similar partnerships.

Each of the Limited Partners agrees that all determinations, decisions and actions made or taken by the General Partner shall be conclusive and binding on the Partnership, the Limited Partners and their respective successors and assigns.

The General Partner shall have the power, among other things, on behalf of the Partnership:

(a)     to invest and reinvest the funds of the Partnership in futures and forward contracts and market indices and foreign currencies, together with related put and call options, and equity securities of all kinds (including, without limitation, common stock, preferred stock, options, warrants and debentures and other debt securities convertible into common or preferred stock) issued by corporations, partnerships, associations or other entities and governments and governmental authorities, in public or private transactions and whether or not such securities are readily marketable or of a speculative nature (all of the foregoing are referred to together as "investments"), and, generally, to deal with funds, securities and other assets of the Partnership as if the General Partner was the absolute owner thereof, all as the General Partner in its discretion may determine;

(b)     to invest and reinvest the funds of the Partnership in structured securities of all kinds (including, without limitation, stock options, index options, futures, options on futures, swaps, forwards, etc...) issued by corporations, partnerships, associations or other entities

SEC0002390

and governments and governmental authorities, in public or private transactions, and whether or not such securities are readily marketable or of a speculative nature (all of the foregoing are referred to together as "investments"), and, generally, to deal with funds, securities and other assets of the Partnership as if the General Partner was the absolute owner thereof, all as the General Partner in its discretion may determine;

(c)     to invest and reinvest the funds of the Partnership in short-term, high yield corporate debt instruments, short-term U.S. Treasury obligations (up to 5 year maturity), other short-term money market investments (including, without limitation, dollar-denominated treasury obligations of foreign governments, domestic or foreign bank certificates of deposit or other short-term instruments and other notes and bonds having short maturities or call features that the General Partner believes will be exercised in the short term), and to deposit the funds of the Partnership on a temporary basis in accounts bearing interest at a fair market rate, which may be a variable rate;

(d)     to acquire investments on margin or borrow, pledge, mortgage, lend or hypothecate investments or use leverage by borrowing funds from banks or brokerage firms, all subject to any applicable margin regulations and requirements;

(e)     to (i) purchase and sell or write put and call options on securities and indexes and futures, (ii) purchase securities on a when-issued or delayed delivery basis and (iii) sell securities on a "short-sale against the box" basis;

(f)     to vote any investments owned by the Partnership on such matters as are submitted to the holders of such investments;

(g)     to arrange for the custody of investments and other assets of the Partnership and, where desirable, to cause such investments or assets to be acquired or held in the name of one or more nominees on behalf of the Partnership, and to direct custodians and nominees to deliver investments and other assets of the Partnership for the purpose of effecting transactions or otherwise;

(h)     to execute any agreement, contract, certificate or instrument necessary or desirable in connection with the conduct of the Partnership's business or affairs;

(i)     to incur reasonable expenditures for the conduct of the Partnership's business and to pay all expenses, debts and obligations of the Partnership;

(j)     to employ, retain and dismiss any employees, agents, attorneys, accountants, advisors, brokers, consultants and custodians of Partnership assets, including, without limitation, any who are Affiliates of the General Partner, such as Genesis Management, LLC,

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 6

the general partner of the General Partner, which is being retained as an investment advisor to the Partnership, and to delegate to such parties any of its powers under this Section 204, so long as the compensation to be paid to any such Affiliates is comparable to that which would be payable to unaffiliated third parties for comparable services;

(k)     to institute, defend, compromise or settle any action, suit or proceeding with respect to the business and affairs of the Partnership;

(l)     to open, maintain and close bank accounts and to sign checks drawn on such accounts; and

(m)     generally, to engage in any kind of activity necessary or desirable to achieve the purposes of the Partnership and as may be lawfully carried on or performed by a partnership under the laws of each jurisdiction in which the Partnership is then doing business.

**Section 205. Reimbursement of Organizational and Ongoing Legal Expenses.** The General Partner shall deduct from the Limited Partners' Contributions an amount for the costs and expenses incurred by the General Partner in organizing the Partnership and selling the Interests, which deductions shall in no event exceed $10,000 per year, and shall deduct the amount to be reimbursed pro rata among the Limited Partners in accordance with their respective Contributions, subject to the limits set forth in the first sentence of this Section 205. The excess of any Contribution over the reimbursement deduction applicable to it is referred to as the "Net Contribution".

**Section 206. Liability of Partners.** Except as provided herein or by the Act, the General Partner shall have the liabilities of a partner in a partnership without limited partners to persons other than the Partnership and the Limited Partners. The Limited Partners shall have no liability under this Agreement except as provided herein or by the Act. The General Partner shall be liable for the debts and obligations of the Partnership to the full extent of its assets, but shall, as among the Partners, be entitled to require the prior exhaustion of the Partnership's assets and be entitled to be benefits of the indemnity provided in Article Eight. Each Limited Partner shall be liable for the debts and obligations of the Partnership only to the extent of its Interest.

**Section 207. Reliance by Third Parties.** Any Person dealing with the Partnership shall be entitled to rely conclusively upon the power and authority of the General Partner as set forth herein. Further, any Person dealing with the Partnership or the General Partner may rely on a certificate signed by the General Partner, as to (a) the identity of the General Partner or any Limited Partner, (b) the existence or nonexistence of any fact which constitutes a condition precedent to acts by the General Partner or any agent or employee of the Partnership or which are in any other manner pertinent to the affairs of the Partnership, (c) the authority of the General Partner or any agent or employee of the Partnership to execute and deliver any instrument or document of the Partnership, (d) any act or failure to act by the Partnership or (e) as to any other matter whatsoever involving the

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 7

Partnership.

   **Section 208. Number of Partners.** The Partnership shall not at any time have more than 100 Partners, including the General Partner.

   **Section 209.  Partnership Expenses.**  Except as otherwise provided herein, the General Partner shall be solely responsible for payment of the expenses of operating the Partnership, including general overhead expenses, but excluding the organizational, ongoing legal, and selling expenses reimbursable to the General Partner pursuant to Section 205.  Further, the Partnership and not the General Partner shall be liable for the following "Partnership Expenses":

   (a)   all taxes or governmental charges, all brokerage fees, advisory fees, commissions, transfer fees, brokerage commissions, and any other expenses, charges or fees, including, without limitation, attorneys' and accountants' fees and disbursements, incurred or payable in connection with the sale, or purchase of any investments;

   (b)   any other taxes or governmental charges payable by the Partnership or the Limited Partners;

   (c)   all costs incurred in connection with the preparation of the Partnership's federal, state or other tax returns and the financial statements and reports prepared pursuant to Sections 602 or 605;

   (d)   any costs and expenses of any litigation involving the Partnership and the amount of any judgment or settlement paid in connection therewith, excluding, however, the costs and expenses of any litigation, judgment or settlement in which the General Partner is found culpable of willful misfeasance or bad faith;

   (e)   any amounts payable by the Partnership as interest on a Capital Interest being withdrawn by a Partner pursuant to Section 304; and

   (f)   all costs and expenses for indemnity or contribution payable by the Partnership to any Person, whether payable under Article Eight or otherwise and whether payable in connection with any litigation involving the Partnership or otherwise.

   No expenses or fees paid by the General Partner shall constitute a contribution to the Partnership. The Partnership shall be responsible for all Partnership Expenses set forth above incurred by it or by the General Partner on its behalf. All such Partnership Expenses shall be paid out of cash funds of the Partnership determined by the General Partner to be available for such purpose; provided, however, that the General Partner may, in its sole discretion, advance funds to the Partnership for the payment of such Partnership Expenses and shall be entitled to the

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 8

8

reimbursement of any funds so advanced.

**Section 210. Restrictions on Authority of General Partner.** Without the consent of the Majority in Interest of the Limited Partners, the General Partner shall not have authority to:

(a)     confess or consent to a judgment against the Partnership;

(b)     possess Partnership property, or assign any rights in specific Partnership property, for other than a Partnership purpose;

(c)     admit a Person as an Additional Partner, except as provided in Section 302(a) and Articles Ten and Eleven;

(d)     knowingly perform any act that would subject any Limited Partner to liability as a general partner in any jurisdiction;

(e)     except as provided in Section 204(c), borrow money, issue, make or endorse promissory notes or other evidences of indebtedness or mortgage or otherwise encumber any assets of the Partnership;

(f)     except as provided in Section 204(c), make loans to, or guarantee the indebtedness of, any party, including, without limitation, the General Partner and its Affiliates;

(g)     do any act in contravention of the Partnership's Certificate of Limited Partnership, as it may be amended;

(h)     do any act which makes it impossible to carry on the ordinary business of the Partnership;

(i)     do any act which would require the Partnership to register (or to seek an exemption from registration) under the Investment Company Act of 1940; or

(j)     make any material change in the Partnership's purposes set forth in this Agreement.

**Section 211. Title to Property.** All property of the Partnership shall be held in the name of the Partnership or a nominee of the Partnership and shall be deemed to be owned by the Partnership and no Partner shall have any ownership interest in such property.

**Section 212. Filings.** The Partners shall from time to time execute or cause to be executed all such certificates (including limited partnership and fictitious name certificates) or other documents or cause to be made all such filings, recordings, publications or other acts as may be



Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 9

necessary or desirable to comply with the requirements for the formation and operation of a limited partnership under the laws of the State of Texas, for the purpose of qualifying the Partnership to do business as a foreign limited partnership under the laws of any other jurisdiction in which the Partnership may conduct business and, generally, to establish and protect the limited liability of the Limited Partners under the laws of any such jurisdiction.

## ARTICLE THREE

Contributions, Withdrawals and Capital Interests

**Section 301. Contributions.** The General Partner shall maintain a register that sets forth the amount of cash (or the value of any other property) which each Partner has initially contributed to the Partnership. Such amount, as increased by any additional Contributions as provided in Section 302, is referred to as the "Contribution" of such Partner.

**Section 302. Additional Interests.**

(a)     The Partnership may offer and sell additional Interests from time to time to Persons who are not then Partners; provided, however, that any such sale shall be effective only as of the first business day following the next Valuation Date. Such Persons may be admitted to the Partnership as Additional Partners by the General Partner without the consent of the Limited Partners; provided, however, that, if the General Partner proposes to admit as an Additional General Partner any Person who is not an Affiliate of the General Partner, the written consent of a Majority in Interest of the Limited Partners shall be a condition to such admission.

(b)     Subject to the last sentence of this Section 302(b), any Partner may make additional Contributions to the Partnership, on at least ten days' prior written notice to the General Partner, and, unless the General Partner otherwise determines, in an amount not less than $10,000. Any such additional Contribution shall be deemed to be effective as of the Valuation Date next following the General Partner's receipt thereof. Additional Contributions may be made in cash or in the form of a reinvestment of distributions pursuant to Section 505. The General Partner may refuse to accept all or any part of any additional Contribution.

**Section 303. No Interest on Contributions.** No interest shall be paid by the Partnership to any Partner with respect to any Contribution, Capital Account or Unrealized Profit and Loss Account.

**Section 304. No Priority Among Partners.** Except as provided in Section 309, no Partner shall have priority over any other Partner either as to the return of its Contribution or as to

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 10


distributions made by the Partnership. No specific time has been agreed on for the repayment of, or the payment of any return on, any Contribution. No Partner shall have the right to demand or receive property other than cash in return for its Contribution or as a distribution of income. Each Partner shall look solely to the assets of the Partnership for the return of its Contribution, and if such assets are insufficient for such purpose, no Partner shall have any recourse against any other Partner as a result thereof.

### Section 305. Withdrawals.

(a)     A Partner shall not have the right to withdraw from the Partnership any portion of its Capital Interest except as follows:

(i)     as provided in Article Nine;

(ii)    as to any Limited Partner, following the first anniversary date of its initial Contribution, as of the close of business on the last day of any Fiscal Quarter, provided that the Limited Partner has given at least 30 days' prior written notice of such withdrawal to the General Partner; or

(iii)   as to the General Partner, as of the close of business on the last day of any Fiscal Month.

A date as of which any withdrawal is effected is referred to as a "Withdrawal Date". Subject to the remaining provisions of this Section 305, the amount of the Capital Interest to be withdrawn by a Partner shall be payable as soon as practicable after the valuation of such Capital Interest as of the Withdrawal Date; provided, however, that in the case of complete withdrawals of a Capital Interest only, the Partnership may pay only 90% of the value of the Capital Interest withdrawn at the time of withdrawal. The remaining 10% shall be retained by the Partnership until the completion of the audit of the Partnership's financial statements for the Fiscal Year in which such withdrawal occurs, for the purpose of effecting any adjustments with respect to the value of the withdrawn Capital Interest shown to be appropriate by such audited financial statements. The interest payable as provided above shall be treated as a Partnership Expense for the Fiscal Quarter in which it is paid.

(b)     If, as a result of a requested withdrawal by a Limited Partner, the amount of such Limited Partner's remaining Capital Interest would be less than $1,000,000, the General Partner, in its sole discretion, may require such Limited Partner to withdraw its entire Capital Interest.

(c)     Withdrawals shall be paid in cash or, at the discretion of the General Partner, in securities or equity interests in other entities selected by the General Partner or by a combination thereof. If the General Partner suspends the valuation of Capital Interests

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 11

pursuant to Section 306(e), the General Partner may also suspend the right of the Partners to withdraw their Capital Interests under this Section 305 until such time as the General Partner, in its reasonable discretion, determines that the value of the Capital Interests may again be fairly valued.

**Section 306. Accounts; Credits and Debits.**

(a)    The Capital Interest of each Partner shall be as shown in the Capital Account and Unrealized Profit and Loss Account maintained for such Partner on the Partnership books. The Capital Account of each Partner shall be credited with the amount of such Partner's Contributions and the amount of Net Income credited to the Capital Account of such Partner pursuant to Article Five. The Capital Account of each Partner shall be charged with the amount of any distribution to such Partner pursuant to Section 504 and the amount of Net Loss charged to the Capital Account of such Partner pursuant to Article Five. The Unrealized Profit and Loss Account of each Partner shall be credited and charged with the amounts specified in Article Five.

(b)    The General Partner shall calculate the value of the Capital Account and Unrealized Profit and Loss Account of each Partner no less frequently than as of the close of business on each Valuation Date. If a Valuation Date is not a business day, however, the Capital Account and the Unrealized Profit and Loss Account shall be determined as of the close of business on the next preceding business day, and references to the Valuation Date shall be deemed to be to such next preceding business date in such circumstances.

Unless a different valuation method is adopted by the General Partner and the Limited Partners are notified of such adoption, the General Partner shall determine the value of each of the Partnership's investments included in the Partners' Unrealized Profit and Loss Accounts as follows:

(i)    for any security listed or traded on any domestic or foreign national or other recognized securities exchange or on the NASDAQ National Market System (the "NASDAQ/NMS"), the value of such security shall be the last reported sales price on the Valuation Date on the largest exchange on which such security traded on such date, or on the NASDAQ/NMS, as the case may be. If no sale of such security occurred on the Valuation Date, the value of such security shall be the last reported bid quotation (or if the Partnership has a short position in such security, the last reported asked quotation), or as adjusted by the exchange or market committee of a self regulated exchange or by NASD, therefore on the Valuation Date on the largest exchange on which it is traded on such date, or on the NASDAQ/NMS, as the case may be;

(ii)    NASDAQ/NMS, the value of such security shall be the last reported bid quotation (or asked quotation for short positions) for such security on the Valuation Date, as provided by the principal market makers; and

Amended and Restated Agreement of
Limited Partnership of Integral Hedging, L.P. – Page 12

(iii)    for any investment referred to in subparagraphs (i) and (ii) of this Section 306(c) for which no last sales price or bid quotation is reported on the Valuation Date, or for any other investment, the value shall be the most recent bid quotation (or asked quotation for short positions) for such investment available from the principal market makers for such investments. If recent market quotations are not readily available for any investments or if the General Partner determines, in its reasonable discretion, that available market quotations do not fairly represent the value of such investments, such investments shall be valued at their fair value using methods determined in good faith by the General Partner.

(iv)    for any structured equity without a quoted market value, such as a swap or forward contract for any security that is not listed or traded on an exchange, the value of these securities will be quoted as the value of the underlying security on the date of their maturity. There is an inherent credit risk in undertaking a structured equity contractual transaction with a major or any form of financial institution, and if a default occurs by the counterpart to such contract, then any unrecovered equity or value from the transaction will be deducted from the value of the Capital Account and assumed as a loss.

Certain short-term investments having a maturity of 90 days or less, which the General Partner deems to be cash equivalents, shall be valued at cost, plus any accrued interest or discount earned and included in interest receivable in the Partnership's books and records. The General Partner may, in its reasonable discretion, establish other methods for determining such value whenever such other methods are deemed by it to be necessary or appropriate.

(d)    In determining the value of investments, any assets or liabilities initially expressed in terms of foreign currencies shall be translated into U.S. dollars at the official exchange rate or, alternatively, at the mean of the current bid and asked prices of such currencies against the U.S. dollar last quoted by a major bank that is a regular participant in the foreign exchange market or on the basis of a pricing service that takes into account the quotes provided by a number of such major banks. If neither of these alternatives is available, or both are deemed not to provide a suitable method for converting a foreign currency into U.S. dollars, the General Partner in good faith shall establish a conversion rate for such currency.

(e)    The General Partner shall have the right to suspend the determination of the value of Capital Interests for any period during which, in its sole judgment, due to then prevailing market conditions or other reasons, it is impossible or impractical to do so.

**Section 307. Optional Redemptions.**    At any time after one full Fiscal Quarter of investment, the General Partner shall have the right to cause the Partnership to redeem and repurchase the Interest of any Limited Partner for any reason whatsoever. The General Partner shall notify any such Limited Partner of the Partnership's intention to effect such a redemption not less than 30 days prior to the proposed date of redemption, which shall be the last day of the then current