**2.7     *Allocation of Net Gain to the General Partner.***     You understand that the General Partner will receive an annual performance allocation of 20% of the Partnership's net gain for managing the Partnership's investments, payable quarterly. You confirm that, prior to your execution of this Agreement, you have reviewed the provisions of the Partnership Agreement pertinent to the allocation (Sections 503 and 305(d)), and the disclosures regarding it set forth in the Memorandum, and that you have been advised, among other things, that:

(a)     the General Partner's right to receive an allocation of net gain may create an incentive for the General Partner to make investments on behalf of the Partnership that are riskier or more speculative than would be the case in the absence of such performance allocation;

(b)     the allocation of net gain will be based on the unrealized appreciation of the Partnership's investments as well as its realized gains;

(c)     the allocation of net gain will be determined quarterly with reference to the preceding quarter (or possibly a shorter period in the case of the first allocation), and will be measured by the amount of net gain allocable to the Limited Partners with respect to such period;

(d)     securities held by the Partnership for which market quotations are not readily available will be valued by the General Partner in the manner set forth in the Partnership Agreement; and

(e)     the General Partner's allocation of net gain may be greater or less than compensation charged by other investment advisors for comparable services.

**2.8     *Status.***     If you are a corporation, partnership, trust or other entity, you are an "accredited investor", as that term is defined in Rule 501(a) of Regulation D under the Act (see Section 2.9 below for a list of the types of accredited investors). If you are a natural person, you are at least 21 years of age and you either are an "accredited investor" or meet the experience standards set forth in Section 2.9 below.

**2.9     *Experience; Financial Ability.***     You, or if you are a corporation, partnership, trust or other entity, you by and through your officers, directors, trustees, employees or other advisors, (i) are experienced in evaluating companies such as the Partnership, (ii) have determined that an Interest is a suitable investment for you and (iii) have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of your investment in the Partnership.

For purposes of this Agreement, you are deemed to be an "accredited investor," if you meet any of the following requirements:

(a)     A natural person whose net worth or joint net worth with his/her spouse exceeds $1,000,000.

CS 000101

(b)     A natural person whose income, exclusive of spouse's income, exceeded $200,000 in each of the last two years and who reasonably expects an income in excess of $200,000 in the current year, or whose income, together with spouse's income, exceeded $300,000 in each of the last two years and who reasonably expects such combined income to exceed $300,000 in the current year.

(c)     A bank, insurance company, registered investment company, employee benefit plan if the investment decision is made by a bank, insurance company or registered investment adviser, or an employee benefit plan with more than $5 million of assets.

(d)     A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

(e)     A tax-exempt organization (IRC Section 501(c)(3) exemption) with assets in excess of $5 million.

(f)     An entity in which all of the equity owners are accredited investors under above.

(g)     A business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958.

(h)     A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

(i)     Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii).

(j)     Any director, executive officer, or key employee of the Company.

**2.9     *Financial Ability.*** You have the financial ability to bear the economic risks of your entire investment for an indefinite period and no need for liquidity with respect to your investment in the Partnership, and you have adequate means for providing for your current needs and personal contingencies.

SUBSCRIPTION AGREEMENT – Page 5

CS 000102

**2.10** *Further Information.* The information which you are furnishing hereunder and in the Confidential Offeree Questionnaire, and any information which you subsequently furnish to the Partnership with respect to your financial position and business experience, is correct and complete as of the date of this Agreement or as of the date it is furnished, whichever is later. If there is any material change in such information prior to the date that this Agreement is accepted by the Partnership, you will immediately furnish such revised or corrected information to the Partnership.

**2.11** *Due Authority, Etc.* If you are a corporation, partnership, trust or other entity: (a) you are duly organized, validly existing and in good standing under the laws of the jurisdiction of your formation and have all requisite power and authority to own your properties and assets and to carry on your business, (b) you have the requisite power and authority to execute this Agreement and the Partnership Agreement and to carry out the transactions contemplated hereby and thereby, (c) your execution and performance of this Agreement and the Partnership Agreement does not and will not result in any violation of, or conflict with, any term of your charter, by-laws, partnership agreement or indenture of trust, as the case may be, or any instrument to which you are a party or by which you are bound or any law or regulation applicable to you, (d) your execution and performance of this Agreement and the Partnership Agreement has been duly authorized by all necessary corporate or other action, (e) you were not specifically formed to invest in the Partnership and (f) the individual who has executed this Agreement on your behalf was duly authorized to do so by all requisite corporate or other action and, on request of the Partnership, you will furnish appropriate evidence of the authority of such individual to act on your behalf.

**2.12** *Valid Obligation.* This Agreement and the Partnership Agreement have been duly executed and delivered by or on behalf of you and, if and when accepted by the Partnership, in whole or in part, will constitute your legal, valid and binding obligations, enforceable in accordance with their respective terms (except as may be limited by principles of equity or bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights generally).

**2.13** *Reliance on Own Advisors.* You confirm that, in making your decision to invest in the Partnership, you have relied, as to legal and tax-related matters concerning the investment, on independent investigations made by you and any advisor or representative that you may have consulted, including your own legal, tax and other advisors, and that you and your advisors or representatives have investigated your investment in the Partnership to the extent you and they have deemed advisable.

**2.14** *Further ERISA Matters.* If you are an employee benefit plan within the meaning of ERISA, you and your plan fiduciaries are not affiliated with, and are independent of, the General Partner and are informed of and understand the Partnership's investment objectives, policies and strategies. Your plan fiduciaries believe that the decision to invest your plan assets in the Partnership is consistent with the provisions of ERISA that require prudence in investment and diversification of plan assets and impose other fiduciary responsibilities. Further, your plan fiduciaries have considered the following factors with respect to your investment in the Partnership and have determined that, in view of such considerations, an investment in the Partnership is consistent with their fiduciary responsibilities under ERISA:

CS 000103

(a)     the role such investment will play in the portion of your portfolio that such plan fiduciaries manage;

(b)     whether the investment is reasonably designed as part of the portion of the portfolio managed by such plan fiduciaries to further your purposes, taking into account both the risk of loss, and opportunity for gain that could result;

(c)     the composition of the portion of the portfolio managed by such plan fiduciaries with regard to diversification;

(d)     the liquidity and current rate of return of the portion of the portfolio managed by such plan fiduciaries relative to your anticipated cash flow requirements; and

(e)     the projected return of the portion of the portfolio managed by such plan fiduciaries relative to your funding objectives.

This agreement has been executed on your behalf by a duly designated Named Fiduciary (within the meaning of Section 402(a)(2) of ERISA).

**2.15     *Restricted Investors.*** If you are a restricted investor (see the Confidential Investor Questionnaire), you understand that all securities acquired by the Partnership which are part of a public offering and which are expected to sell at a premium over the offering price in the secondary market during such offering ("hot issues") will be segregated by the Partnership, that no Limited Partner who is a "restricted investor" shall receive any allocation of profits from such account, and that all Limited Partners who are not restricted investors shall be allocated such profits from trading in hot issues ratably in proportion to the interest of each such non-restricted Limited Partner in the Partnership (excluding for these purposes the interests in the Partnership held by Limited Partners who are restricted investors).

**2.16     *Address.*** The address set forth on the signature page of this Agreement is your true and correct address and you have no present intention of becoming a resident or domiciliary of any jurisdiction other than the one indicated by your address.

**2.17     *Fees and Commissions.*** No fees or commissions have been paid or are payable by you in connection with this Agreement and the issuance of an Interest to you.

**3.     Miscellaneous.**

**3.1     *Entire Agreement.*** This Agreement sets forth the entire understanding of the parties with respect to its subject matter, merges and supersedes any prior or contemporaneous understanding among them with respect to its subject matter, and will not be modified, amended or terminated except by another agreement in writing executed by you and the Partnership. Failure of a party to enforce one or more of the provisions of this Agreement, or to require at any time performance of any of the obligations hereof, will not be construed to be a waiver of such provisions by such party nor to in any

CS 000104

way affect the validity of this Agreement or such party's right thereafter to enforce each and every provision of this Agreement, nor to preclude such party from taking any other action at any time which it would legally be entitled to take.

**3.2** *Binding Effect.* This Agreement will be binding on and will inure to the benefit of the parties and their respective successors and permitted assigns.

**3.3** *Construction.* References to Sections herein are to the sections of this Agreement. Headings used in this Agreement are for convenience only and will not be used in the construction of this Agreement.

**3.4** *Survival of Representations and Warranties.* You agree that all representations, warranties and agreements contained herein will survive the execution, delivery and performance of this Agreement.

**3.5** *Communications.* All notices and other communications under this Agreement will be in writing and will be deemed to have been given at the time when delivered personally by hand or overnight courier or when mailed in any United States post office enclosed in a registered or certified postpaid envelope and addressed to the Partnership at its address set forth at the beginning of this Agreement, or to you at the address set forth by you on the signature page of this Agreement, as the case may be, or to such other address as any party may specify by notice to the other; provided, however, that any notice of change of address shall be effective only on receipt.

**3.6** *Governing Law.* This Agreement will in all respects be governed by and construed in accordance with the laws of the State of Texas applicable to agreements made and fully to be performed in such state, without giving effect to conflict of laws principles.

**3.7** *Due Execution; Required Purchaser Information.*

IF SUBSCRIBER IS A TRUST, INCLUDE COPY OF TRUST AGREEMENT.

IF SUBSCRIBER IS A PARTNERSHIP, INCLUDE COPY OF PARTNERSHIP AGREEMENT.

IF SUBSCRIBER IS A CORPORATION, INCLUDE CERTIFIED COPY OF BOARD RESOLUTION DESIGNATING THE CORPORATE OFFICER AUTHORIZED TO SIGN ON BEHALF OF CORPORATION AND A BOARD RESOLUTION AUTHORIZING THE PURCHASE OF THE INTEREST.

CS 000105

## LIMITED PARTNER'S SIGNATURE PAGE

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date noted below.

**INDIVIDUALS:**                                    **ENTITIES:**

_____                    _____
Print Name                                          Print Name of Subscriber

_____                    By:_____
Signature                                           Authorized Signature

_____                    _____
Signature (If Joint Tenants                         Print Name of Signatory
and/or Tenants in Common)

_____                    Capacity in which Signed

_____
Date

**Subscriber Information:**

Address (Residence for individuals;                 Social Security or Tax ID No.: _____
business for others):

_____
Street                          City                State           Zip Code

Phone Number: (_____) _____ - _____
Fax Number:    (_____) _____ - _____
E-mail:        _____@_____

Dollar Amount You Wish to Invest: $_____. This is the amount of your Interest and your Subscription Price. This amount is also your opening Capital Account in the Partnership.

Wire transfers shall be made as follows: State Street Bank & Trust Co., Boston, MA; ABA #: 011000028; Attn: Mutual Funds Division; A/C #: 9904-6153; Ref: Winchester Reserves Limited - US Dollar Money Market Series; FBO: Integral Arbitrage LP; A/C #: 06-7100530938.

(THIS SIGNATURE PAGE WILL ALSO BE ATTACHED TO AND BECOME
A PART OF THE AGREEMENT OF LIMITED PARTNERSHIP OF

SUBSCRIPTION AGREEMENT – Page 9

CS 000106

INTEGRAL ARBITRAGE, L.P.)

SUBSCRIPTION AGREEMENT -- Page 10

CS 000107

**For the Partnership's Use Only**

Agreed and Accepted as to $_____     Dated: _____, 200__

INTEGRAL ARBITRAGE, L.P.,
a Texas limited partnership

By:   Integral Investment Management, L.P.,
      General Partner, a Texas limited partnership

      By:  Integral Management, LLC, General
           Partner, a Texas limited liability company

      By:_____
           Conrad P. Seghers,
           Chief Executive Officer

CS 000108

**EXHIBIT "C"**
**TO CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM**

**Confidential Offeree Questionnaire**

CS 000109

# INTEGRAL ARBITRAGE, L.P.

## CONFIDENTIAL OFFEREE QUESTIONNAIRE

Prospective purchasers of limited partnership interests ("Interests") in Integral Arbitrage, L.P. (the "Partnership") (f/k/a Sum-It Investments, L.P.) must meet certain suitability requirements in order for the Partnership to comply with the private offering exemption of the Securities Act of 1933, as amended (the "Act"), Regulation D promulgated thereunder, and exemptions of applicable state securities laws. In order to establish that purchasers meet these requirements and are qualified to invest in the Partnership, purchasers must complete this Confidential Offeree Questionnaire and return it to the partnership, c/o the fund administrator, Olympia Capital Associates L.P. at 1211 Avenue of the Americas, 29th Floor, New York, NY 10036.

Each purchaser must be an "accredited investor", as defined in Rule 501(a) of Regulation D under the Act. This Questionnaire elicits information as to the accredited investor status of a prospective purchaser, which may afford the Partnership a reasonable basis for believing that the purchaser, or any person making the investment decision for the purchaser, has the requisite knowledge and experience in financial and business matters.

If an entity purchasing an Interest has been formed for this transaction, or if the individual owners of the purchasing entity may elect whether to participate in each investment of that entity, then each individual owner of such entity must be a an accredited investor and each must complete a Confidential Offeree Questionnaire, or the general partner or other authorized representative of such entity must complete the Confidential Offeree Questionnaire on each such person's behalf.

All information provided in this Confidential Offeree Questionnaire will at all times be kept strictly confidential except as otherwise required by law. It may be necessary, however, for the Partnership to verify the information contained in this Confidential Offeree Questionnaire to establish that the requirements of applicable securities laws are satisfied. Furthermore, the Partnership may give this Confidential Offeree Questionnaire to its legal counsel to establish the availability of an exemption. By signing this Confidential Offeree Questionnaire, investors agree to such uses of this Confidential Offeree Questionnaire by the Partnership.

CS 000110

**A.  General Information**

1.  The investment is being made by, and beneficial ownership of the Interest purchased should be shown on the Partnership's records in the name of:

_____

2.  Social Security or Tax Identification Number:_____

3.  Name and Title of Person completing this Questionnaire:

_____

4.  Purchaser's Address and Telephone Number *(residence for individuals; business for others)*:

_____

(Street and Number)

_____

(City)                                    (State)                                    (Zip Code)

Telephone Number:        (_____) _____ - _____

Facsimile Number:          (_____) _____ - _____

E-Mail Address: _____ @ _____

**B.  Investor Information** *(for entities only, not individuals)*:

1.  Type of entity (check one):

☐  Corporation                ☐  Trust
☐  Partnership                ☐  LLC/LLP
☐  Other

2.  Date of Formation: _____

3.  The entity was organized for the specific purpose of acquiring the interest:

Yes_____          No_____

4.  Number of shareholders, partners, members or beneficiaries: _____

5.  Individual shareholders, partners, members or beneficiaries within the entity may elect whether to participate in the entity's investments: Yes _____     No_____

CS 000111

6.  The entity has made other investments in securities:     Yes _____     No _____

## C.  Accredited Investor Criteria

It is expected that all Interests will be sold to investors who are "Accredited Investors" as defined in Regulation D. If you are an Accredited Investor because you meet at least one of the following standards, please indicate your basis of "Accredited Investor" status by initialing the applicable statement or statements, if any:

INITIAL

_____        A natural person whose net worth or joint net worth with his/her spouse exceeds
$1,000,000.

_____        A natural person whose income, exclusive of spouse's income, exceeded $200,000 in each of the last two years and who reasonably expects an income in excess of $200,000 in the current year, or whose income, together with spouse's income, exceeded $300,000 in each of the last two years and who reasonably expects such combined income to exceed $300,000 in the current year.

_____        A bank, insurance company, registered investment company, employee benefit plan if the investment decision is made by a bank, insurance company or registered investment adviser, or an employee benefit plan with more than $5 million of assets.

_____        A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

_____        A tax-exempt organization (IRC Section 501(c)(3) exemption) with assets in excess of $5 million.

_____        An entity in which all of the equity owners are accredited investors under above.

_____        A business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958.

_____        A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

_____        Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii).

_____        Any director, executive officer, or key employee of the Company.

_____        The Investor does not qualify in any accredited category as indicated above.

CS 000112

CONFIDENTIAL OFFEREE QUESTIONNAIRE – PAGE 16

CS 000113

**D. Investment Background**

1.      The purchaser's net worth is more than $1,000,000:      Yes_____  No_____

2.      Provide the following information about the purchaser's previous and existing private offering and commodity pool investment experience:

| Name of Venture | Activity of Venture (e.g. R&D venture capital) | Amount of Original Investment | Existing Investment (Yes or No) |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

3.      List any other investment experience not mentioned above:

_____

\*       "Net worth" means the excess of total assets at fair market value, excluding home and personal property, over total liabilities. For Item (I), "Income" means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following (but not including amounts attributable to a spouse or to property owned by a spouse): (i) the amount of tax exempt interest income received, (ii) the amount of losses claimed as a limited partner in a limited partnership, (iii) any deduction claimed for depletion, (iv) amounts contributed to an IRA or Keogh retirement plan, (v) alimony paid and (vi) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to §1202 of the Internal Revenue Code.

4.      The purchaser is able to bear the economic risk of an investment in the Partnership:

            Yes_____            No_____

5.      The purchaser believes it can afford a complete loss of its investment in the Partnership:

            Yes_____            No_____

CS 000114

**F.**    **<u>Relationship to the Partnership or Its Management</u>**

1.    Does the purchaser have a pre-existing personal or business relationship with the Partnership or the General Partner or its management?  Yes_____   No_____

If yes,  please describe such relationship:

_____

2.    Does the purchaser currently own interests in the Partnership or the General Partner or any affiliate thereof?            Yes_____   No_____

If yes, what interests? _____

CONFIDENTIAL OFFEREE QUESTIONNAIRE – PAGE 19

CS 000115

## G.     Representations and Signature

The purchaser understands that the Partnership will be relying on the accuracy and completeness of its responses to the foregoing questions. The purchaser represents and warrants to the Partnership that (i) the responses are complete and correct and may be relied on by the Partnership and its legal counsel in determining whether the Offering of Interests is exempt from registration or qualification under the federal and applicable state securities laws and (ii) the purchaser will notify the Partnership immediately of any material change in any statement made herein that occurs prior to the closing of the proposed investment.

**INDIVIDUALS:**                                      **ENTITIES:**

_____                       _____
Print Name                                            (Print Name of Purchaser)


_____                       By:_____
Signature


_____                       _____
Signature (If Joint Tenants                           (Print Title and Name of Signatory)
or Tenants in Common)

Dated: _____, 200__

CS 000116

J:\Docs\RLS\Genesis\Integral Arb\ppm 010101.doc

CONFIDENTIAL OFFEREE QUESTIONNAIRE – PAGE 21

CS 000117

# INTEGRAL INVESTMENT MANAGEMENT

## Superior Risk Adjusted Returns

www.integralinv.com

CS 000118

# Overview

- **RISK-PROTECTED –**

  – Our three funds are consistently ranked in the top 1% for 1800 funds for risk adjusted returns according to Hedgefund.net; Integral Arbitrage remains #1.

  – All positions are hedged on an individual and portfolio basis.

- **ABSOLUTE RETURN FUNDS –**

  – The funds have produced consistent NET average monthly returns of 1.46% since inception.

  – The Sharpe Ratios of the three funds range from 3.29 to 8.88, and Standard Deviations of 0.42% and 1.14%.

  – 79 out of 83 cumulative months (95% of the time) the returns were positive.

www.integralinv.com

2

CS 000119

3



# Overview (cont'd.)

- ## UNIQUE STRENGTHS –

  – Funds utilize a proprietary low-risk "RAPS" (Risk Adaptive Portfolio Structures) strategy for identifying and taking advantage of systematic misalignments in financial markets.

  – Highly qualified management team with an average 12 years' trading, arbitrage and risk management experience.

  – Recognition from the international investment community - several articles in financial journals.

www.integralinv.com

CS 000120



## Fund Performance:
### Integral Equity, Integral Hedging & Integral Arbitrage

www.integraliv.com

CS 000121

5

# Fund Net Performance Table — Inception 1998

| Month | Integral Equity | Integral Arbitrage | Integral Hedging |
|---|---|---|---|
| Feb-01 | -1.45% | 0.21% | -1.32% |
| Jan-01 | 1.34% | 1.58% | 1.18% |
| Dec-00 | 1.15% | 1.12% | 0.92% |
| Nov-00 | 1.22% | 1.22% | 0.88% |
| Oct-00 | 0.88% | 1.15% | 0.80% |
| Sep-00 | -0.44% | 1.42% | -1.21% |
| Aug-00 | 1.36% | 1.43% | 1.36% |
| Jul-00 | 1.86% | 1.99% | 1.32% |
| Jun-00 | 0.34% | 1.02% | 1.01% |
| May-00 | 0.12% | 1.48% | 1.44% |
| Apr-00 | 0.44% | 1.10% | 1.11% |
| Mar-00 | 0.57% | 1.55% | 1.72% |
| Feb-00 | 1.07% | 1.44% | 1.51% |
| Jan-00 | 0.55% | 1.45% | 1.46% |

www.integralinv.com

CS 000122

# Fund Net Performance Table —CONTD.

| Month | Integral Equity | Integral Arbitrage | Integral Hedging |
|---|---|---|---|
| Dec-99 | 2.94 % | 1.14 % | 1.14 % |
| Nov-99 | 2.28 % | 1.53 % | 1.50 % |
| Oct-99 | 3.17 % | 1.38 % | 1.60 % |
| Sep-99 | 3.19 % | 2.08 % | 1.29 % |
| Aug-99 | 1.39 % | 2.13 % | 2.27 % |
| Jul-99 | 1.82 % | 1.53 % | 2.23 % |
| Jun-99 | 2.26 % | 1.63 % | 2.04 % |
| May-99 | 1.51 % | 0.94 % | 1.94 % |
| Apr-99 | 2.36 % | 1.49 % | 2.23 % |
| Mar-99 | 2.73 % | 1.72 % | 2.60 % |
| Feb-99 | 2.83 % | 1.71 % | 2.54 % |
| Jan-99 | 2.26 % | 1.59 % | 1.83 % |
| Dec-98 | 2.90 % | 2.09 % | 2.10 % |
| Nov-98 | 1.22 % | 2.11 % | n/a |

6

www.integralinv.com

CS 000123



# Results Summary

- In 83 cumulative months covering three different funds, 79 months are positive returns and 68 months are above 1%. The consistency and the positive returns attest to our risk management strategies and biases.

- **Comparative Volatility (since fund inception):**
  – Integral Hedging has 19% of the S&P500 volatility
  – Integral Equity has 24% of the S&P500 volatility
  – Integral Arbitrage has 9% of the S&P500 volatility

- **Comparative Net Returns (since each fund's inception):**
  – Integral Hedging returned 36% above S&P500 (outperformed 14.7% p.a.)
  – Integral Equity returned 34% above S&P500 (outperformed 13.9% p.a.)
  – Integral Arbitrage returned 34% above S&P500(outperformed 13.9% p.a.)

www.integraliiv.com

7

CS 000124

# Risk-Return Analysis



INTEGRAL Risk-Return Analysis - Period Jan 1 1999 - Feb 28 2001

Volatility as measured by Std Deviation for period (%)

Annualized Return (%)

Integral Holding
Integral Arbitrage
Integral Equity
S&P
NASDAQ
LBGC

www.integralinv.com



CS 000125

# Asset Growth



Integral Inv. Mgmt. Asset Growth



CS 000126



# Our Secret

- **There is no secret. Our combination of multi-strategy overlays provide consistency. These include:**

  - Option Arbitrage (fundamental arbitrage) on individual, highly liquid stocks

  - Market Neutral, Long-Short (statistical arbitrage) overlays on these positions

  - Large percentage of liquid cash provides portfolio stability

- **All positions are taken in highly liquid, large cap US equities, listed options and derivatives.**

- **Not leveraged on a borrowed funds basis and over 40% of the portfolio generally remains in unencumbered cash.**



www.integralinv.com

CS 000127



# Trading Model Examples



- **Option volatility spreads**
- **Relative option convergence strategies**
- **Enhanced Long-Short overlays**
- **Option time-spread arbitrage**
- **Index vs. Basket option arbitrage**

www.integralinv.com

11

CS 000128



# Equity Trade Overview



- Universe of shares includes highly liquid equities, equity options and equity index derivatives.

- Instruments traded – OEX constituents, selected NASDAQ shares (including MSFT, INTC, CSCO, etc.), equity indexes and their respective options.

www.integralinv.com

12

CS 000129

# Stock Profile

- An example of a stock profile that would fit one trading model is INTC.

- The stock has experienced volatility, is at support levels and has extensive option chains.

- In our example the stock will be indexed to 100.



www.integralinv.com

13

CS 000130

14



# Trade

**Most option positions have tenure of 9-12 months. Equivalent option contract amounts for the number of shares purchased.**

## Action

- Buy underlying at  $100
- Buy 100 Put for  $20
- Sell 70 Put for  $10
- Sell 140 Call for  $10

## Adjustment

- Need to adjust risks
- Downside protection
- 30% downside hedge
- 40% upside potential

www.integralinv.com

CS 000131



# Trade Risk Profile



www.integralinv.com

CS 000132

# Managing Overlay Risk – Step 1

- Although this profile affords a 30% downside protection we DO manage downside risk with pre-set techniques.

- Should the share move down to 90 we will re-hedge the 70-100-140 pivot points to 60-90-130, "resetting" at 90.

- Thus
  - Buy back the 140 Call, Sell the 130 Call
  - Sell the 100 Put, Buy the 90 Put
  - Buy back the 70 Put, Sell the 60 Put.

- As re-hedging is costly we will repeat this process until the trade is no longer profitable, at which point we liquidate the positions.

www.integralinv.com

16

CS 000133



# Managing Overlay Risk – Step 2
## "Gap Risk – Long/Short"

- The risk of the initial position discussed is GAP RISK to the downside. This risk is mitigated by selected Long/Short, "Jones Model" overlays.

- Assuming that Overlay 1 was implemented on share X, we will find a correlated share Y and construct a SHORT biased position against X's LONG bias.

- THUS –
  - Share X:  (Loss) 70 — (buffer)—[100] —(profit) —> 140
  - Share Y:      60 <— (profit) —[100]—(buffer) — 130 (Loss)

- This provides an ENHANCED long-short portfolio as protection against sector shocks – generally on 30-40% of long portfolio.

- On occasion we will get the opportunity to provide similar protection in the SAME X stock, in a different option expiration date.

www.integralinv.com

18



# Managing Overlay Risk – Step 2 contd.
## Enhanced Long-Short Analysis

- Overlay 2 affords us an "enhanced" long-short overlay.
- Regular long-short : + INTC / - AMD
  - Sector rise would result in say INTC +$2 and AMD +$1 for net $1 profit.
- Integral long-short :
  - Sector rise would result in portfolio effect of INTC +$2 and AMD zero due to downside buffer on INTC, upside buffer on AMD.
- This implies efficient utilization of capital and better risk control by Integral as compared to typical long-short funds.

www.integralinv.com

CS 000135



# Managing Overlay Risk – Step 3 "Portfolio Diversification"

- We only add positions that improve the risk adjusted returns of the portfolio.

  – Each portfolio contains 15-25 equities.

  – Each position combines 4-16 instruments to form a RAPS basket.

  – Each RAPS basket allows the portfolio to dynamically hedge against market movements, and is continually stress-tested so that the portfolio achieves the Optimal Risk-Reward Ratio (**OR³**)

- Portfolio is tested for sector exposure and adjusted accordingly.

- Incremental relative value trades are overlaid on original core trades to achieve profit enhancement.

www.integralinv.com

19

CS 000136

# Managing Overlay Risk – Step 4 "Cash Management and Exposure"

- Cash positions in the portfolio are generally maintained at 70%, with at least 40% of the portfolio in unencumbered cash.

- This ensures protection against margin increases, market shocks and unforeseen events.

- Cash is deployed in T-Bills, providing incremental monthly returns.

www.integralinv.com

20

CS 000137

21



# Managing Overlay Risk – Step 5 "Volatility Risk Management"

- Excess volatility exposure will be managed by structuring volatility and variance swaps.

- Volatility risk is measured on a portfolio basis and, in the event of risk concentration will be hedged by VOLATILITY / VARIANCE swap contracts.

- This will result in positive compensatory returns if we are short VEGA (volatility exposure) in an increasingly volatile market.

www.integralinv.com

CS 000138

22



# Investment Income Sources

- Equity, equity option and related markets — irrespective of market direction.

- T-Bills and short term money market instrument yields.

www.integralinv.com

CS 000139

# Trading Summary

- Our MULTI STRATEGY overlays are designed to manage the myriad of downside risks associated with any position in the market while attempting to achieve steady returns.

- Risks are managed on an individual and portfolio basis.

- Each hedge is adjusted if markets move strongly. Pivot points are proactively defended.

- Additional or redeployed capital is allocated to positions that improve the overall risk/return characteristics of the portfolio and allow them to mature in an organized manner.

www.integraliiv.com

23

CS 000140

24



# Trading Summary (continued)

- Our combination of multi-strategy overlays provides portfolio stability and consistency of returns, including:

  - Option Arbitrage (Fundamental Arbitrage)

  - Market Neutral, Long-Short overlays (Statistical Arbitrage)

- Our emphasis is on risk management rather than imprudent profit maximization.

www.integralinv.com

CS 000141

# Management Profiles

- **Dr. Conrad Seghers** – firm founder: 12+ yrs in investment, research and management. He holds Bachelors' and Masters' degrees in Biology and Engineering from Texas A&M, an Executive MBA from Baylor University and a Ph.D. from the University of Texas.

- **Mr. James Dickey** – firm founder: 13+ years of experience in financial product design, implementation and sale, including four years as VP of Product Development for Associates Financial Services. He holds a BA from Stanford and an Executive MBA from Baylor University.

- **Mr. Sam Vogel** – managing partner: 12+ years experience within global investment arena as head of equity and derivative trading desks for South African & International Banks. Experience structuring international equity arbitrage, swaps, and equity-linked bonds. He holds a Bachelor's of Commerce from South Africa and Series 7, 63, 3 and 4 securities, options and commodities licenses.

www.integraliinv.com

25

CS 000142

26



# Company Structure

- **3 Principals**
- **4 Employees**
  - 2 Computer Programmers
  - 1 Administrative Assistant
  - 1 Back-Office Reconciler
- **8 Third Party Staff**
  - Administrators
  - Marketers
  - Accountants
  - Attorneys

www.integralinv.com

# Fund Structure



- Integral Investment Management as the Investment Advisor of each fund, has an investment in the funds in excess of $4,000,000, which represents substantially all the Principals' investable assets.

- Minimum investment is $1,000,000 per fund.

- Fees: Standard 1% and 20%.

- Contributions accepted monthly. Withdrawals quarterly.

- Each investor receives monthly and quarterly performance reports, annual financial information, and annual audit reports.

- Administrator: Olympia Capital

- Legal Counsel: Creel, Sussman & Moore (Dallas) and
  Tannenbaum, Helpern, Syracuse & Hirschtritt (New York)

- Auditing Firm: Deloitte & Touche

- Main Broker: Morgan Stanley Dean Witter

www.integralinv.com

27

CS 000144

28

# Glossary





- **RAPS (Risk Adaptive Portfolio Structures) –** Baskets of securities that together function as the equivalent of financial instruments that trade at a higher price. They are the equivalent of a "synthetic put." RAPS allow a statistical arbitrage strategy that achieves consistent low-risk results regardless of market direction.

- **Statistical Arbitrage -** Use of intrinsic value relationships to substitute one item for another at lower cost.

- Synthetic Trade - Purchase or sale of a combination of instruments that replicate the characteristics of a readily available item. A trade can then be made against that readily available item/financial security.

- **Hedged Directional -** Strategy whose returns vary based on movement (either positive or negative) in an underlying instrument's price. Hedges protect the downside risk on each trade.

- **Intrinsic Value -** The portion of an option's price explained by the price of the underlying instrument. For example - the $70 call on a stock worth $90 has $20 of intrinsic value.

www.integralinv.com

CS 000145

## INTEGRAL INVESTMENT MANAGEMENT, LP

**April 30, 2001**
**Monthly Update**

5720 LBJ Freeway, Suite 470, Dallas, Texas 75240
(972) 726-6200 phone, (972) 238-7733 fax
info@integralinv.com / www.integralinv.com



| | INTEGRAL ARBITRAGE | INTEGRAL EQUITY | INTEGRAL HEDGING OFFSHORE |
|---|---|---|---|
| April 2001 Net Return | 1.08% | -1.58% | 0.25% |
| 2000 Net Return | 18.24% | 9.52% | N/A – Inception 6/00 |
| 1999 Net Return | 20.6% | 32.8% | N/A – Inception 6/00 |
| Strategy | Derivative Arbitrage Market Neutral – Bonds, Equities, Currencies | Hedged Long/Short Option Arbitrage – Equities & Equity Indices | BOTH |
| Weighting | Global(25%)/Equity(75%) | Equity(100%) | Global(10%)/Equity(90%) |
| Fund Assets | $15.7m | $13.2m | $58.3m |
| Min. Investment | $1m | $1m | $1m |
| Fees | 1% / 20% | 1% / 20% | 1% / 20% |
| Inception | Nov-98 | Aug-00 | Jun-00 |
| Profitable Mthly % | 100% | 91% | 82% - 11 months |
| Sharpe Ratio / Beta | 8.31 / 0.03 | 2.85 / 0.12 | N/A / 0.05 |

**MARKETS** - This year has proved exceptionally difficult. Expectations of an impending global economic slowdown, corporate earnings warnings and a re-rating of technology stocks have resulted in increased volatility and continuing bearish sentiment. Uncertainty reigns as investors are torn between expectations of a market bounce and further downward momentum.

**PERFORMANCE** - April saw the markets recoup some of their recent losses, accompanied by extreme volatility. These large moves to the upside in effect meant that the extra portfolio insurance we instituted had been in vain. Although this hedging was prudent, in hindsight it was unnecessary, costing us "insurance premium" and reducing our upside participation in the markets in the short term for Integral Equity. These volatile market environments are difficult, forcing us to make decisions about the amount and timing of hedging required. Volatility seems to be abating, allowing new long-term positions to profit and our short-term portfolio to settle. We are proud of the fact that again we were able to temper risk to report positive results for Integral Arbitrage while Integral Equity reported modestly negative results, largely due to the high amount of volatility during the April options expiration. Integral Hedging Offshore, since it incorporates both trading strategies, finished the month in between and slightly positive.



**METHODOLOGY** - All three funds hedge the underlying positions that are entered, allowing consistent performance from steady, uncorrelated returns where asset protection and reasonable profits are the goal. Generally, positions are hedged against a 30% negative move with a 40% profit cap. When prices move outside of these ranges, as they have recently, we are obliged to readjust our positions. The inordinate volatility of the market, combined with severe falls in equity prices across the board, has resulted in us having to "re-hedge" or "reinsure" our portfolios. The cost of this reinsurance resulted in slightly lower results for our funds, though the arbitrage portfolio proved its continuing resilience.

**OUTLOOK** - Despite the severe market uncertainty and increased volatility, our portfolio positions have performed as expected in what may be considered as the worst possible scenario for our strategies. The significant market drop over the past few months, while difficult for existing long-term positions, offers significant opportunity for new investments. We are able to institute new, hedged positions on securities at prices that offer exceptional upside potential with reduced risk. These new positions are expected to reap accelerated returns in the third and fourth quarter of 2001.

**OVERVIEW** - Independent data sources rank our funds in the top 1% of all hedge funds in terms of their Sharpe ratios (the consistency of returns as a risk/reward ratio), with Integral Arbitrage rated #1 out of 1800 funds. Integral Investment Management, LP is constantly refining its mix of trading systems to improve on the returns and safety levels of its investments. Our synthetic hedging methodology offsets a large part of the directional volatility of the portfolio, allowing us to capture more steady profits. This allows us to diversify our investments and sources of income more effectively, and thereby capture opportunities in the markets that would be too volatile to take advantage of otherwise. We thank you for your business and hope you appreciate the performance that we have been able to maintain even in these adverse and volatile markets.

**DEVELOPMENTS** - The principals, James Dickey, Conrad Seghers and Sam Vogel, welcome Britt Bowers to our team. He will be working with our brokers and our administrator, Olympia Capital, who independently verifies and consolidates all trades and positions, to further streamline operations as we continue to grow. In addition, Deloitte & Touche expects to complete our 2000 audit by May 31.

*Certain information concerning the Partnerships and their investing philosophies are included in this letter. This document is intended to give prospective investors an overview of Integral Equity, L.P., Integral Hedging, L.P., and Integral Arbitrage, L.P. (the Partnerships). It does not constitute an offer to sell, or a solicitation of an offer to buy, an interest in the Partnerships. This document is subject to the more complete disclosures set forth in the Partnerships' Offering Memorandums that must be reviewed prior to making any decision to join the Partnerships. We invite prospective investors to contact us for more information. Past performance is not necessarily indicative of future results.*

CS 000146



## INTEGRAL INVESTMENT MANAGEMENT, LP

**May 31, 2001**
**Monthly Update**

5720 LBJ Freeway, Suite 470, Dallas, Texas 75240
(972) 726-6200 phone, (972) 726-6288 fax
info@integralinv.com / www.integralinv.com

|  | INTEGRAL ARBITRAGE | INTEGRAL EQUITY | INTEGRAL HEDGING |
|---|---|---|---|
| May 2001 Net Return | 1.73% | 4.06% | 2.08% |
| 2000 Net Return | 18.24% | 9.52% | 12.96% |
| 1999 Net Return | 20.6% | 32.8% | 25.8% |
| Strategy | Derivative Arbitrage Market Neutral – Bonds, Equities | Hedged Long/Short Option Arbitrage – Equities & Equity Indices | Combination of IA and IE |
| Weighting | Global(25%)/Equity(75%) | Equity(100%) | Global(10%)/Equity(90%) |
| Fund Assets | $15.9m | $13.8m | $59.5m |
| Min. Investment | $1m | $1m | $1m |
| Fees | 1% / 20% | 1% / 20% | 1% / 20% |
| Inception | Nov-98 | Aug-98 | Dec-98 |
| Profitable Mthly % | 100% | 87% | 87% |
| Sharpe Ratio / Beta | 8.57 / 0.03 | 2.56 / 0.09 | 2.77 / 0.09 |

**MARKETS** – While the year has proved to be exceptionally difficult for fund managers, the month of May provided a brief respite to the turmoil. Stock prices appeared to stabilize and consolidate and thus the indices were mostly flat. The Fed's aggressive easing of interest rates and the impending tax cut resulted in a return to some measure of normalcy, but uncertainty reigned again in the latter part of May as investors expected negative second quarter earnings pre-announcements.

**PERFORMANCE** – The abatement of market volatility in May, as the market remained largely range-bound, resulted in a return to consistency for our three domestic funds. Due to these benign conditions we were able to monitor our portfolios with less requirement for re-hedging of our positions and this contributed to our stable returns. This allowed our newer, long-term positions to profit and our short-term portfolio to settle. We are proud of the fact that again we were able to temper risk to report consistent, positive results for Integral Arbitrage and Integral Hedging with Integral Equity achieving excellent results, as it profited from realignment and stability. Integral Equity tracks the underlying equity market more closely than our other two funds and thus exhibits more volatility of returns. Integral Hedging Offshore showed a return of 1.60% as its positions begin to mature, following its launch in June 2000.



**METHODOLOGY** - All three funds hedge the underlying positions that are entered, allowing consistent performance from steady, uncorrelated returns where asset protection and reasonable profits are the goal. Generally, positions are hedged against a 30% negative move with a 40% profit cap. When severe price volatility is experienced we are obliged to readjust and re-hedge our portfolios in order to protect against these moves. Systematic and specific risks are identified and managed, resulting in steady returns with reduced risk.

**OUTLOOK** - The markets remain concerned about recent and upcoming economic data and the weight of earnings visibility upon equity prices. We anticipate that the data will show continued weakness in the economy but we are cautiously optimistic about the anticipatory effects of the recent and expected rate cuts in the fourth quarter. We believe that the markets will stay generally range-bound and that we will be able to take advantage of current depressed equity levels. The significant market drop over the past few months, while proving difficult for existing long-term positions, offers significant opportunity for new investments. We are able to institute new, hedged positions on securities at prices that offer exceptional upside potential with reduced risk. These new positions are expected to reap accelerated returns in the fourth quarter of 2001 and into 2002.

**OVERVIEW** - Independent data sources rank our funds in the top 1% of all hedge funds in terms of their Sharpe ratios (the consistency of returns as a risk/reward ratio), with Integral Arbitrage rated the highest out of 1800 funds. Integral Investment Management, LP is constantly refining its mix of trading systems to improve on the returns and safety levels of its investments. Our synthetic hedging methodology offsets a large part of the directional volatility of the portfolio, allowing us to capture more steady profits. This allows us to diversify our investments and sources of income more effectively, and thereby capture opportunities in the markets that would be too volatile to take advantage of otherwise. We thank you for your business and hope you appreciate the performance that we have been able to maintain even in these adverse and volatile markets.

**DEVELOPMENTS** - The principals, James Dickey, Conrad Seghers and Sam Vogel, would like to announce that our audit, performed by Deloitte and Touche, will be in hand this week. Investors will be receiving complimentary copies of the audit and we invite all other interested parties to contact us for copies if interested. Please visit our website at www.integralinv.com for our latest downloads.

*Certain information concerning the Partnerships and their investing philosophies are included in this letter. This document is intended to give prospective investors an overview of Integral Equity, L.P., Integral Hedging, L.P., and Integral Arbitrage, L.P. (the Partnerships). It does not constitute an offer to sell, or a solicitation of an offer to buy, an interest in the Partnerships. This document is subject to the more complete disclosures set forth in the Partnerships' Offering Memorandums that must be reviewed prior to making any decision to join the Partnerships. We invite prospective investors to contact us for more information. Past performance is not necessarily indicative of future results.*

CS 000147



**INTEGRAL INVESTMENT MANAGEMENT, LP**
5720 LBJ Freeway, Suite 470, Dallas, Texas 75240
(972) 726-6200 phone, (972) 726-6288 fax
info@integralinv.com / www.integralinv.com

**June 30, 2001**
**Monthly Update**



| | INTEGRAL ARBITRAGE | INTEGRAL EQUITY | INTEGRAL HEDGING |
|---|---|---|---|
| **June 2001 Net Return** | 0.19% | -2.49% | -2.42% |
| **2000 Net Return** | 18.24% | 9.52% | 12.96% |
| **1999 Net Return** | 20.6% | 32.8% | 25.8% |
| **Strategy** | Derivative Arbitrage Market Neutral – Bonds, Equities | Hedged Long/Short Option Arbitrage – Equities & Equity Indices | Combination of IA and IE |
| **Weighting** | Global(25%)/Equity(75%) | Equity(100%) | Global(10%)/Equity(90%) |
| **Fund Assets** | $18m | $14m | $57m |
| **Min. Investment** | $1m | $1m | $1m |
| **Fees** | 1% / 20% | 1% / 20% | 1% / 20% |
| **Inception** | Nov-98 | Aug-98 | Dec-98 |
| **Profitable Mthly %** | 100% | 84% | 87% |
| **Sharpe Ratio / Beta** | 7.38 / 0.04 | 2.03 / 0.11 | 2.05 / 0.11 |

**MARKETS** – This year has seen a market buffeted by the opposing forces of a sharp earnings recession versus the Fed's easier monetary policy. The Fed has aggressively lowered interest rates 6 times this year by a total 2.75%, the largest Fed move in a calendar year, in an attempt to reinvigorate the faltering economy, against a backdrop of a steep decline in corporate earnings in most industrial sectors, particularly tech stocks. These market conditions have resulted in a virtual flat performance for most indices for the first half of 2001 (DJIA –2.64%, S&P –7.26%), except for the tech laden Nasdaq (-12.55%) that continues to suffer from an unwinding of speculative excesses and earnings disappointments.

**Return Distribution**

| | | | | | |
|---|---|---|---|---|---|
| > 4% | | | | | |
| 3% to 4% | | | | | |
| 2% to 3% | | | | | |
| 1% to 2% | | | | | |
| 0% to 1% | | | | | |
| -1% to 0% | | | | | |
| -2% to | | | | | |
| < -2% | | | | | |
| | 0 | 10 | 20 | 30 | 40 | 50 |

**PERFORMANCE** – Despite good May results, our short term exposure to selected profile stocks that fell victim to the latest ratings and slowdown resulted in a draw-down within our two relatively market correlated funds. Our trading strategies have some measure of cyclicality, and profitability tends to be weighted towards the end of our option cycle. This fact resulted in our having to aggressively re-hedge our portfolios as markets retreated in the last week of June expiration. Many of these trades were rolled and will be traded out at breakeven within the next two months. Our longer term trades remain stable and are expected to perform well during the next cycle. Integral Arbitrage maintained its positive track record with a return of +0.19%, while Integral Equity and Integral Hedging, which follow the underlying equity markets more closely, experienced losses of –2.49% and –2.42% respectively. Integral Hedging Offshore lost –1.60%, in sympathy with its domestic counterpart.

**METHODOLOGY** - All three funds hedge the underlying positions that are entered, allowing consistent performance from steady, uncorrelated returns where asset protection and reasonable profits are the goal. Generally, positions are hedged against a 30% negative move with a 40% profit cap. When severe price volatility is experienced we are obliged to readjust and re-hedge our portfolios in order to protect against these moves. Systematic and specific risks are identified and tempered, resulting in steady returns with reduced risk.

**OUTLOOK** - The markets remain concerned about recent and upcoming economic data and the weight of earnings visibility upon equity prices. We anticipate that the data will show continued weakness in the economy but we are cautiously optimistic about the anticipatory effects of the recent rate cuts in the fourth quarter. We believe that the markets will stay generally range-bound and that we will be able to take advantage of current depressed equity levels. The significant market drop over the past few months, while proving difficult for existing long-term positions, offers significant opportunity for new investments. We are able to institute new, hedged positions on securities at prices that offer exceptional upside potential with reduced risk. These new positions are expected to reap accelerated returns in the fourth quarter of 2001 and into 2002.

**OVERVIEW** - Independent data sources rank our funds in the top 1% of all hedge funds in terms of their Sharpe ratios (the consistency of returns as a risk/reward ratio), with Integral Arbitrage rated among the highest out of 1800 funds. Integral Investment Management, LP is constantly refining its mix of trading systems to improve on the returns and safety levels of its investments. Our synthetic hedging methodology offsets a large part of the directional volatility of the portfolio, allowing us to capture more steady profits. This allows us to diversify our investments and sources of income more effectively, and more efficiently capture opportunities in the markets that would be too volatile to take advantage of otherwise. We thank you for your business and hope you appreciate the performance that we have been able to maintain even in these adverse and volatile markets.

**DEVELOPMENTS** - The principals, James Dickey, Conrad Seghers and Sam Vogel, would like to announce that we have retained Spear, Leeds & Kellogg, a division of Goldman Sachs, as our Prime Broker due to their specialization in derivatives and market leading risk management systems. This development will result in even more efficient trade execution, administrative services, risk management and reporting. This move is expected to make a significant contribution to our operation. For additional information on any of our funds, please visit our website at www.integralinv.com

*Certain information concerning the Partnerships and their investing philosophies are included in this letter. This document is intended to give prospective investors an overview of Integral Equity, L.P., Integral Hedging, L.P., and Integral Arbitrage, L.P. (the Partnerships). It does not constitute an offer to sell, or a solicitation of an offer to buy, an interest in the Partnerships. This document is subject to the more complete disclosures set forth in the Partnerships' Offering Memorandums that must be reviewed prior to making any decision to join the Partnerships. We invite prospective investors to contact us for more information. Past performance is not necessarily indicative of future results.*

## INTEGRAL INVESTMENT MANAGEMENT, LP

5720 LBJ Freeway, Suite 470, Dallas, Texas 75240
(972) 726-6200 phone, (972) 726-6288 fax
info@integralinv.com / www.integralinv.com

**July 31, 2001**
**Monthly Update**



| | INTEGRAL ARBITRAGE | INTEGRAL EQUITY | INTEGRAL HEDGING |
|---|---|---|---|
| July '01 Net Return | 0.37% | -1.69% | -0.73% |
| 2001 YTD Net Return | 6.26% | -2.43% | -2.95% |
| 2000 Net Return | 18.24% | 9.52% | 12.96% |
| 1999 Net Return | 20.6% | 32.8% | 25.8% |
| Strategy | Derivative Arbitrage Market Neutral – US Equities, Bonds, G7 Forex Global G7 FX (20%) | Hedged Long/Short Option Arbitrage – Equities & Equity Indices | Combination of IA and IE |
| Weighting | US Equity (80%) | US Equity (100%) | Global G7 FX (10%) US Equity (90%) |
| Fund Assets | $21m | $13m | $56m |
| Min. Investment | $1m | $1m | $1m |
| Fees | 1% / 20% | 1% / 20% | 1% / 20% |
| Inception | Nov-98 | Aug-98 | Dec-98 |
| Profitable Mthly % | 100% | 82% | 81% |
| Sharpe Ratio / Beta | 6.77 / 0.04 | 1.74 / 0.11 | 1.85 / 0.11 |

**MARKETS** – This year has seen a market torn by the opposing forces of a sharp earnings recession versus the Fed's easing of monetary policy. The Fed has aggressively lowered interest rates 8 times this year by a total 3.0%, the largest Fed move in a calendar year, in an attempt to reinvigorate the faltering economy, against a backdrop of a steep decline in corporate earnings, particularly in technology stocks. These market conditions have resulted in a negative performance for most indices in 2001 (DJIA –2.4% YTD, S&P 500 –8.3% YTD), with the tech laden Nasdaq (-17.9% YTD) suffering worst from an unwinding of speculative excesses and earnings disappointments.

**PERFORMANCE** – Integral Arbitrage once again reported positive results though they were lower than average due to the market declines. With our hedges holding but continually being stressed with lower lows, our exposure to selected high-profile stocks, that fell victim to the latest ratings cuts and slowdowns, resulted in a draw-down within our two relatively market correlated funds. Our trading strategies have some measure of cyclicality. Profitability tends to be weighted towards the end of our option cycle, which due to market conditions has now been extended into early next year. Many of our losing trades were thus rolled and are anticipated to be liquidated at breakeven within the next several months. Our longer term trades remain stable and are expected to perform well during the next cycle. In addition, the influx of new capital that we are experiencing is able to enter the markets at these lower levels, with protection, and thus has excellent chances for generating significant profits for the fund as a whole. Integral Arbitrage maintained its positive track record with a return of +0.37%, while Integral Equity and Integral Hedging, which follow the underlying equity markets more closely, experienced losses of –1.69% and –0.73% respectively. Integral Hedging Offshore lost –0.58%, in sympathy with its domestic counterpart. Now that the volatility in the markets has waned Integral Hedging is beginning to show the expected performance figures that are a blend of those of Integral Arbitrage and Integral Equity.

**METHODOLOGY** – All three funds hedge the underlying positions that are entered, allowing consistent performance from steady, uncorrelated returns where asset protection and reasonable profits are the goal. Generally, positions are hedged against a 30% negative move with a 40% profit cap. When severe price volatility is experienced we must readjust and rehedge our portfolios in order to protect against these moves. Systematic and specific risks are identified and tempered, resulting in steady returns with reduced risk. There are added markets of G5 bonds and currencies that are traded in Integral Arbitrage, which are not traded in Integral Equity, that do add stability to the portfolio in market conditions such as these.

**OUTLOOK** – The markets remain concerned about recent and upcoming economic data and the weight of earnings visibility upon equity prices. We anticipate that the data will show continued weakness in the economy but we are cautiously optimistic about the anticipatory effects of the recent rate cuts in the fourth quarter. We believe that the markets will stay generally range-bound and that we will be able to take advantage of current depressed equity levels. The significant market drop over the past few months, while proving difficult for existing long-term positions, offers significant opportunity for our new investments. We are able to institute new, hedged positions on securities at prices that offer exceptional upside potential with reduced risk. These new positions are expected to reap accelerated returns in the first part of 2002.

**OVERVIEW** – Independent data sources rank our funds in the top 1% of all hedge funds in terms of their Sharpe ratios (the consistency of returns as a risk/reward ratio), with Integral Arbitrage rated among the highest out of 1800 funds. Integral Investment Management, LP is constantly refining its mix of trading systems to improve on the returns and safety levels of its investments. Our synthetic hedging methodology offsets a large part of the directional volatility of the portfolio, allowing us to capture more steady profits. This allows us to diversify our investments and sources of income more effectively, and thereby capture opportunities in the markets that would be too volatile to take advantage of otherwise. We thank you for your business and hope you appreciate the performance that we have been able to maintain even in these adverse and volatile markets.

**DEVELOPMENTS** – Due to market demand we are planning on launching an offshore version of Integral Arbitrage in October. We are also anticipating several large new domestic investments in the coming weeks. Last month we announced that we have retained Spear, Leeds & Kellogg, a division of Goldman Sachs, as our Prime Broker due to their specialization in derivatives and market leading risk management systems. We have since experienced much more efficient trade execution, administrative services, risk management and reporting than Morgan Stanley was ever able to provide. We are also still in the process of resolving outstanding issues with Morgan Stanley. For additional information on any of our funds, please visit our website at www.integralinv.com

*Certain information concerning the Partnerships and their investing philosophies are included in this letter. This document is intended to give prospective investors an overview of Integral Equity, L.P., Integral Hedging, L.P., and Integral Arbitrage, L.P. (the Partnerships). It does not constitute an offer to sell, or a solicitation of an offer to buy, an interest in the Partnerships. This document is subject to the more complete disclosures set forth in the Partnerships' Offering Memorandums that must be reviewed prior to making any decision to join the Partnerships. We invite prospective investors to contact us for more information. Past performance is not necessarily indicative of future results.*




# INTEGRAL ARBITRAGE, LP

### Partner Account Statement
### July 31, 2001

**John & Linda Evans**
58 S. Shaggy Mountain Road
Riverton, UT 84065

|  | July 31, 2001 |
|---|---|
| **Changes in Capital Account Value for the period:** | |
| **Capital Account Value at June 30, 2001** ........................................ $ | **0** |
| Contributions during the period ...................................................... | 1,250,000 |
| Withdrawals during the period........................................................ | 0 |
| Net income (loss) for the period .................................................... | 4,867 |
| Investment management fee........................................................... | (1,042) |
| Accrued performance fee............................................................... | (765) |
| **Capital Account Value at July 31, 2001** ...................................... $ | **1,253,060** |

Distributed by:
Olympia Capital Associates, LP
1211 Avenue of the Americas
New York, NY 10036

Olympia Capital Associates LP ("Olympia") has prepared this statement based, in part, upon information and investment valuations directly received from entities outside of the Fund. Such information and valuations cannot be verified by Olympia and accordingly we do not express an opinion or any form of assurance thereon.