Murphy Exhibits

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | CIVIL ACTION No. 3:04-CV-01320-K |
| vs. | § § § | |
| CONRAD P. SEGHERS and JAMES R. DICKEY, | § § § | |
| Defendants. | § § | |

## AFFIDAVIT OF WILLIAM J. MURPHY III

## EXHIBITS

1.  Set of marketing documents concerning Exponential Returns, L.P., with a cover letter dated June 2, 1997

2.  Offering Memorandum for Exponential Returns, L.P.

3.  Audited financial statement for Exponential Returns, L.P., dated December 31, 1997

4.  Audit was performed by the independent accounting firm of Whitley, Penn & Associates dated June 30, 1998

5.  Investor update dated December 7, 1998

6.  Accounting "review" dated February 17, 1998

7.  Accounting review from Whitley, Penn and Associates dated June 10, 1999

Bill Murphy Affidavit Exhibits

CS 000406

8.      Email dated June 10, 1999 from genesislp@earthlink.net

9.      Email dated July 14, 1999 from genesislp@earthlink.net

10.     Email dated August 12, 1999

11.     Monthly email dated September 13, 1999

12.     Monthly email dated September 14, 1999

13.     Monthly email dated October 8, 1999

14.     Monthly email dated October 14, 1999

15.     Monthly report detailing the September 1999 performance results.

16.     Letter from Whitley, Penn & Associates dated October 22, 1999

17.     Monthly email dated November 9, 1999

18.     Monthly newsletter titled "1999 Year in Review"

19.     Year-end summary of the three hedge funds

20.     Email dated January 11, 2000

21.     Email to genesismgmt@earthlink.net

22.     January 21, 2000 email with an attachment

23.     February 9, 2000 email

24.     February 10, 2000 email

25.     March 13, 2000 email (Exhibit 25) from Conrad Seghers.

26.     March 14, 2000 email from Conrad Seghers

27.     On April 6, 2000 email

28.     May 10, 2000 email

29.     June 6, 2000 email

Bill Murphy Affidavit Exhibits

CS 000407



30.    July 14, 2000 email

31.    July 14, 2000 email

32.    Semiannual Report – June 30, 2000

33.    Email dated August 11, 2000

34.    August 14, 2000 email from genesismgmt@earthlink.net

35.    September 18, 2000 email

36.    October 6, 2000 email

37.    September 2000 results

38.    Cover email dated October 10, 2000 and Quarterly Report

39.    December 11, 2000 email with an attachment

40.    Attachment to Exhibit 39 "Results Report – November 30, 2000"

41.    December 19, 2000 email (Exhibit 41)

42.    Monthly performance email titled "Results Report – January 31st, 2001"

43.    March 26, 2001 email

44.    Monthly Report Attachment to Exhibit 43

45.    PowerPoint presentation

46.    April 25, 2001 email

47.    April 25, 2001 email attachment

48.    May 15, 2001 email with an attachment

49.    Attachment to Exhibit 48

50.    Monthly email update for May 31, 2001

51.    June 20, 2001 letter

Bill Murphy Affidavit Exhibits

CS 000408

52.    Audit of Deloitte and Touche titled "Integral Hedging, L.P. (A Texas Limited Partnership) Financial Statements Year Ended December 31, 2000 and Independent Auditors' Report."

53.    Statement for Sovereign Assets, LLC for June 30, 2001

54.    July 13, 2001 letter from OCA

55.    July 20, 2001 email with an attachment

56.    July 20, 2001 email

57.    Attachment to Exhibit 56

58.    Letter dated August 10, 2001 from the auditing firm of Bulloch, Seger, Weaver and Company, L.L.C.

59.    Email dated August 30, 2001 from info@integralinv.com

60.    Microsoft Word attachment titled July 31, 2001 Monthly Update

61.    August 31, 2001 Monthly Update

62.    October 23, 2001 investor letter

63.    November of 2002 letter from Receiver Dan Jackson

64.    December of 2002 letter from Receiver Dan Jackson

65.    June 2003 letter from Receiver Dan Jackson

CS 000409



*Exponential Returns*

6157 Crestmont
Dallas, TX 75214
(972) 653-3617

June 2, 1997

Mr. Bill Murphy
1097 Rorboro Place
Atlanta, GA 30324

Dear Mr. Murphy,

Per your conversation with Conrad Seghers, attached is a Summary of Exponential Returns, L.P. which details the investment strategies we will employ and why we expect our strategies to produce much better than average returns. Also included is a bound copy of all the documents you will need to join the fund: the Offering Memorandum, Subscription Agreement and Questionnaire. If you wish to join, simply return the two loose copies of the Subscription Agreement and the loose copy of the Questionnaire to our attention at the address above.

Our goal is to manage a diversified equity portfolio to provide consistent, long-term capital appreciation by making careful analytical decisions about investing in particular stocks, while using modern non-traditional hedging techniques to protect the portfolio. An especially appealing facet of the strategies is how they also help to reduce risk when compared with straight stock investments.

Controlling risk is a personal imperative that will be accomplished through option trading strategies and very close monitoring of market prices on Partnership holdings. Our unique investment approach uses a combination of. hedging techniques designed to limit stock market risk and enhance potential capital gains. We firmly believe that this trading approach has demonstrated its ability to provide significant risk control to asset management, allowing us to aggressively pursue the best opportunities for capital appreciation white protecting the integrity of our portfolio.

The importance of maximizing capital appreciation can not be overemphasized. An investor with $100,000 earning a 20% annual return will have over $87,000 more after only five years than an investor with $100,000 earning 10%. After ten years the difference grows to almost $360,000. The Partnership will utilize three major strategies for attaining returns that truly make a difference over time.

CS 000410



*Exponential Returns*

Our investing strategies can be replicated month after month. Given the right resources and information, companies meeting the necessary criteria can be found and then utilized, through these investing strategies, to achieve outstanding returns. Maximization of return from these approaches (and minimization of risk) requires constant attention to market activity in any open positions.

We hope you will consider joining our disciplined pursuit of rewarding investment opportunities. Thank you for your consideration. We will follow up with you next month if we do not hear from you before then. We look forward to a long and successful partnership.

Very truly yours,

James R. Dickey
President

*Certain information concerning the Partnership and its investing philosophy follows this letter. These summary documents are intended to give prospective investors an overview of Exponential Returns, L.P (the Partnership). This Summary does not constitute an offer to sell, or a solicitation of an offer to buy, an interest in the Partnership. This Summary is subject to the more complete disclosures set forth in the Partnership's Offering Memorandum, which must be reviewed prior to making any decision to join the Partnership. We invite prospective investors to contact us for more information, including copies of the memorandum.*

CS 000411



# Partnership Summary

CS 000412



*Exponential Returns*

---
## INVESTING FOR CAPITAL APPRECIATION
---

Exponential Returns believes that long-term capital appreciation results from investing in stocks of well-managed companies and protecting those investments with a variety of trading strategies. The Partnership's portfolio currently consists of:

1.   A core of diversified securities traded on U.S. stock exchanges which our research suggests will substantially outperform the stock market within 12 to 18 months.

2.   Shorter term investment positions which may be hedged and which we believe may appreciate 10 percent or more within a short time frame.

3.   Option spreads and straddles created by our hedging strategies.

Our research-based analysis is the ultimate determinant of whether we purchase or sell a security, of the price levels for implementing our option trading strategy and of other investment decisions. We aggressively trade our equity portfolio and adjust the core holdings as we evaluate the expected investment returns.

We apply our own fundamental and technical research methods, to create a dynamic process for achieving our goal of capital appreciation with controlled risk. We believe that the Partnership's opportunistic approach to asset management, compounded over time, will continue to result in long-term capital appreciation.

The stock market reacts in a volatile manner to changes in the economic, political, and social landscapes. At Exponential Returns, we view volatility as a window of opportunity for establishing short-term investments, with risk controlled by appropriate hedging techniques. We manage our portfolio with a variety of modern hedging strategies to take advantage of the most promising investment opportunities.

Our option trading strategies consist of matrices of put and call options on specific equities, which reflect our research viewpoint on the performance of those stocks over the next 90 days. During this period our valuation analysis is ongoing and different investment decisions may be triggered, depending upon a stock's price movement until the near term options expire. After these options expire, the Partnership generally has a hedged or discounted equity position with significant upside potential.

Whatever decisions are triggered, our objective remains constant: to establish and maintain a portfolio with the potential for substantial capital appreciation and limited risk (i.e., an attractive risk/reward ratio). These objectives are accomplished by three main trading strategies.

CS 000413



*Exponential Returns*

> ## Strategy #1:
> ## Buy Equity in Profitable, High-Growth Companies

The first trading strategy of the Partnership is to purchase stocks with solid fundamentals during market uptrends. To fulfill the Partnership's objectives, the General Partner will monitor a variety of economic, monetary and market data in order to identify and analyze broad economic, industry and market trends. In broad terms, the General Partner will use this data so that the Partnership is fully invested during market growth cycles and sufficiently liquid during downtrends so that it can accumulate, at favorable prices, stocks with substantial price appreciation potential.

In its assessment of the fundamental value of a company, the General Partner will analyze the company's current financial situation, its position within its industry, and the trends in that industry. The General Partner will consider such factors as the company's earnings potential (generally choosing companies with year-over-year earnings increases of greater than 50% and significant annual revenue growth), market capitalization, anticipated cash flow, asset value, and the historical relationship between its market prices and its fundamental value. The Partnership does not inherently favor any particular industry or sector, but the Partnership will focus on companies that are leaders in their industries and are in industries with favorable market trends.

The General Partner will also base its investment decisions in part on the technical analysis of selected stocks. Technical analysis attempts to ascertain the relative market strengths of stocks, their price support and resistance levels, various moving averages and historical price activity, and strong technical indicators (positive stock price trends, etc.).

At any given time the Partnership will usually hold between ten and fifteen stocks. This should give the Partnership protection from rapid price changes in one or more stocks. At the same time, it is a small enough number of holdings to allow for constant monitoring of each and to avoid being so widely diversified that the performance of the Partnership is limited to that of the market as a whole.

CS 000414



*Exponential Returns*

---

### Strategy #2:
### Sell Options to Leverage Results and Reduce Risk

The Partnership will also use certain investment strategies and techniques to hedge against market risks and to enhance its performance. These strategies and techniques will primarily consist of selling (writing) call and put options on securities. An options contract entitles the holder to purchase ("call") or sell ("put") a security at a particular price within a specific period of time. The Partnership will engage in the trading of put and call options and will participate in the options markets both for earnings potential and to hedge against adverse market fluctuations.

Because the stocks the Partnership selects have strong growth potential, the time premium paid by investors for call options on their stocks are, as a rule, quite significant. The Partnership will take advantage of this situation by selling covered calls (usually with expiration dates one month or less in the future). This decreases the cost basis in the stock, reducing the risk and increasing the return (until the stock reaches the option strike price plus the amount received for the call).

CS 000415

*Exponential Returns*

---

## Strategy #2: EXAMPLE
## Sell Covered Calls to Leverage Results and Reduce Risk

If our research indicates that a stock trading currently at $37.50 is an excellent value, we could purchase the stock outright. Or, to minimize the impact of short-term price fluctuations, we could initiate the following trade:

| Action | Quantity | Strike Price | Price | Cost | Margin Cost |
|---|---|---|---|---|---|
| Buy Stock | 10,000 | N/A | $37.50 | -$375,000 | -$187,500 |
| Sell Call | 100 | $40 | $1.812 | +$18,120 | +$18,120 |

Net Cost:  $169,380

This trade would allow us to control $375,000 in stock for less than $170,000, and reduce the risk involved compared to a simple stock purchase. The option expiration date would be one month away or less. During that month, one of the following situations could result:

| Stock Price | Actions | Result with Simple Stock Purchase* | Result with Covered Call Strategy * |
|---|---|---|---|
| Below $35.688 (a 4.8% drop in less than 1 month). | Stock sold. | A loss of $18,120 (4.8%). | No loss. |
| Between $35.688 and $39.99 | No action. | Potential loss of $18,120 (4.8%), potential gain of $25,000 (6.7%). | No potential loss, potential gain of $43,120 (23%). |
| Above $39.99 (a 6.7% gain in less than 1 month). | Call option exercised. Stock sold. | Gain of $25,000 (6.7%), potential gain of $10,000 per point increase in stock price. | Gain of $43,120 (23%). |

* For simplicity, the example excludes cost of funds and commissions.

Since the covered call strategy greatly reduces risk and still has a potential return of over 20% **in one month** with little price increase in the stock, it provides an excellent risk/reward ratio.

CS 000416



*Exponential Returns*

---

### Strategy #3:
### Use Option Spreads to Improve Results and Reduce Risk

---

The Partnership may also attempt to take advantage of discrepancies in pricing among related issues, due to exaggerated time premiums on some options and not others. This will be accomplished by engaging in spread trading of put and call options, on the same stock, at various strike prices or months of expiration.

The Partnership will purchase the undervalued side of the spread and simultaneously sell short the overvalued side, with the goal of capturing the price discrepancy over time. Generally, this will consist of buying a call that is in-the-money (has a strike price lower than the current stock price) and selling a call that is out-of-the-money (has a strike price higher than the current stock price).

As with the covered call sale strategy, the Partnership will generally conduct these types of trades on options with an expiration date one month or less in the future. The use of these options trading techniques by the Partnership is designed to decrease the usual market risks associated with the underlying stocks.

CS 000417


*Exponential Returns*

## Strategy #2: EXAMPLE
## Sell Covered Calls to Leverage Results and Reduce Risk

If our research indicates that a stock trading currently at $37.50 is an excellent value, we could purchase the stock outright. Or, to minimize the impact of short-term price fluctuations , we could initiate the following trade:

| Action | Quantity | Strike Price | Price | Cost | Margin Cost |
|--------|----------|--------------|-------|------|-------------|
| Buy Stock | 10,000 | N/A | $37.50 | -$375,000 | -$187,500 |
| Sell Call | 100 | $40 | $1.812 | +$18,120 | +$18,120 |

Net Cost:  $169,380

This trade would allow us to control $375,000 in stock for less than $170,000, and reduce the risk involved compared to a simple stock purchase. The option expiration date would be one month away or less. During that month, one of the following situations could result:

| Stock Price | Actions | Result with Simple Stock Purchase* | Result with Covered Call Strategy * |
|-------------|---------|-----------------------------------|-------------------------------------|
| Below $35.688 (a 4.8% drop in less than 1 month). | Stock sold. | A loss of $18,120 (4.8%). | No loss. |
| Between $35.688 and $39.99 | No action. | Potential loss of $18,120 (4.8%), potential gain of $25,000 (6.7%). | No potential loss, potential gain of $43,120 (23%). |
| Above $39.99 (a 6.7% gain in less than 1 month). | Call option exercised. Stock sold. | Gain of $25,000 (6.7%), potential gain of $10,000 per point increase in stock price. | Gain of $43,120 (23%). |

* For simplicity, the example excludes cost of funds and commissions.

Since the covered call strategy greatly reduces risk and still has a potential return of over 20% **in one month** with little price increase in the stock, it provides an excellent risk/reward ratio.

CS 000418



*Exponential Returns*

## Management

**Conrad P. Seghers, Ph.D.** is Chief Executive Officer of Exponential Management L.L.C. He has over ten years experience in investment and financial analysis, acquisition analysis, corporate development, marketing and investor relations. He has been active in securities trading on the Nasdaq, American Stock Exchange, New York Stock Exchange, Chicago Board Options Exchange, Small Order Execution System, SelectNet, and Instinet Markets since 1986.

Dr. Seghers is involved in the acquisition of institutional, private and federal investment funding for small corporations and partnerships that retain him as a consultant and partner. He has worked for American Growth Capital Corporation since 1993, participating in road show presentations and financing negotiations with institutional and private investors. In addition, he is associated with American Growth Fund I, a venture capital partnership, performing company analysis and due diligence which has offered him the opportunity for several seats on the boards of high-growth corporations.

Dr. Seghers focuses on biotechnology, health-care, information technology, telecommunications and other high-growth and emerging industries. He worked at the University of Texas Southwestern Medical Center and the Howard Hughes Institute from 1986 to 1993, where he acquired expertise in the areas of health-care, biotechnology, and emerging technologies. During this period he was active in mergers and acquisitions and management consulting for the health-care and pharmaceutical industries.

He received B.S. and M.S. degrees from Texas A&M University, a Ph.D. from the University of Texas, and an Executive M.B.A. degree from Baylor University.

**James R. Dickey** is President of Exponential. He brings to the Partnership over eight years of experience in the design, implementation and sale of financial products. Since 1995 he has been Vice President of Product Development at Associates First Capital Corporation, the largest publicly-traded consumer finance company in the U.S. His responsibilities include new product design, implementation and marketing. He also manages product, consumer and competitor research. His most recent product development efforts have focused on annuities and other insurance-related investment vehicles.

From 1992 to 1995, Mr. Dickey was head of product development for Republic Financial Services, Inc., where his responsibilities included establishing marketing and pricing strategies. Prior to that, he was Assistant Product Manager with Great American Insurance, a subsidiary of American Financial Corporation, where his duties included product strategy and design, and market and firm analysis. Each of his positions has included significant involvement in compliance and regulatory issues at both the state and federal level.

Mr. Dickey received his B.A. from Stanford University and M.B.A. from Baylor University.

CS 000419

## *Exponential Returns*

| | Fund Structure |
|---|---|

**GENERAL PARTNER:**
Exponential Returns Management, L.P.

**GENERAL PARTNER'S INVESTMENTS:**
The principals of Exponential Management L.L.C. have invested an aggregate of $100,000 in the Partnership. They intend to invest up to an additional $150,000, as needed, in amounts sufficient to maintain their percentage interest. They have also agreed that they will reinvest in the Partnership all management fees received from the Partnership, after payment of related expenses and taxes.

**MINIMUM CAPITAL CONTRIBUTION:**
$100,000, subject to exceptions.

**CONTRIBUTIONS:**
Monthly.

**ALLOCATION OF PROFITS:**
Each Limited Partner will be allocated annual net profits equal to 80% of the ratio that his/her capital bears to the total capital of all partners.

**HURDLE RATE:**
The General Partner does not earn 20% of the annual net profits unless the gains in the Partnership exceed the average return on the one-year T-Bill for the year.

**HIGH WATER-MARK:**
Should the Partnership lose money at any point, the General Partner will not earn 20% of the gains until the limited partners' funds are brought back up to their previous highest level.

**WITHDRAWALS:**
Quarterly.

**DISTRIBUTIONS:**
Limited partners may either take distributions or reinvest realized and unrealized profits annually.

**FEES AND EXPENSES:**
There is a 1% management fee, deducted quarterly.

**REPORTS TO PARTNERS:**
Comprehensive performance information promptly following the conclusion of each quarter; annual financial information; a K-I for Federal income tax reporting and an audit report promptly following the conclusion of each year.

**IRS AND TAX CLASSIFICATION:**
The use of the L.P. structure means that corporate taxes are avoided, increasing the returns of the partners.

CS 000420

*OFFERING MEMORANDUM*                                    December 2, 1996

# EXPONENTIAL RETURNS, L.P.

Limited Partnership Interests

Minimum Initial Investment: $100,000

Exponential Returns, L.P. (the "Partnership") is a limited partnership which seeks maximum capital appreciation from its investments consistent with reasonable risk. The Partnership will invest its assets primarily in a diversified portfolio of domestic common stocks and related put and call options. Current income is a secondary objective. The Partnership intends to use leverage as an investment technique. See "The Partnership -- Investment Objectives".

Following the first anniversary of an investment in the Partnership, a Limited Partner will be entitled to withdraw all or a portion of its investment quarterly, subject to certain limitations. See "Summary of the Partnership Agreement".

The General Partner of the Partnership is Exponential Returns Management, L.P., a Texas limited partnership, of which Exponential Management LLC, a Texas limited liability company, is the general partner. Conrad P. Seghers and James R. Dickey are the principals of Exponential Management LLC and they will implement the Partnership's investment strategy. The General Partner holds a 1% equity interest in the Partnership and, as needed, will make further cash investments in the Partnership in amounts sufficient to maintain such percentage interest (or such smaller percentage as may be permitted by applicable IRS regulations and rulings).

The principals of Exponential have invested an aggregate of $100,000 in the Partnership through the General Partner and, individually, as Limited Partners, and intend to invest up to an additional $150,000 during 1997. They have agreed that, at least until January 1, 1999, they will not reduce the amount of their investments and that they will reinvest in the Partnership all management fees received from the Partnership, after payment of related expenses and taxes.

Limited partnership interests ("Interests") are being offered solely to qualified investors. The minimum investment is $100,000, although the General Partner may accept subscriptions for less. Interests will continue to be offered for an indefinite period, and additional limited partners may be admitted from time to time. There is no maximum dollar amount of Interests that the Partnership may sell. See "Terms of the Offering".

**THESE SECURITIES ARE SPECULATIVE AND INVOLVE SUBSTANTIAL RISK. SEE "THE PARTNERSHIP -- INVESTMENT OBJECTIVES" AND "RISK FACTORS".**

**THESE SECURITIES HAVE NOT BEEN REGISTERED WITH OR APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, THE ATTORNEY GENERAL OF THE STATE OF NEW YORK OR ANY OTHER STATE SECURITIES COMMISSION. NO SUCH COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM NOR IS IT INTENDED THAT ANY SUCH COMMISSION WILL DO SO. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

---

**EXPONENTIAL RETURNS, L.P.**
c/o Exponential Returns Management, L.P.
6157 Crestmont Drive, Dallas, Texas 75214
(214) 692-8385

Name of Offeree:_____          Copy No. _____

CS 000421

The Partnership is not intended to be operated as a regulated investment company or to be subject to regulation under the Investment Company Act of 1940.

Interests are offered subject to prior sale and to the Partnership's right to reject any subscription, in whole or in part, and to terminate or restrict the size of this Offering.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO BUY, INTERESTS IN ANY JURISDICTION IN WHICH SUCH AN OFFER OR SOLICITATION WOULD BE UNLAWFUL. THIS MEMORANDUM CONSTITUTES AN OFFER ONLY TO THE OFFEREE NAMED ON THE COVER PAGE.

This confidential Memorandum has been prepared by the Partnership for presentation to qualified investors. Any reproduction or distribution of this Memorandum, in whole or in part, or the disclosure of its contents, is prohibited.

The Interests have not been registered under the Securities Act of 1933 and will, therefore, be "restricted securities" for purposes of that Act. There is no public market for the Interests and it is not expected that any market will develop.

Prospective investors should not construe the contents of this Memorandum as legal, tax or investment advice. Each prospective investor should consult its own counsel, accountants and business advisors as to the legal, tax and business implications of an investment in the Partnership.

EXCEPT FOR THE OFFICERS OF EXPONENTIAL RETURNS MANAGEMENT LLC, NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS MEMORANDUM, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE PARTNERSHIP OR ANY OTHER PERSON. NEITHER THE DELIVERY OF THIS MEMORANDUM NOR ANY DISTRIBUTION AND RESALE MADE HEREUNDER SHALL, UNDER ANY CIRCUM- STANCES, CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE PARTNERSHIP SINCE THE DATE HEREOF.

Prior to the sale of an Interest to any prospective investor, the prospective investor and its representatives, if any, will have an opportunity to ask questions of, and receive answers from, officers of Exponential Returns Management LLC concerning any aspect of this Offering and to obtain from them any additional information necessary to verify the information set forth in this Memorandum to the extent that they possess such information or can acquire it without unreasonable effort or expense.

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT.

EACH FLORIDA RESIDENT WHO SUBSCRIBES TO PURCHASE AN INTER- EST HAS THE RIGHT TO WITHDRAW HIS SUBSCRIPTION AND TO RECEIVE A FULL REFUND OF ALL MONIES PAID WITHIN THREE BUSINESS DAYS AFTER THE EXECUTION OF THE SUBSCRIPTION AGREEMENT OR PAYMENT FOR THE INTEREST IS

CS 000422

MADE, WHICHEVER IS LATER.  SUCH WITHDRAWAL WILL BE WITHOUT ANY FURTHER LIABILITY TO ANY PERSON.  TO ACCOMPLISH THIS WITHDRAWAL, A SUBSCRIBER NEED ONLY SEND A LETTER OR TELEGRAM TO THE PARTNERSHIP INDICATING HIS INTENTION TO WITHDRAW.  SUCH LETTER OR TELEGRAM SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMENTIONED THIRD BUSINESS DAY.  A LETTER SHOULD BE MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ENSURE ITS RECEIPT AND TO EVIDENCE THE TIME OF MAILING.

THE INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE BANKING COMMISSIONER OF THE STATE OF CONNECTICUT NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFERING.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

EACH PENNSYLVANIA RESIDENT WHO SUBSCRIBES TO PURCHASE AN INTEREST HAS THE RIGHT TO WITHDRAW HIS SUBSCRIPTION AND TO RECEIVE A FULL REFUND OF ALL MONIES PAID WITHIN TWO BUSINESS DAYS AFTER RECEIPT BY THE PARTNERSHIP OF HIS WRITTEN BINDING CONTRACT OF PURCHASE.  SUCH WITHDRAWAL WILL BE WITHOUT ANY FURTHER LIABILITY TO ANY PERSON.  TO ACCOMPLISH THIS WITHDRAWAL, A SUBSCRIBER NEED ONLY SEND A LETTER OR TELEGRAM TO THE PARTNERSHIP INDICATING HIS INTENTION TO WITHDRAW.  SUCH LETTER OR TELEGRAM SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMENTIONED SECOND BUSINESS DAY.  A LETTER SHOULD BE MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ENSURE ITS RECEIPT AND TO EVIDENCE THE TIME OF MAILING.  SHOULD THE REQUEST BE MADE ORALLY, YOU SHOULD ASK FOR WRITTEN CONFIRMATION THAT IT HAS BEEN RECEIVED.

THE INTERESTS WILL BE SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE GEORGIA SECURITIES ACT OF 1973, AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

## TABLE OF CONTENTS

| | Page |
|---|---|
| THE PARTNERSHIP | 1 |
| General | 1 |
| Investments | 1 |
| Investment Policies | 3 |
| Management | 5 |

CS 000423

Page

USE OF PROCEEDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

RISK FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Diversification; Unspecified Investments . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Reliance on the General Partner and Exponential . . . . . . . . . . . . . . . . . . . 10
    Investment in Unlisted or Restricted Securities . . . . . . . . . . . . . . . . . . . . . 10
    Limited Liquidity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Conflicts of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TERMS OF THE OFFERING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Manner of Subscribing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    Private Placement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SUMMARY OF THE PARTNERSHIP AGREEMENT . . . . . . . . . . . . . . . . . . . . . . 12
    Responsibilities of the General Partner . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Partnership Finances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Withdrawals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Optional Redemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Treatment of "Hot Issues" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Exculpation and Indemnification of the General Partner and its Affiliates . . . . . . . . 15
    Term and Dissolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Restrictions on Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TAX CONSEQUENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Qualification as a Partnership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    General Tax Treatment of the Partnership and the Limited Partners . . . . . . . . . . . 17
    Trading or Investing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Limits on Deductibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Foreign Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    State and Local Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ERISA CONSIDERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Exhibits

    A     Agreement of Limited Partnership
    B     Subscription Agreement
    C     Confidential Offeree Questionnaire

CS 000424

# THE PARTNERSHIP

### General

    Exponential Returns, L.P. (the "Partnership") is a Texas limited partnership which seeks maximum capital appreciation from its investments consistent with reasonable risk. The Partnership will invest its assets in a diversified portfolio of domestic common stocks and covered and uncovered put and call options. The General Partner of the Partnership is Exponential Returns Management, L.P., a Texas limited partnership, of which Exponential Management LLC, a Texas limited liability company ("Exponential"), is the general partner. The General Partner will select and manage the Partnership's investments and will administer the business and affairs of the Partnership. Conrad P. Seghers and James R. Dickey are the principals of Exponential. They have developed and will implement the Partnership's investment strategy on behalf of the General Partner and Exponential. The Partnership will begin operations in January 1997 and expects to continue its business until December 31, 2006, at which time it will dissolve and liquidate, unless the General Partner and a majority in interest of the Limited Partners determines otherwise.

    The principals of Exponential have invested an aggregate of $100,000 in the Partnership through the General Partner and, individually, as Limited Partners, and intend to invest up to an additional $150,000 during 1997. They have agreed that, at least until January 1, 1999, they will not reduce the amount of their investments and that they will reinvest in the Partnership all management fees received from the Partnership, after payment of related expenses and taxes. Thereafter, should they wish to reduce their investments in the Partnership by an aggregate of $100,000 or more, they will not do so without providing the Limited Partners with at least six months' notice of such intention. See "Management".

    The Partnership is offering limited partnership interests ("Interests") for sale solely to qualified investors. The minimum investment is $100,000, although the General Partner may accept subscriptions for less. See "Terms of the Offering". Purchasers of Interests become limited partners of the Partnership. A copy of the Agreement of Limited Partnership of the Partnership (the "Partnership Agreement") is an exhibit to this Memorandum. The General Partner holds a 1% equity interest in the Partnership and, as needed, will make further cash investments in the Partnership in amounts sufficient to maintain at all times such percentage interest (or such smaller percentage as may be permitted by applicable IRS regulations and rulings).

### Investments

    **General.** The principal objective of the Partnership is to realize substantial capital appreciation on its investments, both long term and short term. The Partnership will invest its assets primarily in a diversified portfolio of common stocks of domestic issuers, as well as covered and uncovered put and call options. To a lesser extent, the Partnership may also invest in preferred stocks and securities convertible or exercisable into common stock, including notes, debentures, preferred stock and warrants, in order to obtain current income or when, in the opinion of the General Partner, such securities may be purchased at favorable prices in relation to the underlying common stock. The Partnership will engage to a significant extent in the trading

CS 000425

of put and call options on stocks included in its portfolio, or which it has a right to acquire through conversion or exchange ("covered options"), as well as, to a lesser extent, other stocks not owned by the Partnership ("uncovered options").

To fulfill the Partnership's objectives, the General Partner will monitor a variety of economic, monetary and market data in order to identify and analyze broad economic, industry and market trends so that the Partnership's investment strategy is kept consistent with such trends. In broad terms, the General Partner will attempt to use this data so that the Partnership is fully invested during market growth cycles and sufficiently liquid during downtrends so as to be able to accumulate at favorable prices stocks with substantial price appreciation potential. In addition, the General Partner will occasionally attempt to effect strategic short sales with respect to industries that appear significantly over-valued.

As to the selection of individual stocks, the Partnership will concentrate on companies with small to medium market capitalizations ranging between $300 million to $1 billion, although investments may be made in smaller and larger companies. The Partnership will look for companies whose prospects for substantial price appreciation exceed their potential risk of loss in market value because they are undervalued in relation to their assets, earnings, earnings potential, industry position or break-up value. The securities of such companies may be undervalued due to adverse operating results, poor general economic or industry conditions, adverse publicity or simply because they are out of favor in the investment community.

In its assessment of the fundamental value of an undervalued company, the General Partner will attempt to identify the reasons for its undervaluation by the public and will analyze its current financial situation, its position within its industry, and the trends in such industry. The General Partner will consider such factors as the company's earnings potential, anticipated cash flow, asset value, leverage and the historical relationship between its market prices and its fundamental value. The General Partner also will attempt to evaluate the strength and experience of the company's management. In particular, the General Partner will seek to identify "special situation" factors which suggest that an improvement in the company's market price is likely, such as an increase in cash flow, the generation of excess cash to pay down debt, a turnaround in operations, the introduction of new products, the sale or termination of unprofitable operations, an acquisition or merger, a reorganization or emergence from bankruptcy proceedings, a change in management, an improvement in industry prospects or the cessation of non-recurring or short-term circumstances that depressed the market price of the company's securities.

The General Partner will also base its investment decisions in part on technical analysis of selected stocks. Technical analysis attempts to ascertain the relative market strengths of stocks, their price support and resistance levels, various moving averages and historical price activity.

The Partnership's investment approach will be flexible and the General Partner will not utilize a formula or percentage limitations in determining how the Partnership's assets are allocated among different types of investments.

-2-

CS 000426

**Investment Policies**

     **General.** Consistent with the general investment objectives discussed above, the General Partner has full discretion to carry out the investment program of the Partnership. After the Partnership commences operations, a quarterly schedule of the investments of the Partnership will be available on request and the Partnership will furnish quarterly financial statements to each Limited Partner.

     The Partnership will invest primarily in companies whose securities are listed on a nationally recognized securities exchange or on the NASDAQ National Market System. In addition, the Partnership may also invest to a limited extent in unlisted securities, or in unregistered securities which are subject to resale restrictions, where the General Partner believes that the potential for growth is very substantial. The General Partner expects to limit the investment of Partnership assets in any one company to not more than 15% of the Partnership's total assets. The General Partner reserves the right, however, to exceed these guidelines from time to time, as it deems appropriate. Diversification of investments among different industries is not a primary goal of the Partnership.

     **Foreign Securities.** In attempting to achieve its investment objectives, the Partnership may from time to time invest in foreign equities, although the General Partner does not expect this will occur frequently or in significant amounts. To the extent such investments are made, it is likely that the Partnership would invest indirectly in such securities by acquiring sponsored or unsponsored American Depositary Receipts, Global Depositary Receipts and other types of depositary receipts traded in United States or international securities markets. While investments in foreign securities may reduce overall risk by providing further diversification, such investments involve certain risks which would not necessarily be associated with investments in the securities of domestic issuers. These risks include those resulting from fluctuations in foreign currency exchange rates, the possible imposition of currency controls and repatriation restrictions, political and economic instability and adverse developments, including the implementation of confiscatory or other laws or regulations unfavorable to foreign investors in particular, a reduced level of availability of public information about foreign issuers and a lack of accounting, auditing and financial reporting standards or other regulatory requirements or practices comparable to those applicable to domestic issuers. In addition, given the lack of development of many foreign markets, some foreign securities may be less liquid or more volatile than domestic securities.

     **Other Investment Strategies.** The Partnership may use certain investment strategies and techniques to hedge against market risks and to enhance its performance. These strategies and techniques will primarily include (i) purchasing and selling or writing put and call options on securities, (ii) purchasing securities on a when-issued or delayed delivery basis and (iii) selling securities on a "short-sale" basis.

     *Options.* An options contract entitles the purchaser to purchase ("call") or sell ("put") a security at a particular price within a specific period of time. The Partnership will engage in the trading of covered and uncovered put and call options and will participate in the options markets both for speculative purposes and to hedge against adverse market fluctuations in its portfolio investments.

CS 000427

The Partnership may also attempt to take advantage of discrepancies in pricing among related issues by engaging in spread trading of put and call options on the same stock at various strike prices or months of expiration. The Partnership will attempt to purchase the undervalued side of the spread and to simultaneously sell short the overvalued side, with the goal of capturing the price discrepancy over time.

Participation in the options markets involves certain investment risks and transaction costs. The correlation between the option prices and the prices of the underlying securities may be imperfect and the market for any particular option may be illiquid at any particular time. Options transactions are normally highly leveraged and, accordingly, gains and losses are magnified. If the Partnership writes or sells an uncovered option, its losses, theoretically, could be unlimited. Accordingly, the Partnership will limit this kind of exposure by primarily selling covered options.

***When-Issued and Delayed Delivery Securities.*** The Partnership may purchase securities on a when-issued or delayed delivery basis, for payment and delivery at a specified, later date. The security's price and yield are generally fixed on the date of the commitment to purchase. During the period between purchase and settlement, no interest will accrue to the Partnership. At the time of settlement, the market value of the security may be more or less than the purchase price and, accordingly, the Partnership may realize an immediate gain, but also bears the risk of having an unrealized loss at the time of delivery.

***Short-Selling.*** Short selling involves the sale of a security which the Partnership does not own at a specific price in the expectation of covering the sale by purchasing the security in the open market at a later date at a price lower than the specified price. At the time a short sale is effected, the Partnership borrows the securities from a third party "lender" and delivers them to the buyer. At the same time, it incurs an obligation to replace the borrowed security at the market price prevailing at the time the Partnership purchases it for delivery to the lender. The market price at such time can be more or less than the price at which the Partnership sold the security to the buyer. Since short selling can result in profits during a period of declining stock prices, the Partnership can, to an extent, use short selling to hedge against market risks. However, the Partnership would incur losses to the extent that securities sold short increase in value.

The Partnership may also make short sales "against the box" where it would borrow securities identical to securities that it already owns.

Short-selling is a form of leverage. The profit realized by the Partnership on a short sale will be the difference between the price received on the sale and the cost of the securities purchased to cover the sale. If the securities sold short increase in value, the Partnership will incur a loss. Such losses can be, in theory, unlimited, while losses on cash purchases of securities are limited to the amount of cash invested. Short selling is also subject to certain restrictions imposed under the federal securities laws and the rules of the various national and regional securities exchanges. Further, it is likely that the lenders of the securities borrowed by the Partnership for short sales will require the Partnership to collateralize its obligation to replace the borrowed securities with deposits of cash or governmental obligations, thus increasing the costs of such transactions to the Partnership.

-4-

CS 000428

---

Investors should be aware that, while these kinds of investments may generate higher returns than traditional investments, losses associated with them may be greater than losses from traditional investments. The use of such techniques is designed to decrease the usual market risks associated with traditional, underlying investments. To the extent, however, that the Partnership uses hedging techniques and the underlying investments increase in value, the Partnership's return on the underlying investments will not be as great as it would have been if the Partnership had not hedged its portfolio. If the General Partner were to apply a hedge at an inappropriate time or evaluate market conditions incorrectly, such strategies could lower the Partnership 's return more than if they had not been used or even result in losses.

The Partnership will not engage in (i) purchasing or writing options on stock indices or purchasing or writing interest rate and stock index futures contracts and related options, (ii) interest rate hedging transactions, (iii) commodity or commodity futures transactions or (iv) derivatives trading.

---

**Interim Investments.** The Partnership will, from time to time, invest its cash in short term money market instruments, such as high yield corporate debt instruments, short-term U.S. Treasury obligations, dollar-denominated treasury obligations of foreign governments, bank certificates of deposit and other notes and bonds having short maturities or call features that the General Partner believes will be exercised in the short term. Such investments will be made pending application of Partnership funds to its investment program or for temporary defensive purposes during any periods in which the General Partner believes that economic or market conditions are unfavorable or suitable equity securities are not available, or to provide short-term liquidity.

**Leverage.** Under the Partnership Agreement, the Partnership is authorized to borrow to finance its investments. The General Partner may cause the Partnership to leverage its investments in circumstances in which borrowing would enable the Partnership to obtain a greater return on its capital than would otherwise be possible. Any such transactions would be subject to applicable credit and margin regulations, so that the amount of the Partnership's margin debt could be as much as 50% of the value of the Partnership's invested assets. If gains realized on securities purchased with borrowed funds exceed the interest paid on the borrowing, the net asset value of the Partnership will rise more quickly than would otherwise be the case. On the other hand, if investment gains fail to cover interest costs, or if there are losses, the net asset value of the Partnership would decline faster than would otherwise be the case.

**Management**

**The General Partner.** Exponential Returns Management, L.P., as General Partner, and with the assistance of Exponential, will make all investment decisions and effect the purchase and disposition of securities on behalf of the Partnership. The General Partner will act with full discretion, but in accordance with the investment objectives and policies set forth in this

CS 000429

Memorandum. The General Partner is a Texas limited partnership organized in November 1996 to serve as a general partner of the Partnership. Exponential is a Texas limited liability company and serves as general partner of the General Partner.

**Conrad P. Seghers, M.B.A., Ph.D.** Dr. Seghers is Chief Executive Officer of Exponential. He has over ten years experience in investment and financial analysis, acquisition analysis, corporate development, marketing and investor relations.

Dr. Seghers is currently associated with Cornerstone Securities, focusing on bio-technology, health-care, information technology, telecommunications and other high-growth and emerging industries. He has been active in securities trading in the Nasdaq, American Stock Exchange, New York Stock Exchange, Chicago Board Options Exchange, Small Order Execution System, Selectnet, Instinet and Island markets since 1993.

Dr. Seghers is also involved in the acquisition of institutional, private and federal investment funding for small corporations and partnerships that retain him as a consultant and partner. He has worked for American Growth Capital Corporation since 1993, participating in road show presentations and financing negotiations with institutional and private investors. In addition, he is associated with American Growth Fund I, a venture capital partnership, performing company analysis and due diligence, which has offered him the opportunity for several seats on the boards of high-growth corporations.

Dr. Seghers worked at the University of Texas Southwestern Medical Center and the Howard Hughes Institute from 1986 to 1993, where he acquired expertise in the areas of health-care, biotechnology and emerging technologies while being active in mergers and acquisitions and management consulting for the health-care and pharmaceutical industries. He received B.S. and M.S. degrees from Texas A&M University, a Ph.D. from the University of Texas and an Executive M.B.A. degree from Baylor University.

**James R. Dickey.** Mr. Dickey is President of Exponential. He brings to the Partnership over eight years of experience in the design, implementation and sale of financial products. Since 1995, he has been Vice President of Product Development at Associates First Capital Corporation, the largest publicly-traded consumer finance company in the U.S. His responsibilities include new product design, implementation and marketing. He also manages product, consumer and competitor research. His most recent product development efforts have focused on annuities and other insurance-related investment vehicles.

From 1992 to 1995, Mr. Dickey was head of product development for Republic Financial Services, Inc., where his responsibilities included establishing marketing and pricing strategies. Prior to that, he was Assistant Product Manager with Great American Insurance, a subsidiary of American Financial Corporation. where his duties included product strategy and design and market and firm analysis. Each of his positions has included significant involvement in compliance and regulatory issues at both the state and federal level.

Mr. Dickey received his B.A. from Stanford University and M.B.A. from Baylor University.

-6-

CS 000430

The address of the General Partner is 6157 Crestmont Drive, Dallas, Texas 75214, and its telephone number is (214) 692-8385.

**Interest of the General Partner.** The General Partner holds a 1% equity interest in the Partnership and, as needed, will make further cash investments in the Partnership in amounts sufficient to maintain at all times such percentage interest of the total capital of the Partnership (or such smaller percentage as may be permitted by applicable regulations and rulings of the Internal Revenue Service). The General Partner will at all times be allocated, accordingly, at least 1% (or such smaller percentage) of the Partnership's income, gains, losses, credits and deductions.

The General Partner bears most of the expenses of operating the Partnership, including expenses for personnel and overhead. The Partnership bears any taxes or governmental charges assessed on the Partnership, brokerage and similar costs and fees, legal and accounting expenses associated with investment transactions, the costs of preparing the Partnership's tax returns and financial statements and reports, legal expenses incurred in connection with any litigation involving the Partnership and any judgments or amounts paid in settlement. The Limited Partners who are not affiliates of the General Partner will reimburse the General Partner for the legal, accounting and other expenses incurred in the organization of the Partnership and the sale of Interests, up to a maximum of $25,000, at a rate of $5,000 per year over the first five years of the Partnership.

**Management Fees.** For its services to the Partnership, the General Partner will be paid a quarterly management fee, in advance, equal to 0.25% (approximately 1% per annum) of the net assets of the Partnership. The management fee will be an expense of the Partnership chargeable to the capital accounts of the Limited Partners who are not affiliates of the General Partner.

**Allocation of Net Gain.** The General Partner will receive an allocation of a portion of the Partnership's net gain, if any, for a year that would otherwise be allocated to each Limited Partner (other than any who is an affiliate of the General Partner). Such an allocation will only be made for a particular year, however, if (i) the cumulative net gain allocated to a Limited Partner through the end of such year (after taking into account any such allocations to the General Partner for prior years) exceeds the highest amount of cumulative net gain allocated to such Limited Partner as of the end of any prior year (the "High Watermark") and (ii) the net gain allocable to such Limited Partner for such year represents a percentage return on such Limited Partner's capital contributions (as of the beginning of such year) of not less than the "Hurdle Rate" for such year. In such event, the General Partner will be allocated 20% of the net gain for such year otherwise allocable to such Limited Partner (exclusive of any portion of such net gain which must be counted towards cumulative net gain in order for it to exceed the High Watermark).

The Hurdle Rate for each year will be determined by the General Partner by averaging the "bond equivalent yields" on the one-year United States Treasury Bills auctioned immediately prior to the last business day of each calendar quarter during such year, as reported in *The Wall Street Journal* (under the "Ask Yld." column) on the last business day of each quarter. Accordingly, the General Partner will not receive a performance allocation unless the

CS 000431

Partnership's performance at least meets the minimum investment return set by the interest rate market.

Net gain is the amount by which all allocations to a Limited Partner of income and gain exceed all allocations to him of loss. The determination of the General Partner's allocation of net gain takes into account both realized capital gains and losses of, and the unrealized appreciation and depreciation in, the Partnership's investments, as well as dividends and other types of income and all related expenses. The Limited Partners will be affected by any allocation of net gain to the General Partner in proportion to the amount of net gain allocated to them for the year in question. Limited Partners who make initial or additional capital contributions or completely or partially withdraw from the Partnership as of any date other than the last day of a year, will be subject to a similar allocation to the General Partner of net gain otherwise allocable to them for the partial year period following their contribution or prior to their withdrawal solely with respect to the amount so contributed or withdrawn. If a partial withdrawal is effected at a time when the withdrawing Limited Partner's capital interest has a net loss position, such net loss shall be reduced pro rata on account of the partial withdrawal.

Investors will become Limited Partners at different times during the course of any year. In order to permit the Partnership to effect the allocation with respect to as many Limited Partners as possible at the same time each year, that is, as of December 31, the Partnership will, in its discretion, either effect the first allocation with respect to a Limited Partner as of December 31 of the first calendar year in which such Limited Partner has been in the Partnership, with respect to a period of less than 12 months, or as of December 31 of the second calendar year in which such Limited Partner has been in the Partnership with respect to a period longer than 12 months. In either case, all subsequent allocations will be effected for the 12 months ending December 31 of each year.

Prospective investors in the Partnership should be aware that:

(a) the General Partner's right to receive an allocation of net gain may create an incentive for the General Partner to make investments on behalf of the Partnership that are riskier or more speculative than would be the case in the absence of such performance allocation;

(b) the allocation of net gain will be based on the unrealized appreciation of the Partnership's investments as well as its realized gains;

(c) the allocation of net gain will be determined annually with reference to the preceding 12-month period (or, as noted above, a shorter period in the case of the first allocation with respect to a Limited Partner who makes his or her initial investment in the Partnership at any time other than the first day of a year) and will be measured by the amount of net gain allocable to the Limited Partners with respect to such period; provided, however, that an allocation will be effected for such period only if (i) the cumulative net gain allocated to the Limited Partners through the end of such period (after taking into account any allocations to the General Partner for prior years) exceeds the High Watermark and (ii) the net gain allocable to such Limited Partner for such period represents a percentage return on such Limited Partner's capital contributions (as of the beginning of such year) of not less than the Hurdle Rate for such period;

-8-

CS 000432

(d)   securities held by the Partnership for which market quotations are not readily available will be valued by the General Partner in the manner set forth in the Partnership Agreement; and

(e)   the General Partner's allocation of net gain may be greater or less than compensation charged by other investment advisors for comparable services.

**Custody and Brokerage Arrangements.** The Partnership's securities and other assets will be held in the custody of such custodians or depositaries as the General Partner may select from time to time. In addition, the General Partner will select such brokers or clearing agents to act for the Partnership as it deems necessary or desirable. The General Partner will attempt to obtain from any broker the lowest net price and best execution available, consistent with the Partnership's investment objectives and good practice. In any event, fees and commissions paid by the Partnership to any broker or custodian shall be reasonable in relation to the services provided and comparable to fees and commissions charged by other brokers or custodians to unaffiliated institutional customers for similar transactions at the time, although they may not necessarily be the lowest charges obtainable. In selecting any broker or custodian, the General Partner may take into account the fact that it has furnished the General Partner with statistical, research or other information or services which may enhance the General Partner's services generally, whether or not such services are of any benefit to the Partnership.

**Experts.** The Partnership has retained Christy & Viener, New York, New York, as legal counsel.

## USE OF PROCEEDS

All of the proceeds of this Offering, less up to $25,000 of organizational and selling expenses reimbursable to the General Partner (at a rate of $5,000 per year over the first five years of the Partnership), will be utilized for the investment program of the Partnership, less whatever reserves for Partnership expenses are deemed appropriate by the General Partner.

## RISK FACTORS

A prospective investor should carefully consider, in addition to the factors discussed elsewhere in this Memorandum, the following risk factors before subscribing for an Interest:

**General**

As a Partnership investing primarily in stocks, the Partnership will be subject to normal market risks, such as the risk that stock prices in general may decline over short or extended periods. The stock market tends to be cyclical, with periods in which stock prices generally rise or decline. There is no assurance that the investment objectives of the Partnership will be achieved. In addition, the Partnership does not expect to make frequent or substantial cash distributions. Accordingly, an investment in the Partnership may not be suitable for

-9-

CS 000433

investors with a need for current income. Further, an investment in the Partnership should not be considered as a complete investment program.

**Diversification; Unspecified Investments**

The ability of the Partnership to diversify its investments will depend in part on the aggregate amount invested in the Partnership by the Limited Partners. The smaller the number of subscriptions received, the more difficult diversification of the Partnership's investments may be to achieve. Prospective investors have only limited information as to the specific assets of the Partnership or other relevant economic and financial information which, if available, would assist them in evaluating the merits of investing in the Partnership. Investors must depend on the ability of the General Partner with respect to the selection of investments.

**Reliance on the General Partner and Exponential**

The Limited Partners will have no right or power to take part in or direct the management of the Partnership. All decisions with respect to the Partnership's management and investments will be made by the General Partner and Exponential. Although Messrs. Seghers and Dickey have substantial experience in securities investment and finance, this is the first time that they have operated a limited partnership of the size, and with the objectives, of the Partnership. Further, at least initially, the ability of the Partnership to attain its objectives will depend almost entirely on Messrs. Seghers and Dickey. Should their services no longer be available, the impact on the Partnership would be adverse and it is unclear whether or not the Partnership could continue to operate in such event.

**Investment in Unlisted or Restricted Securities**

Although the Partnership expects to invest principally in listed equity securities, it is possible that it may also invest in unlisted or unregistered and restricted equity securities of start-up and development stage companies, which may involve a high degree of business and financial risk. Because of the absence of any substantial trading market for these investments, and, as to unregistered securities, the imposition of restrictions on resale, the Partnership might take longer to liquidate these positions than would be the case for publicly-traded securities. Although these securities may be resold in privately negotiated transactions, the prices on these sales could be less than those originally paid by the Partnership. Further, issuers whose securities are not publicly traded may not be subject to public disclosure and other investor protection requirements applicable to publicly-traded securities.

**Limited Liquidity**

There is no public trading market for the Interests and none is expected to develop. Further, the Partnership Agreement restricts the transferability of the Interests. While a Limited Partner will have the right to withdraw its investment in the Partnership after one year, any such withdrawal may only be made as of the end of a fiscal quarter of the Partnership, and there can be no assurance that the value of a Limited Partner's interest in the Partnership may not decrease between the time such Limited Partner determines to withdraw and the effective date of such withdrawal. Further, the Partnership Agreement provides that, under certain conditions

-10-

CS 000434

(such as prevailing market conditions which make the determination of the value of an interest in the Partnership impossible or impracticable) the General Partner may suspend the right of Limited Partners to withdraw or may limit withdrawals on a single occasion to 50% of a Limited Partner's then current Capital Interest if the General Partner deems such limitation to be appropriate in the circumstances to effect an orderly liquidation of Partnership assets or otherwise to protect the interests of non-withdrawing Partners.

### Conflicts of Interest

The General Partner does not believe that it will encounter significant conflicts of interest in fulfilling its duties to the Partnership.  In the event of such conflicts, certain provisions of the Partnership Agreement are designed to protect the interests of the Limited Partners.  In addition, the General Partner is accountable to each Limited Partner as a fiduciary and consequently must exercise good faith and integrity in handling Partnership affairs.  There can be no assurance, however, that possible conflicts of interest will not arise, including:

**Competition for Management Services.**  The General Partner, Exponential and Messrs. Seghers and Dickey will devote as much of their time to the business of the Partnership as in their judgment is reasonably required.  They may have conflicts of interest in allocating management time, services and functions among the Partnership and any other partnerships or other ventures which may be organized by the General Partner or its affiliates.

**Competition for Investments.**  The General Partner and its affiliates are engaged for their own accounts, and for the accounts of others, in investing in equity and debt securities.  The General Partner and its affiliates may organize other limited partnerships with investment objectives similar to those of the Partnership.  The Partnership Agreement generally provides that the General Partner will not be obligated to present any particular investment opportunity to the Partnership, even if such opportunity is of a character which, if presented to the Partnership, could be taken by it.  The General Partner will attempt to resolve any conflicts of interest between the Partnership and others by exercising the good faith required of a fiduciary, and the General Partner believes that it generally will be able to resolve any conflicts on an equitable basis.

## TERMS OF THE OFFERING

### General

The Partnership is offering Interests solely to qualified investors who have no need for liquidity in their investments.  See "Risk Factors -- Limited Liquidity".

The Interests are being offered subject to prior sale, to the General Partner's right to reject any subscription, in whole or in part, or to withdrawal of this Offering, in whole or in part, at any time.  The Partnership expects to continue to offer Interests, and may admit additional Limited Partners from time to time, for an indefinite period.  While there is no maximum dollar amount of Interests that the Partnership may sell, the General Partner would expect to terminate this Offering after the sale of $50,000,000 of Interests.

-11-

CS 000435

The minimum investment is $100,000, although the General Partner may accept subscriptions for less. After December 31, 1998, the General Partner will have the right to redeem and repurchase the Interest of any Limited Partner who has not invested at least $100,000 in the Partnership. See "Summary of the Partnership Agreement – Partnership Finances" and "– Optional Redemptions".

Subscriptions will be fully payable at one or more closings of this Offering. Subscriptions will be payable by certified or bank check or by wire transfer to the Partnership's account. Closings will occur from time to time as of the end of any month.

Investors should understand that an Interest does not represent a fixed percentage of the Partnership or entitle a Limited Partner to a fixed share of the Partnership's income. Rather, an Interest consists primarily of such Limited Partner's Capital Account and Unrealized Profit and Loss Account and is determined with reference to such accounts and the total capital of the Partnership. See "Summary of the Partnership – Partnership Finances".

**Manner of Subscribing**

Each investor who wishes to subscribe for an Interest will be required to (i) complete, execute and deliver to the General Partner two copies of a Subscription Agreement, (ii) complete, execute, and deliver to the General Partner a Confidential Offeree Questionnaire and (iii) pay, by certified or bank check or by wire transfer to the Partnership's account an amount equal to the full subscription price for the Interest subscribed. Subscription payments will be accepted at one or more closings. Following receipt of a signed Subscription Agreement, at least five business days' notice will be given to an investor prior to the date of the closing of his or her investment. Forms of the Subscription Agreement and Confidential Offeree Questionnaire are exhibits to this Agreement.

**Private Placement**

The Interests have not been registered under any federal or state securities law. The offering and sale of the Interests is being made solely to investors who qualify as "accredited" or "sophisticated" investors (1) in reliance on the "private placement" exemption from registration provided in Section 4(2) of the Securities Act of 1933 (the "1933 Act") and Rule 506 of Regulation D thereunder and (2) in reliance on appropriate exemptions from state registration and qualification requirements where available. See the Subscription Agreement and Confidential Offeree Questionnaire attached as exhibits to this Memorandum.

## SUMMARY OF THE PARTNERSHIP AGREEMENT

The rights and obligations of the Partners are governed by the Partnership Agreement which is set forth in Exhibit A to this Memorandum. Prospective investors should read the Partnership Agreement carefully before executing the Subscription Agreement. The following discussion of the Partnership Agreement and related matters is intended to be a summary only, does not purport to be complete and is qualified by reference to the Partnership Agreement in its entirety.

-12-

CS 000436

**Responsibilities of the General Partner**

The General Partner has the exclusive management and control of all aspects of the business of the Partnership, including the management of the Partnership's investment portfolio. In the course of its portfolio management, the General Partner may, in its absolute discretion, but in accordance with the Partnership's investment objectives and policies, buy, sell and otherwise deal in investments, when and on such terms as it determines to be in the best interests of the Partnership. With the consent of a majority in interest of the Limited Partners, and on not less than 90 days' notice to the Limited Partners, the General Partner may transfer its interest in the Partnership to any person or entity. See Sections 204 and 210 and Article Ten of the Partnership Agreement.

**Partnership Finances**

A Partner's interest in the Partnership will consist of the Capital Account and Unrealized Profit and Loss Account maintained for the Partner on the books of the Partnership, the value of each of which will be calculated not less frequently than as of the end of each fiscal quarter of the Partnership. The Unrealized Profit and Loss Account will be credited and charged with the unrealized appreciation and depreciation in the value of the Partnership's investments. (Such valuations will be made by the General Partner in accordance with the procedures described below.) The Capital Account will be credited with a Partner's contributions to the Partnership as well as the amount of the Partnership's net income allocable to the Partner and charged with the amount of the Partnership's distributions to the Partner and the amount of the Partnership's net losses allocable to the Partner. Allocations and distributions will be made among the Partners in proportion to their respective capital interests. See Sections 306, 501 and 602 of the Partnership Agreement.

Subject to the availability of Partnership cash and to the maintenance of such cash reserves as the General Partner may deem advisable, the Partnership, on the written request of a Limited Partner given not less than 60 days prior to the requested date of distribution and not more frequently than once each year, will endeavor to distribute to such Limited Partner cash in an amount equal to the Partnership's net income allocated to such Limited Partner for the previous fiscal year times the highest applicable marginal rate of federal, state and local personal income taxation. Apart from such distributions, the Partnership does not intend to make any or substantial distributions of cash to the Partners prior to the dissolution of the Partnership, although the General Partner has the right to make distributions of cash to Partners in its discretion, and will, from time to time, distribute amounts allocated to the General Partner's capital account to cover its expenses incurred in managing the Partnership. See Section 505 of the Partnership Agreement.

The General Partner will value the Partnership's investments in the manner set forth in Section 306 of the Partnership Agreement.

**Withdrawals**

Subject to certain restrictions, following the first anniversary date of its initial investment in the Partnership, a Limited Partner may withdraw all or part of its interest in the

-13-

CS 000437

Partnership quarterly, on at least 30 days' notice to the Partnership. The Partnership will, as soon as possible, pay the value of any Partnership interest withdrawn (determined as of the fiscal quarter end), together with interest thereon (at a rate per annum equal to the 90-day U.S. Treasury Bill rate then in effect) from the last day of the relevant fiscal quarter to the date of payment; provided, however, that in the case of complete withdrawals only, the Partnership may elect to pay only 90% of the value of the Partnership interest withdrawn. The remaining 10% will be retained by the Partnership until the completion of the audit of the Partnership's financial statements for the fiscal year in which such withdrawal occurs, for the purpose of effecting any adjustments with respect to the value of the withdrawn Partnership interest shown to be appropriate by such audited financial statements. Amounts payable on withdrawal will also be reduced to the extent of any net gain allocations owed to the General Partner (see "Management -- Allocation of Net Gain").

      Withdrawals will be paid in cash or, at the discretion of the General Partner, in securities selected by the General Partner or by a combination of cash and such securities. The right of withdrawal may be suspended by the General Partner during any period in which it determines that interests may not be fairly valued. See Sections 305 and 306 of the Partnership Agreement.

**Optional Redemptions**

      After December 31, 1998, the General Partner will have the right to cause the Partnership to redeem and repurchase the Interest of any Limited Partner who has not invested at least $100,000 in the Partnership. The Partnership would redeem the Interest at a price equal to the amount of the Capital Account and Unrealized Profit and Loss Account maintained for such Limited Partner, less the amount of any net gain allocation owed to the General Partner (see "Management -- Allocation of Net Gain"). Any such redemption would be made as of the end of a calendar quarter and would only be effected if, at the time, the redemption price would be in excess of all amounts previously contributed by such Limited Partner to the Partnership, less the amount of any distributions previously made by the Partnership to such Limited Partner. The General Partner would expect to redeem Interests only in the event that the number of Limited Partners approaches the 99-Limited Partner limit imposed on the Partnership in order to maintain its exemption from registration as an investment company under the Investment Company Act of 1940.

**Treatment of "Hot Issues"**

      The General Partner may, from time to time, invest Partnership assets in securities which are being publicly offered and which are expected to sell at a premium over the public offering price in the secondary market during such public offering. The National Association of Securities Dealers, Inc. (the "NASD") has adopted certain rules which restrict the ability of persons associated with broker-dealers or who could have other relationships with broker-dealers to trade in such "hot issue" securities. In order to comply with the NASD rules, the Partnership will segregate from its other assets any "hot issue" securities it acquires and any Partner who has any relationship to a broker-dealer covered by such NASD rules will not be allocated any gains or losses associated with such investments. See Section 507 of the Partnership Agreement.

-14-

CS 000438

**Reports**

Limited Partners will receive annual reports, including audited financial statements and, in the General Partner's discretion, a condensed schedule of investments (including valuations), and quarterly reports including unaudited financial statements.

**Exculpation and Indemnification
of the General Partner and its Affiliates**

The Partnership Agreement exculpates the General Partner, to the fullest extent permitted by law, from liability for any act, omission or error of judgment in performing its duties to the Partnership if it acts in good faith and in a manner it reasonably believes to be within the scope of authority granted to it and in or not opposed to the best interests of the Partnership, unless such liability arises out of the gross negligence or willful misconduct of the General Partner in the performance of its fiduciary duty to the Limited Partners. The Partnership Agreement also provides for indemnification by the Partnership of the General Partner and its affiliates, to the fullest extent permitted by law, for liabilities incurred in its capacity as general partner of the Partnership, except for acts of gross negligence or willful misconduct. As a result of such exculpation and indemnification provisions, a Limited Partner may have a more limited right of action than he would otherwise have in the absence of such provisions. Limited Partners will be notified if any indemnification is made and of the reasons therefor. See Sections 802 and 803 of the Partnership Agreement.

The investment advisory agreement between the Partnership and Exponential provides for similar exculpation and indemnification of Exponential.

**Term and Dissolution**

The Partnership will continue until December 31, 2006, at which time it will be dissolved, unless the General Partner and a majority in interest of the Limited Partners determines otherwise. The Partnership may be dissolved at an earlier date if certain contingencies occur. On dissolution of the Partnership, it will be liquidated and the proceeds thereof will be distributed to the Partners in proportion to their interests in the Partnership. A final accounting will be made by the General Partner and furnished to all Limited Partners. See Sections 901 and 902 of the Partnership Agreement.

**Amendments**

The Partnership Agreement may not be modified or amended except with the written consent of the General Partner and a majority in interest of the Limited Partners, except that, for certain limited purposes relating to administrative matters, the General Partner, without the consent of the Limited Partners, may amend the Partnership Agreement. Any amendment which would have a material adverse effect on the rights or interest of any Limited Partner, would also require the consent of such Limited Partner. See Sections 1206 and 1207 of the Partnership Agreement.

-15-

CS 000439

**Restrictions on Transfer**

A Limited Partner may not transfer any portion of its Interest without (i) the prior written consent of the General Partner (except on the death of an individual Limited Partner or by operation of law pursuant to the reorganization of a Limited Partner), which consent may be withheld in the General Partner's sole and absolute discretion, and (ii) receipt by the General Partner of an opinion of counsel that such transfer would not result in a violation of the federal or any applicable state securities laws, the Partnership being required to register as an investment company under the Investment Company Act of 1940 or the termination of the Partnership for tax purposes. See Sections 1101-1107 of the Partnership Agreement.

## TAX CONSEQUENCES

**General**

This is a summary of certain United States federal income tax considerations that may be relevant to prospective investors, based on the Internal Revenue Code of 1986, as amended (the "Code"), administrative regulations and rulings of the Department of the Treasury and judicial decisions, all of which are subject to change. This summary is not intended as a substitute for careful tax planning. The applicability of Code provisions to individual investors will vary. Accordingly, prospective investors are urged to consult with their own tax advisors with specific reference to their own tax situations and potential changes in applicable law.

**Qualification as a Partnership**

Christy & Viener, counsel to the Partnership, has rendered an opinion that the Partnership will be classified as a partnership, rather than as an association taxable as a corporation, for federal income tax purposes. The opinion is based on a number of assumptions which are set forth in the opinion. A copy of Christy & Viener's opinion will be furnished to prospective investors on request. The opinion is not binding on the Internal Revenue Service (the "IRS"). The Partnership will not apply for an IRS ruling as to its qualification as a partnership and would not, in any case, fulfill all of the conditions required by the IRS to be met before it would issue a favorable ruling on partnership status.

If the Partnership were treated as an association taxable as a corporation for federal income tax purposes, it would itself be taxed on its taxable income at corporate rates. In such case, the amount of the Partnership's cash otherwise available for distribution to the Limited Partners would be reduced by the amount of such tax. Cash distributions would be treated as dividends in the hands of the Limited Partners subject to tax as ordinary income to the extent of Partnership earnings and profits. Further, any losses incurred by the Partnership would only be allowed as deductions for the Partnership, rather than being passed through to the Limited Partners.

Certain partnerships are treated as corporations for federal income tax purposes if they are deemed to be "publicly-traded partnerships". A partnership can be found to be publicly-

-16-

CS 000440

traded if interests therein are traded on an established securities market or are readily tradeable on a secondary market or the substantial equivalent thereof. The IRS has stated that partnership interests will not be considered readily tradeable on a secondary market (or substantial equivalent) if (i) such interests are issued in transactions that are not registered under the 1933 Act and (ii) the partnership does not have more than 100 partners.

In determining the number of partners, the beneficial owners of grantor trusts, partnerships and S corporations ("flow-through entities") which are partners in a partnership will be counted if substantially all of the value of the beneficial owners' interest in the flow-through entity is attributable to the flow-through entity's interest, direct or indirect, in the partnership and the "principal purpose test" is violated. This test is violated if a principal purpose of the use of the flow-through entity is to permit a partnership to satisfy the 100-partner limitation.

Inasmuch as, among other things, the Partnership may not have more than 99 Limited Partners, and, based on information requested of investors, the Partnership intends to limit its Limited Partners so as to satisfy the 100-partner limitation, the Partnership should not be treated as a publicly-traded partnership for federal income tax purposes.

**General Tax Treatment of the Partnership and the Limited Partners**

So long as the Partnership is classified as a partnership for federal income tax purposes, the Partnership itself will not be subject to federal income tax. Rather, each Limited Partner is required to report on its own tax return its allocable share of the items of income, gain, loss, deduction, credit and tax preference of the Partnership, whether or not any actual distributions are made to such Limited Partner during the taxable year. (The tax treatment of foreign Limited Partners is discussed below under "Foreign Limited Partners".)

Since the Partnership uses the accrual method of accounting, it reports its taxable income or loss on its information return based on the accrual of items of income and expense. Each Limited Partner reports its distributive share of any such income or loss for its taxable year in which the taxable year of the Partnership ends, even if the Limited Partner is on the cash method of accounting. The fiscal year of the Partnership is the calendar year.

A Limited Partner's tax basis for its Interest will be relevant in determining, among other things, the income tax consequences of Partnership distributions, the deductibility of Partnership losses, and gain or loss on the sale of the Interest. Generally, this basis will be equal to the Limited Partner's subscription price for its Interest, plus any additional capital contributions, plus its share of those liabilities of the Partnership with respect to which neither the General Partner nor any of the Limited Partners has any personal liability. Each Limited Partner will increase the tax basis of its Interest by the amount of its allocable share of the Partnership's taxable income for any year, and reduce the tax basis of its Interest by the amount of its allocable share of the Partnership's taxable loss and by the amount of any cash distributed by the Partnership to it during such year. Any reduction of its share of the Partnership's nonrecourse indebtedness will also reduce its basis.

If the tax basis of a Limited Partner's Interest is reduced to zero through cash distributions, allocation of loss or reduction of nonrecourse indebtedness, the amount of any

CS 000441

further cash distributions (or any reduction in Partnership nonrecourse indebtedness) in excess of its share of the income reported by the Partnership for any year will generally be treated as gain from the sale or exchange of a capital asset. A Limited Partner will also recognize gain or loss on the complete liquidation of its Interest, measured by the difference between the amount received and the Limited Partner's tax basis in its Interest. Any gain or loss recognized on complete liquidation or as a result of distributions in excess of tax basis will, in general, be treated as capital gain or loss, and such capital gain or loss will be treated as long term capital gain or loss if the Limited Partner has held its Interest for more than one year at the time the gain or loss is recognized.

**Trading or Investing**

A number of the tax consequences attendant on an investment in the Partnership, such as the deductibility of certain types of Partnership losses (see below), will depend on whether the Partnership is treated as being engaged in "trading" or "investing". The Partnership could be treated as engaged entirely in trading or entirely in investing, or as a trader with respect to some of its activities and an investor with respect to others. In general, a taxpayer is treated as a trader if it engages in a large number of transactions and holds securities for a short period of time to earn short-swing profits, and as an investor if it holds securities for a longer period of time in order to realize capital appreciation. The General Partner believes that most, if not all, of the anticipated transactions of the Partnership will be treated as trading activities and anticipates filing the Partnership's information tax returns accordingly. The Partnership's actual activities may differ from those that are currently anticipated or the IRS may take a different position than the General Partner as to whether some or all of the Partnership's activities constitute trading. Accordingly, the General Partner cannot predict with any certainty as to the extent that its operations will constitute trading and the extent that it will constitute investing.

**Limits on Deductibility**

The income tax law contains a number of provisions that can restrict a Limited Partner's ability to deduct on its own tax return Partnership losses that are allocable to it. A Limited Partner may only deduct its share of the Partnership's taxable loss and deductions to the extent of its tax basis for its Interest. Partnership losses which exceed the Limited Partner's tax basis may be carried over indefinitely and, subject to the other limitations discussed below, deducted in any future year to the extent its tax basis may have increased above zero.

In addition, Limited Partners which are individuals or certain closely-held corporations may be limited in their use of Partnership losses by the so-called "at risk" rules. Under these rules, Partnership losses cannot be deducted except to the extent of a Limited Partner's "at risk amount" which, in general, will include its unrecovered capital contributions and its share of undistributed Partnership taxable income.

A non-corporate Limited Partner may be subject to certain "investment interest" limitations. These rules would limit the deduction for investment interest to the Limited Partner's net investment income, that is, the excess of investment income (generally interest, dividends and capital gains) over investment expenses (other than interest expense). For this purpose, the Limited Partner's net investment income and investment interest expense from all sources,

-18-

CS 000442

including Partnership investment activities, would be aggregated.  Partnership interest expense would include interest expense incurred either by the Partnership or by a Limited Partner to finance the purchase of its Interest.

To the extent that the Partnership is treated as engaged in investing, a non-corporate Limited Partner may not be allowed to deduct a portion of the Partnership's miscellaneous expenses.  Certain miscellaneous itemized deductions (such as accounting expenses) of non-corporate taxpayers are allowable only to the extent they exceed a "floor" amount equal to 2% of the taxpayer's adjusted gross income.  Any deductions not allowable by virtue of this rule will not be treated as investment expenses for purposes of the investment interest limitation, and will also in effect not be deductible for alternative minimum tax purposes.  These limitations should not apply, however, to the extent the Partnership is treated as engaging in trading.

Regardless of whether the Partnership is treated as a trader or an investor with respect to any specific transactions, gain or loss realized on the disposition of a securities position generally will be treated as a capital gain or loss.  Under certain circumstances, however, gain or loss arising from fluctuations between the relative values of the U.S. dollar and the currency in which the position is denominated will be treated as ordinary gain or loss.  Capital losses generally may be deducted only to the extent of capital gains, except for non-corporate taxpayers who are allowed to deduct $3,000 of capital losses per year against ordinary income without regard to capital gains.  Corporate taxpayers may carry back unused capital losses for three years and may carry forward such losses for five years.  Non-corporate taxpayers may carry forward unused capital losses indefinitely, but may not carry them back.

**Foreign Taxes**

Dividends, interest and other income received by the Partnership from sources outside the United States may be subject to withholding and other taxes imposed by such foreign jurisdictions at varying rates.  A Limited Partner will be treated for federal income tax purposes as having paid its pro rata portion of such foreign taxes and, in general, should be able either to credit such portion against its federal income taxes due or to deduct such portion from its taxable income for federal income tax purposes.

**State and Local Taxes**

In addition to federal income taxes, Limited Partners may be subject to other taxes, such as state and local income taxes.  Information needed by Limited Partners to file all state and local income tax returns will be supplied by the Partnership's accountants.  Each prospective Limited Partner should consult with its own tax advisor with regard to state and local taxes.

---

**The preceding discussion is a summary of some of the important tax considerations relevant to an investment in the Partnership.  It does not purport to be a complete analysis of all relevant tax considerations or a complete listing of all potential tax**

CS 000443

risks inherent in purchasing and holding an Interest. This discussion does not address tax considerations affecting investors which are not United States persons. Prospective investors in the Partnership are urged to consult with their own tax advisors.

## ERISA CONSIDERATIONS

The following is a summary of certain non-tax considerations arising under ERISA and the Code with respect to an investment in the Partnership by an employee benefit plan subject to ERISA (a "Plan"). This summary is based on the applicable provisions of such statutes and relevant regulations, rulings and interpretive releases issued by the Department of Labor or the IRS. No assurance can be given that legislative or administrative changes or court decisions may not occur which might significantly modify this summary. Any such changes may or may not apply to transactions entered into prior to the date of their enactment.

This summary should be considered by fiduciaries of any potential investor which is a Plan before assets of the Plan are invested in the Partnership. Further, inasmuch as the following discussion of ERISA and the Code is general and subject to future legislation and regulations, plan fiduciaries considering the investment of Plan assets in the Partnership should consult with their own counsel and advisors with respect to the ERISA considerations of such an investment.

**General Fiduciary Requirements.** In considering an investment in the Partnership, Plan fiduciaries should carefully consider whether the investment would be consistent with their fiduciary responsibilities to their Plans, particularly those responsibilities described in Section 404 of ERISA. A fiduciary should consider, among other things, whether the investment would (i) be prudent for the Plan, given the nature of the securities in which the Partnership will invest, (ii) be consistent with the Plan's current and anticipated needs for liquidity, given the limitations set forth in the Partnership Agreement on a Limited Partner's ability to withdraw from or reduce its interest in the Partnership, (iii) permit the Plan's investment portfolio to remain adequately diversified, given the fact that ERISA requires that a Plan's investments be adequately diversified so as to minimize the risk of a large loss, unless it is clearly prudent not to do so, (iv) be permitted under the governing Plan documents, (v) involve a potential for conflicts of interest among the General Partners and the Partnership and (vi) result in any unrelated business taxable income to the Plan. A fiduciary should also consider the reasonableness of the compensation to be paid to the General Partners in comparison to that payable to others for similar investments.

In the Subscription Agreement, any Plan which proposes to invest in the Partnership will be required to represent that its fiduciaries understand the Partnership's investment objectives and policies and that the decision to invest Plan assets in the Partnership is consistent with the applicable provisions of ERISA and the fulfillment of their fiduciary responsibilities to the Plan.

**Plan Assets.** In order that the General Partners not be deemed to be a "fiduciary" for purposes of ERISA of any Limited Partner which is a Plan, the Partnership may limit the participation of Plans in the Partnership. Under ERISA, a party is considered to be a fiduciary of a Plan if it exercises discretionary authority or control over the management or disposition of plan

-20-

CS 000444

assets or renders individualized advice to a Plan for a fee which serves as the primary basis for the Plan's investment decisions regarding such assets. Under the Department of Labor's "plan asset" regulations, when a Plan purchases an equity interest in another entity, the Plan's assets are deemed to include not only its investment in such entity but an undivided interest in the underlying assets of such entity unless (i) the equity interest is a "publicly-offered security" or a security issued by a registered investment company, (ii) the entity is an "operating company" (as defined in such regulations) or (iii) the equity participation in the entity by Plans is not "significant", that is, less than 25% of each class of equity security issued by such entity (exclusive, in the case of the Partnership, of such securities held by the General Partners and their affiliates) is owned by Plans. The Interests are not publicly offered or issued by a registered investment company and, the Partnership will not qualify as an operating company. Accordingly, so that the assets of the Partnership are not deemed to be "plan assets", the Partnership may limit the acquisition or transfer of interests in the Partnership unless, after giving effect to such acquisition or transfer, the total interest in the Partnership owned by Plans would be less than 25% in the aggregate of all interests in the Partnership.

      **Pre-Existing Relationships**. If the General Partner or any of its affiliates may be considered a fiduciary under ERISA of any Plan because of a pre-existing relationship with such Plan, neither the General Partner nor any such affiliate will recommend an investment in the Partnership by such Plan.

CS 000445

**EXHIBIT A**

# AGREEMENT OF LIMITED PARTNERSHIP

## OF

## EXPONENTIAL RETURNS, L.P.

CS 000446

**TABLE OF CONTENTS**

Page

**ARTICLE ONE**
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARTICLE TWO**
General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Section 201.  Formation and Term  . . . . . . . . . . . . . . . . . . . . . 4
    Section 202.  Name of Partnership  . . . . . . . . . . . . . . . . . . . . . 5
    Section 203.  Principal Place of Business  . . . . . . . . . . . . . . . . 5
    Section 204.  Management . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 205.  Reimbursement of Organizational Expenses . . . . . . . . . . . . 6
    Section 206.  Liability of Partners  . . . . . . . . . . . . . . . . . . . . 7
    Section 207.  Reliance by Third Parties  . . . . . . . . . . . . . . . . . 7
    Section 208.  Number of Partners  . . . . . . . . . . . . . . . . . . . . . 7
    Section 209.  Partnership Expenses  . . . . . . . . . . . . . . . . . . . . 7
    Section 210.  Restrictions on Authority of General Partner  . . . . . . . . . . . 8
    Section 211.  Title to Property  . . . . . . . . . . . . . . . . . . . . . . 9
    Section 212.  Filings  . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**ARTICLE THREE**
Contributions, Withdrawals and Capital Interests . . . . . . . . . . . . . . . . . . . . . 9
    Section 301.  Contributions . . . . . . . . . . . . . . . . . . . . . . . . 9
    Section 302.  Additional Interests  . . . . . . . . . . . . . . . . . . . . 9
    Section 303.  No Interest on Contributions  . . . . . . . . . . . . . . . . 10
    Section 304.  No Priority Among Partners . . . . . . . . . . . . . . . . . 10
    Section 305.  Withdrawals . . . . . . . . . . . . . . . . . . . . . . . . . 10
    Section 306.  Accounts; Credits and Debits . . . . . . . . . . . . . . . . 11
    Section 307.  Optional Redemptions . . . . . . . . . . . . . . . . . . . . 13
    Section 308.  Determinations of the General Partner Conclusive . . . . . . . . 13
    Section 309.  Interest of Creditors . . . . . . . . . . . . . . . . . . . . 13

**ARTICLE FOUR**
Investment Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Section 401.  Investments Generally . . . . . . . . . . . . . . . . . . . . 13
    Section 402.  Brokerage and Custody . . . . . . . . . . . . . . . . . . . 14
    Section 403.  Management Fee . . . . . . . . . . . . . . . . . . . . . . . 14
    Section 404.  Other Business of Partners . . . . . . . . . . . . . . . . . 14

**ARTICLE FIVE**
Allocations and Distributions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Section 501.  Interim Allocations  . . . . . . . . . . . . . . . . . . . . 15
    Section 502.  Final Allocations . . . . . . . . . . . . . . . . . . . . . . 16
    Section 503.  Allocation of Net Gain to General Partner . . . . . . . . . . . . 16
    Section 504.  Special Rules for Withdrawing Limited Partners . . . . . . . . . 17

CS 000447

Page

Section 505. Distributions to Partners . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 506. Intention of the Parties . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 507. Reinvestment of Distributions . . . . . . . . . . . . . . . . . . . . . 18
Section 508. Special Allocations for Hot Issues. . . . . . . . . . . . . . . . . . . 18

ARTICLE SIX
General Accounting Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Section 601. Fiscal Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Section 602. Capital Determined; Financial Statements and Reports . . . . . 19
Section 603. Valuations by the General Partner . . . . . . . . . . . . . . . . . 20
Section 604. Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 605. Tax Elections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 606. Information Tax Returns . . . . . . . . . . . . . . . . . . . . . . . 20
Section 607. Designation of Tax Matters Partner . . . . . . . . . . . . . . . . 20

ARTICLE SEVEN
As to Firm Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARTICLE EIGHT
Exculpation and Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Section 801. General Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . 21
Section 802. Limitation on Liability of General Partner . . . . . . . . . . . . . 21
Section 803. Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARTICLE NINE
Duration and Dissolution of the Partnership . . . . . . . . . . . . . . . . . . . . 23
Section 901. Events Causing Dissolution . . . . . . . . . . . . . . . . . . . . . 23
Section 902. Dissolution Procedures . . . . . . . . . . . . . . . . . . . . . . . . 24
Section 903. Withdrawal or Death of a Limited Partner . . . . . . . . . . . . . 25

ARTICLE TEN
Transferability of General Partner's Interest . . . . . . . . . . . . . . . . . . . . 25

ARTICLE ELEVEN
Transferability of a Limited Partner's Interest . . . . . . . . . . . . . . . . . . . 25
Section 1101. Restrictions on Transfer. . . . . . . . . . . . . . . . . . . . . . . 25
Section 1102. Indemnification by Transferor . . . . . . . . . . . . . . . . . . . 26
Section 1103. Effect and Effective Date . . . . . . . . . . . . . . . . . . . . . . 26
Section 1104. Status of Transferor . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section 1105. Substituted Limited Partners . . . . . . . . . . . . . . . . . . . . 27
Section 1106. Conditions of Admission . . . . . . . . . . . . . . . . . . . . . . 27
Section 1107. Transfers During a Fiscal Year . . . . . . . . . . . . . . . . . . . 27

CS 000448

Page

**ARTICLE TWELVE**

Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28
    Section 1201.  Resolution of Disputes . . . . . . . . . . . . . . . . . . . . . . . .   28
    Section 1202.  No Bill for Partnership Accounting . . . . . . . . . . . . . . .   28
    Section 1203.  Grant of Power of Attorney . . . . . . . . . . . . . . . . . . .   28
    Section 1204.  Binding Nature of Agreement . . . . . . . . . . . . . . . . . . .   29
    Section 1205.  Execution of Agreement . . . . . . . . . . . . . . . . . . . . . .   29
    Section 1206.  Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29
    Section 1207.  Amendments Without Consent . . . . . . . . . . . . . . . . . . .   29
    Section 1208.  Execution of Amendments . . . . . . . . . . . . . . . . . . . . .   29
    Section 1209.  Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29
    Section 1210.  Governing Law; Severability . . . . . . . . . . . . . . . . . . .   30

CS 000449

## AGREEMENT OF LIMITED PARTNERSHIP

### OF

### EXPONENTIAL RETURNS, L.P.

AGREEMENT, dated as of November 20, 1996, among EXPONENTIAL RETURNS MANAGEMENT, L.P., a Texas limited partnership ("ERM"), as general partner, CONRAD P. SEGHERS and JAMES R. DICKEY, each as a limited partner, and the parties who from time to time hereafter enter into this Agreement as limited partners.

### W I T N E S S E T H:

The parties, desiring to form a limited partnership, and in consideration of the mutual agreements set forth below, agree as follows:

### ARTICLE ONE

### Definitions

As used in this Agreement, the following terms have the following meanings:

"Act" means the Texas Revised Limited Partnership Act, Article 6132a-12, as amended from time to time.

"Additional Partner" means any Partner admitted to the Partnership by the General Partner pursuant to Section 302(a) after the date hereof.

"Affiliate" means, when used with reference to a specified Person, (a) any Person that, directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the specified Person, (b) any Person who is an officer, director, partner or trustee of, or serves in a similar capacity with respect to, the specified Person or of which the specified Person is an officer, director, partner or trustee, or with respect to which the specified Person serves in a similar capacity, (c) any Person who, directly or indirectly, is the beneficial owner of 10% or more of any class of equity securities of, or otherwise has a substantial beneficial interest in, the specified Person or of which the specified Person is directly or indirectly the owner of 10% or more of any class of equity securities or in which the specified Person has a substantial beneficial interest, (d) any person who is an officer, director, general partner, trustee or holder of 10% of the voting securities or beneficial interests of any of the Persons specified in clauses (a), (b) or (c) above and (e) any relative or spouse of the specified Person.

"Agreement" means this Agreement of Limited Partnership, as it may be amended, supplemented or restated from time to time, as the context requires.

CS 000450

**"Bankruptcy"** means and shall be deemed to have occurred with respect to a Person if such Person (a) makes an assignment for the benefit of creditors, (b) is adjudged a bankrupt or insolvent, or has entered against it an order for relief in any bankruptcy or insolvency proceeding, (c) files a petition or answer seeking for itself any reorganization, arrangement, winding-up, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation or fails to have any proceeding for such relief instituted against it by others dismissed within 120 days following its commencement, (d) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of the nature described in clause (c) above or (e) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of it or all or any substantial part of its properties or, if such appointment is made without its consent, such appointment is not vacated or stayed within 90 days or, if stayed, such appointment is not vacated within 90 days after the expiration of any such stay.

**"Capital Account"** means, with respect to any Partner, the Capital Account maintained for such Partner pursuant to Article Five, and shall equal the net Contributions by such Partner, plus or minus the adjustments described in Article Five.

**"Capital Interest"** means, with respect to any Partner, the sum (or net amount) of such Partner's Capital Account and Unrealized Profit and Loss Account.

**"Code"** means the Internal Revenue Code of 1986, as amended from time to time.

**"Contribution"** has the meaning specified in Section 301.

**"Cumulative Net Gain"** means with respect to any Limited Partner, (i) the cumulative amount of Net Income, less the cumulative amount of Net Loss, allocated to such Limited Partner through and as of the end of the Fiscal Year or other period in question, plus (ii) the amount of any positive balance, or less the amount of any negative balance, in such Limited Partner's Unrealized Profit and Loss Account as of the end of such period.

**"Fiscal Quarter"** refers to any period of three months (or, less, in the case of the first and final Fiscal Quarters of the Partnership) ending on March 31, June 30, September 30 or December 31 (or the date of termination of the Partnership, in the case of the final Fiscal Quarter of the Partnership).

**"Fiscal Year"** has the meaning specified in Section 601.

**"General Partner"** means ERM or any Person who, at the time of reference thereto, serves as the general partner of the Partnership.

**"High Watermark"** has the meaning specified in Section 305(d).

**"Hurdle Rate"** means with respect to any Fiscal Year, the rate determined by the General Partner by averaging the "bond equivalent yields" on the one-year United States Treasury Bills auctioned immediately prior to the last business day of each Fiscal Quarter during such Fiscal Year, as reported in *The Wall Street Journal* (under the "Ask Yld." column) on the last

-2-

CS 000451

business day of each such Fiscal Quarter. With respect to any Fiscal Year in which a Partner makes an initial or additional Contribution on any day other than the first day of such Fiscal Year, the Hurdle Rate for such Fiscal Year shall equal the average of the "bond equivalent yields" on the one-year United States Treasury Bills auctioned immediately prior to each Fiscal Quarter end which occurs after the day on which such Contribution is made. With respect to any Fiscal Year in which a Partner effects a withdrawal of all or a portion of its Capital Interest on any day other than the last day of such Fiscal Year, the Hurdle Rate for such Fiscal Year shall equal the average of the "bond equivalent yields" on the one-year United States Treasury Bills auctioned immediately prior to each Fiscal Quarter end which occurs before the day on which such withdrawal occurs.

"**Interest**" of a Partner at any time means the entire ownership interest of a Partner in the Partnership at such time, consisting of such Partner's Capital Interest and including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement.

"**Limited Partner**" means any Person who is a limited partner, which, except as otherwise indicated, shall include an Additional Partner (other than an Additional General Partner) or a Substituted Limited Partner, at the time of reference thereto, in such Person's capacity as a limited partner of the Partnership.

"**Majority in Interest of the Limited Partners**" means Limited Partners whose aggregate Capital Interests constitute more than 50% of all of the Capital Interests of the Limited Partners.

"**Memorandum**" means the Offering Memorandum relating to the offering of Interests, as it may be amended or supplemented from time to time, and which includes, among other exhibits, a form of this Agreement.

"**Net Contribution**" has the meaning specified in Section 205.

"**Net Gain**" means, with respect to any Limited Partner, the excess, if any, for the Fiscal Year (or other period) in question, of Net Income allocated to the Limited Partner under Section 501(a) over any Net Loss allocated to the Limited Partner under Section 501(b), plus the amount of any increase, or less the amount of any decrease, in the Limited Partner's Unrealized Profit and Loss Account for such Fiscal Year (or other period), as determined under Section 501(c), after the credits and charges referred to in clauses (ii) and (iii) of Section 501(c) are given effect.

"**Net Income**" and "**Net Loss**" for any period means the net income or net loss of the Partnership during such period after payment or provision for all expenses incurred in connection with the Partnership's investments. Net Income and Net Loss shall be determined in accordance with the Partnership's method of accounting and without regard to any basis adjustment under Section 743 of the Code.

-3-

CS 000452

**"Net Unrealized Profit"** and **"Net Unrealized Loss"** of the Partnership in any period means, at any time, the aggregate net unrealized appreciation or depreciation during such period with respect to all investment positions of the Partnership, determined by comparing the respective fair market value of each investment position on (a) the later of (i) the first day of such period or (ii) the date on which such investment position is established and (b) the earlier of (i) the last day of such period or (ii) the date of the disposition of such investment position.

**"Opening Balance"** means, with respect to any Partner during any period, such Partner's Capital Interest at the beginning of such period.

**"Partners"** means the General Partner and all of the Limited Partners, including any Additional Partner and any Substituted Limited Partner.

**"Partnership"** means the limited partnership formed pursuant to this Agreement, as it may from time to time be constituted.

**"Partnership Expenses"** has the meaning specified in Section 209.

**"Person"** means any individual, partnership, corporation, trust, governmental plan, governmental unit or other entity.

**"Substituted Limited Partner"** has the meaning specified in Section 1102.

**"Transfer"** has the meaning specified in Section 1101.

**"Unrealized Profit and Loss Account"** means, with respect to any Partner, the Unrealized Profit and Loss Account maintained for such Partner pursuant to Article Five.

**"Valuation Date"** means the last day of any calendar month.

All other defined terms used in this Agreement have the respective meanings assigned to them in the Sections in which they appear.

## ARTICLE TWO

### General

**Section 201. Formation and Term.** The Partners have formed the Partnership pursuant and subject to the Act, for the purpose of making the investments and engaging in the business described in Section 401 and any other lawful business for which partnerships may be formed under the Act. The term of the Partnership shall commence on the date hereof and shall continue until December 31, 2006, at which time it shall dissolve and liquidate pursuant to Article Nine. The term of the Partnership may be extended beyond, or terminated prior to, December 31, 2006, by the vote of the General Partner and a Majority in Interest of the Limited Partners.

CS 000453

**Section 202. Name of Partnership.** The firm name shall be Exponential Returns, L.P.

**Section 203. Principal Place of Business.** The principal place of business and registered office of the Partnership shall be c/o Exponential Returns Management, L.P., 6157 Crestmont Drive, Dallas, Texas 75214, or such other place as the General Partner may determine. The name and address of the Partnership's registered agent in the State of Texas is James R. Dickey, 6157 Crestmont Drive, Dallas, Texas 75214.

**Section 204. Management.** The Partnership shall be managed and operated exclusively by the General Partner, which shall have all of the rights, powers and obligations of a general partner of a limited partnership under the Act and otherwise as provided by law. The Limited Partners shall have no part in the management of the Partnership and shall have no authority or right to act on behalf of the Partnership in connection with any matter. The General Partner shall devote its best efforts to the Partnership business in accordance with procedures established by it, but shall not be precluded from engaging in other business activities or from organizing and managing other similar partnerships.

Each of the Limited Partners agrees that all determinations, decisions and actions made or taken by the General Partner shall be conclusive and binding on the Partnership, the Limited Partners and their respective successors and assigns.

The General Partner shall have the power, among other things, on behalf of the Partnership:

(a) to invest and reinvest the funds of the Partnership in equity securities of all kinds (including, without limitation, common stock, preferred stock, warrants and debentures and other debt securities convertible into common or preferred stock) issued by corporations, partnerships, associations or other entities and governments and governmental authorities, in public or private transactions and whether or not such securities are readily marketable or of a speculative nature (all of the foregoing are referred to together as "investments"), and, generally, to deal with funds, securities and other assets of the Partnership as if the General Partner was the absolute owner thereof, all as the General Partner in its discretion may determine;

(b) to invest and reinvest the funds of the Partnership in short-term, high yield corporate debt instruments, short-term U.S. Treasury obligations, other short-term money market investments (including, without limitation, dollar-denominated treasury obligations of foreign governments, domestic or foreign bank certificates of deposit or other short-term instruments and other notes and bonds having short maturities or call features that the General Partner believes will be exercised in the short term), and to deposit the funds of the Partnership on a temporary basis in accounts bearing interest at a fair market rate, which may be a variable rate;

(c) to acquire investments on margin or borrow, pledge, mortgage, lend or hypothecate investments or use leverage by borrowing funds from banks or brokerage firms, all subject to any applicable margin regulations and requirements;

-5-

(d) to (i) purchase and sell or write put and call options on securities, (ii) purchase securities on a when-issued or delayed delivery basis and (iii) sell securities on a "short-sale" or "short sale against the box" basis;

(e) to vote any investments owned by the Partnership on such matters as are submitted to the holders of such investments;

(f) to arrange for the custody of investments and other assets of the Partnership and, where desirable, to cause such investments or assets to be acquired or held in the name of one or more nominees on behalf of the Partnership, and to direct custodians and nominees to deliver investments and other assets of the Partnership for the purpose of effecting transactions or otherwise;

(g) to execute any agreement, contract, certificate or instrument necessary or desirable in connection with the conduct of the Partnership's business or affairs;

(h) to incur reasonable expenditures for the conduct of the Partnership's business and to pay all expenses, debts and obligations of the Partnership;

(i) to employ, retain and dismiss any employees, agents, attorneys, accountants, advisors, brokers, consultants and custodians of Partnership assets, including, without limitation, any who are Affiliates of the General Partner, such as Exponential Returns Management LLC, the general partner of the General Partner, which is being retained as an investment advisor to the Partnership, and to delegate to such parties any of its powers under this Section 204, so long as the compensation to be paid to any such Affiliates is comparable to that which would be payable to unaffiliated third parties for comparable services;

(j) to institute, defend, compromise or settle any action, suit or proceeding with respect to the business and affairs of the Partnership;

(k) to open, maintain and close bank accounts and to sign checks drawn on such accounts; and

(l) generally, to engage in any kind of activity necessary or desirable to achieve the purposes of the Partnership and as may be lawfully carried on or performed by a partnership under the laws of each jurisdiction in which the Partnership is then doing business.

**Section 205. Reimbursement of Organizational Expenses.** The General Partner shall deduct from the Limited Partners' Contributions, an amount equal to the costs and expenses incurred by the General Partner in organizing the Partnership and selling the Interests, which deductions shall in no event exceed $25,000 in the aggregate. The General Partner shall effect such reimbursement at the rate of $5,000 per year over the first five Fiscal Years of the Partnership and shall deduct the amount to be reimbursed pro rata among the Limited Partners in accordance with their respective Contributions. For accounting purposes, such reimbursed amounts shall be capitalized as organizational costs and amortized over 60 months. The excess of any Contribution over the reimbursement deduction applicable to it is referred to as the "Net Contribution".

-6-

CS 000455

**Section 206. Liability of Partners.** Except as provided herein or by the Act, the General Partner shall have the liabilities of a partner in a partnership without limited partners to persons other than the Partnership and the Limited Partners. The Limited Partners shall have no liability under this Agreement except as provided herein or by the Act. The General Partner shall be liable for the debts and obligations of the Partnership to the full extent of its assets, but shall, as among the Partners, be entitled to require the prior exhaustion of the Partnership's assets and be entitled to the benefits of the indemnity provided in Article Eight. Each Limited Partner shall be liable for the debts and obligations of the Partnership only to the extent of its Interest.

**Section 207. Reliance by Third Parties.** Any Person dealing with the Partnership shall be entitled to rely conclusively upon the power and authority of the General Partner as set forth herein. Further, any Person dealing with the Partnership or the General Partner may rely on a certificate signed by the General Partner, as to (a) the identity of the General Partner or any Limited Partner, (b) the existence or nonexistence of any fact which constitutes a condition precedent to acts by the General Partner or any agent or employee of the Partnership or which are in any other manner pertinent to the affairs of the Partnership, (c) the authority of the General Partner or any agent or employee of the Partnership to execute and deliver any instrument or document of the Partnership, (d) any act or failure to act by the Partnership or (e) as to any other matter whatsoever involving the Partnership.

**Section 208. Number of Partners.** The Partnership shall not at any time have more than 100 Partners, including the General Partner.

**Section 209. Partnership Expenses.** The General Partner shall be solely responsible for payment of the expenses of operating the Partnership, excluding the organizational and selling expenses reimbursable to the General Partner pursuant to Section 205, and excluding the following "Partnership Expenses":

(a) all taxes or governmental charges, all brokerage fees, advisory fees, commissions, transfer fees, brokerage commissions, and any other expenses, charges or fees, including, without limitation, attorneys' and accountants' fees and disbursements, incurred or payable in connection with the sale, or purchase of any investments;

(b) any other taxes or governmental charges payable by the Partnership or the Limited Partners;

(c) all costs incurred in connection with the preparation of the Partnership's federal, state or other tax returns and the financial statements and reports prepared pursuant to Sections 602 or 605;

(d) any costs and expenses of any litigation involving the Partnership and the amount of any judgment or settlement paid in connection therewith, excluding, however, the costs and expenses of any litigation, judgment or settlement in which the General Partner is found culpable of willful misfeasance or bad faith;

(e) any amounts payable by the Partnership as interest on a Capital Interest being withdrawn by a Partner pursuant to Section 304; and

-7-

CS 000456

(f) all costs and expenses for indemnity or contribution payable by the Partnership to any Person, whether payable under Article Eight or otherwise and whether payable in connection with any litigation involving the Partnership or otherwise.

No expenses or fees paid by the General Partner shall constitute a contribution to the Partnership. The Partnership shall be responsible for all Partnership Expenses set forth above incurred by it or by the General Partner on its behalf. All such Partnership Expenses shall be paid out of cash funds of the Partnership determined by the General Partner to be available for such purpose; provided, however, that the General Partner may, in its sole discretion, advance funds to the Partnership for the payment of such Partnership Expenses and shall be entitled to the reimbursement of any funds so advanced.

**Section 210. Restrictions on Authority of General Partner.** The General Partner shall not have authority to:

(a) confess or consent to a judgment against the Partnership;

(b) possess Partnership property, or assign any rights in specific Partnership property, for other than a Partnership purpose;

(c) admit a Person as an Additional Partner, except as provided in Section 302(a) and Articles Ten and Eleven;

(d) knowingly perform any act that would subject any Limited Partner to liability as a general partner in any jurisdiction;

(e) except as provided in Section 204(c), borrow money, issue, make or endorse promissory notes or other evidences of indebtedness or mortgage or otherwise encumber any assets of the Partnership;

(f) except as provided in Section 204(c), make loans to, or guarantee the indebtedness of, any party, including, without limitation, the General Partner and its Affiliates;

(g) purchase or write options on stock indices or purchase or write interest rate or stock index futures contracts or related options, or engage in interest rate hedging transactions, commodity or commodity futures transactions or derivatives trading;

(h) do any act in contravention of the Partnership's Certificate of Limited Partnership, as it may be amended;

(i) do any act which makes it impossible to carry on the ordinary business of the Partnership;

(j) do any act which would require the Partnership to register (or to seek an exemption from registration) as an investment company under the Investment Company Act of 1940: or

-8-

CS 000457

(k) make any material change in the Partnership's purposes set forth in this Agreement.

**Section 211. Title to Property.** All property of the Partnership shall be held in the name of the Partnership or a nominee of the Partnership and shall be deemed to be owned by the Partnership, and no Partner shall have any ownership interest in such property.

**Section 212. Filings.** The Partners shall from time to time execute or cause to be executed all such certificates (including limited partnership and fictitious name certificates) or other documents or cause to be made all such filings, recordings, publications or other acts as may be necessary or desirable to comply with the requirements for the formation and operation of a limited partnership under the laws of the State of Texas, for the purpose of qualifying the Partnership to do business as a foreign limited partnership under the laws of any other jurisdiction in which the Partnership may conduct business and, generally, to establish and protect the limited liability of the Limited Partners under the laws of any such jurisdiction.

## ARTICLE THREE

### Contributions, Withdrawals and Capital Interests

**Section 301. Contributions.** The General Partner shall maintain a register that sets forth the amount of cash (or the value of any other property) which each Partner has initially contributed to the Partnership. Such amount, as increased by any additional Contributions as provided in Section 302, is referred to as the "Contribution" of such Partner. The General Partner shall, from time to time, make additional Contributions, as and if needed, so that it shall at all times maintain a Capital Interest equal to at least 1% (or such smaller percentage as may be permitted by applicable Internal Revenue Service regulations and rulings) of the aggregate Capital Interests of all of the Partners.

**Section 302. Additional Interests.**

(a) The Partnership may offer and sell additional Interests from time to time to Persons who are not then Partners; provided, however, that any such sale shall be effective only as of the first business day following the next Valuation Date to occur. Such Persons may be admitted to the Partnership as Additional Partners by the General Partner without the consent of the Limited Partners; provided, however, that, if the General Partner proposes to admit as an Additional General Partner any Person who is not an Affiliate of the General Partner, the written consent of a Majority in Interest of the Limited Partners shall be a condition to such admission.

(b) Subject to the last sentence of this Section 302(b), any Partner may make additional Contributions to the Partnership, on at least ten days' prior written notice to the General Partner, and, unless the General Partner otherwise determines, in an amount not less than $10,000. Any such additional Contribution shall be deemed to be made effective as of the Valuation Date next following the General Partner's receipt thereof. Additional Contributions may be made in cash or in the form of a reinvestment of distributions pursuant to Section 505. The General Partner may refuse to accept all or any part of any additional Contribution.

-9-

**Section 303. No Interest on Contributions.**  No interest shall be paid by the Partnership to any Partner with respect to any Contribution, Capital Account or Unrealized Profit and Loss Account.

**Section 304. No Priority Among Partners.**  No Partner shall have priority over any other Partner either as to the return of its Contribution or as to distributions made by the Partnership.  Except as provided in Section 309, no specific time has been agreed on for the repayment of, or the payment of any return on, any Contribution.  No Partner shall have the right to demand or receive property other than cash in return for its Contribution or as a distribution of income.  Each Partner shall look solely to the assets of the Partnership for the return of its Contribution, and if such assets are insufficient for such purpose, no Partner shall have any recourse against any other Partner as a result thereof.

**Section 305. Withdrawals.**

(a)  A Partner shall not have the right to withdraw from the Partnership any portion of its Capital Interest except as follows:

(i)  as provided in Article Nine;

(ii)  as to any Limited Partner, following the first anniversary date of its initial Contribution, as of the close of business on the last day of any Fiscal Quarter, provided that the Limited Partner has given at least 30 days' prior written notice of such withdrawal to the General Partner; or

(iii)  as to the General Partner, as of the close of business on the last day of any Fiscal Quarter; provided, however, that, unless the General Partner wishes to completely withdraw from the Partnership, it shall maintain at all times a Capital Interest equal to at least 1% (or such smaller percentage as may be permitted by applicable Internal Revenue Service regulations and rulings) of the aggregate Capital Interests of all of the Partners.

A date as of which any withdrawal is effected is referred to as a "Withdrawal Date".  Subject to the remaining provisions of this Section 305, the amount of the Capital Interest to be withdrawn by a Partner shall be payable as soon as practicable after the valuation of such Capital Interest as of the Withdrawal Date, together with interest thereon (at a rate per annum equal to the 90-day United States Treasury Bill rate in effect on the Withdrawal Date) from the Withdrawal Date to the date of payment; provided, however, that in the case of complete withdrawals of a Capital Interest only, the Partnership may pay only 90% of the value of the Capital Interest withdrawn at the time of withdrawal.  The remaining 10% shall be retained by the Partnership until the completion of the audit of the Partnership's financial statements for the Fiscal Year in which such withdrawal occurs, for the purpose of effecting any adjustments with respect to the value of the withdrawn Capital Interest shown to be appropriate by such audited financial statements.  The interest payable as provided above shall be treated as a Partnership Expense for the Fiscal Quarter in which it is paid.

(b)  If, as a result of a requested withdrawal by a Limited Partner, the amount of such Limited Partner's remaining Capital Interest would be less than $100,000, the General

CS 000459

Partner, in its sole discretion, may require such Limited Partner to withdraw its entire Capital Interest.

(c)  Withdrawals shall be paid in cash or, at the discretion of the General Partner, in securities selected by the General Partner or by a combination of cash and such securities. If the General Partner suspends the valuation of Capital Interests pursuant to Section 306(e), the General Partner may also suspend the right of the Partners to withdraw their Capital Interests under this Section 305 until such time as the General Partner, in its reasonable discretion, determines that the value of the Capital Interests may again be fairly valued.

(d)  If a Limited Partner (who is not an Affiliate of the General Partner) completely withdraws from the Partnership as of any date other than the last day of a Fiscal Year, and if (i) the Cumulative Net Gain allocated to such Limited Partner through the date of withdrawal, after taking into account any allocations pursuant to Section 503 for prior Fiscal Years, exceeds the highest amount of Cumulative Net Gain allocated to such Limited Partner as of the end of any prior Fiscal Year (the "High Watermark") and (ii) the Net Gain allocated to such Limited Partner through the date of withdrawal represents a percentage return on such Limited Partner's Contributions as of the first day of such Fiscal Year of not less than the Hurdle Rate for such Fiscal Year, then (A) the amount payable by the Partnership with respect to the withdrawn Capital Interest shall be reduced, in addition to the amounts contemplated in Section 504, by an amount equal to 20% of the tentative allocation to such Limited Partner of Net Gain for the partial Fiscal Year in which the Withdrawal Date occurs in excess of any portion thereof which must be counted towards the Cumulative Net Gain allocated to such Limited Partner in order for it to exceed the High Watermark and (B) a corresponding amount shall be allocated to the General Partner pursuant to Section 503.

Similar appropriate adjustments shall be made in the event that a Limited Partner effects a partial withdrawal from the Partnership. See Section 504.

### Section 306.  Accounts; Credits and Debits.

(a)  The Capital Interest of each Partner shall be as shown in the Capital Account and Unrealized Profit and Loss Account maintained for such Partner on the Partnership books. The Capital Account of each Partner shall be credited with the amount of such Partner's Contributions and the amount of Net Income credited to the Capital Account of such Partner pursuant to Article Five. The Capital Account of each Partner shall be charged with the amount of any distribution to such Partner pursuant to Section 504 and the amount of Net Loss charged to the Capital Account of such Partner pursuant to Article Five.  The Unrealized Profit and Loss Account of each Partner shall be credited and charged with the amounts specified in Article Five.

(b)  The value of the Capital Account and Unrealized Profit and Loss Account of each Partner shall be calculated by the General Partner no less frequently than as of the close of business on each Valuation Date. If a Valuation Date is not a business day, however, the Capital Account and the Unrealized Profit and Loss Account shall be determined as of the close of business on the next preceding business day, and references to the Valuation Date shall be deemed to be to such next preceding business date in such circumstances.

-11-

CS 000460