(c) Unless a different valuation method is adopted by the General Partner and the Limited Partners are notified of such adoption, the General Partner shall determine the value of each of the Partnership's investments included in the Partners' Unrealized Profit and Loss Accounts as follows:

(i) for any security listed or traded on any domestic or foreign national or other recognized securities exchange or on the NASDAQ National Market System (the "NASDAQ/NMS"), the value of such security shall be the last reported sales price on the Valuation Date on the largest exchange on which such security traded on such date, or on the NASDAQ/NMS, as the case may be. If no sale of such security occurred on the Valuation Date, the value of such security shall be the last reported bid quotation (or if the Partnership has a short position in such security, the last reported asked quotation) therefor on the Valuation Date on the largest exchange on which it is traded on such date, or on the NASDAQ/NMS, as the case may be;

(ii) for any security that is not listed or traded on an exchange or the NASDAQ/NMS, the value of such security shall be the last reported bid quotation (or asked quotation for short positions) for such security on the Valuation Date, as provided by the principal market makers; and

(iii) for any investment referred to in subparagraphs (i) and (ii) of this Section 306(c) for which no last sales price or bid quotation is reported on the Valuation Date, or for any other investment, the value shall be the most recent bid quotation (or asked quotation for short positions) for such investment available from the principal market makers for such investments. If recent market quotations are not readily available for any investments or if the General Partner determines, in its reasonable discretion, that available market quotations do not fairly represent the value of such investments, such investments shall be valued at their fair value using methods determined in good faith by the General Partner.

Certain short-term investments having a maturity of 90 days or less, which the General Partner deems to be cash equivalents, shall be valued at cost, plus any accrued interest or discount earned and included in interest receivable in the Partnership's books and records. The General Partner may, in its reasonable discretion, establish other methods for determining such value whenever such other methods are deemed by it to be necessary or appropriate.

(d) In determining the value of investments, any assets or liabilities initially expressed in terms of foreign currencies shall be translated into U.S. dollars at the official exchange rate or, alternatively, at the mean of the current bid and asked prices of such currencies against the U.S. dollar last quoted by a major bank that is a regular participant in the foreign exchange market or on the basis of a pricing service that takes into account the quotes provided by a number of such major banks. If neither of these alternatives is available or both are deemed not to provide a suitable method for converting a foreign currency into U.S. dollars, the General Partner in good faith shall establish a conversion rate for such currency.

CS 000461

(e) The General Partner shall have the right to suspend the determination of the value of Capital Interests for any period during which, in its sole judgment, due to then prevailing market conditions or other reasons, it is impossible or impractical to do so.

**Section 307. Optional Redemptions.** At any time after December 31, 1998, the General Partner shall have the right to cause the Partnership to redeem and repurchase the Interest of any Limited Partner whose Contribution is then less than $100,000. The General Partner shall notify any such Limited Partner of the Partnership's intention to effect such a redemption not less than 30 days prior to the proposed date of redemption, which shall be the last day of the then current Fiscal Quarter. The Partnership shall pay to such Limited Partner, in cash, a redemption price for such Limited Partner's entire Capital Interest equal to the amount of the Capital Account and the amount of the Unrealized Profit and Loss Account maintained for such Limited Partner, valued as of the date of redemption, less any amount allocable to the General Partner pursuant to Section 503, calculated as provided in Section 305(d) as if the redemption were a complete withdrawal. Such payment shall be made not later than the 30th day following the date of redemption. The Partnership shall have the right to effect such a redemption only if the redemption price shall be in excess of all Contributions of such Limited Partner, less the amount of any distributions previously made by the Partnership to such Limited Partner.

**Section 308. Determinations of the General Partner Conclusive.** Any valuation of the Capital Interest of any Partner, or of the Partnership's investments pursuant to Section 306(c), in either case as determined in good faith by the General Partner, shall be binding and conclusive on each Partner and any other interested Person unless such Partner or interested Person objects to such valuation in writing within 30 days after receipt by the Partner of a statement of its Capital Interest, or of the valuation of the Partnership's investments, pursuant to Section 602, and, in the absence of such written objection, the correctness of such statement shall not be questioned by any Partner or other Person. If a Partner timely objects to any such statement, the General Partner and such Partner shall attempt to resolve such dispute promptly. If they are unable do so, the dispute shall be submitted to arbitration pursuant to Section 1201.

**Section 309. Interest of Creditors.** A creditor, including a Partner, who makes a nonrecourse loan to the Partnership shall not have or acquire at any time, as a result of making the loan, any direct or indirect interest in the profits, capital or property of the Partnership, other than as a secured creditor with respect to specific assets.

## ARTICLE FOUR

### Investment Matters

**Section 401. Investments Generally.** The assets of the Partnership shall be invested primarily in equity securities of domestic issuers (including, without limitation, common stock, preferred stock, warrants, debentures and other debt securities convertible into common or preferred stock, equity interests in trusts and partnerships, and options and rights with respect to such securities). The principal objective of the Partnership is to realize capital appreciation from its investments. The Partnership may also seek current income from investments in dividend-paying stocks and temporary investments in short-term, high yield corporate bonds. The

-13-

CS 000462

Partnership may, from time to time, also invest the funds of the Partnership in other short-term investments described in Section 204(b), pending application to the investments described above or for temporary defensive purposes.

**Section 402. Brokerage and Custody.** The General Partner shall select such brokers to effect the purchase, sale and other acquisition or disposition of investments, and such custodians to maintain custody thereof, as it deems appropriate, which may include brokers or custodians which are Affiliates of, or otherwise associated with, the General Partner. The General Partner shall attempt to obtain from any broker the lowest net price and best execution available, consistent with the Partnership's investment objectives and good practice. In any event, fees and commissions paid by the Partnership to any broker or custodian shall be reasonable in relation to the services provided and comparable to fees and commissions charged by other brokers or custodians to unaffiliated institutional customers for similar transactions at the time, although they may not necessarily be the lowest charges obtainable. In selecting any broker or custodian, the General Partner may take into account the fact that it has furnished the General Partner with statistical, research or other information or services which may enhance the General Partner's services generally, whether or not such services are of any benefit to the Partnership.

**Section 403. Management Fee.** The Partnership shall pay the General Partner, for its services to the Partnership, a quarterly management fee, in advance, equal to 0.25% (approximately 1.0% per annum) of the aggregate Capital Interests of the Limited Partners (other than those who are also Affiliates of the General Partner). The management fee for any Fiscal Quarter shall be paid on the first day of such Fiscal Quarter and shall be calculated on the basis of the Capital Interests as of the end of the immediately preceding Fiscal Quarter, except that the management fee payable after the first closing of the offering of Interests shall be payable on or before the 5th day after such closing and shall be calculated on the basis of the Capital Interests as of the date of such closing. The management fee shall be an expense of the Partnership chargeable to the Capital Accounts of the Limited Partners (other than those who are also Affiliates of the General Partner).

**Section 404. Other Business of Partners.** Any Partner and any Affiliate of any Partner may engage in or possess any interest in any other business venture of any kind, alone or with others, whether or not such ventures are competitive with the business of the Partnership (including, in the case of the General Partner and its Affiliates, the organization and management of other limited partnerships to invest in the investments described in Section 401). Neither the Partnership nor any Partner shall have any right, by virtue of this Agreement or the partnership relationship created hereby, in or to such independent ventures or the income, profits or losses derived therefrom. The pursuit of such ventures, even if competitive with the business of the Partnership, shall not be deemed wrongful or improper. No Partner nor any Affiliate thereof shall be obligated to present to the Partnership any particular investment opportunity, even if such opportunity is of a character which, if presented to the Partnership, could be taken by the Partnership, and each Partner and its Affiliates shall have the right to take for their own account (individually or as a trustee, partner or fiduciary), or to recommend to others, any such particular investment opportunity.

CS 000463

## ARTICLE FIVE

### Allocations and Distributions

**Section 501. Interim Allocations.** Not less frequently than as of the end of each Fiscal Quarter of the Partnership, the Capital Accounts and the Unrealized Profit and Loss Accounts of the Partners shall be tentatively credited and charged with the amounts set forth in this Section 501.

(a) **Net Income.** Net Income for each Fiscal Quarter (or shorter period) shall be allocated as follows and in the following order of priority:

(i) The portion of such Net Income that is attributable to gains and losses from the closing of investment positions, up to an amount equal to the aggregate of the positive balances in the Partners' Unrealized Profit and Loss Accounts after the allocation thereto under Section 501(c)(i) for such Fiscal Quarter (or shorter period), shall be credited to the Capital Accounts of the Partners having such positive balances and in proportion to such positive balances;

(ii) Any remaining balance of Net Income shall be credited to the Capital Accounts of the Partners in proportion to their respective Opening Balances; and

(iii) In allocating Net Income under this Section 501(a), net long-term or short-term capital gain or loss and ordinary income or loss shall be allocated among the Partners in the proportions that Net Income is allocated under this Section 501(a).

(b) **Net Loss.** Net Loss for each Fiscal Quarter (or shorter period) shall be allocated as follows and in the following order of priority:

(i) The portion of such Net Loss that is attributable to gains and losses from the closing of investment positions, up to an amount equal to the aggregate of the negative balances in the Partners' Unrealized Profit and Loss Accounts after the allocation thereto under Section 501(c)(i) for such Fiscal Quarter (or shorter period), shall be charged to the Capital Accounts of the Partners having such negative balances and in proportion to such negative balances;

(ii) Any remaining balance of Net Loss shall be charged to the Capital Accounts of the Partners in proportion to their respective Opening Balances; and

(iii) In allocating Net Loss under this Section 501(b), net long-term or short-term capital gain or loss and ordinary income or loss shall be allocated among the Partners in the proportions that Net Loss is allocated under this Section 501(b).

(c) **Unrealized Profit and Loss.** The Partners' Unrealized Profit and Loss Accounts shall be credited and charged in each Fiscal Quarter (or shorter period) as follows and in the following order of priority:

-15-

CS 000464

(i) The Partners' Unrealized Profit and Loss Accounts shall be credited or charged with the Partnership's Net Unrealized Profits or Net Unrealized Losses for such Fiscal Quarter (or shorter period). The amount so credited or charged shall be allocated among the Partners in proportion to the Partners' respective Opening Balances;

(ii) If the Capital Account of any Partner is credited with an amount of Net Income under Section 501(a), then such Partner's Unrealized Profit and Loss Account shall be charged with an amount equal to the amount of Net Income so credited; and

(iii) If the Capital Account of any Partner is charged with an amount of Net Loss under Section 501(b), then such Partner's Unrealized Profit and Loss Account shall be credited with an amount equal to the amount of Net Loss so charged.

Section 502. Final Allocations. Subject to Section 503, the allocations of Net Income, Net Loss and Net Unrealized Profit and Net Unrealized Loss for each Partner for a Fiscal Year shall equal the sum of the amounts allocated to such Partner under Section 501 for the four Fiscal Quarters of such Fiscal Year. The final allocations for a Fiscal Year under this Section 502 shall supersede the interim quarterly allocations for such year under Section 501.

Section 503. Allocation of Net Gain to the General Partner. Subject to the last paragraph of this Section 503, on determination of the final allocations for any Fiscal Year pursuant to Section 502:

(a) if the amount of Cumulative Net Gain allocated to a Limited Partner (who is not an Affiliate of the General Partner) through the end of such Fiscal Year, after taking into account any allocations pursuant to this Section 503 for prior Fiscal Years, exceeds the High Watermark (as defined in Section 305(d)); and

(b) if the Net Gain allocated to such Limited Partner for such Fiscal Year represents a percentage return on such Limited Partner's Contributions (calculated as provided below) as of the first day of such Fiscal Year of not less than the Hurdle Rate for such Fiscal Year; then

(c) the General Partner shall be allocated an amount equal to 20% of the allocation of Net Gain for such Fiscal Year otherwise allocable to such Limited Partner (exclusive of any portion thereof which must be counted towards the Cumulative Net Gain allocated to such Limited Partner through the end of such Fiscal Year in order for it to exceed the High Watermark). The amount so allocable to the General Partner shall be treated as being attributable to amounts otherwise allocable to the Limited Partner's Capital Account and Unrealized Profit and Loss Account, in proportion to the respective amounts otherwise so allocable.

The percentage return on a Limited Partner's Contributions for any Fiscal Year shall be determined on the basis of a year of 365 or 366 days, as the case may be. With respect to any Fiscal Year in which a Limited Partner makes an initial or additional Contribution or effects a withdrawal of all or a portion of its Capital Interest on any day other than the first or

-16-

CS 000465

last day of such Fiscal Year, the percentage return for such Fiscal Year, solely with respect to the amount so contributed or withdrawn, shall equal the percentage return actually realized on such amount after the Contribution or prior to the withdrawal, as the case may be, times the total number of days in such Fiscal Year (either 365 or 366) and divided by the number of days in such Fiscal Year after the Contribution or prior to the withdrawal, as the case may be.

Limited Partners may be admitted to the Partnership at different times during the course of any year. In order to permit the Partnership to effect the allocation with respect to as many Limited Partners as possible as of the end of the Fiscal Year, the Partnership shall, in its discretion, either effect the first allocation with respect to a Limited Partner as of the end of the first Fiscal Year in which such Limited Partner has been in the Partnership, with respect to a period of less than 12 months, or as of the end of the second Fiscal Year in which such Limited Partner has been in the Partnership, with respect to a period longer than 12 months. In either case, all subsequent allocations shall be effected for the 12 months ending on the last day of each Fiscal Year.

**Section 504. Special Rules for Withdrawing Limited Partners.**

(a) To the extent a Limited Partner withdraws its Capital Interest from the Partnership (other than through distributions under Section 505), the Withdrawal Date shall be treated for purposes of Section 502 as the last day of a Fiscal Year with respect to the withdrawn Capital Interest and the amount of the withdrawn Capital Interest shall be calculated accordingly. In addition, the amount payable by the Partnership with respect to the withdrawn Capital Interest shall be reduced by such Capital Interest's proportionate share of any reserve for debts, obligations and liabilities of the Partnership not otherwise reflected in the Partners' Capital Interests, such reserve to be determined by the General Partner in its reasonable discretion. Notwithstanding the reduction in payment described in the preceding sentence, the Capital Interest of the withdrawing Partner shall be charged with the full amount of the reserve so allocated to it.

(b) If a Partner withdraws part, but not all, of its Capital Interest, (i) the withdrawal shall be charged entirely against such Partner's Capital Account and not against such Partner's Unrealized Profit and Loss Account and (ii) the amount, if any, of any Net Loss and Net Unrealized Loss in such Partner's Capital Account and Unrealized Profit and Loss Account shall be reduced pro rata in proportion to the amount of the Partner's Capital Interest withdrawn.

(c) Notwithstanding the provisions of Section 501, if a Partner withdraws all of its Capital Interest, the General Partner, in its sole discretion, may make a special allocation to such Partner for federal income tax purposes of the gains or losses recognized by the Partnership from the closing of investment positions in such manner as will eliminate any balance in the withdrawing Partner's Unrealized Profit and Loss Account as of the date of withdrawal.

**Section 505. Distributions to Partners.**

(a) Subject to the availability of Partnership cash and to the maintenance of such cash reserves as the General Partner may deem advisable, the General Partner, on the written request of a Partner given not less than 60 days prior to the requested date of distribution and not more frequently than once each Fiscal Year, shall endeavor to distribute to such Partner, an

-17-

CS 000466

amount not greater than the product of (i) the Net Income allocated to such Partner for the prior Fiscal Year times (ii) the highest marginal rate of federal, state and local personal income taxation applicable to such Partner. In determining such marginal rate, the General Partner may take into account the extent to which the Net Income for such Fiscal Year is comprised of capital gain and ordinary income.

(b) Except as provided in Section 505(a), the General Partner, in its sole discretion, shall determine the amounts, if any, to be distributed to the Partners, and the times when such distributions are to be made, but the General Partner shall not be required to make any distributions (except as contemplated under Article Nine) or distributions in any particular amount or at any particular time or times. Any amounts distributed may include any combination of income, capital gains or return of capital. The General Partner shall notify the Partners at least 15 days in advance of any distribution of the amount and date of such distribution. Any distributions, including the final distribution on termination of the Partnership, shall be in cash, shall be made to the Partners in proportion to their respective Capital Interests, and shall be charged against the Partners' Capital Accounts. The General Partner shall have the right to distribute in cash to the General Partner amounts allocated to its Capital Account to the extent necessary to cover its expenses incurred in managing the Partnership.

**Section 506. Intention of the Parties.** The allocations of profit and loss provided for in Sections 501 through 504, and the making of distributions as provided for in Section 505, are intended to comply with the safe harbor for securities partnerships set forth in Section 1.704-3(e)(3)(iii) of the Treasury Regulations, incorporating the full netting approach referred to in Section 1.704-3(e)(3)(v) thereof. The allocation and distribution provisions are also intended to comply with the substantial economic effect rules of Section 1.704-1(b) of the Treasury Regulations. Accordingly, such Treasury Regulations shall be taken into account in implementing the provisions of this Article Five.

Notwithstanding anything in this Article Five to the contrary, if any Partner unexpectedly receives any adjustments, allocations, or distributions described in Sections 1.704-1(b)(2)(ii) (d)(4), (5) or (6) of the Treasury Regulations which cause a deficit, or increase the deficit, in the Partner's Capital Account, items of Partnership gross income and gain shall be allocated to the Partner in an amount and manner sufficient to eliminate the deficit in its Capital Account as quickly as possible. It is intended that this Section 506 be treated as a "qualified income offset" within the meaning of Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations.

**Section 507. Reinvestment of Distributions.** A Limited Partner may elect to have any distribution declared by the General Partner pursuant to Section 504 reinvested in such Limited Partner's Capital Account, by so notifying the General Partner in writing at least 15 days prior to the date of the distribution, unless the General Partner has previously notified such Limited Partner that it shall not accept the reinvestment of such distribution. Any such reinvestment shall be deemed an additional net Contribution.

**Section 508. Special Allocations for Hot Issues.** The General Partner may, from time to time, invest Partnership assets in securities which are being publicly offered and which are expected to sell at a premium over the public offering price in the secondary market during such public offering and, accordingly, would be deemed to be "hot issues" for purposes of

-18-

CS 000467

the Interpretation of Article III, Section 1 of the Rules of Fair Practice adopted by the Board of Governors of the National Association of Securities Dealers, Inc. (the "Interpretation"). In such event, in order to comply with the requirements of the Interpretation, the Partnership shall (a) establish a separate brokerage account for its hot issue purchases, (b) segregate such hot issues and any proceeds thereof from other assets of the Partnership so that no Partner who is a "restricted person" for purposes of the Interpretation shall have any interest in such hot issues and proceeds, (c) allocate any profits and losses attributable to such hot issues only among the Partners who are not "restricted persons" and (d) effect such adjustments in the Partners' Capital Accounts (through, among other things, the creation of multiple Capital Accounts per Partner for hot issue and non-hot issue investments and the increase in the interest of any Partner who is a "restricted person" in the assets of the Partnership which are not hot issues to an extent appropriate to offset such Partners' lack of any interest in such hot issues) and in the implementation of the provisions of this Article Five as are necessary and appropriate to give effect to the foregoing and to comply with the Interpretation.

## ARTICLE SIX

### General Accounting Provisions

**Section 601. Fiscal Year.** The Fiscal Year of the Partnership for financial statement and Federal income tax purposes shall end on December 31 of each year; _provided_ that the final Fiscal Year of the Partnership shall end on the date of termination of the Partnership.

**Section 602. Capital Determined; Financial Statements and Reports.**

(a) The Capital Interests of the Partners shall be ascertained and determined as of the close of business on each Valuation Date, and as of the close of business on any other date as the General Partner shall determine. At each such time, the books of account of the Partnership shall be closed and appropriate financial statements shall be prepared reflecting the Capital Interests of the Partners in accordance with Articles Three and Five. At least annually, the financial statements shall be audited by such independent certified public accountants as are selected by the General Partner.

(b) After the end of each Fiscal Year, the General Partner shall cause the Partnership's independent certified public accountants to prepare and transmit, as promptly as practicable, and in any event within 75 days of the close of the Fiscal Year, a report setting forth in sufficient detail such transactions effected by the Partnership during such Fiscal Year as shall enable each Partner to prepare its federal income tax return. The General Partner shall mail such report to each Partner and former Partner (or its successor or legal representative) who may require such information in preparing its Federal income tax return, such information to include a copy of the Partnership's information return filed for Federal income tax purposes.

(c) Further, the General Partner shall prepare and transmit to each Partner, as promptly as practicable, and in any event (i) within 90 days of the close of each Fiscal Year, audited financial statements of the Partnership prepared in accordance with this Section 602, with, in the General Partner's discretion, a condensed schedule of investments (including valuations)

CS 000468

and (ii) within 45 days of the close of each Fiscal Quarter other than the last Fiscal Quarter of each fiscal year, unaudited financial statements of the Partnership. Quarterly schedules of investments shall be provided to each Partner who so requests.

**Section 603.  Valuations by the General Partner.**  In determining the accounts of the Partnership for all purposes, the assets and liabilities of the Partnership may be taken at such valuations as the General Partner in its sole discretion determines, and the Partnership may, but shall not be required to, set up reserves against doubtful accounts and contingent and unliquidated liabilities.

**Section 604.  Books and Records.**  The General Partner shall maintain complete and accurate books and records of all matters relating to the Partnership. Each Limited Partner and its representatives shall have access to such books and records at any time during reasonable business hours for proper purposes, upon at least ten business days' notice. The Partnership shall maintain its books and records on the accrual method and shall utilize generally accepted accounting principles consistently applied in the preparation of its annual financial statements. All decisions as to accounting principles and tax elections (including, without limitation, elections as to depreciation methods) shall be made by the General Partner.

**Section 605.  Tax Elections.**  The General Partner may, in its sole discretion, make or revoke the election referred to in Section 754 of the Code or any similar provision enacted in lieu thereof or any other election under the Code.

**Section 606.  Information Tax Returns.**  The General Partner shall cause to be prepared and filed all federal and state information tax returns required of the Partnership.

**Section 607.  Designation of Tax Matters Partner.**  The General Partner is designated as the Tax Matters Partner, under Section 6231(a)(7) of the Code, with respect to the Partnership. The Tax Matters Partner is specifically directed and authorized to take whatever steps it deems necessary or desirable to perfect such designation, including, without limitation, filing any forms or documents with the Internal Revenue Service and taking such other action as may from time to time be required under regulations of the United States Department of the Treasury. Expenses of such administrative proceedings undertaken by the Tax Matters Partner shall be expenses of the Partnership. Further, the cost of any adjustments to a Partner and the cost of any resulting audits or adjustments of such Partner's tax return, shall be borne solely by the affected Partner.

## ARTICLE SEVEN

### As to Firm Name

In the event of a termination and dissolution of the Partnership, neither the firm name, nor the right to its use, nor the related goodwill, if any, shall be considered as an asset of the Partnership, and no valuation shall be put thereon for the purpose of liquidation or any distribution, or for any other purpose whatsoever, nor shall any value ever be placed thereon as between the Partners and the successors or assigns or personal representatives of any Partner.

-20-

CS 000469

# ARTICLE EIGHT

## Exculpation and Indemnification

**Section 801.  General Fiduciary Duty.**  The General Partner shall be under a fiduciary duty to conduct the affairs of the Partnership in the best interests of the Partnership and of the Limited Partners, including the safekeeping and use of all Partnership funds and assets, whether or not in the General Partner's possession or control, and the General Partner shall not employ, or permit another party to employ, such funds and assets in any manner except for the exclusive benefit of the Partnership.  Neither the General Partner nor any of its Affiliates shall receive any remuneration for any service it may perform for the Partnership other than as permitted under this Agreement.

**Section 802.  Limitation on Liability of General Partner.**  To the fullest extent permitted under applicable law, the General Partner shall not be liable in damages or otherwise to the Partnership or any of the Limited Partners for any act or omission or error in judgment in performing its duties under this Agreement if it acted in good faith and in a manner it reasonably believed to be within the scope of the authority granted by this Agreement and in or not opposed to the best interests of the Partnership; provided, however, that the General Partner shall not be relieved of liability in respect of any claim, issue or matter arising out of its gross negligence or willful misconduct in the performance of its fiduciary duties to the Limited Partners.  The General Partner may consult with attorneys and accountants in respect of the Partnership's affairs and shall be fully protected and justified in acting or failing to act in accordance with the advice or opinion of such attorneys or accountants, provided that they have been selected with reasonable care.  The General Partner shall have no liability for the acts or omissions of any broker, depositary, custodian or other financial institution that it retains or uses with respect to the assets of the Partnership, except on account of gross negligence or willful misconduct in the selection thereof.  The foregoing limitations on the liability of the General Partner shall not apply to the extent, and shall in no event constitute a waiver or limitation, of any right which the Partnership or any Limited Partner has under the federal or any applicable state securities laws which cannot be waived, including any right which may impose liability, under certain circumstances, on persons even if they act in good faith and with due care.

**Section 803.  Indemnification.**  To the fullest extent permitted under applicable law and subject to the limitations set forth in Section 802:

(a)  In any threatened, pending or completed action, suit or proceeding in which the General Partner or any of its Affiliates was or is a party or is threatened to be made a party by reason of the fact that the General Partner is or was the General Partner of the Partnership or that such Affiliate is or was affiliated therewith (other than an action by or in the right of the Partnership), the Partnership shall indemnify the General Partner or such Affiliate against judgments, fines and amounts paid in settlement and expenses, including, without limitation, attorneys' and accountants' fees and disbursements, actually and reasonably incurred by the General Partner or such Affiliate in connection with such action, suit or proceeding, or in connection with an appeal therein, if it is determined in accordance with Section 11.06 of the Act that the General Partner or such Affiliate acted in good faith and in a manner reasonably believed

-21-

CS 000470

to be in or not opposed to the best interests of the Partnership (and, in the case of a criminal proceeding, the General Partner or such Affiliate had no reasonable cause to believe that it or his conduct was unlawful), and provided that the conduct of the General Partner or such Affiliate is not adjudged to have constituted gross negligence, willful misconduct or an intentional breach of the General Partner's fiduciary obligations in the performance of its duties to the Partnership. The termination of any action, suit or proceeding by judgment, order or settlement shall not, of itself, create a presumption that the General Partner or such Affiliate did not act in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Partnership.

(b)  In any threatened, pending or completed action, suit or proceeding by or in the right of the Partnership, to which the General Partner or any of its Affiliates was or is a party or is threatened to be made a party, involving an alleged cause of action by one or more Limited Partners for damages arising from the activities of the General Partner or such Affiliate in the performance or management of the business or affairs of the Partnership as prescribed by this Agreement, the Partnership shall indemnify the General Partner or such Affiliate against judgments, fines and amounts paid in settlement and expenses, including, without limitation, attorneys' and accountants' fees and disbursements, actually and reasonably incurred by the General Partner or such Affiliate in connection with such action, suit or proceeding, or in connection with an appeal therein,  if it is determined in accordance with Section 11.06 of the Act that the General Partner or such Affiliate acted in good faith and in a manner it reasonably believed to be in or not opposed to the best interests of the Partnership (and, in the case of a criminal proceeding, the General Partner or such Affiliate had no reasonable cause to believe that it or his conduct was unlawful), and provided that the conduct of the General Partner or such Affiliate is not adjudged to have constituted gross negligence, willful misconduct or an intentional breach of the General Partner's fiduciary obligations in the performance of its duties to the Partnership (unless and only to the extent that the court in which such action, suit or proceeding was brought shall determine upon application, that, despite the adjudication of liabilities, but in view of all circumstances of the case, the General Partner or such Affiliate is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper).

(c)  To the extent that the General Partner or any of its Affiliates has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in sub-paragraphs (a) or (b) of this Section 803, or in connection with any appeal therein, or in defense of any claim, issue or matter therein, the Partnership shall indemnify the General Partner or such Affiliate to the full extent permitted by law against the expenses, including, without limitation, attorneys' and accountants' fees and disbursements, actually and reasonably incurred by the General Partner or such Affiliate in connection therewith.

(d)  Expenses incurred by the General Partner or any of its Affiliates in defending an action, suit or proceeding shall, from time to time, be paid by the Partnership in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the General Partner or such Affiliate to repay such amount if it is ultimately determined that it is not entitled to be indemnified by the Partnership as authorized in this Section 803.

(e)  The indemnification and advancement of expenses provided by this Section 804 shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may otherwise be entitled.

-22-

CS 000471

(f) Notwithstanding the foregoing, the Partnership shall not indemnify the General Partner or any of its Affiliates against any liability, loss or damage incurred by it in conjunction with any claim involving allegations that the securities laws of any jurisdiction have been violated unless (i) there has been a successful adjudication on the merits as the result of a trial or (ii) such claim has been dismissed with prejudice on the merits by a court of competent jurisdiction and a court of competent jurisdiction approves such indemnification. In no event shall the Partnership bear any portion of the cost of any liability insurance which insures the General Partner against any liability as to which indemnification is not allowed under this Section 803.

(g) If for any reason (other than the gross negligence or willful misconduct of the General Partner), the foregoing indemnification is unavailable to the General Partner, or insufficient to hold it harmless, then the Partnership shall contribute to the amount paid or payable by the General Partner as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect not only the relative benefits received by the Partnership on the one hand and the General Partner on the other hand but also the relative fault of the Partnership and such General Partner, as well as any relevant equitable considerations. The reimbursement, indemnity and contribution obligations of the Partnership under this subparagraph (g) shall be in addition to any liability which the Partnership may otherwise have, shall extend upon the same terms and conditions to the officers, directors, employees and controlling persons (if any) of the General Partner and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Partnership, the General Partner and any such persons. The provisions of this Section 804 shall survive any termination of this Agreement.

(h) Notwithstanding the foregoing, nothing in this Article Eight shall exculpate or exonerate any party from liability, or indemnify any party against loss, for any violation of the federal or any state securities laws, or for any other intentional or criminal wrongdoing.

## ARTICLE NINE

### Duration and Dissolution of the Partnership

Section 901. Events Causing Dissolution. The Partnership shall terminate on the happening of any of the following events:

(a) the expiration of the term of the Partnership on December 31, 2006;

(b) the complete withdrawal, Bankruptcy or dissolution of the General Partner;

(c) the disposition of all of the assets of the Partnership;

(d) the death or permanent disability of both Conrad P. Seghers and James R. Dickey; or

(e) the happening of any other event causing the dissolution of the Partnership under the Act.

-23-

Dissolution of the Partnership shall be effective on the day on which the event occurs giving rise to the dissolution, but the Partnership shall not terminate until the Partnership's Certificate of Limited Partnership is canceled and the assets of the Partnership are distributed as provided in Section 902. Notwithstanding any such dissolution, prior to the termination of the Partnership, the business of the Partnership and the affairs of the Partners, as such, shall continue to be governed by this Agreement. If the Partnership is dissolved pursuant to clause (b) or (d) of this Section 901, a Majority in Interest of the Limited Partners shall appoint a special liquidator to facilitate the liquidation of the Partnership in the manner described in Section 902. Notwithstanding the foregoing, if the Partnership is dissolved pursuant to clause (b) or (d) of this Section 901, the Partnership may be reconstituted and not dissolved if a Majority in Interest of the Limited Partners so votes within 90 days after the occurrence of such dissolution event, provided, that such vote shall also designate a new General Partner.

### Section 902. Dissolution Procedures.

(a) On dissolution of the Partnership, the General Partner (or a special liquidator) shall proceed diligently to wind up the affairs of the Partnership, to liquidate its assets and distribute the proceeds thereof as provided in Section 902(e) and to cause the cancellation of the Partnership's Certificate of Limited Partnership. During the interim, the General Partner (or special liquidator) shall, to the extent consistent with such liquidation and dissolution, continue to operate the business of the Partnership, exercising in connection therewith all of the authority of the General Partner as set forth in this Agreement, but shall have no further authority to bind the Partnership except to wind up its affairs in compliance herewith.

(b) On dissolution of the Partnership, the General Partner (or special liquidator) shall make or cause to be made a complete and accurate accounting of the assets, liabilities and operations of the Partnership, as, of and through the last day of the month in which the dissolution occurs.

(c) Distributions in dissolution may be made in cash or in kind or in combinations thereof. Distributions in kind shall be made subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of the assets so distributed or to comply with applicable securities laws. The General Partner shall use its best judgment as to the most advantageous time for the Partnership to sell its assets or to make distributions in kind. In this regard, if the General Partner determines that an immediate sale of all or part of the Partnership's assets would cause undue loss to the Partners, the General Partner, in order to avoid such loss, may, after having so notified all of the Limited Partners, defer liquidation of, and withhold from distribution for a reasonable time, any assets of the Partnership other than those necessary to satisfy the Partnership's debts and obligations. Assets to be distributed in kind shall be distributed on the basis of the fair market value thereof, as determined by the General Partner, and any Partner entitled to any interest in such assets shall receive such interest as a tenant-in-common with all other Partners so entitled.

(d) As expeditiously as possible, the General Partner (or special liquidator) shall distribute the assets of the Partnership in the following order of priority:

-24-

CS 000473

(i) payment of all liabilities and obligations of the Partnership, other than liabilities or obligations to the Partners, shall be made or provided for, whether by the establishment of such reserves as the General Partner (or special liquidator) shall deem appropriate or otherwise;

(ii) payment of all expenses of the liquidation;

(iii) the establishment of such reserves as are deemed necessary by the General Partner (or special liquidator);

(iv) payment of any loans or advances made to the Partnership, first by any Limited Partner and then by the General Partner; and

(v) to all of the Partners in accordance with their respective Capital Interests.

**Section 903.  Withdrawal or Death of a Limited Partner.**  The withdrawal, death or incompetency of a Limited Partner shall not dissolve the Partnership.  On the death of an individual Limited Partner, the rights and obligations of such Limited Partner shall accrue to his or her estate.  Except as expressly provided in this Agreement, no Bankruptcy or other event affecting a Limited Partner shall affect this Agreement.

## ARTICLE TEN

### Transferability of the General Partner's Interest

The General Partner may not sell, transfer, assign, pledge or otherwise dispose of all or any part of their Interests; provided, however, that the foregoing limitation shall not apply to a disposition by the General Partner to any of its Affiliates.  In this regard, the General Partner shall have the right to assign its rights to receive all or a portion of any allocation of net gain contemplated by Section 503 to one or more of its Affiliates, and each Limited Partner hereby consents to any such assignment.  In the case of any such assignment, the assignees shall be admitted as Additional Limited Partners to the extent of their assigned interests.  The General Partner may also transfer its interest in the Partnership to any Person with the prior consent of a Majority in Interest of the Limited Partners.

## ARTICLE ELEVEN

### Transferability of a Limited Partner's Interest

**Section 1101.  Restrictions on Transfer.**  Notwithstanding any other provision of this Article Eleven, no sale, assignment, pledge, transfer or other disposition of all or any portion of a Limited Partner's Interest (a "Transfer") may be made without the prior written consent of the General Partner, which consent may be given or withheld in the sole and absolute discretion of the General Partner (except for transfers on the death of an individual Limited Partner, by will

-25-

CS 000474

or the laws of descent and distribution, or by operation of law pursuant to the reorganization of a Limited Partner), and without the following conditions being satisfied:

(a)  counsel for the Partnership is not of the opinion that the Transfer (i) would be in violation of the securities laws of any jurisdiction, (ii) would require the Partnership to register or to seek an exemption from registration as an investment company under the Investment Company Act of 1940, (iii) would cause the General Partner to be a "fiduciary" within the meaning of Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended, with respect to the proposed transferee or any other party or (iv) would result in the termination of the Partnership for federal income tax purposes;

(b)  an instrument of assignment executed and acknowledged by the transferor and the transferee evidencing, among other things, the agreement of the transferee to be bound by all of the provisions of this Agreement, containing appropriate investment representations of the transferee and otherwise in form and substance satisfactory to counsel for the Partnership, is delivered to the General Partner; and

(c)  the transferor or the transferee pays all of the Partnership's costs incurred in connection with the Transfer and, if applicable, the transferee's becoming a Substitute Limited Partner, including, without limitation, the costs of preparing and filing any necessary amendments to the Partnership's Certificate of Limited Partnership and the reasonable fees and disbursements of the Partnership's counsel.

Any purported Transfer in violation of this Section 1101 shall be null and void as against the Partnership, except as otherwise provided by law.

**Section 1102.    Indemnification by Transferor.**  If the Partnership or either General Partner becomes involved in any capacity in any action, proceeding or investigation in connection with any Transfer by a Limited Partner, or the admission into the Partnership of such transferring Limited Partner's transferee or assignee (any such transferee or assignee, when so admitted, being called a "Substituted Limited Partner"), the transferring Limited Partner shall periodically reimburse each of the Partnership and the General Partner, on demand, for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith.  The transferring Limited Partner shall also indemnify the Partnership and the General Partner, to the fullest extent permitted under applicable law, against any losses, claims, damages or liabilities to which they may become subject in connection with such Transfer.  The reimbursement and indemnity obligations of the transferring Limited Partner under this Section 1102 shall be in addition to any liability which the transferring Limited Partner may otherwise have, shall extend upon the same terms and conditions to the officers, directors, employees and controlling Persons (if any) of the General Partner and shall be binding on and inure to the benefit of any successors, assigns, heirs and personal representatives of the Partnership, the General Partner and any such Persons.   The foregoing provisions shall survive any termination of this Agreement.

**Section 1103.    Effect and Effective Date.**  No Transfer by a Limited Partner shall be effective for any purpose until the first business day after the Valuation Date next following the date on which the General Partner actually receives the instrument of assignment

-26-

CS 000475

with respect thereto. No Transfer by a Limited Partner shall relieve it of any obligations or liabilities under this Agreement unless and until such obligations and liabilities are assumed by a transferee who is admitted as a Substituted Limited Partner pursuant to Section 1105. A transferee who does not become a Substituted Limited Partner shall have no rights as a Limited Partner except to receive its share of allocations and distributions pursuant to this Agreement and any other rights of an assignee of a limited partnership interest under the Act, and any such transferee who desires to make a further assignment of its interest in the Partnership shall be subject to all of the provisions of this Article Eleven to the same extent as if it were a Substituted Limited Partner.

**Section 1104. Status of Transferor.** Any Limited Partner which transfers all of its Interest shall cease to be a Limited Partner, except that, unless and until a Substituted Limited Partner is admitted in its stead, such assigning Limited Partner shall retain the statutory rights of an assignor of a limited partner's interest under the Act. Anything herein to the contrary notwithstanding, both the Partnership and the General Partner shall be entitled to treat the assignor of an Interest as the absolute owner thereof in all respects, and shall incur no liability for distributions made in good faith to it, until such time as the assignee of the Interest has been admitted into the Partnership as a Substituted Limited Partner.

**Section 1105. Substituted Limited Partners.** No Limited Partner shall, except as stated in Section 1101, have the right to substitute an assignee, transferee, donee, heir, legatee, distributee or other recipient of all or any fraction of such Limited Partner's Interest as a Limited Partner in its place. Any such assignee, transferee, donee, heir, legatee, distributee or other recipient of an Interest (whether pursuant to a voluntary or involuntary Transfer) shall be admitted to the Partnership as a Substituted Limited Partner only (i) by satisfying the requirements of Sections 1101 and 1106, (ii) on the receipt of any necessary governmental consents and (iii) on an amendment to this Agreement and the Partnership's Certificate of Limited Partnership recorded in the proper records of each jurisdiction in which such recordation is necessary to qualify the Partnership to conduct business or to preserve the limited liability of the Limited Partners.

**Section 1106. Conditions of Admission.** Each Substituted Limited Partner, as a condition to its admission as a Limited Partner, shall execute and acknowledge such instruments, in form and substance satisfactory to the General Partner, as the General Partner reasonably deems necessary or desirable to effectuate such admission and to confirm the agreement of the Substituted Limited Partner to be bound by all the terms and provisions of this Agreement with respect to the Interest acquired.

**Section 1107. Transfers During a Fiscal Year.** In the event of the Transfer of a Partner's Interest at any time other than at the end of the Partnership's fiscal year, the distributive shares of the various items of Partnership income, gain, loss and expense as computed for tax purposes shall be allocated between the transferor and the transferee on such proper basis as the transferor and the transferee shall agree; provided, however, that no such allocation shall be effective unless (i) the transferor and the transferee give the Partnership written notice, prior to the effective date of such Transfer, stating their agreement that such allocation shall be made on such proper basis, (ii) the General Partner consents to such allocation and (iii) the transferor and the transferee agree to reimburse the Partnership for any incremental accounting fees and other expenses incurred by the Partnership in making such allocation.

-27-

CS 000476

## ARTICLE TWELVE

### Miscellaneous

**Section 1201.  Resolution of Disputes.**  If any dispute or disagreement respecting the Partnership or the relationship among any of the Partners cannot be resolved, such matter shall be submitted to arbitration before the American Arbitration Association in Dallas, Texas, in accordance with its Commercial Arbitration Rules and the decision of the arbitrators shall be conclusive and binding upon each of the Partners and upon their successors, assigns and personal representatives.

**Section 1202.  No Bill for Partnership Accounting.**  Subject to any mandatory provisions of law or to circumstances involving a breach of this Agreement, each of the Partners agrees that it shall not (except with the consent of the General Partner) file a bill for Partnership accounting, or otherwise proceed adversely in any way whatsoever against the other Partners or the Partnership.

**Section 1203.  Grant of Power of Attorney.**  Each Limited Partner, by the execution of this Agreement, or by authorizing such execution on its behalf, does irrevocably make, constitute and appoint the General Partner, with full power of substitution and resubstitution, as his true and lawful attorney and agent, with full power and authority in its name, place and stead to execute, swear to, acknowledge, deliver, file and record in the appropriate public offices:

(a)  all certificates and amended certificates of limited partnership, fictitious or assumed name certificates and other certificates and instruments (including counterparts of this Agreement) which the General Partner deems necessary or desirable to qualify or continue the Partnership as a limited partnership or to conduct the business of the Partnership in the jurisdictions in which the Partnership may conduct business;

(b)  all amendments to this Agreement adopted in accordance with the terms of this Agreement;

(c)  all certificates of dissolution, conveyances and other instruments which the General Partner deems necessary or desirable to effect the dissolution and termination of the Partnership; and

(d)  any other instrument which is now or may hereafter be required by law to be filed on behalf of the Partnership or which is necessary or desirable to reflect the exercise by either General Partner of any power granted to it under this Agreement in connection with the conduct of the Partnership's business and affairs.

The power of attorney granted pursuant to this Section 1203 shall be deemed to be coupled with an interest, shall be irrevocable and shall survive any of the disabilities with respect to any Limited Partner referred to in Section 903 and, for the purpose of admitting a substituted Limited Partner, the assignment by such Limited Partner of its interest in the Partnership.

-28-

CS 000477

**Section 1204. Binding Nature of Agreement.** This Agreement shall be binding upon and inure to the benefit of the successors, assigns and personal representatives of each of the Partners.

**Section 1205. Execution of Agreement.** This Agreement may be executed in more than one counterpart with the same effect as if the Partners executing the several counterparts had all executed the same counterpart; provided, however, that each separate counterpart shall have been executed by the General Partner.

**Section 1206. Amendments.** This Agreement may be amended by the written agreement of the General Partner and a Majority in Interest of the Limited Partners; provided, however, that without the consent of each Partner, if any, to be adversely affected by any amendment, this Agreement may not be amended to (a) convert any Limited Partner's interest in the Partnership into that of a General Partner, (b) otherwise modify the limited liability of a Limited Partner, (c) increase the Contribution required to be made by any Limited Partner or (d) modify the interest of any Limited Partner in allocations or distributions.

**Section 1207. Amendments Without Consent.** In addition to amendments pursuant to Section 1206, amendments of this Agreement may be made from time to time by the General Partner, without the consent of any of the Limited Partners, (a) to cure any ambiguity, or to correct or supplement any provision hereof which may be inconsistent with any other provision hereof, (b) to delete or add any provision of this Agreement required to be so deleted or added by any state or provincial securities commissioner or similar official, which addition or deletion is deemed by such commission or official to be for the benefit or protection of the Limited Partners, (c) to revise this Agreement as necessary to comply or conform with any revisions in applicable laws governing the Partnership and (d) to reflect the admission of Substituted Limited Partners or a general partner substituted in the Partnership without the consent of the Limited Partners; provided, however, that no amendment shall be adopted pursuant to clauses (a) through (c) above unless the adoption thereof, in the reasonable opinion of the General Partner, is for the benefit of or not adverse to the interest of the Limited Partners and in the opinion of counsel, does not affect the limited liability of the Limited Partners or the status of the Partnership as a partnership for income tax purposes.

**Section 1208. Execution of Amendments.** If this Agreement is amended as a result of substituting a Limited Partner, the amendment to this Agreement shall be signed by each General Partner, the Person to be substituted and the assigning Limited Partner. If this Agreement is amended to reflect the designation of an additional or substituted General Partner, such amendment shall be signed by each General Partner and by such additional or substituted General Partner.

**Section 1209. Notices.** Any written notice herein required to be given to the Partnership by any of the Partners shall be deemed to have been given if addressed to Exponential Returns, L.P., c/o Exponential Management LLC, 6157 Crestmont Drive, Dallas, Texas 75214. Any written notice required to be given to a Limited Partner shall be deemed to be given if addressed to such Partner at the address set forth in the Partnership's records (or such other address as such Partner shall have specified in writing to the Partnership) and deposited in the United States mails.

-29-

CS 000478

**Section 1210.  Governing Law; Severability.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.  In particular, it shall be construed to the maximum extent possible to comply with all of the terms and conditions of the Act.  If, nevertheless, it shall be determined by a court of competent jurisdiction that any provision or wording of this Agreement shall be invalid or unenforceable under said Act or other applicable law, such invalidity or unenforceability shall not invalidate the entire Agreement.  In that case, this Agreement shall be construed so as to limit any term or provision so as to make it enforceable or valid within the requirements of any applicable law, and, in the event such term or provision cannot be so limited, this Agreement shall be construed to omit such invalid or unenforceable provisions.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

GENERAL PARTNER:                EXPONENTIAL RETURNS MANAGEMENT, L.P.


                                By:  EXPONENTIAL MANAGEMENT LLC,
                                        as General Partner

                                By_____
                                        Conrad P. Seghers
                                        Chief Executive Officer



LIMITED PARTNERS:               _____
                                        CONRAD P. SEGHERS

                                _____
                                        JAMES R. DICKEY

-30-

CS 000479

## ACKNOWLEDGMENTS

STATE OF TEXAS       )
                     ) ss:

COUNTY OF DALLAS    )

        On this 20th day of November 1996, before the undersigned, a Notary Public in and for the County of Dallas, personally appeared Conrad P. Seghers, known to me to be the person whose name is subscribed to the foregoing Agreement of Limited Partnership and known to me to be the Chief Executive Officer of Exponential Management LLC., general partner of Exponential Returns Management, L.P., and acknowledged to me that he executed the same as an official and duly authorized act of such entity for the purposes and consideration therein expressed.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the State and County and on the day and year first above written.



(SEAL)

SUSAN MEIER
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-06-97

_____
Notary Public

STATE OF TEXAS       )
                     ) ss:

COUNTY OF DALLAS    )

        On this 20th day of November 1996, before the undersigned, a Notary Public in and for the County of Dallas, personally appeared Conrad P. Seghers, known to me to be the person whose name is subscribed to the foregoing Agreement of Limited Partnership and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes and consideration therein expressed.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the State and County and on the day and year first above written.

(SEAL)

SUSAN MEIER
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-06-97

_____
Notary Public

-31-

CS 000480

STATE OF TEXAS       )
                        ) ss:

COUNTY OF DALLAS    )

On this 21 day of November 1996, before the undersigned, a Notary Public in and for the County of Dallas, personally appeared James R. Dickey, known to me to be the person whose name is subscribed to the foregoing Agreement of Limited Partnership and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes and consideration therein expressed.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my official seal in the State and County and on the day and year first above written.

(SEAL)

PAMELA S. COOPER
MY COMMISSION EXPIRES
October 12, 2000

Notary Public

-32-

CS 000481

## EXPONENTIAL RETURNS, L.P.

## INSTRUCTIONS FOR SUBSCRIBING

Two copies of a Subscription Agreement to subscribe to purchase a limited partnership interest (an "Interest") in Exponential Returns, L.P. (the "Partnership") are attached. Please follow these instructions:

1. Please read the entire Subscription Agreement before you sign it.

2. Please complete and sign the Signature Page on both copies of the Subscription Agreement. The signature on both copies must be notarized. Be sure to indicate in the space provided on the Signature Page the dollar amount of the Interest for which you wish to subscribe. Please note that the minimum subscription is for $100,000, unless otherwise determined by the General Partner of the Partnership. Also note that the Signature Page will be attached to, and become part of, the Agreement of Limited Partnership of the Partnership.

3. Please complete and sign the Confidential Offeree Questionnaire. Please answer all questions.

4. Attach a certified or bank check, payable to the order of "Exponential Returns, L.P. -- Special Account", in the amount of the full subscription price for the Interest subscribed. Alternatively, you may make arrangements to wire funds to the Partnership by contacting Conrad P. Seghers or James R. Dickey of the General Partner.

5. Forward BOTH copies of the Subscription Agreement, the Confidential Offeree Questionnaire and your check (if paying by check) to:

> Exponential Returns, L.P.
> c/o Exponential Returns Management, L.P.
> 6157 Crestmont Drive
> Dallas, Texas 75214

If you have any questions with regard to this procedure, please contact Dr. Seghers or Mr. Dickey at (214) 692-8385.

CS 000482

## EXPONENTIAL RETURNS, L.P.
c/o Exponential Returns Management, L.P.
6157 Crestmont Drive, Dallas, Texas 75214

### SUBSCRIPTION AGREEMENT

To: _____

     Name of Purchaser

This will confirm your agreement to become a limited partner of Exponential Returns, L.P., a Texas limited partnership (the "Partnership"), and to purchase a limited partnership interest in the Partnership (an "Interest").

**1. Subscription and Sale.**

**1.1 Subscription.** Subject to the terms and conditions of this Agreement, you irrevocably subscribe for, and agree to purchase, an Interest for the subscription price indicated on the Signature Page of this Agreement, and you agree to become a limited partner of the Partnership. You are tendering to the Partnership with this Agreement (i) two completed and signed copies of this Agreement, (ii) a completed and signed Confidential Offeree Questionnaire and (iii) a certified or bank check in the amount of the subscription price, payable to the order of "Exponential Returns, L.P. -- Special Account" (or you are concurrently wire transferring such amount to such special account).

**1.2 Acceptance or Rejection of Subscription.** All funds tendered by you will be held in a segregated interest-bearing account pending acceptance or rejection of this Agreement and the closing of your purchase of the Interest. This Agreement will either be accepted, in whole or in part, subject to the prior sale of Interests, or rejected, by the General Partner of the Partnership as promptly as is practicable. If this Agreement is accepted only in part, you agree to purchase such smaller Interest as the General Partner determines to sell to you. If this Agreement is rejected for any reason, including, without limitation, the termination of the offering of Interests by the Partnership, this Agreement and all funds tendered with it promptly will be returned to you, with interest and without deduction of any kind, and this Agreement will be void and of no further force or effect. Deposit and collection of the check tendered, or receipt of funds wired, with this Agreement will not constitute acceptance of this Agreement.

**1.3 Closing.** Subscriptions will be accepted at one or more Closings, as described in the Offering Memorandum relating to this offering (the "Memorandum"). On Closing, the subscription evidenced hereby, if not previously rejected, will be accepted, in whole or in part, and the Partnership will execute a copy of this Agreement and return it to you. At such time, the

Signature Page of this Agreement will be attached to and become a part of the Agreement of Limited Partnership of the Partnership (the "Partnership Agreement"), as well as of this Agreement, and will be effective to evidence your execution and delivery of the Partnership Agreement. If your subscription is accepted only in part, this Agreement will be marked to indicate such fact and the Partnership will return to you the portion of the funds tendered by you representing the unaccepted portion of your subscription, with interest and without deduction of any kind. The Interest subscribed for will not be deemed to be issued to, or owned by, you until this Agreement has been accepted by the General Partner.

**1.4 Payment of Interest.** On Closing, all interest earned on your subscription funds will be paid to you. Interest will be calculated from the day such funds are received by the Partnership to the date of Closing, termination of the offering or rejection of a subscription, as the case may be.

**2. Representations and Warranties of the Purchaser.** You represent and warrant to the Partnership and the General Partner as follows:

**2.1 Non-Registration.** You acknowledge that the Interest to be acquired by you is not and will not be registered under the Securities Act of 1933 (the "Act") or any state securities law in reliance on exemptions from such registration, and that such reliance is based in part on your representations and warranties set forth in this Section 2 and on the information set forth in the Confidential Offeree Questionnaire tendered by you to the Partnership with this Agreement.

**2.2 Information.** You have received, carefully read and understood the Memorandum, which includes as an exhibit a copy of the Partnership Agreement. You have been provided with the opportunity to ask questions of, and to receive answers from, the General Partner and its representatives concerning the Partnership and the Interests and have been provided by the General Partner with access to all information pertaining to the Partnership to which you have requested access.

**2.3 Investment Intent; Limitations on Resale.** You are acquiring your Interest solely for your own account, for investment and not with a view to, or for resale in connection with, any distribution. You understand that the Interest being acquired by you will be an illiquid investment, as it is unlikely that a market will develop in the Interests and because the Interest may not be sold, transferred or otherwise disposed of (other than through withdrawal from the Partnership pursuant to Article Three of the Partnership Agreement) except pursuant to the provisions of Article Eleven of the Partnership Agreement and an effective registration statement under the Act or an exemption from such registration, and that in the absence of such registration or exemption, an Interest must be held indefinitely. IF YOU ARE A RESIDENT OF PENNSYLVANIA, YOU AGREE THAT, IN ANY EVENT, YOU SHALL NOT RESELL ANY PORTION OF YOUR INTEREST DURING THE 12-MONTH PERIOD COMMENCING WITH THE DATE OF YOUR PURCHASE OF YOUR INTEREST.

**2.4 Speculative Nature of Investment.** You understand that your investment in the Partnership is speculative and is subject to certain risks and may remain so for an indefinite period and that no federal or state agency has reviewed or made any recommendation or endorsement with respect to the Interests.

CS 000484

**2.5  No Solicitation.**  At no time in connection with the offer or sale of Interests were you solicited by any leaflet, public promotional meeting, circular, newspaper or magazine article, radio or television advertisement or any other form of general advertising.

**2.6  Investment Company Act Non-Registration.**  You understand that the Partnership is not and will not be registered as an investment company under the Investment Company Act of 1940, by reason of Section 3(c)(1) thereof which excludes from the definition of an investment company any issuer which has not made and does not presently propose to make a public offering of its securities and whose outstanding securities (other than short-term paper) are beneficially owned by not more than 100 persons.  In this regard, you were not formed for the purpose of investing in the Partnership nor did your stockholders, partners, grantors or participants contribute additional capital to you for the purpose of such investment.  Further, if you are purchasing an interest in the Partnership which will constitute in excess of 10% of all interests in the Partnership at Closing, your interest in the Partnership, together with your interests in all other entities that, pursuant solely to Section 3(c)(1) of such statute, are excluded from the definition of investment company, will not represent more than 10% of your total assets.

**2.7  Allocation of Net Gain to the General Partner.**  You understand that the General Partner will receive an annual performance allocation of a portion of the Partnership's net gain for managing the Partnership's investments.  You confirm that, prior to your execution of this Agreement, you have reviewed the provisions of the Partnership Agreement pertinent to the allocation (Sections 503 and 305(d)) and the disclosures regarding it set forth in the Memorandum and that you have been advised, among other things, that:

(a)  the General Partner's right to receive an allocation of net gain may create an incentive for the General Partner to make investments on behalf of the Partnership that are riskier or more speculative than would be the case in the absence of such performance allocation;

(b)  the allocation of net gain will be based on the unrealized appreciation of the Partnership's investments as well as its realized gains;

(c)  the allocation of net gain will be determined annually with reference to the preceding 12-month period (or possibly a shorter period in the case of the first allocation) and will be measured by the amount of net gain allocable to the Limited Partners with respect to such period; provided, however, that an allocation will be effected for such period only if (i) the cumulative net gain allocated to the Limited Partners through the end of such period (after taking into account any allocations to the General Partner for prior years) exceeds the High Watermark (as defined in the Memorandum) and (ii) the net gain allocable to such Limited Partner for such period represents a percentage return on such Limited Partner's capital contributions (as of the beginning of such year) of not less than the Hurdle Rate (as defined in the Memorandum);

(d)  securities held by the Partnership for which market quotations are not readily available will be valued by the General Partner in the manner set forth in the Partnership Agreement; and

(e)  the General Partner's allocation of net gain may be greater or less than compensation charged by other investment advisors for comparable services.

-3-

CS 000485

**2.8  Status.**  If you are a corporation, partnership, trust or other entity, you are an "accredited investor", as that term is defined in Rule 501(a) of Regulation D under the Act (see the Confidential Offeree Questionnaire for a list of the types of accredited investors).  If you are a natural person, you are at least 21 years of age and you either are an "accredited investor" or meet the experience standards set forth in Section 2.9 below.

**2.9  Experience; Financial Ability.**  You, or if you are a corporation, partnership, trust or other entity, you by and through your officers, directors, trustees, employees or other advisors, (i) are experienced in evaluating companies such as the Partnership, (ii) have determined that an Interest is a suitable investment for you and (iii) have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of your investment in the Partnership.  You have the financial ability to bear the economic risks of your entire investment for an indefinite period and no need for liquidity with respect to your investment in the Partnership, and, if you are a natural person, you have adequate means for providing for your current needs and personal contingencies.

**2.10  Further Information.**  The information which you are furnishing hereunder and in the Confidential Offeree Questionnaire and any information which you subsequently furnish to the Partnership with respect to your financial position and business experience, is correct and complete as of the date of this Agreement or as of the date it is furnished, whichever is later.  If there is any material change in such information prior to the date that this Agreement is accepted by the Partnership, you will immediately furnish such revised or corrected information to the Partnership.

**2.11  Due Authority, Etc.**  If you are a corporation, partnership, trust or other entity: (a) you are duly organized, validly existing and in good standing under the laws of the jurisdiction of your formation and have all requisite power and authority to own your properties and assets and to carry on your business, (b) you have the requisite power and authority to execute this Agreement and the Partnership Agreement and to carry out the transactions contemplated hereby and thereby, (c) your execution and performance of this Agreement and the Partnership Agreement does not and will not result in any violation of, or conflict with, any term of your charter, by-laws, partnership agreement or indenture of trust, as the case may be, or any instrument to which you are a party or by which you are bound or any law or regulation applicable to you, (d) your execution and performance of this Agreement and the Partnership Agreement has been duly authorized by all necessary corporate or other action, (e) you were not specifically formed to invest in the Partnership and (f) the individual who has executed this Agreement on your behalf was duly authorized to do so by all requisite corporate or other action and, on request of the Partnership, you will furnish appropriate evidence of the authority of such individual to act on your behalf.

**2.12  Valid Obligation.**  This Agreement and the Partnership Agreement have been duly executed and delivered by or on behalf of you and, if and when accepted by the Partnership, in whole or in part, will constitute your legal, valid and binding obligations, enforceable in accordance with their respective terms (except as may be limited by principles of equity or bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights generally).

CS 000486

**2.13   Reliance on Own Advisors.**   You confirm that, in making your decision to invest in the Partnership, you have relied, as to legal and tax-related matters concerning the investment, on independent investigations made by you and any advisor or representative that you may have consulted, including your own legal, tax and other advisors, and that you and your advisors or representatives have investigated your investment in the Partnership to the extent you and they have deemed advisable.

**2.14   Further ERISA Matters.**   If you are an employee benefit plan within the meaning of ERISA, you and your plan fiduciaries are not affiliated with, and are independent of, the General Partner and are informed of and understand the Partnership's investment objectives, policies and strategies. Your plan fiduciaries believe that the decision to invest your plan assets in the Partnership is consistent with the provisions of ERISA that require prudence in investment and diversification of plan assets and impose other fiduciary responsibilities. Further, your plan fiduciaries have considered the following factors with respect to your investment in the Partnership and have determined that, in view of such considerations, an investment in the Partnership is consistent with their fiduciary responsibilities under ERISA:

(a)   the role such investment will play in the portion of your portfolio that such plan fiduciaries manage;

(b)   whether the investment is reasonably designed as part of the portion of the portfolio managed by such plan fiduciaries to further your purposes, taking into account both the risk of loss and opportunity for gain that could result;

(c)   the composition of the portion of the portfolio managed by such plan fiduciaries with regard to diversification;

(d)   the liquidity and current rate of return of the portion of the portfolio managed by such plan fiduciaries relative to your anticipated cash flow requirements; and

(e)   the projected return of the portion of the portfolio managed by such plan fiduciaries relative to your funding objectives.

This agreement has been executed on your behalf by a duly designated Named Fiduciary (within the meaning of Section 402(a)(2) of ERISA).

**2.15   Restricted Investors.**   If you are a restricted investor (see the Confidential Investor Questionnaire), you understand that all securities acquired by the Partnership which are part of a public offering and which are expected to sell at a premium over the offering price in the secondary market during such offering ("hot issues") will be segregated by the Partnership, that no Limited Partner who is a "restricted investor" shall receive any allocation of profits from such account, and that all Limited Partners who are not restricted investors shall be allocated such profits from trading in hot issues ratably in proportion to the interest of each such non-restricted Limited Partner in the Partnership (excluding for these purposes the interests in the Partnership held by Limited Partners who are restricted investors).

-5-

CS 000487

**2.16 Address.** The address set forth on the Signature Page of this Agreement is your true and correct address and you have no present intention of becoming a resident or domiciliary of any jurisdiction other than the one indicated by your address.

**2.17 Fees and Commissions.** No fees or commissions have been paid or are payable by you in connection with this Agreement and the issuance of an Interest to you.

**3. Miscellaneous.**

**3.1 Entire Agreement.** This Agreement sets forth the entire understanding of the parties with respect to its subject matter, merges and supersedes any prior or contemporaneous understanding among them with respect to its subject matter, and will not be modified, amended or terminated except by another agreement in writing executed by you and the Partnership. Failure of a party to enforce one or more of the provisions of this Agreement or to require at any time performance of any of the obligations hereof will not be construed to be a waiver of such provisions by such party nor to in any way affect the validity of this Agreement or such party's right thereafter to enforce each and every provision of this Agreement, nor to preclude such party from taking any other action at any time which it would legally be entitled to take.

**3.2 Binding Effect.** This Agreement will be binding on and will inure to the benefit of the parties and their respective successors and permissible assigns.

**3.3 Construction.** References to Sections herein are to the sections of this Agreement. Headings used in this Agreement are for convenience only and will not be used in the construction of this Agreement.

**3.4 Survival of Representations and Warranties.** You agree that all representations, warranties and agreements contained herein will survive the execution, delivery and performance of this Agreement.

**3.5 Communications.** All notices and other communications under this Agreement will be in writing and will be deemed to have been given at the time when delivered personally by hand or overnight courier or when mailed in any United States post office enclosed in a registered or certified postpaid envelope and addressed to the Partnership at its address set forth at the beginning of this Agreement or to you at the address set forth by you on the Signature Page of this Agreement, as the case may be, or to such other address as any party may specify by notice to the other; provided, however, that any notice of change of address shall be effective only on receipt.

**3.6 Governing Law.** This Agreement will in all respects be governed by and construed in accordance with the laws of the State of Texas applicable to agreements made and fully to be performed in such state, without giving effect to conflict of laws principles.

**3.7 FOR FLORIDA RESIDENTS.** EACH FLORIDA RESIDENT WHO SUBSCRIBES TO PURCHASE AN INTEREST HAS THE RIGHT TO WITHDRAW HIS SUBSCRIPTION AND TO RECEIVE A FULL REFUND OF ALL MONIES PAID WITHIN THREE BUSINESS DAYS AFTER THE EXECUTION OF THIS SUBSCRIPTION

-6-

AGREEMENT OR PAYMENT FOR SUCH INTEREST IS MADE, WHICHEVER IS LATER. SUCH WITHDRAWAL WILL BE WITHOUT ANY FURTHER LIABILITY TO ANY PERSON.  TO ACCOMPLISH THIS WITHDRAWAL, A SUBSCRIBER NEED ONLY SEND A LETTER OR TELEGRAM TO THE PARTNERSHIP INDICATING HIS INTENTION TO WITHDRAW.  SUCH LETTER OR TELEGRAM SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMENTIONED THIRD BUSINESS DAY.  A LETTER SHOULD BE MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ENSURE ITS RECEIPT AND TO EVIDENCE THE TIME OF MAILING.

**3.8  FOR PENNSYLVANIA RESIDENTS.**  EACH PENNSYLVANIA RESIDENT WHO SUBSCRIBES TO PURCHASE AN INTEREST HAS THE RIGHT TO WITHDRAW HIS SUBSCRIPTION AND TO RECEIVE A FULL REFUND OF ALL MONIES PAID WITHIN TWO BUSINESS DAYS AFTER RECEIPT BY THE PARTNERSHIP OF HIS WRITTEN BINDING CONTRACT OF PURCHASE. SUCH WITHDRAWAL WILL BE WITHOUT ANY FURTHER LIABILITY TO ANY PERSON.  TO ACCOMPLISH THIS WITHDRAWAL, A SUBSCRIBER NEED ONLY SEND A LETTER OR TELEGRAM TO THE PARTNERSHIP INDICATING HIS INTENTION TO WITHDRAW.   SUCH LETTER OR TELEGRAM SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMEN-TIONED SECOND BUSINESS DAY.  A LETTER SHOULD BE MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ENSURE ITS RECEIPT AND TO EVIDENCE THE TIME OF MAILING.  SHOULD THE REQUEST BE MADE ORALLY, YOU SHOULD ASK FOR WRITTEN CONFIRMATION THAT IT HAS BEEN RECEIVED.

-7-

CS 000489

## LIMITED PARTNER'S SIGNATURE PAGE

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date noted below.

**INDIVIDUALS:**                                          **ENTITIES:**

_____            _____
Print Name                                                Print Name of Subscriber


_____            By_____
Signature                                                 Authorized Signature


_____            _____
Signature (if Joint Tenants                         Print Name of Signatory and
or Tenants in Common)                              Capacity in which Signed

**Subscriber Information**

Address (Residence for individuals;          Social Security or Tax ID No.:_____
business for others):


_____
Street                          City                    State                    Zip Code


Dollar Amount You Wish to Invest: $_____. This is the amount of your Interest and your Subscription Price. This amount is also your opening Capital Account in the Partnership.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

### For the Partnership's Use Only

Agreed and Accepted as to $_____.

Dated: _____, 199_.

                                        EXPONENTIAL RETURNS, L.P.

                                        By: Exponential Returns Management, L.P.,
                                            as General Partner

                                        By: Exponential Management LLC,
                                            as General Partner

                                        By_____

(This Signature Page will be attached to and become a part of the
Agreement of Limited Partnership of Exponential Returns, L.P.)

-8-

## CORPORATE, PARTNERSHIP OR TRUST ACKNOWLEDGMENT

STATE OF        )
                    ) ss.:
COUNTY OF      )

On this ___ day of _____, 199_, before the undersigned, a Notary Public, personally appeared _____ known to me to be the person whose name is subscribed to the foregoing Agreement and known to me to be the _____ of _____ and acknowledged to me that he/she executed the same as an official and duly authorized act of such entity for the purposes and consideration therein expressed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the State and County and on the day and year first above written.

(SEAL)

_____
Notary Public

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF        )
                    ) ss.:
COUNTY OF      )

On this ____ day of _____, 199_ before the undersigned, a Notary Public, personally appeared _____ known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the foregoing Agreement, as his/her free and voluntary act and deed for the purposes and consideration therein expressed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the State and County and on the day and year first above written.

(SEAL)

_____
Notary Public

CS 000491

**EXHIBIT C**

## EXPONENTIAL RETURNS, L.P.

### CONFIDENTIAL OFFEREE QUESTIONNAIRE

Prospective purchasers of limited partnership interests ("Interests") in Exponential Returns, L.P. (the "Partnership") must meet certain suitability requirements in order for the Partnership to comply with the private offering exemption of the Securities Act of 1933, as amended (the "Act"), Regulation D promulgated thereunder and exemptions of applicable state securities laws. In order to establish that purchasers meet these requirements and are qualified to invest in the Partnership, purchasers must complete this Confidential Offeree Questionnaire and return it to the Partnership, c/o Exponential Returns Management, L.P., 6157 Crestmont Drive, Dallas, Texas 75214.

Each purchaser must be either an "accredited investor", as defined in Rule 501(a) of Regulation D under the Act, or a "sophisticated investor". A sophisticated investor is one who, alone or together with his or her representative has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of the investment. This Questionnaire elicits information as to the accredited investor status of a prospective purchaser and which may afford the Partnership a reasonable basis for believing that the purchaser or any person making the investment decision for the purchaser has the requisite knowledge and experience in financial and business matters.

If an entity purchasing an Interest has been formed for this transaction or if the individual owners of the purchasing entity may elect whether to participate in each investment of that entity, then each individual owner of such entity must be an accredited investor or a sophisticated investor and each must complete a Confidential Offeree Questionnaire, or the general partner or other authorized representative of such entity must complete the Confidential Offeree Questionnaire on each such person's behalf.

All information provided in this Confidential Offeree Questionnaire will at all times be kept strictly confidential. It may be necessary, however, for the Partnership to verify the information contained in this Confidential Offeree Questionnaire to establish that the requirements of applicable securities laws are satisfied. Furthermore, the Partnership may give this Confidential Offeree Questionnaire to its legal counsel to establish the availability of an exemption. By signing this Confidential Offeree Questionnaire, investors agree to such uses of this Confidential Offeree Questionnaire by the Partnership.

A.   **General Information**

    1.   The investment is being made by, and beneficial ownership of the Interest purchased should be shown on the Partnership's records in the name of:

_____

    2.   Social Security or Tax Identification Number:_____

    3.   Name and Title of Person completing this Questionnaire:

_____

    4.   Purchaser's Address and Telephone Number (residence for individuals; business for others):

_____
(Street and Number)

_____

(City)              (State)              (Zip Code)

    Telephone Number:    _____

B.   **Investor Information** (for entities only, not individuals):

    1.   Type of entity (check one):

| | | | |
|---|---|---|---|
| Corporation | _____ | Trust | _____ |
| Partnership | _____ | LLC/LLP | _____ |
| Other | _____ | | |

    2.   Date of Formation:    _____

    3.   The entity was organized for the specific purpose of acquiring the Interest:    Yes   _____    No   _____

    4.   Number of shareholders, partners, members or beneficiaries  _____

    5.   Individual shareholders, partners, members or beneficiaries within the entity may elect whether to participate in the entity's investments: Yes ___ No____

    6.   The entity has made other investments in securities: Yes _____ No _____

C.   **Accreditation Criteria**

    Please mark the category or categories on the next two pages that apply to you:

-2-

CS 000493

_____ (a) A bank as defined in §3(a)(2) of the Act or a savings and loan association or other institution as defined in §3(a)(5)(A) of the Act, acting in its individual or fiduciary capacity.

_____ (b) A broker-dealer registered under §15 of the Securities Exchange Act of 1934.

_____ (c) An insurance company as defined in §2(13) of the Act.

_____ (d) An investment company registered under the Investment Company Act of 1940 or a business development company as defined in §2(a)(48) of the Investment Company Act of 1940.

_____ (e) A small business investment company licensed by the U.S. Small Business Administration under §301(c) or (d) of the Small Business Investment Act of 1958.

_____ (f) A plan established and maintained by a state or its political subdivisions or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, with total assets in excess of $5,000,000.

_____ (g) An employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, and either (I) the decision to invest in the Partnership has been made by a plan fiduciary, as defined in §3(21) of such Act, which is either a bank, savings and loan association, insurance company or registered investment adviser, (II) the plan has total assets in excess of $5,000,000 or (III) if the plan is a self-directed plan, the investment decision is made solely by persons who are accredited investors.

_____ (h) A private business development company as defined in §202(a)(22) of the Investment Advisers Act of 1940.

_____ (i) An organization described in §501(c)(3) of the Internal Revenue Code of 1986, a corporation, a Massachusetts or similar business trust or a partnership, not formed for the specific purpose of acquiring an Interest, with total assets in excess of $5,000,000.

_____ (j) A director, executive officer or general partner of the Partnership, or any director or executive officer of a general partner of the Partnership.

-3-

CS 000494

_____    (k)    An individual whose net worth,* or joint net worth* with his or her spouse, exceeds $1,000,000.

_____    (l)    An individual who had an income* in excess of $200,000 in each of the two most recent years or joint income with his or her spouse in excess of $300,000 in each of those years and who reasonably expects to reach the same income level in the current year.

_____    (m)    A trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring an Interest and whose purchase is directed by a sophisticated investor as described in Rule 506(b)(2)(ii) under the Act.

_____    (n)    An entity in which all of the equity owners are qualified under any of paragraphs (a) through (m) above.

_____    (o)    None of the above.

D.    **Investment Background**

1.    The purchaser's net worth is more than $1,000,000:  Yes_____    No_____

2.    Provide the following information about the purchaser's previous private offering investment experience:

| Name of Venture | Activity of Venture (e.g. R&D, venture capital) | U.S. Dollar Amount of Original Investment |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

3.    List any other investment experience not mentioned above: _____

_____

---

\*    "Net worth" means the excess of total assets at fair market value, including home and personal property, over total liabilities.  For Item (I), "Income" means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following (but not including amounts attributable to a spouse or to property owned by a spouse): (i) the amount of tax exempt interest income received, (ii) the amount of losses claimed as a limited partner in a limited partnership, (iii) any deduction claimed for depletion, (iv) amounts contributed to an IRA or Keogh retirement plan, (v) alimony paid and (vi) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to §1202 of the Internal Revenue Code.

CS 000495

4. The purchaser by reason of its business or financial experience considers itself able to protect its own interests in an investment in the Partnership:

Yes_____          No_____

5. The purchaser is able to bear the economic risk of an investment in the Partnership:          Yes_____          No_____

6. The purchaser believes it can afford a complete loss of its investment in the Partnership:          Yes_____          No_____

E.     **Restricted Investors**

1. Rules of the National Association of Securities Dealers, Inc. ("NASD") require the Partnership to segregate "hot issue" securities. Any purchaser who is in any of the following categories may be considered a "restricted investor' who may not be entitled to participate in any of the Partnership's profits from investments in hot issues. (Please check all that apply.)

_____     A broker-dealer and member of the NASD (an "NASD member").

_____     An officer, director, general partner, employee or agent of an NASD member or of any other broker-dealer, or a person associated with an NASD member or with any other broker-dealer, or who is a member of the immediate family of any such person.

_____     A finder with respect to a public offering or a person acting in a fiduciary capacity to a managing underwriter, including among others, attorneys, accountants and financial consultants, or a person who is supported, directly or indirectly, to a material extent by any such person.

_____     A senior officer of a bank, savings and loan institution, insurance company, investment company, investment advisory firm, or any other institutional type account (including, hedge funds, investment partnerships, investment corporations, or investment clubs), domestic or foreign, or a person in the securities department of, or an employee of any other person who may influence or whose activities directly or indirectly involve or are related to the function of buying or selling securities for, any bank, savings and loan institution, insurance company, investment company, investment advisory firm, or other institutional type account, domestic or foreign, or who is supported, directly or indirectly, to a material extent by any such person.

_____     A domestic or foreign investment partnership or corporation, hedge fund, investment club or similar account in which any person described in the preceding four paragraphs has a beneficial interest. (Note: any such entity or account will be required, regardless of whether or not a person described in the preceding four paragraphs has a beneficial interest in it, to provide the Administrative General Partner with the list of beneficial owners, or the attorneys' or accountants' certification as to the absence of beneficial interest by restricted persons, contemplated in paragraphs A and B of the NASD's "hot issue" Interpretation.)

2. You agree to furnish to the General Partner, if so requested, a list of all business enterprises in which you participate as an employee, officer, director or investor holding 10% or

-5-

CS 000496

more of the equity of any such business enterprise and a description of your connection to such business (e.g. employee, officer, investor, etc.) and to provide whatever other information the General Partner may reasonably require to determine your status as either a restricted or non-restricted person.

F.    **Relationship to the Partnership or Its Management**

1.   Does the purchaser have a pre-existing personal or business relationship with the Partnership or the General Partner or its management?          Yes_____   No_____

If yes, please describe such relationship: _____

_____

2.   Does the purchaser currently own interests in the Partnership or the General Partner or any affiliate thereof?         Yes_____              No_____

If yes, what interests?_____

G.    **Representations and Signature**

The purchaser understands that the Partnership will be relying on the accuracy and completeness of its responses to the foregoing questions. The purchaser represents and warrants to the Partnership that (i) the responses are complete and correct and may be relied on by the Partnership and its legal counsel in determining whether the Offering of Interests is exempt from registration or qualification under the federal and applicable state securities laws and (ii) the purchaser will notify the Partnership immediately of any material change in any statement made herein that occurs prior to the closing of the proposed investment.

**INDIVIDUALS:**                              **ENTITIES:**

_____        _____
Print Name                                        (Print Name of Purchaser)

_____        By_____
Signature

_____        _____
Signature (If Joint Tenants                 (Print Title and Name of Signatory)
or Tenants in Common)

Dated: _____, 199_

CS 000497

# EXPONENTIAL RETURNS, L.P.
## (a Texas Limited Partnership)

## FINANCIAL STATEMENTS

**For the Year Ended December 31, 1997**



CS 000498

# EXPONENTIAL RETURNS, L.P.
### (a Texas Limited Partnership)

## FINANCIAL STATEMENTS
### For the Year Ended December 31, 1997

### Table of Contents

Report of Independent Auditors ............................................................................................ 1

Financial Statements:

      Balance Sheets.......................................................................................... 2

      Statements of Securities............................................................................ 3

      Statements of Operations ......................................................................... 6

      Statements of Partners' Capital................................................................ 7

      Statements of Cash Flows ........................................................................ 8

Notes to Financial Statements.............................................................................................. 9



CS 000499

12/26/2004   06:00   4042333035                    BILL MURPHY                    PAGE  03/16



# WHITLEY, PENN & ASSOCIATES

### CPAs and Professional Consultants

### REPORT OF INDEPENDENT AUDITORS

To the Partners
Exponential Returns, L.P.

We have audited the accompanying balance sheets, including the statements of securities, of Exponential Returns, L.P. (a Texas Limited Partnership) as of December 31, 1997, and the related statements of operations, partners' capital, and cash flows for the year then ended. These financial statements are the responsibility of the Partnership's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. Our procedures included confirmation of securities owned as of December 31, 1997, by correspondence with brokers. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Exponential Returns, L.P. as of December 31, 1997, and the results of its operations and cash flows for the years then ended in conformity with generally accepted accounting principles.

*Whitley, Penn & Associates*

Fort Worth, Texas
March 30, 1998

**PARTNERS:** Larry G. Autrey, P.C.  •  David L. Neal, P.C.  •  James C. Penn, P.C.  •  Thomas J. Rein, P.C.
Mark A. Topel, P.C.  •  B. Glen Whitley, P.C.

Fort Worth: 1701 River Run Road, Suite 507 • Fort Worth, Texas 76107 • (817) 258-9100 • Metro (817) 498-0237 • FAX (817) 877-3036
Mid-Cities: 860 West Airport Freeway, Suite 601 • Hurst, Texas 76054 • (817) 258-9100 • Metro (817) 498-0237 • FAX (817) 656-4013

CS 000500

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
**BALANCE SHEETS**
December 31, 1997

**Assets**

| | |
|---|---:|
| Securities at market value (cost of $2,570,903 at December 31, 1997 (Note B) | $2,723,672 |
| Cash | 2,464,567 |
| Organization costs, (net of accumulated amortization of $4,833) | 23,778 |
| | $5,212,017 |

**Liabilities and Partners' Capital**

| | |
|---|---:|
| Securities sold short, at market value (proceeds from sales of $1,935,231 at December 31, 1997 (Note B) | $1,940,978 |
| Due to general partners (Note D) | 23,910 |
| Due to Brokers | 1,405,938 |
| Total liabilities | 3,370,826 |
| Partners' capital: | |
| General partner | 137,382 |
| Limited partners | 1,703,809 |
| | 1,841,191 |
| | $5,212,017 |

See auditors' report and accompanying notes.

2

CS 000501

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
STATEMENTS OF SECURITIES
For the Year Ended December 31, 1997

| Securities | No. of Shares | 12/31/97 Market Value |
|---|---|---|
| Common Stocks: (145.88%) | | |
| United States: (145.88%) | | |
| Banks (6.31%) | | $116,125 |
| Biotechnology (7.85%) | | 144,500 |
| Consumer Financial: | | |
| Firstplus Financial Group (8.34%) | 4,000 | 153,500 |
| Consumer entertainment (2.61%) | | 48,000 |
| Consumer retail (1.98%) | | 36,375 |
| Consumer food (2.08%) | | 38,375 |
| Energy (2.25%) | | 41,500 |
| Fabricated materials (3.33%) | | 61,375 |
| Healthcare facilities (3.62%) | | 66,625 |
| | | |
| Technology: | | |
| Communications (17.32%) | | 318,874 |
| | | |
| Computer hardware: | | |
| Dell Computer (13.69%) | 3,000 | 252,000 |
| All others (14.21%) | | 261,562 |
| Total computer hardware | | 513,562 |
| | | |
| Electronic Controls/Scientific Equipment: | | |
| Jabil Circuit (7.12%) | 3,300 | 131,175 |
| All others (4.24%) | | 78,125 |
| Total electronic controls/scientific equipment | | 209,300 |
| | | |
| Internet (3.76%) | | 69,250 |
| | | |
| Semiconductors: | | |
| Smart Modular Technologies (6.25%) | 5,000 | 115,000 |
| All others (14.77%) | | 271,999 |
| Total semiconductors | | 386,999 |

See auditors' report and accompanying notes.

3

CS 000502

12/28/2004  06:06   4842333035         BILL MURPHY              PAGE  06/16

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
STATEMENTS OF SECURITIES *(continued)*
For the Year Ended December 31, 1997

|  | No. of Shares | 12/31/97 Market Value |
|---|---|---|
| Securities - continued | | |
| Common Stocks - continued: | | |
| United States - continued: | | |
| Software and Programming: | | |
| Citrix Systems (14.45%) | 3,500 | 266,000 |
| Microsoft (7.02%) | 1,000 | 129,250 |
| All others (4.69%) | | 86,312 |
| Total software | | 481,562 |
| | | |
| Total common stocks [Cost: $2,555,104] | | 2,685,922 |
| | | |
| Options: | | |
| Call Options | | |
| Consumer Financial (2.05%) [Cost: $15,799] | | 37,750 |
| | | |
| Total investments [Cost: $2,570,903] | | $2,723,672 |

See auditors' report and accompanying notes.

4

CS 000503

12/26/2004   06:00    4042333035              BILL MURPHY              PAGE  07/16

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
STATEMENTS OF SECURITIES *(continued)*
For the Year Ended December 31, 1997

|  | No. of Shares | 12/31/97 Market Value |
|---|---|---|
| **Securities Sold Short** | | |
| Common Stocks (105.00%): | | |
| Biotechnology (6.86%) | | $   126,312 |
| Consumer entertainment (2.61%) | | 48,000 |
| Consumer retail (1.98%) | | 36,375 |
| Consumer food (2.08%) | | 38,375 |
| Healthcare facilities (2.61%) | | 48,000 |
| | | |
| Technology: | | |
| Communications (12.75%) | | 234,812 |
| | | |
| Computer hardware: | | |
| Dell Computer (13.69%) | 3,000 | 252,000 |
| All others (14.21%) | | 261,562 |
| Total computer hardware | | 513,562 |
| | | |
| Electronic Controls/Scientific Equipment (6.4%): | | 117,875 |
| | | |
| Internet (3.76%) | | 69,250 |
| | | |
| Semiconductors: | | |
| Smart Modular Technologies (5.00%) | 4,000 | 92,000 |
| All others (12.59%) | | 231,749 |
| Total semiconductors | | 323,749 |
| | | |
| Software and Programming: | | |
| Microsoft (7.02%) | 1,000 | 129,250 |
| All others (8.82%) | | 162,312 |
| Total software and programming | | 291,562 |
| | | |
| Total common stocks | | 1,847,872 |
| | | |
| Options: | | |
| Put Options (.65%) | | 12,063 |
| | | |
| Call Options: | | |
| Call Options (4.4%) | | 81,043 |
| | | |
| Total Options | | 93,106 |
| | | |
| Total Securities Sold Short [Total Proceeds:  $1,935,231] | | $1,940,978 |

See auditors' report and accompanying notes.

5

CS 000504

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
**STATEMENTS OF OPERATIONS**
For the Year Ended December 31, 1997

| | |
|---|---:|
| Operating income: | |
| Interest income | $ 26,069 |
| Dividend income | 535 |
| Other | 198 |
| | 26,802 |
| | |
| Operating expenses: | |
| Management fee (Note C) | 7,952 |
| Professional services | 1,987 |
| Interest expense | 26,317 |
| Dividend expense | 45 |
| Amortization | 4,833 |
| Other | 60 |
| | 41,194 |
| | |
| Operating income | (14,392) |
| | |
| Net gain on securities: | |
| Net realized gains from sales of securities | 6,791 |
| Net change in unrealized appreciation of securities | 147,010 |
| | 153,801 |
| | |
| Net income | $139,409 |

See auditors' report and accompanying notes.

6

CS 000505

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
**STATEMENTS OF PARTNERS' CAPITAL**
For the Year Ended December 31, 1997

|                                       | General Partners | Limited Partners | Total       |
|---------------------------------------|-----------------:|-----------------:|------------:|
| Balance at January 1, 1997            | $           -    | $           -    | $        -  |
| Contributions                         | 100,000          | 1,628,872        | 1,728,872   |
| Net income                            | 37,382           | 102,027          | 139,409     |
| Performance Allocation (Note C)       | 27,090           | (27,090)         | -           |
| Distributions                         | (27,090)         | -                | (27,090)    |
| Balance at December 31, 1997          | $137,382         | $1,703,809       | $1,841,191  |

See auditors' report and accompanying notes.

7

CS 000506

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
**STATEMENTS OF CASH FLOWS**
**For the Year Ended December 31, 1997**

| | |
|---|---:|
| Cash flows from operating activities: | |
| Net income | $ 139,409 |
| Adjustments to reconcile net income to net cash provided by | |
| operating activities: | |
| Net realized gains from sales of securities | (6,791) |
| Net unrealized appreciation of securities | (147,010) |
| Net change in amounts due to partners | 23,778 |
| Payment of organization costs | (28,610) |
| Amortization | 4,833 |
| Net cash provided by operating activities | (14,391) |
| | |
| Cash flows from investing activities: | |
| Sales of securities | 72,910,706 |
| Purchase of securities | (73,539,468) |
| Net cash used by investing activities | (628,762) |
| | |
| Cash flows from financing activities: | |
| Margin loan proceeds | 1,405,938 |
| Contributions from partners | 1,728,872 |
| Distributions to partners | (27,090) |
| Net cash provided by financing activities | 3,107,720 |
| | |
| Change in cash | 2,464,567 |
| | |
| Cash at end of year | $2,464,567 |
| | |
| Supplemental disclosures of cash flow information: | |
| Cash paid during the year for interest | $26,317 |

See auditors' report and accompanying notes.

8

CS 000507

**EXPONENTIAL RETURNS, L.P.**
(a Texas Limited Partnership)
NOTES TO FINANCIAL STATEMENTS
December 31, 1997

**A. Nature of Business**

Exponential Returns, L.P. (the "Partnership") was organized as a Texas limited partnership in 1997 for the purpose of owning and trading in securities (including short sales) and to engage in financial transactions relating to the business of the Partnership.

The Partnership term generally expires on the earlier of December 31, 2006, or any date prior to December 31, 2006 on which the General Partner elects to dissolve the Partnership.

The General Partner of the Partnership is Exponential Returns Management, L.P.

**B. Summary of Significant Accounting Policies**

A summary of the Partnership's significant accounting policies consistently applied in the preparation of the accompanying financial statements follows.

**Basis of Accounting**

The accounts are maintained and the financial statements have been prepared on the accrual basis of accounting in accordance with generally accepted accounting principles.

**Use of Estimates**

The financial statements have been prepared in conformity with generally accepted accounting principles. The preparation of the accompanying financial statements requires estimates and assumptions made by management of the Partnership that affect the reported amounts of assets and liabilities as of the date of the balance sheets and income and expenses for the period. Actual results could differ from those estimates.

**Statement of Cash Flows**

The Partnership uses brokers to handle various investment transactions. Charges or credits on broker accounts are considered constructive payments or receipts for purposes of the statement of cash flows.

**Valuation of Investments**

Investments (including foreign investments) are valued as follows, in accordance with the partnership agreement:

1) Investments listed on a recognized U.S. or over-the-counter market - at the last reported sales price on the last business day or, if no sale occurred on such date, at the last reported bid price (long positions) or ask price (short positions).

9

CS 000508

**EXPONENTIAL RETURNS, L.P.**
**(a Texas Limited Partnership)**
**NOTES TO FINANCIAL STATEMENTS** *(continued)*

**B. Summary of Significant Accounting Policies - continued**

**Valuation of Investments - continued**

2) Investments traded in an over-the-counter market - at the last reported sales price or, if no sale occurred on such day, the average of the last reported bid and asked price as reported by the National Association of Securities Dealers' Automated Quotation System or comparable foreign over-the-counter quotation system.

3) Investments other than those specified above are valued at the fair value as determined by the General Partner. Certain investments are valued by the General Partner. Because of the inherent uncertainty of valuation, those estimated values may differ significantly from the values that would have been used had a ready market for these investments existed, and the differences could be material. The Partnership had no investments valued by the General Partner at December 31, 1997.

**Management Fee**

A management fee is charged to each limited partner based on the capital account of such limited partner at a rate of .25% as of the first day of each calendar quarter. The management fee is paid directly to the General Partner.

**Due to Brokers**

Amounts due to brokers represent amounts payable to one of the partnership's brokers under a margin agreement.

**Organizational Costs**

Organizational costs are being amortized by the straight-line method over 60 months.

**Statements of Securities**

The Statements of securities summarize the Partnership's investment positions by type of security, country of origin and industry classification. The percentages included the statements of securities represent each security classification as a percent of partners' capital. In addition, all positions greater than 5% of partners' capital are listed individually.

**Fair Values of Financial Instruments**

Substantially all of the Partnership's financial assets and liabilities are carried at market value or at amounts which, because of their short-term nature, approximate fair value.

10

CS 000509

**EXPONENTIAL RETURNS, L.P.**
**(a Texas Limited Partnership)**
**NOTES TO FINANCIAL STATEMENTS** *(continued)*

**C. Allocation of Partnership Net Income or Loss**

Net income or loss is allocated between the general and limited partners, in accordance with the partnership agreement which provides that these items be allocated pro rata among the partners in proportion to their respective Partnership Percentages, as defined in the partnership agreement, for each Fiscal Period.

The Performance Allocations, as defined in the Partnership Agreement (the Agreement), represents the performance fee earned by the General Partner on income allocated to the limited partners (generally 20% of the income of the limited partners). For the year ended December 31, 1997, accrued allocations related to the Performance Allocation amounted to $0. However, in accordance with certain provisions in the Agreement, the Performance Allocation is only available for reinvestment by or distribution to the General Partner at the end of the Performance Period for each limited partner, as defined in the Agreement. Therefore, allocations available for reinvestment by or distribution to the General Partner of $27,090 (relating to 1997 income) were credited to the Capital Account of the General Partner and correspondingly debited against the Capital Account, as defined, of each limited partner in 1997, in accordance with the Performance Period provision of the Agreement.

**D. Related Party Transactions**

The amounts due to General Partner represent expenses incurred by the Partnership but paid by the General Partner.

**E. Income Taxes**

In accordance with Federal income tax regulations, no income taxes were levied on a partnership, but rather on the individual partners. Consequently, no provision or liability for Federal income taxes has been reflected in the accompanying financial statements.

11

CS 000510

# EXPONENTIAL RETURNS, L.P.
### (a Texas Limited Partnership)

## FINANCIAL STATEMENTS

**For the Six Months Ended June 30, 1998**



CS 000511

# EXPONENTIAL RETURNS, L.P.
### (a Texas Limited Partnership)

## FINANCIAL STATEMENTS
### For the Six Months Ended June 30, 1998

### Table of Contents

Accountants' Compilation Report ................................................................................... 1

Financial Statements:

    Balance Sheet ................................................................................................... 2

    Statement of Operations ................................................................................... 3

    Statement of Partners' Capital ......................................................................... 4



CS 000512

# WP

# WHITLEY, PENN & ASSOCIATES

### CPAs and Professional Consultants

To the Partners
Exponential Returns, L.P.

We have compiled the accompanying balance sheet of Exponential Returns, L.P. (a Texas limited partnership) as of June 30, 1998, and the related statements of operations and statements of partners' capital for the six months then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them.

Management has elected to omit substantially all of the disclosures required by generally accepted accounting principles and the statement of cash flows. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations, and cash flows. Accordingly, these financial statements are not designed for those who are not informed about such matters.

*Whitley, Penn & Associates*

Fort Worth, Texas
July 28, 1998

*PARTNERS: Larry G. Autrey, P.C. • David L. Neal, P.C. • James C. Penn, P.C. • Thomas J. Rein, P.C.
Mark A. Topel, P.C. • B. Glen Whitley, P.C.*

Fort Worth: 1701 River Run Road, Suite 507 • Fort Worth, Texas 76107 • (817) 258-9100 • Metro (817) 498-0237 • FAX (817) 877-3036
Mid-Cities: 860 West Airport Freeway, Suite 601 • Hurst, Texas 76054 • (817) 258-9100 • Metro (817) 498-0237 • FAX (817) 656-4013

CS 000513

**EXPONENTIAL RETURNS, L.P.**
**(a Texas Limited Partnership)**
**BALANCE SHEET**
**June 30, 1998**

**Assets**

| | |
|---|---:|
| Securities at market value | $ 98,638 |
| Cash | 34,259 |
| Investment in Genesis Market Neutral Index Fund at market value | 554,926 |
| Organization costs, (net of accumulated amortization of $4,833) | 23,778 |
| | $711,601 |

**Liabilities and Partners' Capital**

| | |
|---|---:|
| Securities sold short, at market value | $ 1,750 |
| Due to general partners | 23,910 |
| Total liabilities | 25,660 |
| Partners' capital: | |
| General partner | 138,233 |
| Limited partners | 547,708 |
| | 685,941 |
| | $711,601 |

See auditors' report and accompanying notes.

2

WP

CS 000514

**EXPONENTIAL RETURNS, L.P.**
**(a Texas Limited Partnership)**
**STATEMENT OF OPERATIONS**
**For the Six Months Ended June 30, 1998**

| | |
|---|---:|
| Operating income: | |
| Interest income | $ 10,562 |
| Dividend income | 1,358 |
| Other | 792 |
| | 12,712 |
| | |
| Operating expenses: | |
| Management fee | 6,923 |
| Professional services | 8,700 |
| Interest expense | 598 |
| Dividend expense | 115 |
| Amortization | - |
| Other | 355 |
| | 16,691 |
| | |
| Operating income | (3,979) |
| | |
| Net gain on securities: | |
| Net realized gains from sales of securities | 79,743 |
| Net change in unrealized appreciation of securities | (117,186) |
| | (37,443) |
| | |
| Net income | $(41,422) |

See auditors' report and accompanying notes.

3

WP

CS 000515

**EXPONENTIAL RETURNS, L.P.**
**(a Texas Limited Partnership)**
**STATEMENT OF PARTNERS' CAPITAL**
**For the Six Months Ended June 30, 1998**

| | General Partners | Limited Partners | Total |
|---|---|---|---|
| Balance at December 31, 1997 | $137,382 | $1,703,809 | $1,841,191 |
| Contributions | - | 3,279 | 3,279 |
| Net income | 851 | (42,273) | (41,422) |
| Performance Allocation | - | - | - |
| Distributions | - | (1,117,107) | (1,117,107) |
| Balance at June 30, 1998 | $138,233 | $ 547,708 | $ 685,941 |

**Note:** Management has elected to omit the Schedule of Securities and Statement of Cash Flows.

See auditors' report and accompanying notes.

4

