IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES and EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-1320-K |
| | § | |
| CONRAD P. SEGHERS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

The Court enters this Memorandum Opinion and Order in conjunction with the Final Judgment signed this same day. The case was submitted to the jury on March 1, 2006, after closing arguments. The jury returned a verdict for the Defendant on the Plaintiff's claim that the Defendant violated Section 5 of the Securities Act. The jury returned a verdict for the Plaintiff on the Plaintiff's claims that the Defendant committed securities fraud in violation of Section 17(a) of the Securities Act; Section 10(b) of the Securities Exchange Act and Rule 10b-5; and Section 206 of the Investment Advisers Act. After the jury returned its verdict, Defendant filed a Motion for Judgment as a Matter of Law. Plaintiff also filed a motion for relief against Defendant based on the jury's verdict. Because the record at trial contains sufficient evidence to support the jury verdict, Defendant's Motion for Judgment as a Matter of Law is **DENIED**, and the Court **GRANT**S the Plaintiff appropriate relief based on the jury verdict. *See Rouillier v. Illinois Cent. Gulf R.R.*, 886 F.2d 105, 108 n.2 (5th Cir. 1989) (stating that a court must uphold a jury's factual findings unless the facts and inferences are so strongly in

favor of one party that the court believes reasonable men could not come to a contrary verdict).

## I.      Securities Fraud

The Government's claims for securities fraud arises out of Seghers' participation and involvement with three hedge funds: Integral Hedging, L.P., Integral Arbitrage, L.P.; and Integral Equity, L.P. (collectively the "Funds"). The Funds' assets were invested at Morgan Stanley Dean Witter ("Morgan Stanley") in an account (the "Galileo Fund") that was opened by Samer M. El Bizri ("Bizri") in June 1999. Olympia Capital Associates, L.P. ("Olympia") acted as administrator of the Funds and sent monthly and quarterly statements to the Funds' investors.

The Government's securities fraud claims are based on the theory that Seghers fraudulently caused the Funds to overstate the value of the investments to the investors. The Government alleged that Seghers did this by overstating the value of the funds to Olympia, who in turn sent monthly and quarterly statements to investors based on Segher's fraudulent overstatements.

The parties stipulate that Seghers participated in the offer and sale of limited partnership interests in the Funds and that those limited partnership interests were securities. At trial, the parties also stipulated on the record that Seghers was acting as an investment adviser. In order to prove its claim for securities fraud, the Government had to prove that Seghers acted fraudulently in connection with his offer or sale of securities. The Government also had to prove that Seghers acted with the requisite degree of mental culpability. Because the Government presented sufficient proof at trial

to support the jury's finding that Seghers knowingly or recklessly defrauded investors, the Court **DENIES** Seghers' Motion for Judgment as a Matter of Law. The Government's proof, however, only supports the jury's finding that Seghers committed securities from June 6, 2001 through September 30, 2001.

### A.    Seghers' Fraudulent Conduct Under Sections 17(a)(1); 206(1); 17(a)(2); 17(a)(3); and Rule 10b-5

To support a finding of fraudulent conduct under Section 17(a)(1) of the Securities Act or Section 206(1) of the Investment Advisers Act, the Government was required to prove that Seghers directly or indirectly employed a device, scheme, or artifice to defraud.

To support a finding of fraudulent conduct under Section 17(a)(2) or Section 17(a)(3) of the Securities Act, the Government was required to prove that Seghers (1) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (2) engaged in any transaction, practice or course of business which operated or would operate as a fraud or deceit upon the purchaser.

To support a finding of fraudulent conduct under Section 10(b) of the Securities and Exchange Act and Rule 10b-5, the Government was required to prove that Seghers (1) employed a device, scheme, or artifice to defraud; or (2) made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading; or (3) engaged in an act, practice or course of business which operated as a fraud or deceit upon any person.

Finally, to support a finding of fraudulent conduct under Section 206(2) of the Investment Advisers Act, the Government was required to prove that Seghers directly or indirectly engaged in any transaction, practice, or course of business which operated as a fraud or deceit upon any client or prospective client.

At trial, the Government offered sufficient proof to support the jury's finding that Seghers defrauded investors under each of the securities laws listed above from June 6, 2001 through September 30, 2001. The fraudulent conduct alleged in the Government's First Amended Complaint and the Joint Pretrial Conference Order is that "Seghers fraudulently caused the Funds to overstate to investors the value of their investments in the Funds by anywhere from 13% to 77% per month." The Government supported these allegations at trial with (1) summary charts prepared by Nina Yamamoto, (2) the testimony of the receiver, Daniel Jackson, and (3) a letter that Seghers sent to investors on July 13, 2001 which misstated the performance of the Funds.

### 1. Nina Yamamoto's Testimony

The Government supported its allegations of fraud with summary charts prepared by Nina Yamamoto, which were submitted into evidence as Government's Exhibit 225,

and were based upon the documents submitted into evidence as Government's Exhibit

235.  The summary charts reflect overstatements that Olympia made to investors from

June 30 through November 30, 2000, and from March 31 through September 30, 2001.

Laurence Platoni testified that Olympia relied on the overstatements provided by

Seghers in order to value the Funds' assets, prior to sending the statements to investors.

This supports the Government's allegation that Seghers caused the Funds' to overstate

the value of the investments.   As explained in Section I. B. of this Order, however, the

Government only produced sufficient evidence to establish Seghers' mental culpability

beginning on June 6, 2001.  Seghers can, therefore, only be liable for overstatements

made to investors after June 6, 2001.  The summary chart, reproduced below, shows the

overstatements made to investors after June 6, 2001.

| Statement Date | Funds' Asset Value Reported by Olympia to Investors | Funds'Asset Value Calculated Using Reports By Brokers And Banks | Difference | Percent |
|---|---|---|---|---|
| 6/30/01 | $70,886,740.54 | $41,303,631.85 | $29,583,108.69 | 72% |
| 7/31/01 | $72,523,134.47 | $49,401,727.37 | $23,121,407.10 | 47% |
| 8/31/01 | $60,659,263.15 | $34,305,736.31 | $26,353,526.84 | 77% |
| 9/30/01 | $73,852,329.40 | $46,792,879.72 | $27,059,449.68 | 58% |

    This evidence, summarized in the Government's chart, supports the jury's finding

that Seghers employed a scheme, or practice of business, to defraud investors by causing

Olympia to overstate the Funds' value between June 6, 2001 and September 30, 2001, in violation of Section 17(a) of the Securities Act, Section 10(b) of the Securities and Exchange Act and Rule 10b-5, and Section 206(1) and (2) of the Investment Advisers Act.

Seghers also submitted evidence at trial showing that Morgan Stanley's monthly statement information, which was the basis of the calculations in the column labeled "Funds' Asset Value Calculated Using Reports By Brokers And Banks" in the Government's summary charts, was erroneous by $10 - 35 million. The Court, however, does not find Seghers' evidence to be so overwhelming that the jury verdict should be set aside. *See Rouillier v. Illinois Cent. Gulf R.R.*, 886 F.2d 105, 108 n.2 (5th Cir. 1989) (stating that a court must uphold a jury's factual findings unless the facts and inferences are so strongly in favor of one party that the court believes reasonable men could not come to a contrary verdict).

### 2.   Daniel Jackson's Testimony

The Government further supported its allegations of fraud through the testimony of Daniel Jackson ("Jackson"). Mr. Jackson testified at trial that "there were millions of dollars difference between the reported value to the investors and the ultimate – the true value, or the value put on the Morgan Stanley statement, during that period of time." Mr Jackson further testified that the maximum difference between the mark-to-market value and the value reported to investors from January 2001 to July 15, 2001 was about

- 6 -

$23-$24 million.  Because the Government has produced sufficient evidence to establish Seghers' mental culpability beginning on June 6, 2001, Mr. Jackson's testimony supports the jury's finding that Seghers employed a scheme, or practice of business, to defraud investors by causing Olympia to overstate the Funds' value between June 6, 2001 and July 15, 2001, in violation of Section 17(a) of the Securities Act, Section 10(b) of the Securities and Exchange Act and Rule 10b-5, and Section 206(1) and (2) of the Investment Advisers Act.

### 3.   Letters from Seghers to Investors

The Government also supported its allegations of fraud with a letter Seghers sent to investors on July 13, 2001, reporting "positive developments" and stating that, "amidst the volatility in the markets we have continued to post respectable returns." The letter was submitted into evidence as Government's Exhibit 222.  This evidence supports the jury's finding that Seghers made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements true, in the light of the circumstances under which they were made, in violation of Section 17(a)(2) and Section 17(a)(3) of the Securities Act, and Section 10(b) of the Securities and Exchange Act and Rule 10b-5.

**B.      Evidence of Seghers' Mental Culpability as of June 6, 2001**

To support a finding of fraudulent conduct under Section 17(a)(1) of the Securities Act, Section 10(b) of the Securities and Exchange Act and Rule 10b-5, or Section 206(1) of the Investment Advisers Act, the Government was required to prove that Seghers acted knowingly or with severe recklessness.

To support a finding of fraudulent conduct under Section 17(a)(2) or Section 17(a)(3) of the Securities Act, or Section 206(2) of the Investment Advisers Act, the Government was required to prove that Seghers acted at least negligently.

**1.      Matharu Letter dated June 6, 2001**

The Court finds that the Government presented sufficient evidence to support the jury's finding that Seghers acted knowingly or with severe recklessness when he overstated the value of the Funds, beginning June 6, 2001.  The Government presented evidence that Seghers knew on June 6, 2001, that the statement values for the Integral Equity Galileo Fund had been incorrect since February 2001.  Seghers testified at trial that he asked Sonny Matharu, the Morgan Stanley broker, to "document the fact that Morgan Stanley agreed that the statements had been wrong...."  In response, Sonny Matharu sent Seghers a letter on June 6, 2001, which stated that the statement values for the Funds "have been incorrect since February 2001...Including most recently the statements for May 31, 2001.  They have not accurately reflected the actual value of the accounts during any of these periods."  Seghers testified at trial that he "had known that

the [Morgan Stanley] statements were incorrect."

### 2.   Email from Seghers to Morgan Stanley

Seghers also testified that his "concerns started to grow almost exponentially beginning approximately the 10th through the 12th of June, 2001." Seghers also sent an email to Morgan Stanley on June 15, 2001, stating in part that, "every day" there were new errors. Seghers requested of Morgan Stanley, "please help get this fixed, together with our web pages that are incorrect so frequently that they can never be trusted." Seghers further stated that "Morgan Stanley's continued inaccuracies with respect to our account positions and incorrect order fills continue to materially damage our funds and the respective investors," and that Morgan Stanley accounts are "continually full of multi-million dollar errors." Finally, Seghers told his own attorney on August 1, 2001, that the Funds were "in the toilet." This evidence establishes that Seghers acted knowingly or recklessly with respect to the fact that he was causing the Funds to overstate the value of the Funds' assets beginning June 6, 2001.

## II.   Injunctive Relief, Civil Penalties, and Disgorgement

Although the liability issues in this case were tried to a jury, the Court decides the appropriate relief. *See Tull v. United States*, 481 U.S. 412, 425 (1987); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (stating that there is no right to a jury trial where only injunctive relief and disgorgement are sought).

### A.      Permanent Injunction Against Seghers

In conjunction with this Memorandum Opinion and Order, the Court enters a Final Judgment of Permanent Injunction against Seghers, permanently enjoining him from committing securities fraud.  A district Court shall upon proper showing grant a permanent injunction against any person who is engaged or is about to engage in any acts or practices that violate federal securities laws.  *See SEC v. Mize*, 615 F.2d 1046, 1051 (5th Cir. 1980).  The critical question is whether the defendant's past violations indicate a reasonable likelihood of further violations in the future.  *See SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).   Among the factors to be considered are the egregiousness of the defendant's conduct; the isolated or recurrent nature of the infraction; the degree of scienter involved; the defendant's recognition of the wrongful nature of his conduct; and the likelihood, because of the defendant's profession occupation, that future violations might occur. *See id*. n.29.  In this case, a jury found Seghers liable for knowingly or recklessly committing securities fraud.  Seghers testified at trial that, since obtaining his Ph.D. in microbiology, he has exclusively devoted himself to investing, largely on behalf of others.  Seghers continues to maintain that he committed no securities fraud.  Because of the jury finding, the Court finds there is a reasonable likelihood that Seghers will violate the securities laws in the future. The Court, therefore, permanently **ENJOINS** Seghers from violating Section 17(a) of the Securities Act; Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5;

- 10 -

and Section 206 of the Investment Advisers Act.

### B.    Civil Penalties

The Court **GRANTS** the Government's motion to impose a civil penalty on Seghers in the amount of $50,000.  Civil penalties are meant to punish the individual wrongdoer as well as deter him and others from future securities law violations.  *See SEC v. Kenton Capital*, 69 F. Supp. 2d 1, 17 (D.D.C . 1998).  As the record indicates, the Government settled its investigation into this matter with Bizri, Seghers' former partner and business associate, for $50,000.  The Court imposes the same penalty upon Seghers, and therefore, **ORDERS** that Seghers is liable for a Civil Penalty of $50,000.

### C.    Disgorgement

The Government seeks disgorgement of Seghers ill-gotten gains, obtained as a result of committing securities fraud.  The Court has broad discretion to determine whether or not to order disgorgement.  *See SEC v. First Jersey Secs., Inc*. 101 F.3d 1450, 1474-75 (2nd Cir. 1996).  The primary purpose of disgorgement is to deprive securities law violators, like Seghers, of their ill-gotten gains.  *Id.* at 1474.  Because Seghers lost over $900,000 of his own money with the investors, he was not unjustly enriched by any ill-gotten gains.  The Court finds that the Permanent Injunction will sufficiently deter Seghers from committing further securities fraud, and the imposition of a Civil Penalty will sufficiently punish him for the securities violations proved at trial.  The Court, therefore, **DENIES** the Government's motion to order disgorgement.

III.    **Conclusion**

Because the record at trial contains sufficient evidence to support the jury verdict, Defendant's Motion for Judgment as a Matter of Law is **DENIED**.  The Court finds there is a reasonable likelihood that Seghers will violate the securities laws in the future; therefore, the Court permanently **ENJOINS** Seghers from violating Section 17(a) of the Securities Act; Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; and Section 206 of the Investment Advisers Act.  The Court **ORDERS** that Seghers to pay a civil penalty of $50,000.  Since Seghers lost over $900,000 of his own money, no disgorgement is ordered.

**SO ORDERED**.

Signed September 14th, 2006.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE